# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KIMBERLY KATORA BROWN
809 Central Hills Lane
Landover, MD

and

ISHEBEKKA BECKFORD
713 Taylor St. N.W.
Washington, D.C. 20011

and

NIKOYA HOYTE
5409 16th Ave #104
Hyattsville, MD 20782

and

KELLY HUGHES
3717 Horner PL,SE
Washington, DC

and

TAKIA JENKINS
3440 22d St, SE
Washington, DC 20020

and

STEPHEN MAY
2411 23 street, SE
Washington, DC

and

RAMONA PERSON
2221 Bridle Path Dr
Waldorf Md 20601

and

MUSLIMAH TAYLOR

Civil Action No: 13-569 (KBJ)

4011 Lawrence Street
Brentwood, MD 20722

and


DORIAN URQUART
4615 Sargent Release Date, NE
Washington, DC

and

SHANITA WASHINGTON

and

TANISHA WILLIAMS
3208 Curtis Dr.
Temple Hills, MD

and

JARRETT ACEY
9844 Whisky Run
Laurel, MD 20733

and

JULIUS GORDON
124 35th St, NE
Washington, DC

and

MARILYN LANGLY
2908 Nash Pl., SE, Apt 2
Washington, DC

and

DAVID LITTLEPAGE
TERRENCE THOMAS
3702 Stanton Road, SE
#101
Washington, DC

and

SHANE LUCAS
1126 48th Pl NE, Apt 1
Washington, DC 20019

and

STEPHANIE MCCRAE
2513 Baikal Loop
Upper Marlborough, MD

ANN MELTON
GREGORY DUTKA
8554 Staffordshire Court
Elk Grove, CA 95624

and

CHIQUATA STEELE
112 16th Street, N.E.
Washington, DC 20002

GREGORY STEWART
203 53d Street, NE
Washington, DC 20019

and

Plaintiffs,

v.

GOVERNMENT OF THE DISTRICT OF
COLUMBIA

Defendant

## CLASS ACTION COMPLAINT

## SECOND AMENDED COMPLAINT FOR JUDGMENT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF AND DECLARATORY RELIEF WITH JURY DEMAND

1.      This is a class action complaint for a judgment for money damages and declaratory judgment and injunctive relief under 42 U.S.C. Section 1983 against the Government of the District of Columbia (hereinafter "District of Columbia" or the "District").

2.      The named plaintiffs, listed below, are persons ("Owners") whose property -- mostly cars, trucks, and currency – was seized, either directly or indirectly[1], from them by the Metropolitan Police Department ("MPD") or other law enforcement agents operating in the District of Columbia for investigative or evidentiary holds or for forfeiture determinations and then placed in the custody of the MPD Property Clerk.

3.      Plaintiffs were injured by these seizures and retentions because the District either: (1) held the property for long periods of time (or never gave it back) without giving them prompt post seizure hearings at which they could challenge the government's seizure and continued retention of their property; (2) failed to give required notice or gave constitutionally deficient notice; (3) forfeited the property using unconstitutional forfeiture procedures; or (4) or never returned the property even though it was no longer needed for investigation or evidence or the District had determined that the property was not subject to forfeiture.

4.      Plaintiffs state sixteen numbered claims; but, in effect there are only nine claims because several state the same claim but base the claim on more than one Constitutional provision in the alternative.  For example, Claims 1 and 2 both claim that the MPD do not give effective notice at the time of seizure but Claim 1 is based on the Fifth Amendment and Claim 2 is based on the Fourth Amendment.

---

[1] An indirect seizure is when property was seized from the passion of another, for example, from a person to whom the Owner had entrusted the property ("Trustees"),

5.      Plaintiffs ask the Court to certify ten separate classes defined below on their own behalf

and on behalf of the classes defined below injured (or presently subject to injury) by the policy

and practice and custom of the District described herein.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C.

§1331 and 28 U.S.C. §1343(3)-(4).

7.      Venue is proper in this jurisdiction pursuant to 28 U.S.C §1391(b) because the events or

omissions underlying the claims occurred in this judicial district.

## PARTIES

8.      The named plaintiffs and the type of property the District directly or indirectly seized

from them are listed below:

9.      ("Car Named Plaintiffs") Kimberly Brown, Ishebekka Beckford, Nickoya Hoyte, Kelly

Hughes, Takia Jenkins, Steven May, Romona Person, Muslimah Taylor, Dorian Urquhart,

Shanita Washington, and Teneisha Williams.

10.     ("Currency Named Plaintiffs") Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya

Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka

and Ann Melton, Chiquata Steele, and Gregory Stewart.

11.     The MPD seized vehicles and property belonging to Takia Jenkins and Muslimah Taylor

for "holds" as opposed to for forfeiture determinations.

12.     Defendant District of Columbia is a municipal corporation capable of being sued under

D.C. Code § 1-102.

## DEFINTIONS

13.     Owner -- A person who owns property that was seized and delivered to the Property

Clerk.

14.     Claimant – A person who has an interest in property such as an Owner, Trustee, or lien

holder.[2]

15.     Trustee - A person, other than the Owner, from whom an Owner's property is seized.  An

example of a Trustee is a person who is driving a car borrowed from the Owner or a person who

is in possession of an Owner's currency at the time of seizure.

16.     <u>Simms</u> Hearing – prompt post seizure hearing as described in <u>Simms v. District of</u>

<u>Columbia</u>, 872 F. Supp. 2d 90 (D.D.C. 2012), and <u>Krimstock v. Kelly</u>, 306 F.3d 40 (2d Cir. N.Y.

2002).

17.     Property Clerk -- Seized property is placed in custody of the Property Clerk.  The Mayor

has delegated his responsibilities under the forfeiture statute to make probable cause

determinations, to send notice of forfeiture, and to provide administrative forfeiture

determinations to the MPD Property Clerk.  The Property Clerk supervises the Evidence Control

Branch.

18.     Asset Forfeiture Unit – the Asset Forfeiture Unit assists the Evidence Control Branch in

making forfeiture determinations and recommendations on which property to refer to the DOJ

for "adoption."

## FACTUAL ALLEGATIONS

---

[2] The statute defines persons entitled to receive notice of forfeiture as "each party who is known
or in the exercise of reasonable diligence should be known by the Mayor to have a right of claim
to the seized property."

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL*. V. GOVERNMENT OF THE DISTRICT
OF COLUMBIA

## Introduction

19.     The District and other law enforcement officers operating in the District of Columbia make seizures of contraband and seizures of property (such as cars and currency) for use in investigations, prosecutions and for forfeiture determinations[3].

20.     Sometimes MPD seizes property for more than one reason, for example, the MPD officers may place an investigative hold on currency seized in a drug arrest which the Mayor also intends to forfeit.

21.     The MPD implements the District's civil forfeiture scheme and other laws authorizing seizure of property without regard to the owners' rights so that the MPD simply delays all review of seizures and forfeiture determinations until the system, in its sweet time, and with the resources it chooses, is ready to make decisions about returning or forfeiting people's cars, currency and other property.

## THE DISTRICT'S CIVIL FORFEITURE PROGRAM

## MPD SEIZE PROPERTY FOR FORFEITURE DETERMINATIONS

22.     MPD officers (sometimes acting with other agencies, e.g. Drug Enforcement Agency, "DEA") seize property for forfeiture determinations as a matter of standard operating practice and procedure.

23.     Most seizures occur in connection with warrantless arrests.

---

[3] The term "forfeiture determinations" is used instead "for forfeiture" because sometimes the MPD determine that property seized for forfeiture is in fact not subject to forfeiture.  Property that is not subject to forfeiture must be returned to the owner, according to D.C. Code § 48-905.02(d)(3)(C).

24.    Many of these arrests start as traffic stops made on the flimsiest of pretexts.

25.    Seizures made in connection with drug arrests fall most heavily on African Americans because most cars and currency are seized in warrantless arrests for drug offenses and in traffic stops and nearly nine[4] out of 10 individuals arrested for drug offenses in the District are African American and nearly seven out of 10 traffic arrests made in the District of Columbia are of African Americans even though drug use in the District is more or less evenly distributed amongst black and white people and, on information and belief, drivers of different races commit roughly the same number of traffic violations.

26.    The wealth stripped from Owners in forfeitures resulting from seizures is staggering – in 2011 just under the forfeiture statutes the MPD Evidence Control Branch submitted $9,613,362.38 worth of property (including $6,140,937.38 in currency and vehicles valued by the MPD at $3,395,625.00) to the MPD Asset Forfeiture Unit for investigation.  This figure does not include the value of seizures of property referred to federal agencies for forfeiture of which the District receives a large percentage.

27.    The District MPD has a policy and practice of seizing property for forfeiture determinations that ultimately turns out to be not subject to forfeiture.

28.    For example, in many cases, the MPD seizes vehicles from drivers who borrowed cars from Owners –moms, Dads, grandmothers, aunts, sisters, cousins, friends – who lent their cars to the drivers without knowledge of, or consent to, any wrongdoing ("innocent owners").  D.C. Code § 48-905.02(a)(4)(B) .

29.    Such cars are exempt from forfeiture under the District's civil forfeiture scheme under the "innocent owner" exemption.

30.     The MPD also makes seizures of currency from persons who have custody of currency belonging to "innocent owners" and such currency is also exempt from forfeiture under the District's civil forfeiture scheme under the "innocent owner" exemption.  D.C. Code § 48-905.02(a) (7)(A).

31.     In drug arrests, even in arrests for alleged simple possession of a single rock or pill or a small amount of marijuana, the MPD's standard practice and policy is to seize for forfeiture determination all currency on the arrestee's person or in proximity to such person even if there are no indicia at the time of the seizure that the currency has any nexus to a drug offense.

32.     The MPD has never articulated guidelines educating its members on how to distinguish currency and other property subject to seizure and property not subject to seizure in drug arrests.

33.     Prior to July 2013 (when the MPD promulgated general orders[5] governing seizures and processing of property seized for forfeiture determinations) the MPD had no written policies at all governing seizures for forfeiture determinations.

**No notice at seizure**

34.     The District has a policy and practice of not providing any effective notice at all to over 70% of all Owners whose property is seized for forfeiture determinations.

35.     At the time of seizure, the MPD officers do not give any receipt or inventory showing they have seized property or why they seized it (e.g., for use in investigations, in prosecutions, or for forfeiture determinations).

---

[5] Handling and Accounting for Seized and Forfeited Property, 601.03 (July 13, 2013).

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

36.     Nor do MPD officers give Owners or Trustees any written notice with contact information such as a working phone number or a "control or identification number" so people can call about their property.

37.     It is the practice of the MPD executing warrants not to leave a copy of the warrant or an inventory with persons at the search location.

38.     Nor do the MPD provide Owners or Trustees with information about procedures on how to retrieve their property when the District no longer needs the property because the case is over (in case of investigative or trial holds) or when the MPD decides the property is not subject to forfeiture or information about how to make their objections if the District decides to forfeit the property.

39.     By way of contrast, when the District impounds cars for traffic violations or for unpaid tickets the District impoundment statute, D.C. Code § 50-2421.07(c), requires the District to within five days of receipt of the car at an impoundment lot send notice to owners and lienholders with basic information describing the car, stating the reason the car was impounded, indicating the nature of the traffic violation that caused the impoundment, on where to go or call about the car and how to get the car back.

40.     The District also makes staff available at the DMV for hearings on the validity of the traffic violations connected with the impoundment on a walk-in basis.

41.     MPD policies and practices require seizing officers to fill out a PD 163 (arrest/ prosecution report).

42.     MPD policies and practices require seizing officers to fill out a PD 81 (property report) documenting each seizure of property.

Second Amended Class Action Complaint • Brown, *et al.* v. Government of the District of Columbia

43.    The PD 163 (arrest/ prosecution report) contains a narrative section in which MPD general orders and other police procedures require the officers to explain the facts supporting the arrest.

44.    It is the longstanding policy and practice of the MPD to enter the data on the PD 163 into the MPD's booking database.

45.    MPD general orders and other police procedures require the officers to write on the PD 81 a statement outlining the circumstances surrounding the seizure of the property, the name of the person the seizing officer believes is the owner, an inventory of the property seized and the reason for the seizure of the property.

46.    Since October 2009 it is the policy and practice of the MPD to enter the data on the PD 81 into the Property Clerk's database, Evidence on Cue.

47.    It is the policy and practice of the MPD to **not** give these reports to Owners or Trustees at the time of seizure.

48.    It is the policy and practice of the MPD to **not** give these reports to Owners prior to civil discovery in Superior Court libel actions if the Owner is not the person from whom the property was seized.

49.    If an Owners or Trustees is charged with an offense and the case moves past the initial status, the prosecutor (AUSA or OAG) will usually give their lawyer the arrest report and the property report.

50.    But if the case is no-papered or dismissed before the government provides discovery the Owners or Trustees will not have either report so they will not know the government's version of events for the seizure or why the property was seized.

**AFTER PROPERTY SEIZED**

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

**At all times after seizure property remains in exclusive possession of Property Clerk**

51.    Property seized for forfeiture determinations remains in the custody of the MPD's Property Clerk pending the outcome of the forfeiture determinations unless it is "adopted" by the DOJ.

52.    The forfeiture statute specifically provides that claimants may not replevin their property pending the forfeiture determinations so Owners have no common law remedies for re-gaining possession of their property pending the forfeiture determinations.  D.C. Code § 48-905.02(d)(2).

**Very difficult and burdensome for Owners try to locate their property, determine why it was taken, and how to get it back**

53.    The District has no system for Owners trying to learn at or near the point of seizure why their property was seized, where it is stored, or how to get it back.

54.    Most people at or near the point of seizure start with calling or visiting the police station in the District where the property was seized.

55.    Most people at or near the point of seizure encounter a big run-around before learning their property is at the Property Clerk's.

56.    The Property Clerk's phone number is frequently non-working.

57.    The Property Clerk's policy and practice is to tell claimants inquiring after their property to hold all inquiries until after the Property Clerk sends notice of intent to forfeit which typically is many months after seizure.

**No prompt post seizure hearings as required by <u>Good</u>, <u>Krimstock</u>, and <u>Simms</u>**

58.    The MPD does not give Owners prompt post seizure hearings in which Owners can present their objections to the seizure or the District's continued retention of their cars or currency.

59.    Such prompt post seizure hearings are typical (whether by statute or judicial decisions) in almost all of the states that have civil forfeiture programs.

60.    The D.C. civil forfeiture statute as implemented provides no method for an "innocent owner" to prove his or her status as "an innocent owner" except in a judicial forfeiture proceeding.

61.    Nor does the statute as implemented by the MPD provide any method for an Owner to assert any of the other available defenses, such as a lack of probable cause, an illegal seizure, a lack of a proportionate connection to an enumerated forfeitable offense, or a simple factual error, except through the  judicial forfeiture proceeding.

62.    Instead, under the statute as implemented, the only publically known way for Owners to get a hearing on the District's continued retention of their vehicles or currency is by waiting for the MPD to finish processing the seizure and forfeiture determination, posting a penal bond equal to the greater of 10% of the value of the property or $250, and demanding a judicial forfeiture proceeding in Superior Court.

63.    The District retains possession of *both* the property *and* the bond throughout the forfeiture process until the end of the judicial forfeiture proceeding.

64.    Typically it takes about two years from time of seizure until resolution of a judicial forfeiture proceeding in Superior Court.

65.    Meanwhile, during this period, property owners are denied access to the use of their property and vehicle owners must also maintain registration and insurance on the vehicles.

66.     The lack of a prompt post-seizure hearings thus permits the District to retain private property indefinitely even if the seizing officer's asserted basis for forfeiture would not result in forfeiture in a Mayor's forfeiture determination or a judicial forfeiture proceeding which comports with due process.

**PENDING FORFEITURE -- AFTER PROPERTY SEIZED**

**D.C. Code § 48-905.02(d) lays out the procedures for the District to follow in forfeitures involving controlled substances and other forfeitures.**

**67.**     D.C. Code § 48-905.02(d) prescribes the steps the Mayor must perform in forfeitures involving controlled substances and most other forfeitures of property.

**68.**     D.C. Code § 48-905.02(c) provides that the "Mayor" must institute proceedings required by D.C. Code § 48-905.02(d) "promptly."

**69.**     The subsection does not prescribe how or when the District must institute proceedings in Superior Court if a Claimant elects a judicial forfeiture proceeding under D.C. Code § 48-905.02(d)(3)(B); it merely states that if a Claimant elects a judicial forfeiture proceeding rather than an administrative forfeiture proceeding the Mayor must "promptly" (D.C. Code § 48-905.02(c)) refer the case to the Office of the Attorney General.  D.C. Code § 48-905.02(d)(3)(E).

**Notice of probable cause determination**

70.     The statute requires the "Mayor" to conduct probable cause determinations to see whether there is probable cause to support the seizure and then send notice to Owners and other Claimants via registered mail and publication in a newspaper of "the seizure of property … and

the Mayor's intention to forfeit … together with information on the applicable procedures for claiming the property."  D.C. Code § 48-905.02(d)(3)(A).

71.     The statute does not provide what the Mayor should do if there is no probable cause for the seizure nor does the statute establish procedures for Owners who wish to retrieve their property.

**Election between judicial forfeiture proceeding and administrative forfeiture proceeding**

72.     Under the D.C. Code § 48-905.02(d)(3)(B) and (C)  Owners and other Claimants have the right to elect between:

    a.  a judicial forfeiture proceeding in Superior Court, D.C. Code § 48-905.02(d)(3)(B) (upon payment of a bond and submission of a claim), and

    b.  an administrative forfeiture proceeding conducted by the Mayor without payment of a bond, D.C. Code § 48-905.02(d)(3)(C),

to determine whether the property if forfeitable.

**Judicial forfeiture proceeding**

73.     In order to elect a judicial forfeiture proceeding to challenge the District's seizure and forfeiture of their property Claimants must submit a claim and post a "penal" bond generally equal to the greater of 10% of the value of the property or $250.  D.C. Code § 48-905.02(d)(3)(B).

74.     D.C. Code § 48-905.02(d)(3)(B) provides for the MPD to appraise the fair market value of the property taking into account evidence of value the Claimant may present.

75.     Though a Claimant may apply for waiver or reduction of the "penal sum," it is wholly within the discretion of individual officers of the Metropolitan Police Department whether to grant a waiver or reduction in the "penal sum." According to FOIA disclosures, the MPD does not have any standard procedures requiring officers to notify Claimants that the "penal sum" can be waived or reduced. Nor does MPD have any formal standards regarding how it is determined whether the Claimant can afford the amount set by officers.  Nor does the Property Clerk allow Claimant to submit evidence regarding the value of the property though the statute requires him to do so.

76.     The MPD has a practice of virtually never granting waivers or even reductions in the penal bond as of at least of 8/22/2013 when the District adopted the Superior Court criteria for evaluating a litigant's *in forma pauperis* status.

77.     The mayor must "promptly[6]" refer the case to the Office of the Attorney General for a judicial forfeiture proceeding after a Claimant posts a penal bond and files a claim.  D.C. Code § 48-905.02(d)(3)(E).

**Administrative forfeiture proceeding conducted by the Mayor, D.C. Code § 48-905.02(d)(3)(C)**

78.     D.C. Code § 48-905.02(d)(3)(C) requires the Mayor to conduct an administrative forfeiture proceeding ("Mayor's forfeiture determination") in lieu of a judicial forfeiture proceeding to determine whether the property is subject to forfeiture if (after receiving the notice required by D.C. Code § 48-905.02(d)(3)(A)) the Owner or Claimant elects not to post a bond and file a claim.

---

[6] D.C. Code § 48-905.02(c)(mayor must promptly institute proceedings under proceedings under subsection (d))

79.    D.C. Code § 48-905.02(d)(3)(C) also requires the Mayor to return an Owner's property if he determines that the property is not subject to forfeiture.

**The District does not implement the forfeiture statute as written**

80.     The District does not implement the forfeiture statute as written.

81.    The Property Clerk (in some cases in concert with the Asset Forfeiture Unit) performs all the functions under the statute allocated to the Mayor or the Chief of Police.

82.    The Property Clerk mails forfeiture notices to some percentage of Owners and Claimants, but not all Owners and Claimants whose property was seized for forfeiture determinations, telling them their property will be forfeited unless they respond and file a claim and post a penal bond of 10% of the value of the property (or at least $250 if the value of the property is less than $250) within the time prescribed[7] by statute.

83.    In effect the Property Clerk declares all property forfeited in an *ex parte* forfeiture determination he conducts and he allows Claimants to appeal his forfeiture determinations to a Superior Court judge – but only if they post appeal bonds equal to 10% of the value of the property (or at least $250 if the value of the property is less than $250).

**The Property Clerk implements the statute in an Unconstitutional manner as follows**

84.    The MPD Property Clerk conducts the probable cause determinations and the Mayor's forfeiture determinations even though his agency, the MPD, make the seizures and collect information supporting probable cause and even though his agency gets 100% of the proceeds of forfeitures.

---

[7] The statute gives the owner 30 days to respond but the notice of forfeiture does not state the number of days.

85.     The Property Clerk mails the notices of forfeiture by registered or certified mail, return receipt requested to some but not all Owners whose property has been seized.

86.     In many cases the Property Clerk mails notice to an ineffective address.

87.     The Property Clerk does not follow up on notices returned as undelivered by re-sending it.

88.     The notice of forfeiture omits required information from the notice of forfeiture (e.g., omits Claimant's right to present evidence on the value of property) and the notice of forfeiture affirmatively misstates other information (e.g., notice of forfeiture affirmatively misstates Claimant's rights to Mayor's forfeiture determinations).

89.     The Property Clerk mails notice **after** the Mayor's forfeiture determinations not before, so Claimants do not get an opportunity to appear, present objections, and present evidence on their objections in the Mayor's forfeiture determinations.

90.     The notice the Property Clerk mails affirmatively incorrect notice because the notice tells people that if they do not post a bond and file a claim under D.C. Code § 48-905.02(d)(3)(B) then the Property Clerk will declare their property forfeited (without informing Claimants of their right to elect a Mayor's forfeiture determination that comports with due process).

91.     The Property Clerk does not return property to Owners at all (let alone promptly) if it determines that the property is not subject to forfeiture.

92.      The Property Clerk does not provide notice to Owners that their property is not subject to forfeiture if it determines that the property is not subject to forfeiture.

93.     The Property Clerk allows some but not all property owners to present evidence of innocent ownership after the Property Clerk mails notice (but not before – the Property Clerk

Second Amended Class Action Complaint • Brown, *et al.* v. Government of the District of Columbia

tells property owners inquiring after their property to hold inquiries till after the Property Clerk has mailed notice).

94.     The Property Clerk winds up declaring almost all seized property forfeited because of the preceding defects in the Mayor's forfeiture determinations and notice.

95.     If Owners are lucky enough to receive notice of forfeiture the only way for Owners of currency and the only way for virtually all Owners of vehicles to get an adversary hearing at which they can present objections and evidence on their objections is to post a bond equal to 10% of the property (or at least $250 if the value of the property is less than $250).

## INVESTIGATIVE AND EVIDENTIARY SEIZURES AND HOLDS

96.     Some of the property seized during traffic stops or during arrests for minor crimes is seized for use in investigations or as evidence in prosecutions.

97.     The MPD do not provide any written notice in connection with these seizures at any time.

98.     The MPD does not provide owners notice when the property is no longer needed.

99.     The MPD does not provide prompt post seizure hearings at which persons can challenge the government's seizure or continued retention of their property.

100.     Seized currency and vehicles are virtually never used as evidence in trials in the Superior Court.

101.     The District does not make available to the general public any information about the procedure or required documents (such as releases) for retrieving property seized for investigation or evidence or for challenging the government's continued retention of the property.

## SEIZURE AND RETENTION OF NAMED PLAINTIFFS' CARS

**Kimberly KaTora Brown**

102.    Ms. Brown owned a 1995 Chevrolet Camaro which was titled and registered in Ms. Brown's name in Maryland, and which had legal tags on the front and the back of the car as required by Maryland law.  The windows were tinted but were in compliance with Maryland law and District of Columbia law.

103.    On the morning of 4/25/2010 Ms. Brown lent her Camaro to a friend, Darrell C. Hammond, so he could pick up his son and run some errands.

104.    Ms. Brown had no reason to know Mr. Hammond would use the car for an illegal purpose nor did she consent to his use of the car for any illegal purpose.

105.    Later in the afternoon on 4/25/2010 the MPD stopped the Camaro in the 1300 block of Florida Ave., N.E., because, they claim, the tinted windows violated District of Columbia law and the Camaro did not have a front tag.

106.    Based on a Complaint for Libel of Information filed by the District ("Libel of Information"), Mr. Hammond was driving and he had a passenger with him in the car when the MPD stopped the Camaro.

107.    According to the Libel of Information filed by the District in the case, the police discovered (1) some money on Mr. Hammond and some more on his passenger; and (2) some zip lock bags of marijuana in a bag in the car.

108.    The MPD arrested Mr. Hammond and the passenger and seized the car and the money for forfeiture.

109.    The MPD seizing officers did not give Mr. Hammond or Ms. Brown a receipt for the car stating they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

110.   Nor did they provide her with prompt notice giving her a prompt opportunity to challenge the seizure or retention of the car pending forfeiture or return.

111.   Within a few days of the seizure Ms. Brown went to the MPD police station on Florida Avenue (the station where Mr. Hammond was booked and the station closest to where the car was seized) and told officers there that the Camaro was her car and that she had lent it to Mr. Hammond and that she had not known or consented to any illegal use of the Camaro.

112.   The MPD never mailed or gave her a Notice of Intent to Administratively Forfeit the Following Property.

113.   After several trips to the station and many calls a few months after the Camaro was seized Ms. Brown was told to go to a lot and she was told that, unless she posted a $250 bond for a judicial forfeiture proceeding, the Property Clerk would declare her Camaro forfeited and sell it at auction.  No one at the lot told her she had an opportunity to apply for a reduction or waiver of the bond.

114.   Ms. Brown did pay the bond.

115.   The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.

116.   The MPD Evidence Control Branch did not inform Ms. Brown that that she could present evidence such as documents and testimony establishing her right to the return of her car.

117.   On 2/11/2011, almost a year after the seizure, the District filed a Libel of Information in Superior Court.

118.   The Libel of Information alleged that Mr. Hammond was driving the car but that Ms. Brown was the owner.

119.    The Libel of Information did not allege that Ms. Brown had known or consented to any illegal use of the Camaro by Mr. Hammond or anyone else.

120.    Ms. Brown told counsel for the District about the same time that the Camaro was her car and that she had lent it to Mr. Hammond and that she had not known or consented to any illegal use of the Camaro.

121.    Counsel for the District informed Ms. Brown she had the right to file a document explaining her innocent owner status and so on 6/4/2011 Ms. Brown filed an answer in the forfeiture proceeding stating that the Camaro was her car and that she had lent it to Mr. Hammond and that she had not known or consented to any illegal use of the Camaro.

122.    On 6/4/2011 Ms. Brown filed an answer in the forfeiture proceeding stating that the Camaro was her car and that she had lent it to Mr. Hammond and that she had not known or consented to any illegal use of the Camaro.

123.    This was her first opportunity to contest the District's seizure and retention of the Camaro and to present her evidence that the District's seizure and retention of the Camaro was illegal because she was an innocent owner under D.C. Code § 48-905.02(a)(4)(B) and so her Camaro was exempt from forfeiture.

124.    Ms. Brown attended at least one hearing in the forfeiture proceeding.

125.    Thereafter Ms. Brown could not make further appearances in the forfeiture proceedings because she was overwhelmed by the legal proceedings, she had already spent $250 on a non-refundable penal bond to prevent forfeiture of the Camaro, and she had missed time from work, and she could not afford to miss any more time from work.

126.    The result was the Court entered a default judgment in favor of the District in the forfeiture proceedings on 3/7/2012.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

**Ishekebba Beckford**

127.    The MPD seized Ishekebba Beckford's car from her brother, Natanjah B (to whom she had lent it a day or two earlier), for forfeiture in late August 2012 and they did not give it back until April 30, 2013.

128.    The MPD seized Ms. Beckford's car for forfeiture from her brother, Natanjah B., on about 8/30/2012 when they stopped him while he was driving the Lincoln in the District of Columbia and the MPD arrested Natanjah B. on a misdemeanor personal-use drug charge,

129.    Natanjah B.'s case terminated two months later on 10/4/2012 when he pled guilty to a misdemeanor personal-use drug charge.

130.    Ms. Beckford does not have any personal information whether the MPD found marijuana in her car.  Nor did she know that Natanjah B. would use the car to transport marijuana or any other drugs or use the car for any other illegal purpose nor did she consent to Natanjah B.'s using the car to transport marijuana or any other drugs or for any other illegal purpose.

131.    The MPD seizing officers did not give Natanjah B. or Ms. Beckford a receipt for the car stating they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back.

132.    Nor did they provide her with prompt notice giving her a prompt opportunity to challenge the seizure or retention of the car pending forfeiture or return.

133.    Ms. Beckford had to keep calling officers at the 4th District (the police District where she lives) for information on how to get her car back and she also told the 4th District police that she personally had no knowledge about whether Natanjah B. had any drugs on him when he was stopped by the MPD while driving her car and that she did not know about or consent to his using her car for that reason.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* v. GOVERNMENT OF THE DISTRICT OF COLUMBIA

134.    The 4th District officers gave Ms. Beckford the run-around about where her car was and how to get it back.  The 4th District gave Ms. Beckford a number to call about her car, but they did not give her a contact name.  Ms. Beckford tried calling the number for weeks but every time she called the number she got a message from Verizon or a busy tone and every time she told the 4th District officers the number was non-working they told her to keep trying. The number had been out of service for some time.

135.    After calling back and forth between the 4th District and the non-working number for about a week the 4th District officers told her to go to a police building on Florida Ave., because that's where the car was.

136.    There, she informed a detective that she was the owner of the car and she wanted it back; she explained to him that she had not known or consented to her brother's doing anything illegal in the car; and she brought the detective documents he had requested and he made copies.

137.    The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.

138.    Ms. Beckford never received any Notice of Intent to Administratively Forfeit the Following Property from the MPD.

139.    She followed up with him by phone several times, but the detective said each time that he had a back log and had not finished working on her case and so he could not return the car.

140.    After several trips to see the detective and another man about her car, Ms. Beckford contacted the District of Columbia Public Defender Service, and they helped her regain possession of her car on April 30, 2013, just a few days after the Public Defender Service began helping her.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* v. GOVERNMENT OF THE DISTRICT OF COLUMBIA

141.    While the MPD retained Ms. Beckford's car, she had to pay money every month in insurance and she had to keep the car titled and registered to prevent lapse of coverage.

142.    While the MPD had her car, she had to make arrangements to use another car and find other ways to get around.

143.    Ms. Beckford needed the Lincoln to fulfill her responsibilities in life in part because she is the primary caretaker for her grandmother and had to get her grandmother's medications and take her to her doctors' appointments.  She also needed her car to go to job interviews since she was looking for work.  She also needed her car to run all the errands of daily life such as going to the store and carrying home purchases, driving to the bank, and driving to see friends and family.

**Nickoya Hoyte**

144.    On about May 9, 2012 the MPD seized Nickoya Hoyte's 2000 Grand Marquis for forfeiture from her house mate and they did not return it until April 24, 2013.

145.    On about May 9, 2012 Ms. Hoyte lent her 2000 Grand Marquis to one of her house mates (Ali).

146.    Later that morning the MPD arrested Ali and seized the car because, the police reports say, Ali voluntarily told police that he had a small amount of marijuana in the trunk of the car.

147.    The police knew the 2000 Grand Marquis was titled in Ms. Hoyte's name because they found the title to the car in the house.

148.    Ms. Hoyte has no personal knowledge about whether the police found any marijuana in the trunk of her car.

149.    Ms. Hoyte had no reason to know Ali would use the car for an illegal purpose nor did she consent to his use of the car for any illegal purpose.

150.    Ms. Hoyte was CJA eligible.

151.    Ms. Hoyte's case was <u>nolle'd</u> in diversion.

152.    The MPD seizing officers did not give Ali or Ms. Hoyte a receipt for the car stating they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back.

153.    Nor did they provide her with prompt notice giving her a prompt opportunity to challenge the seizure or retention of the car pending forfeiture or return.

154.    Ms. Hoyte located her car at the Property Clerk by calling the 4th District (where she was arrested) who referred her to the Evidence Control Branch.

155.    The Evidence Control Branch told her she could not just come down and get the car.  The Evidence Control Branch told her there was a process and she had to wait for the process to play out and she would get a notice in the mail when they were ready to discuss her car with her.

156.    Ms. Hoyte got a Notice of Intent to Administratively Forfeit the Following Property in the mail about a month later (it was dated May 24, 2012) from the MPD saying, among other things, that the MPD Property Clerk would declare her car forfeited if she did not pay a "bond" of $535.

157.    Ms. Hoyte called the number on the notice and spoke to someone who told her she had to pay the bond (with cash or money order or bank check) even though she was not driving the car when the MPD took it and even though she was certified CJA eligible by the Finance Office in the CJA office.  He did not tell her she could apply for a waiver or reduction.

158.    The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.

159.    On or about April 15, 2013 Ms. Hoyte spoke with a lawyer from the District of Columbia Public Defender Service who helped her get her car back.

160.    The car sustained damages while the Property Clerk had the car including: -side view mirror was knocked off; -rear end shocks were destroyed (car was towed without turning off the air shock switch); -car insurance paid of $258.00 (3 months); -non tag return fee of $45.00; and the car had to be towed from the police storage lot when the police released it because it no longer ran.

161.    While the MPD had her car she had to pay money every month for insurance and she had to keep the car titled and registered to prevent loss of insurance.

162.    While the MPD had her car she had to make arrangements to use another car and find other ways to get around.

163.    She needed the car to fulfill her responsibilities in life.  Being without the car seriously interfered with her ability to obtain critical life necessities, such as earning a livelihood, going to interviews, receiving necessary medical care, shopping for necessities such as food and clothing, and visiting family and friends.

**Kelly Hughes**

164.    The MPD seized Kelly Hughes' 2006 Dodge Magnum on February 28, 2013 for forfeiture, and they did not return it till about May 20, 2013.

165.    On about February 28, 2013 at about 5:00 pm several MPD officers and detectives stopped Ms. Hughes' car as she and a passenger were in the car on the 1000 block of Bladensburg Road in the District because, as they say in police documents, she had an "air freshener hanging from the rear view window and heavy tint."

166.    The police then searched her car without her consent first by hand and then using a police dog.

167.    Detective Dianne Davis then told Ms. Hughes that she was seizing her car so she could get a warrant and do a more thorough search.

168.    Neither Detective Dianne Davis nor any of the other officers allowed Ms. Hughes or her passenger to remove their personal effects (cell phones, purses with money inside, car registration documents) from the car.

169.    At the time of seizure the MPD did not give Ms. Hughes an invoice for her car or its contents stating they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back

170.    Nor did they provide her with prompt notice (by mail or otherwise) giving her a prompt opportunity to challenge the seizure or continued retention of the car pending forfeiture or return.

171.    Ms. Hughes spent a great deal of time over the few weeks calling around to various MPD and District government agencies trying to find her car and get it and the contents back.  She even filed a complaint with internal affairs.

172.    Finally an officer told her the MPD was seizing her car for civil forfeiture and he gave her the number for the civil forfeiture unit.

173.    Ms. Hughes learned her car was at Blue Plains so she went there to get it back.  The clerk there told her that he had a copy of a warrant which (he said) indicated that marijuana had been found in the car but he would not show Ms. Hughes the warrant or the return or tell her any details about how much or where in the car or contents of the car the police say marijuana was found.

174.    The Property Clerk hand-delivered a copy of the Notice of Intent to Administratively Forfeit the Following Property to her and she signed it to acknowledge receipt.

175.    The MPD had mailed a Notice of Intent to Administratively Forfeit the Following Property to the wrong address but never re-mailed it to the correct address.

176.    The MPD Property Clerk never informed her that she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give her such an opportunity.

177.    The Notice of Intent to Administratively Forfeit the Following Property stated that if she did not pay a bond to elect a judicial forfeiture action the Property Clerk would declare her car forfeited and sell it.

178.    Ms. Hughes did not feel it was fair to have to pay a bond just to prevent forfeiture so she contacted the District of Columbia Public Defender Service and they helped her get her car back.

179.    Ms. Hughes needed her car to fulfill her responsibilities in life.  She needed the car to get to work (Ms. Hughes works in a cafeteria and does hair) and run all the errands of daily life such as going to the store and carrying home purchases, driving to the bank, and driving to see friends and family.  Also Ms. Hughes is taking a full time truck driving course in Baltimore, and she needed the car to get to and from school.  Without the car, Ms. Hughes had to borrow cars and rides to get to school.  Ultimately Ms. Hughes had to buy a hooptie just to get to school and work.

180.    Ms. Hughes' monthly insurance payment on the 2006 Dodge Magnum and her other cars was about $512 and the monthly note payment is about $403.  Ms. Hughes made all payments while the MPD had her car.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

181.    Ms. Hughes had to keep the car titled and registered to keep insurance coverage on the car.

182.    Ultimately Ms. Hughes got the car released in about mid-March 2013 with the assistance of the District of Columbia Public Defender Service without having to pay the bond.

## Takia Jenkins

183.    The MPD seized Ms. Jenkins' 1998 CLK 300 Mercedes for investigation or forfeiture on about 5/27/2012 but they did not return it until 5/9/2013.

184.    On about 5/27/2012 about 5:00 pm the MPD seized her Mercedes (which was parked in parking lot behind her apartment) because, they said, someone (but they would not say who) was driving it in an illegal manner and they believed the driver was in her house.

185.    Ms. Jenkins' consented to a search of her home but the MPD did not find any driver in the house.

186.    One of the officers was Jordan Katz, and he gave Ms. Jenkins' his business card and explained how the MPD had damaged the rear end of her car and broken the windows.

187.    The police said they were towing her car away and she probably would not get it back or it would cost more than the car was worth to get it back.

188.    Jordan Katz of NSID refused to take a stolen car report from her when she explained she had no idea who had the car and he told her to call 7D.  When she would call 7D they would repeatedly give her the run around and tell her to call NSID.

189.    Ms. Jenkins personally does not know whether someone used the Mercedes to break the law.

190.    Ms. Jenkins did not know that anyone would use the car for any illegal purpose nor did she consent to anyone's using the car for any illegal purpose.

191.    Ms. Jenkins' never gave anyone permission or consent to use the Mercedes that day.

192.    At the time of seizure, the MPD did not give Ms. Jenkins' an invoice for the car or where or why it was being held or any instructions on how to get it or the contents back.

193.    Nor at any time did the MPD give her (by mail or otherwise) such an invoice or notice of a prompt hearing at which she could have an opportunity to regain possession of her car.

194.    No prosecution involving the car was ever filed in any District of Columbia court.

195.    While the MPD retained the car, Ms. Jenkins' had to keep the car titled and registered and insured.

196.    When gave police gave the car back on 5/9/2013, it was all molded on the inside because they left the window open.

197.    Ms. Jenkins' had to tow car home because it would not start and the car sustained about $500 in damage to the windows and as yet undetermined amount of damage to the rest of the car.

198.    When the MPD had Ms. Jenkins' car she had to take metro or taxis or buses and got rides from friends and Ms. Jenkins had to pay someone to take her daughter from home in Southeast to school in Northeast.  She had to pay for rides or metro for her daughter to get around.

199.    Ms. Jenkins got pregnant in October 2012 and by the end of December it was very hard for her to get around because of the pregnancy.  Ms. Jenkins is still pregnant now and the due date is June 30, 2013.

200.    Ms. Jenkins told the police she was pregnant and she needed the car back but the police did not care.

201.    Ms. Jenkins only got her car back after PDS intervened on her behalf.

**Steven May**

202.    On about April 15, 2012 the MPD seized Mr. May's 2003 Infinity in 7D from the possession of his friend, Daryl D. for forfeiture but MPD did not return the car until mid-October 2012.

203.    On about April 15, 2012 Mr. May's left his friend Daryl D. in Mr. May's car while Mr. May left to do something.

204.    Mr. May came out a few minutes later to find that several MPD officers had Daryl D. outside the car and were placing him under arrest, according to court records, for possession of a personal use amount of marijuana.

205.    Mr. May personally has no knowledge about whether Daryl D. in fact had marijuana on him or in his car that day.

206.    Mr. May had no reason to know Daryl D. would use the car for an illegal purpose nor did Mr. May consent to his use of the car for any illegal purpose.

207.    The MPD seizing officers did not give Daryl D. or Mr. May a receipt for the car stating they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back.

208.    Nor did they provide Mr. May with prompt notice giving him a prompt opportunity to challenge the seizure or retention of the car pending forfeiture or return.

209.    One officer on the scene told Mr. May he would never get his car back.

210.    Mr. May then went to the 7th District (the District closest to the arrest) asking about his car.

211.    Officers there said they had the car and that they were sending it to the police impound lot at Blue Plains.

212.    Mr. May called around various District and MPD agencies trying to find out about the car but Mr. May could not get reliable information.

213.    About a month later, Mr. May got a Notice of Intent to Administratively Forfeit the Following Property from the Property Clerk (dated 5/18/12) telling him that unless he paid a bond of $1,195 and made a claim for a judicial forfeiture the Property Clerk would declare his car forfeited and sell it.

214.    The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.

215.    Mr. May was unable to pay the bond, but the Property Clerk rejected his application for a waiver or reduction of the bond (dated 9/25/2012) even though he was unemployed from 2008 until about the time of the seizure and he needed the car to get to his new job.

216.    Ultimately Mr. May got the car released in about mid October 2012 with the assistance of the District of Columbia Public Defender Service without having to pay the bond.

217.    The MPD left the passenger side window down and rain got in the car and caused a lot of damage.

218.    Mr. May had to keep the car registered and insured ($325 per month) while the MPD retained his car.

219.    Mr. May was about to start a job with the District as a firefighter, and he needed the car to get to work and to do all the other things one has to do to live such as shopping and eating and getting around to see friends and family.

**220.**    While the MPD had his car, Mr. May had to make arrangements to use another car and find other ways to get around such as the bus and the metro.

**Romona Person**

221.    In November, 2012 MPD seized Ms. Person's 2010 Nissan Altima for forfeiture while her brother Rodney B. was driving it but they did not return the car until about March 2013.

222.    Ms. Person is a single mom with 3 children of her own (including a new baby) and she cares for two of her brother's children.  She was nine months pregnant when the MPD took her car.  She had her baby, a boy, in late November 2012.

223.    Ms. Person works at a well-known local car dealer though she took maternity leave from November 20, 2012 to mid-January 2013.

224.    As of at least October, 2012, she owned a 2010 Nissan Altima for which she paid $19,000.  The car was titled and registered in her name in Maryland.

225.    Ms. Person let her brother, Rodney B., borrow the car to go to Delaware to visit his daughter.

226.    On about November 10, 2012, a Saturday, the MPD seized the car while he had possession of the car because, the MPD alleged, her brother was in possession of a small bag of marijuana in the car.

227.    Ms. Person personally does not know whether her brother had any marijuana on him when he was stopped by the MPD in her car.

228.    Ms. Person did not know that her brother would use the car to transport marijuana or for any other illegal purpose.

229.    She did not consent to his using the car to transport marijuana or for any other illegal purpose.

230.    The MPD seizing officers did not give Ms. Person or her brother a receipt for the car stating that they had seized the car or explaining why, or providing any instructions on how to get the car or the contents back.

231.    Nor did they ever provide Ms. Person with prompt notice giving her a prompt opportunity to challenge the seizure or continued retention of the car pending forfeiture or return.

232.    When Ms. Person learned the MPD had seized her car she called the District of Columbia 311 info number and the operator gave her the phone number for the 5th District, the station which happened to be closest to where the car was seized.

233.    Ms. Person got the big run-around when she talked to staff at 5D, and it took a week of calling 5D before someone there admitted the MPD had her car at 5D.

234.    5D officers told her she had to talk to an Officer Wright about the car but that Officer Wright was on leave.

235.    Ms. Person has a friend who is an MPD officer, and the friend got in touch with her captain who put Ms. Person in touch with Officer Wright.

236.    When Officer Wright came off vacation he said could not give Ms. Person any paperwork on the car; Officer Wright said, "You're not getting it back."

237.    Sometime, perhaps in late December or January, Ms. Person got a Notice of Intent to Administratively Forfeit the Following Property which said her car was at an impound lot and said that she had to post a "bond" to prevent forfeiture by the Property Clerk.

238.    The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.

239.    On about January 8, 2013, Ms. Person talked to Detective Rodriguez in the forfeiture department and, later in January, she met with Detective Rodriguez and took all her relevant documents including the title, registration, and insurance papers.

240.    Detective Rodriguez said she still had no paperwork from Officer Wright and said no bond was due because she could not assign bond without paperwork from Officer Wright so Ms. Person could not make a claim for the car.

241.    Ms. Person went back to work in mid-January after maternity leave.

242.    At her wits' end and not knowing what else to do, she called the lawyers at the Public Defender Service, and they helped her to get her car back.

243.    It was financially and emotionally and physically devastating for Ms. Person to be without her car.

244.    Ms. Person lives in Waldorf, Maryland, and she works in Landover, Maryland.  It is 55 to 60 miles from home to job.  Sometimes Ms. Person had to take cabs from home to the children's day care in Waldorf, drop them there, and then continue by cab to the Metro in Branch Ave. in Camp Spring, Maryland at a cost of about $55 or $56 dollars.  Sometimes Ms. Person had to rent cars.

245.    Ms. Person also had to run errands, shop, take the children and the new baby to medical and other appointments, and do all the things one has to do to run a household and raise a family.

246.    So, given all the extra money Ms. Person was having to spend on transportation and related expenses due to the lack of a car, she could not afford to keep up the car note payments ($494) and the insurance ($167) payments.

247.    Finally in May 2013 Ms. Person turned the car over to the finance company which had the note on the car and who say $17,000 is still due on the car.

**Dorian Urquhart**

248.    On or about early 2011 MPD seized Mr. Urquhart's 2004 Gran Prix from a private parking lot on the corner of South Dakota Ave. and Emerson Street, N.E., Washington, DC without a warrant while the vehicle was unattended.

249.    The 2004 Gran Prix was legally titled and registered to Mr. Urquhart and had all required tags.

250.    The 2004 Gran Prix was parked in a private lot with the permission of the owner.  See D.C. Code § 50-2421.03.

251.    The MPD asked the owner of the lot for permission to tow Mr. Urquhart's car but the owner refused MPD requests to allow them to tow the car.

252.    After seizing the car MPD officers then went to Mr. Urquhart's elderly mother's house and told her they had seized the vehicle.

253.    At the time of the seizure, the MPD officers did not give Mr. Urquhart or his elderly mother any receipt or writing to show they had seized the car and its contents or why nor did they give them any written instructions on where they were taking the car or how to get it back.

254.     Nor did they provide Mr. Urquhart with prompt notice giving him a prompt opportunity to challenge the seizure or continued retention of the car pending forfeiture or return.

255.    Mr. Urquhart called around to various MPD departments trying to locate his car.

256.    The MPD sent Mr. Urquhart a notice of intent to administratively forfeit the car (dated May 11, 2011) stating that the penal bond for the car was $822.

257.    The MPD Property Clerk never informed him/ her that he/she had a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond) nor did the Property Clerk ever give him/ her such an opportunity.Mr. Urquhart submitted

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

an application for a waiver or reduction of the bond to the Property Clerk by hand on about June 4, 2011.

258.    The Property Clerk told Mr. Urquhart he needed three years of IRS forms in order to proceed with the application for a waiver or reduction of the bond.

259.    An officer (female) in the Property Clerk's office told Mr. Urquhart the bond reduction/ waiver was going to be denied anyway and he was not going to get his car back.

260.    Even after submitting an application for a waiver or reduction of the bond by hand to the Property Clerk, Mr. Urquhart still had to make numerous inquiries and follow up calls but with no results.

261.    The Property Clerk denied Mr. Urquhart's application for waiver or reduction of the bond.

262.    The District of Columbia Public Defender Service helped Mr. Urquhart get his car back in August 2012.

263.    While the MPD retained his, car Mr. Urquhart had to keep the car titled and registered and insured.

264.    While the MPD had his car Mr. Urquhart had to make arrangements to find other ways to get to work, run errands, see family and friends, and get to the other places he had to go.

265.    The loss of his car presented a severe hardship; he relied on cabs, public transportation, and friends for transportation for over a year.

266.    Mr. Urquhart's son is a hemophiliac and, during the period of time the MPD had his car, he still had to be transported constantly to and from Children's Hospital so Mr. Urquhart had to take cabs or get rides from friends or occasionally rent cars.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

267.    Mr. Urquhart's car was virtually new when the MPD seized it.  It now shows highly visible damage to the exterior.

**Taylor, Muslimah**

268.    The MPD seized Muslimah Taylor's Chevy Tahoe truck for investigation or forfeiture on about 6/3/2013 but they did not return it until about 8/20/2013 from the custody of her boyfriend, Reginald Vance, who was driving it with her permission.

269.    Mr. Vance had parked in front of a convenience store in the 6th District in Washington, DC and went in.  When he came out the police arrested him for not having a permit and seized the truck because, they said, it was used in a shooting.

270.    Ms. Taylor had no knowledge whatsoever that Mr. Vance would use the Tahoe for any illegal purpose and she certainly did not consent to any such purpose.

271.    When Ms. Taylor learned the MPD had seized her truck because they said it was used in a shooting she went to the US Attorney's office and they told her they did not have a hold on the truck.

272.    Ms. Taylor got the big run-around when she talked to MPD and it took a week of calling 5D before Detective Castle returned her call and told her he had a hold on the car because of a shooting.  But, the police had taken Mr. Vance to the shooting victim's hospital room for a show up but the victim did not identify him as the shooter.

273.    But, Detective Castle would not give her the case number for which he said the truck was being held because, he said, he did not want her and Mr. Vance "getting our stories together."

274.    Ms. Taylor lives in Lawrence, Maryland and she works a ten dollar cab ride away.  Ms. Taylor had to take cabs from home to work while MPD held her truck.

275.    Her children could not go to summer camp and other summer activities because she did not have my truck to take them.

276.    Ms. Taylor really needed the car to fulfill her responsibilities in life.  Being without the car seriously interfered with her ability to obtain critical life necessities, such as earning a livelihood, going to interviews, receiving necessary medical care, shopping for necessities such as food and clothing, and visiting family and friends, helping to care for her family, and getting to places.

277.    Ms. Taylor paid about $110 for insurance every month on the Tahoe and she paid about $562 on a note every month.  Ms. Taylor had to keep the truck registered and insured the whole time.

278.    At the time of the seizure the MPD officers did not give Ms. Taylor or Mr. Vance any receipt or writing to show they had seized the car and its contents nor did they give them any written instructions on where they were taking the car or why or how to get it back.

279.    Nor at any time did the MPD give Ms. Taylor (by mail or otherwise) notice of a prompt hearing at which she could have an opportunity to regain possession of my car.

280.    Ms. Taylor only got her truck back because her lawyer, Ms. Lauren Johnson, a Prettyman Fellow at Georgetown, helped her.

**SEIZURE AND RETENTION OF NAMED PLAINTIFFS' CURRENCY**

**<u>Langly, Marilyn</u>**

281.    On about 2/17/2013 the MPD arrested Ms. Langly for possession of what the police alleged was a controlled substance near Nash, Ave., S.E., a few doors down from her house.

282.    Ms. Langly did not engage in a drug transaction or illegally possess drugs.

283.    The arresting officers did not field test the substance they alleged was a controlled substance nor was it ever tested by anyone else nor was any DEA 7 (chemists report) ever docketed in her case.

284.    The arresting officers also seized $5.00 in cash from Ms. Langly.

285.    At the time of the seizure, the MPD officers did not give Ms. Langly any receipt or writing to show they had seized her money or why, nor did they give her any written instructions on where they were taking the money or how to get it back.

286.    Nor did they provide ever provide Ms. Langly with prompt notice giving her a prompt opportunity to challenge the District's right to take or to keep her money pending a forfeiture determination.

287.    Ms. Langly gave her correct address (including apartment number) to the MPD when she was arrested and booked.

288.    Ms. Langly was found CJA eligible by the CJA Finance Office.

289.    The government nolle'd the case less than four months later on 6/3/2011.

290.    The District never sent Ms. Langly a notice of any kind indicating that the money was subject to forfeiture or available for pick-up nor did the government return her money.

291.    Ms. Langly still does not have her money back.

292.    The MPD declared Ms. Langly's money forfeited in a Mayor's forfeiture determination.

293.    Alternatively, the MPD is holding Ms. Langly's money for safekeeping because the MPD determined that her money is not subject to forfeiture.

**Gordon, Julius**

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* v. GOVERNMENT OF THE DISTRICT OF COLUMBIA

294.    On about 2/17/2013 the MPD arrested Mr. Gordon for possession or sale of what the police alleged was a controlled substance near Nash, Ave., S.E., a few doors from his friends' house.

295.    Mr. Gordon did not engage in a drug transaction or illegally possess drugs.

296.    The arresting officers did not field test the substance they alleged was a controlled substance nor was it ever tested by anyone else nor was any DEA 7 (chemists report) ever docketed.

297.    The arresting officers also seized $44.00 in cash from Mr. Gordon.

298.    At the time of the seizure, the MPD officers did not give Mr. Gordon any receipt or writing to show they had seized his money or why, nor did they give him any written instructions on where they were taking the money or how to get it back.

299.    Nor did they provide ever provide Mr. Gordon with prompt notice giving him a prompt opportunity to challenge the District's right to take or to keep his money pending a forfeiture determination.

300.    Mr. Gordon gave the correct address (a house) where he was staying to the MPD when he was arrested and booked.

301.    Mr. Gordon was found CJA eligible by the CJA Finance Office.

302.    The government nolle'd the case less than four months later on 6/3/2011.

303.    The District never sent Mr. Gordon a notice of any kind indicating that the money was subject to forfeiture or available for pick-up nor did the government return his money.

304.    When the government nolle'd his case, at the direction of his lawyer, Mr. Gordon went to the MPD's Evidence Control Branch located at 2235 Shannon Place, S.E. to ask for his property back.

305.    The Evidence Control Branch told Mr. Gordon they did not have his property and could not help him.

306.    Mr. Gordon still does not have his money back.

307.    The MPD declared Mr. Gordon's money forfeited in a Mayor's forfeiture determination.

308.    Alternatively, the MPD is holding Mr. Gordon's money for safekeeping because the MPD determined that his money is not subject to forfeiture.

## Hoyte, Nikoya

309.    On about May 9, 2012 the MPD seized $1,500 from under Ms. Hoyte's bed while they were searching the house she shared with two housemates pursuant to a warrant.

310.    At the time of the seizure, the MPD officers did not give Ms. Hoyte any receipt or writing to show they had seized her money or why, nor did they give her any written instructions on where they were taking the money or how to get it back.

311.     Nor did they provide ever provide Ms. Hoyte with prompt notice giving her a prompt opportunity to challenge the District's right to take or to keep her money pending a forfeiture determination.

312.    All charges against Ms. Hoyte were dropped.

313.    The District never sent Ms. Hoyte a notice of any kind indicating that the money was subject to forfeiture or available for pick-up nor did the government return the money.

314.    Ms. Hoyte still does not have her money back.

315.    The MPD declared Ms. Hoyte's money forfeited in a Mayor's forfeiture determination.

316.    Alternatively, the MPD is holding Ms. Hoyte's money for safekeeping because the MPD determined that her money is not subject to forfeiture.

**317.**    **Acey, Jarrett**

318.    On about October 30, 2010 the MPD stopped Mr. Acey as he was driving his car near

Howard University.

319.    At the time Mr. Acey was a student at Howard and that night was Homecoming night at

Howard.

320.    The MPD officers say they recovered what they believe was about some ecstasy pills

from Mr. Acey.

321.    They also took about $1,500 cash from Mr. Acey.

322.    The arresting officers did not field test the substance they alleged was a controlled

substance nor was it ever tested by anyone else nor was any DEA 7 (chemists report) ever

docketed in Mr. Acey's case.

323.    Mr. Acey was CJA eligible.

324.    Mr. Acey did not receive until after the expiration of the statute of limitations notice of

any kind indicating that the money was subject to forfeiture or available for pick-up nor did the

government return the money.

325.    Mr. Acey still does not have his money back.

326.    The MPD declared Mr. Acey's money forfeited in a Mayor's forfeiture determination.

327.    Alternatively, the MPD is holding Mr. Acey's money for safekeeping because the MPD

determined that his money is not subject to forfeiture.

**Littlepage, David / Thomas, Terrence**

328.    On April 19, 2013 of this year the MPD served a warrant on the home of Mr. Littlepage,

an elderly gentleman who is disabled and lives on Social Security.

329.    Mr. Littlepage shares the home with his son, Terrence Thomas, about 20, and his daughter, about 17.  Each of his son and his daughter has their own rooms in the house.

330.    The warrant alleged that cocaine was being sold from and was present at Mr. Littlepage's home but did not describe with particularity the place to be searched.

331.    The home in facts is not used for the sale or possession of cocaine.

332.    The MPD found no cocaine at the house.

333.    The MPD did find what they believed was a marijuana pipe in Mr. Littlepage's daughter's bedroom.

334.    The MPD did not field test the pipe for THC.  The case was no-papered and so chemist ever tested the pipe for THC.

335.    The MPD found $340 in cash under Mr. Thomas' bed in his room.

336.    The MPD seized the money claiming that it was Mr. Littlepage's and that it was drug related.

337.    The search warrant did not authorize the seizure of money.

338.    After the search one MPD officer told Mr. Littlepage, "I'm gonna lock somebody up," and told him that someone in the house -- him, his daughter, or his son – was going to jail and it was his choice.

339.    Mr. Littlepage offered himself to protect his son and daughter even and the officers arrested him and took him to the police station.

340.    Mr. Littlepage was released on citation that night.

341.    A few weeks later Mr. Littlepage went to court and found the case had been no-papered (prosecutor declined to prosecute).

342.    The MPD maintain the money belongs to Mr. Littlepage even after Mr. Littlepage gave

them a copy of Mr. Thomas' paystub showing that he had received a paycheck from his employer

for $495 dated the day before the search,

343.    The MPD never did provide Mr. Littlepage or Mr. Thomas with prompt notice giving

either a prompt opportunity to challenge the District's right to take or to keep his money pending

a forfeiture determination.

344.    Mr. Littlepage gave the correct address (a house) where he was staying to the MPD when

he was arrested and booked.

345.    The District never sent Mr. Littlepage a notice of any kind indicating that the money was

subject to forfeiture or available for pick-up.

346.    When PDS contacted the MPD about obtaining the return of Mr. Thomas' money the

MPD told PDS that they had sent Notice of Intent to Administratively Forfeit the Property to Mr.

Littlepage to an old address where Mr. Littlepage had lived about ten years previously.

347.    The Property Clerk then re-sent the notice to his correct address stating that he had to pay

a bond of $250 to prevent forfeiture of the money.

348.    The MPD has never sent any notice to Mr. Thomas.

349.    Mr. Littlepage showed the Property Clerk his son's pay stub from the night before

indicating that the money was from his son's wages.

350.    Mr. Littlepage filed an application for waiver of the penal bond and submitted it the day

after he submitted the paystub.

351.    The Property Clerk has informed Mr. Littlepage that he will not entertain claims for the

money from Mr. Thomas.

352.    Mr. Thomas still does not have his money back.

**McRae, Stephanie**

353.    On 05/02/2012 the MPD arrested Ms. McRae and charged her with misdemeanor possession of a controlled substance.

354.    In connection with the arrest the MPD seized $349 from Ms. McRae for forfeiture.

355.    When Ms. McRae was arrested and booked she provided her correct address, as the CSOS documents and court records show.

356.    Ms. McRae was found CJA eligible.

357.    Ms. McRae's case was nolle'd for health reasons on 03/20/2013.

358.    The MPD say they sent notice of intent to forfeit Ms. McRae's money in July 2012 but they sent the notice to the wrong address.

359.    The one year statute of limitations for the District to forfeit the money has expired.

360.    Ms. McRae did not receive before the expiration of the statute of limitations notice of any kind indicating that the money was subject to forfeiture or available for pick-up nor did the government return the money.

361.    Ms. McRae still does not have her money back.

362.    The MPD declared Ms. McRae's money forfeited in a Mayor's forfeiture determination.

363.    Alternatively, the MPD is holding Ms. McRae's money for safekeeping because the MPD determined that her money is not subject to forfeiture.

**Lucas, Shane**

364.    On about 10/4/2012 the MPD yanked Mr. Lucas out of a parked car for no reason and subjected him to an on the street inside-the-underwear strip-search in front of other people for no reason.

365.    The police charged Mr. Lucas "POCA" (possession of an open container of alcohol) and took him to 3D (Third District police station).

366.    At 3D during a strip-search the police allege that they found inside his underwear what the police allege is a controlled substance.

367.    The police charged Mr. Lucas with for possession of what the police alleged was a controlled substance.

368.    The arresting officers did not field test the substance they alleged was a controlled substance.

369.    The arresting officers also seized $814 in cash from Mr. Lucas.

370.    At the time of the seizure, the MPD officers did not give Mr. Lucas any receipt or writing to show they had seized his money or why, nor did they give him any written instructions on where they were taking the money or how to get it back.

371.    Nor did they provide ever provide Mr. Lucas with prompt notice giving him a prompt opportunity to challenge the District's right to take or to keep his money pending a forfeiture determination.

372.    Mr. Lucas gave the correct address (a house) where he was staying to the MPD when he was arrested and booked.

373.    Mr. Lucas was found CJA eligible by the CJA Finance Office.

374.    The government dismissed the case about four months later on 2/4/2013.

375.    The District never sent Mr. Lucas a notice of any kind indicating that the money was subject to forfeiture or available for pick-up nor did the government return his money.

376.    Mr. Lucas still does not have his money back.

377.    The MPD declared Mr. Lucas's money forfeited in a Mayor's forfeiture determination.

378.    Alternatively, the MPD is holding Mr. Lucas's money for safekeeping because the MPD determined that his money is not subject to forfeiture.

Dutka, Thomas and Melton, Ann

379.    Thomas Dutka and Ann Melton own a music promoting business in California.

380.    In June of this year Mr. Dutka and Ms. Melton enrusted their son, Willie Honable, with an SUV and about $5,600 in cash so he could make a multi-city business trip for them previewing new talent.

381.    On 07/04/2013 MPD arrested Mr. Honable on several charges, including a drug charge and a gun charge, and seized the SUV and about $3,800 in currency belonging to Mr. Dutka and Ms. Melton.

382.    At the time of the seizure, the MPD officers did not give Mr. Honable or  Mr. Dutka or Ms. Melton any receipt or writing to show they had seized the money or why, nor did they give him any written instructions on where they were taking the money or how to get it back.

383.     Nor did they provide ever provide Mr. Honable or  Mr. Dutka or Ms. Melton with prompt notice giving them a prompt opportunity to challenge the District's right to take or to keep the money or the SUV pending a forfeiture determination.

384.    Mr. Lucas gave the correct address (a house) where he was staying to the MPD when he was arrested and booked.

385.    PDS intervened and helped Mr. Dutka and Ms. Melton get their SUV back.

386.    The District did send Mr. Dutka notice telling him that unless he paid a bond of $250 the Property Clerk would declare the property forfeited.

387.    Mr. Dutka and Ms. Melton still do not have their money back.

388.    The MPD declared Mr. Dutka and Ms. Melton's money forfeited in a Mayor's forfeiture determination.

389.    Mr. Dutka and Ms. Melton are damaged by the District's seizure and retention of their property.

Steele, Chiquata

390.    On about 7/14/2013 the District seized about $8,118 in currency from Chiquata Steele and still has not returned it.

391.    On about 7/14/2013 the MPD entered the home she shared with her sister and seized about $8,118 in currency from Ms. Steele in connection with the arrest of Ms. Steele, her sister, and another person on drug charges.

392.    Ms. Steele was found CJA eligible by the CJA Finance Office.

393.    On about 12/3/2012 Ms. Steele and her sister and the other person pled guilty to attempted possession of cocaine.

394.    At the time of the seizure, the MPD officers did not give Ms. Steele, her sister or the other person any receipt or writing to show they had seized the money or why, nor did they give him any written instructions on where they were taking the money or how to get it back.

395.    Nor did they provide ever provide Ms. Steele, her sister or the other person with prompt notice giving them a prompt opportunity to challenge the District's right to take or to keep the currency pending a forfeiture determination.

396.    The District did send Ms. Steele notice telling her that unless she paid a bond of about $350 the Property Clerk would declare her currency, which the District listed as about $3,400, forfeited.

397.    Ms. Steele still does not have her money back.

398.    The MPD declared Ms. Steele's money forfeited in a Mayor's forfeiture determination.

399.    In the alternative, the Property Clerk is holding her money for safekeeping.

400.    Ms. Steele is damaged by the District's seizure and retention of her property.

<u>Stewart, Gregory</u>

401.    On about 4/12/2011 the District seized about $605.00 in currency from Gregory Stewart and still has not returned it.

402.    On about 4/12/2011 the MPD stopped Mr. Steele's truck at 4581 Benning Road Northeast because, police say, the truck had no lights on and after the stop learned that he did not have a valid driver's license and arrested him.

403.    While patting him down the police allege that they found what they contend was cocaine.

404.     The police also seized $605.00 in currency in currency from Mr. Stewart from his pants pocket.

405.    At the time of the seizure, the MPD officers did not give Mr. Stewart any receipt or writing to show they had seized the money or why, nor did they give him any written instructions on where they were taking the money or how to get it back.

406.     Nor did they provide ever provide Mr. Stewart with prompt notice giving him a prompt opportunity to challenge the District's right to take or to keep the currency pending a forfeiture determination.

407.    The District did not send Mr. Stewart notice telling him that the District intended to forfeit his money and giving him notice and an opportunity to make his objections to the forfeiture or that his money was available.

408.    Mr. Stewart still does not have his money back.

409.    The MPD declared Mr. Stewart's money forfeited in a Mayor's forfeiture determination.

410.    In the alternative, the Property Clerk is holding his money for safekeeping.

411.    Mr. Stewart is damaged by the District's seizure and retention of his property.

## SUBSTANTIVE ALLEGATIONS

## <u>CLAIM ONE</u>

### Fifth Amendment Procedural Due Process Claim for failure to provide notice at seizure

412.    The "Seizure Notice Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Nickoya Hoyte, Kelly Hughes, Takia Jenkins, Steven May, Romona Person, Muslimah Taylor, Dorian Urquhart, Shanita Washington, Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

413.    The District seized the "Seizure Notice Named Plaintiffs'" and class members' property and held it for months and years or never gave it back but pursuant to its pattern and policy the District never gave them individualized notice at the time of seizure of seizure of the property with information about procedures on how to retrieve their property when the District no longer needs the property because the case is over (in case of investigative or trial holds) or when the MPD decides the property is not subject to forfeiture, or information about how to make their objections if the District decides to forfeit the property.

**414.**    This pattern and policy of the District violates their procedural due process rights under the Fifth Amendment to the United States Constitution.

**415.**    The Seizure Notice Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM TWO

### Fourth Amendment Claim for failure to provide notice at seizure

416.    The Seizure Notice Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

417.    The District seized all Seizure Notice Named Plaintiffs' and class members' property and held it for months and years or never gave it back but pursuant to its pattern and policy the District never gave them individualized notice at the time of seizure of seizure of the property with information about procedures on how to retrieve their property when the District no longer needs the property because the case is over (in case of investigative or trial holds) or when the MPD decides the property is not subject to forfeiture, or information about how to make their objections if the District decides to forfeit the property.

**418.**    This pattern and policy of the District violates the Seizure Notice Named Plaintiffs' procedural due process rights under the Fourth Amendment to the United States Constitution.

**419.**    The Seizure Notice Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM THREE

### Fifth Amendment Procedural Due Process Claim for failure to provide prompt post seizure hearings

420.    The "Simms Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Nickoya Hoyte,

Kelly Hughes, Takia Jenkins, Steven May, Romona Person, Muslimah Taylor, Dorian Urquhart,

Shanita Washington, Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya

Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka

and Ann Melton, Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as

well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

**421.**    The District seized the Simms Named Plaintiffs' and class members' property and held it

for months and years or never gave it back but the District never gave them a prompt post seizure

hearing at which they could challenge the seizure or the retention of their property pending

forfeiture determinations or return of their vehicles in violation of their procedural due process

rights under the Fifth Amendment to the United States Constitution.

422.    It is the pattern, policy, and practice of the District to seize and retain indefinitely

property and in some cases keep such property without providing prompt post-seizure hearings at

which Owners can challenge the District's seizure and continued retention of their property.

423.    All the Simms Named Plaintiffs and class members were injured thereby and suffered

damages.

## **CLAIM FOUR**

### **Fourth Amendment Claim for failure to provide prompt post seizure hearings**

424.    The Simms Named Plaintiffs re-allege all foregoing paragraphs, as well as any

subsequent paragraphs contained in the complaint, as if fully set forth herein

**425.**    The District seized all the Simms Named Plaintiffs and class members' property and held it for months and years or never gave it back but the District never gave them a prompt post seizure hearing at which they could challenge the seizure or the retention of their property pending forfeiture determinations or return of their vehicles in violation of their procedural due process rights under the Fourth Amendment to the United States Constitution.

426.    It is the pattern, policy, and practice of the District to seize and retain indefinitely property and in some cases keep such property without providing prompt post-seizure hearings at which Owners can challenge the District's seizure and continued retention of their property.

427.    All the Simms Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM FIVE

**Fifth Amendment Claim for custom of failing to send notice of forfeiture or failing to resend follow-up notice or sending the notice to an obviously wrong location**

428.    The "No Forfeiture Notice Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Kelly Hughes, Steven May, Romona Person, Jarrett Acey, Julius Gordon, Marilyn Langly, Terrence Thomas, Shane Lucas, Stephanie McRae, Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

429.    The District seized the No Forfeiture Notice Named Plaintiffs' and class members' property and held it for months and years for forfeiture determinations without returning it.

430.    The District has a custom and practice of seizing the No Forfeiture Notice Named Plaintiffs' and class members' property and holding it for months and years for forfeiture determinations and then forfeiting it in administrative forfeiture hearings and failing to mail

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* v. GOVERNMENT OF THE DISTRICT OF COLUMBIA

notice to all Owners (or failing to resend follow-up notice when mailed notice is returned or mailing the notice it to an obviously wrong location) informing the No Forfeiture Notice Named Plaintiffs' and class members' that their property is subject to forfeiture and appraising them of forfeiture hearings and giving them information needed to appear and make their objections.

431.    The custom and practice violates the due process clause of the Fifth Amendment.

432.    The No Forfeiture Notice Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM SIX

**Fourth Amendment Claim for failure to custom of failing to send notice or failing to resend follow-up notice or sending the notice it to an obviously wrong location**

433.    Kimberly Brown, Ishebekka Beckford, Kelly Hughes, Steven May, Romona Person, Jarrett Acey, Julius Gordon, Marilyn Langly, Terrence Thomas, Shane Lucas, Stephanie McRae, Chiquata Steele, and Gregory Stewart ("No Forfeiture Notice Named Plaintiffs") re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

434.    The District seized the No Forfeiture Notice Named Plaintiffs' and class members' property and held it for months and years for forfeiture determinations without returning it.

435.    The District has a custom and practice of seizing the No Forfeiture Notice Named Plaintiffs' and class members' property and holding it for months and years for forfeiture determinations and then forfeiting it in administrative forfeiture hearings and failing to mail notice to all Owners (or failing to resend follow-up notice when mailed notice is returned or mailing the notice it to an obviously wrong location) informing the No Forfeiture Notice Named

Plaintiffs' and class members' that their property is subject to forfeiture and appraising them of forfeiture hearings and giving them information needed to appear and make their objections.

436.    The custom and practice violates the due process requirements of the Fourth Amendment.

437.    The No Forfeiture Notice Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM SEVEN

### Fifth Amendment Claim for failure to custom of failing to send notice informing people of their right to return of property

438.    The "Right to Return Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Nickoya Hoyte, Kelly Hughes, Takia Jenkins, Steven May, Romona Person, Muslimah Taylor, Dorian Urquhart, Shanita Washington, Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart,  re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

439.    The District seized the Right to Return Named Plaintiffs and class members' property for investigation, prosecution and forfeiture determinations and placed it in the custody of the Property Clerk and never gave them notice when the District no longer needed the property.

440.    The District has a policy and practice of property for investigation, prosecution, and forfeiture determinations and holding it for months and years.

441.    The District's policy and practice is to **not** send notice to owners of such property informing them that their property is no longer needed by the District and informing owners how to retrieve their property when the District no longer needs the property.

442.    The District has no publicly available procedures informing owners of seized property how to monitor their property while it is in custody of the Property Clerk.

443.    The Property Clerk does not provide information about the property until after the District no longer needs the property.

444.    The only way for owners to retrieve their property is to keep asking for it for months and years awaiting the day when the District no longer needs it.

445.    Pursuant to policy and practice the District never returns such property to the Owners unless they monitor the property for months or years until the District no longer needs it.

446.    The policy and practice violates the due process of the Fifth Amendment.

447.    The Right to Return Named Plaintiffs and class members were injured thereby and suffered damages.


## CLAIM EIGHT

### Fourth Amendment Claim for failure to custom of failing to send notice informing people of their right to return of property

448.    The Right to Return Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

449.    The District seized the Right to Return Named Plaintiffs and class members' property for investigation, prosecution and forfeiture determinations and placed it in the custody of the Property Clerk and never gave them notice when the District no longer needed the property.

450.    The District has a policy and practice of property for investigation, prosecution, and forfeiture determinations and holding it for months and years.

451.    The District's policy and practice is to **not** send notice to owners of such property informing them that their property is no longer needed by the District and informing owners how to retrieve their property when the District no longer needs the property.

452.    The District has no publicly available procedures informing owners of seized property how to monitor their property while it is in custody of the Property Clerk.

453.    The Property Clerk does not provide information about the property until after the District no longer needs the property.

454.    The only way for owners to retrieve their property is to keep asking for it for months and years awaiting the day when the District no longer needs it.

455.    Pursuant to policy and practice the District never returns such property to the Owners unless they monitor the property for months or years until the District no longer needs it.

456.    The custom and practice violates the Fourth Amendment.

457.    The Right to Return Named Plaintiffs and class members were injured thereby and suffered damages.

### CLAIM NINE

**Fifth Amendment Claim for failure to send notice to people whose property is subject to forfeiture reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the forfeiture and afford them an opportunity to present their objections**

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

458.    The Insufficient Forfeiture Notice Named Plaintiffs, Kimberly Brown, Ishebekka

Beckford, Nickoya Hoyte, Kelly Hughes, Steven May, Romona Person, Dorian Urquhart,

Shanita Washington, and Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly,

Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas

Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart, re-allege all foregoing

paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth

herein.

459.    The District seized plaintiffs' and class members' property and held it for months and

years for investigation, prosecution and forfeiture determinations, or never gave it back because

the District forfeited it or for some other reason.

460.    The Notice of Intent to Administratively Forfeit the Following Property the District does

send named plaintiffs and to Claimants is deficient (not reasonably calculated, under all the

circumstances, to appraise interested parties of the pendency of the forfeiture and afford them an

opportunity to present their objections**)** in several respects because the notice provides

insufficient, wrong, or conflicting information, for example, the Notice of Intent to

Administratively Forfeit the Following Property does not describe the specific acts or omissions

forming the basis of the alleged violations; the notice does not even state the **date** or place of

seizure or court case or arrest number connected with the seizure; the notice says unless the

Claimants pays a bond and files a claim Property Clerk will declare the property forfeited, but

the notice does not say why the Claimants must file a claim and pay a bond or what will happen

if they do; the notice does not inform the Claimants that filing a claim and bond triggers a

judicial forfeiture proceeding; the notice does not inform Claimants of the availability of an

opportunity to present their objections (including their evidence) to the forfeiture determination

after receiving notice; notice does not inform Claimants that property determined by the Mayor to be not subject to forfeiture will be held by Property Clerk without notice to Owner; the notice does not inform recipients they have a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond).

461.    The Notice of Intent to Administratively Forfeit the Following Property violates the due process clause of the Fifth Amendment.

462.    Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM TEN

**Fifth Amendment Claim for failure to send notice informing people of the MPD's secret procedure of allowing some people to present evidence challenging the Mayor's forfeiture determinations after notice is sent**

463.    The "Memphis Light Plaintiffs," Plaintiffs Kimberly KaTora Brown, Nickoya Hoyte, Kelly Hughes, Steven May, Dorian Urquhart, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

464.    The District seized the Memphis Light Plaintiffs' and class members' property and held it for months and years for forfeiture determinations and he did not give it back.

465.    The pattern and practice of the Property Clerk is that he will not discuss a Claimant's right to obtain return of property seized for a forfeiture determination until after the Property Clerk has sent out notice.

466.    But, the MPD Property Clerk has a secret procedure of allowing some but not all Claimants to present evidence challenging the Mayor's forfeiture determinations after notice is sent or during the Mayor's forfeiture determination.

467.    The Property Clerk exercises this discretion arbitrarily and his exercise of this discretion is un-reviewed.

468.    The MPD does not make this secret procedure available to everyone.

469.    The MPD did not make this secret procedure available to the Memphis Light Named Plaintiffs.

470.    This secret procedure is not described in the forfeiture statutes or enabling regulations.

471.    The Notice of Intent to Administratively Forfeit the Following Property the District does not describe this secret procedure and inform Claimants of its availability.

472.    This secret procedure and the Property Clerk's exercise of it violates the due process clause of the Fifth Amendment.

473.    The Memphis Light Named Plaintiffs and class members were injured thereby and suffered damages.


## CLAIM ELEVEN


**Fourth Amendment Claim for failure to send notice informing people of the MPD's secret procedure of allowing some people to present evidence challenging the Mayor's forfeiture determinations after notice is sent**

474.    The Memphis Light Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

475.    The District seized the Memphis Light Plaintiffs' and class members' property and held it for months and years for forfeiture determinations and he did not give it back.

476.    The pattern and practice of the Property Clerk is that he will not discuss a Claimant's right to obtain return of property seized for a forfeiture determination until after the Property Clerk has sent out notice.

477.    But, the MPD Property Clerk has a secret procedure of allowing some but not all Claimants to present evidence challenging the Mayor's forfeiture determinations after notice is sent or during the Mayor's forfeiture determination.

478.    The Property Clerk exercises this discretion arbitrarily and his exercise of this discretion is un-reviewed.

479.    The MPD does not make this secret procedure available to everyone.

480.    The MPD did not make this secret procedure available to the Memphis Light Named Plaintiffs.

481.    This secret procedure is not described in the forfeiture statutes or enabling regulations.

482.    The Notice of Intent to Administratively Forfeit the Following Property the District does not describe this secret procedure and inform Claimants of its availability.

483.    This secret procedure and the Property Clerk's exercise of it violates the due process requirements of the Fourth Amendment.

484.    The Memphis Light Named Plaintiffs and class members were injured thereby and suffered damages.

## CLAIM TWELVE

**Fifth Amendment Claim because the Mayor's forfeiture determination hearings as conducted by the MPD do not satisfy Fifth Amendment due process**

485.    The "Mathews Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Nickoya

Hoyte, Kelly Hughes, Steven May, Romona Person, Dorian Urquhart, Shanita Washington,

Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage

and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton,

Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as well as any

subsequent paragraphs contained in the complaint, as if fully set forth herein.

486.    The District seized the Mathews Named Plaintiffs' property and class members' property

and held it for months and years for forfeiture determinations.

487.    The District forfeited their property in administrative forfeiture hearings or in judicial

forfeiture proceedings.

488.    The District does not "promptly" give owners whose property has been seized for

forfeiture determinations an administrative forfeiture hearing conducted that comports with

Mathews v. Eldridge, 424 U.S. 319 (1976) as required by D.C. Code § 48-905.02(c) and

(d)(3)(C) without the need to post a penal bond and make a written claim, D.C. Code § 48-

905.02(d)(3)(C).

489.    The Property Clerk in practice sends notice to Claimants **after** the probable cause

determination and **after** the Mayor's forfeiture determination.

490.    The notice of forfeiture offers Claimants only one option – a judicial forfeiture

proceeding upon payment of a bond.

491.    The Mayor's forfeiture determination does not satisfy Mathews because it is conducted

ex parte by the Property Clerk or other elements of the MPD and Claimants do not get prior

notice and an opportunity to present evidence of their innocent owner status and defenses or otherwise "claim[8]" their property.

492.    The Mayor's forfeiture determination hearings as implemented have a built in bias in favor of forfeiture because: (1) the hearings are not conducted before an impartial decision-maker because the Mayor has designated a single agency – the MPD – as the sole, unsupervised authority for all stages of the civil forfeiture process from seizure to probable cause determinations to notice to Mayor's forfeiture determinations (including gathering facts and making legal determinations such as whether an owner is an innocent owner or whether the property is subject to forfeiture) rather than designating a neutral magistrate such as an administrative law judge to conduct the probable cause determinations and the hearings; (2) it is a "policing for profit" system because 100% of the money from forfeitures after expenses goes to the MPD.  D.C. Code § 48-905.02(d)(3)(A) (proceeds or forfeiture remaining after expenses shall be used, and shall remain available until expended regardless of the expiration of the fiscal year in which they were collected, to finance law enforcement activities of the Metropolitan Police Department of the District of Columbia); and (3) as implemented the MPD do not provide notice to owners before the Mayor's forfeiture determinations so owners cannot be heard to rebut statutory evidentiary presumptions, or present evidence of exemptions (such as the innocent owner exemptions) or Constitutional defenses (such as illegal seizures).

493.    In fact, the Property Clerk's current practice is to tell Claimants inquiring after their property to hold all inquiries until after the Property Clerk sends notice of intent to forfeit.

---

[8] D.C. Code § 48-905.02(d)(3)(C) also provides that "If the Mayor determines that the seized property is not forfeitable under this chapter and is not otherwise subject to forfeiture, the Mayor shall return the property to its rightful owner."

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

494.    The District funnels claimants into the Mayor's forfeiture determination and away from the judicial forfeiture proceeding by conditioning access to a judicial forfeiture proceeding on payment of a penal bond equal to 10% of the value of the property as determined solely by the Property Clerk (without allowing input of verifiable and reasonable evidence of value from the claimant) but in any event at least $250 even if the claimant is indigent and by failing to provide prompt post seizure <u>Simms</u> hearings at which claimants can challenge the District's seizure and continued retentions of their property.

495.    As a general rule the Property Clerk never grants applications for waivers or reductions of penal bonds on grounds of indigence.

496.    The Mayor's forfeiture determination hearings as conducted violate the due process clause of the Fifth Amendment.

497.    The Mathews Named Plaintiffs and class members whose property was declared forfeited in Mayor's forfeiture determinations conducted by the Property Clerk and judicial forfeiture proceedings were injured thereby and suffered damages.


## CLAIM THIRTEEN

**Fourth Amendment Claim because the Mayor's forfeiture determination hearings as conducted by the MPD do not satisfy Fourth Amendment process**

498.    The Mathews Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

499.    The District seized the Mathews Named Plaintiffs' property and class members' property and held it for months and years for forfeiture determinations.

500.    The District forfeited their property in administrative forfeiture hearings or in judicial forfeiture proceedings.

501.    The District does not "promptly" give owners whose property has been seized for forfeiture determinations an administrative forfeiture hearing conducted that comports with Mathews v. Eldridge, 424 U.S. 319 (1976) as required by D.C. Code § 48-905.02(c) and (d)(3)(C) without the need to post a penal bond and make a written claim, D.C. Code § 48-905.02(d)(3)(C).

502.    The Property Clerk in practice sends notice to Claimants **after** the probable cause determination and **after** the Mayor's forfeiture determination.

503.    The notice of forfeiture offers Claimants only one option – a judicial forfeiture proceeding upon payment of a bond.

504.    The Mayor's forfeiture determination does not satisfy Mathews because it is conducted ex parte by the Property Clerk or other elements of the MPD and Claimants do not get prior notice and an opportunity to present evidence of their innocent owner status and defenses or otherwise "claim[9]" their property.

505.    The Mayor's forfeiture determination hearings as implemented have a built in bias in favor of forfeiture because: (1) the hearings are not conducted before an impartial decision-maker because the Mayor has designated a single agency – the MPD – as the sole, unsupervised authority for all stages of the civil forfeiture process from seizure to probable cause determinations to notice to Mayor's forfeiture determinations (including gathering facts and making legal determinations such as whether an owner is an innocent owner or whether the property is subject to forfeiture) rather than designating a neutral magistrate such as an administrative law judge to conduct the probable cause determinations and the hearings; (2) it is

---

[9] D.C. Code § 48-905.02(d)(3)(C) also provides that "If the Mayor determines that the seized property is not forfeitable under this chapter and is not otherwise subject to forfeiture, the Mayor shall return the property to its rightful owner."

a "policing for profit" system because 100% of the money from forfeitures after expenses goes to the MPD.  D.C. Code § 48-905.02(d)(3)(A) (proceeds or forfeiture remaining after expenses shall be used, and shall remain available until expended regardless of the expiration of the fiscal year in which they were collected, to finance law enforcement activities of the Metropolitan Police Department of the District of Columbia); and (3) as implemented the MPD do not provide notice to owners before the Mayor's forfeiture determinations so owners cannot be heard to rebut statutory evidentiary presumptions, or present evidence of exemptions (such as the innocent owner exemptions) or Constitutional defenses (such as illegal seizures).

506.    In fact, the Property Clerk's current practice is to tell Claimants inquiring after their property to hold all inquiries until after the Property Clerk sends notice of intent to forfeit.

507.    The District funnels claimants into the Mayor's forfeiture determination and away from the judicial forfeiture proceeding by conditioning access to a judicial forfeiture proceeding on payment of a penal bond equal to 10% of the value of the property as determined solely by the Property Clerk (without allowing input of verifiable and reasonable evidence of value from the claimant) but in any event at least $250 even if the claimant is indigent and by failing to provide prompt post seizure <u>Simms</u> hearings at which claimants can challenge the District's seizure and continued retentions of their property.

508.    As a general rule the Property Clerk never grants applications for waivers or reductions of penal bonds on grounds of indigence.

509.    The Mayor's forfeiture determination hearings as conducted violate the due process requirements of the Fourth Amendment.

510.    The Mathews Named Plaintiffs and class members whose property was declared forfeited in Mayor's forfeiture determinations conducted by the Property Clerk and judicial forfeiture proceedings were injured thereby and suffered damages.

### CLAIM FOURTEEN

**Making claimants pay bond set by the MPD to obtain access to a judicial forfeiture proceeding violates Fifth Amendment equal protection clause**

511.    The "Penal Bond Named Plaintiffs," Nickoya Hoyte, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart, Plaintiffs Marilyn Langly, Julius Gordon, Jarrett Acey, David Littlepage and Terrence Thomas, and Stephanie McRae and Shane Lucas re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

512.    The District seized plaintiffs' and class members' property and held it for months and years for investigation, prosecution and forfeiture determinations.

513.    The statutes then provide that owners (claimants) may elect between a judicial forfeiture proceeding by filing a claim and paying a penal bond equal to 10% of the value of the property as determined by the Property Clerk (with input of verifiable and reasonable evidence of value from the claimant) but in any event at least $250 D.C. Code § 48-905.02(d)(3)(B), D.C. Code § 48-905.02(d)(3)(D)(when claimant files claim and pays bond Mayor refers case for judicial forfeiture proceeding), or, where the value of the property is less than $250,000, a forfeiture determination conducted by the Mayor which does not require the claimant to pay a penal bond, D.C. Code § 48-905.02(d)(3)(C).

514.    The District funnels claimants into the Mayor's forfeiture determination and away from the judicial forfeiture proceeding by conditioning access to a judicial forfeiture proceeding on payment of a penal bond equal to 10% of the value of the property as determined solely by the Property Clerk (without allowing input of verifiable and reasonable evidence of value from the claimant) but in any event at least $250 even if the claimant is indigent and by failing to provide prompt post seizure <u>Simms</u> hearings at which claimants can challenge the District's seizure and continued retentions of their property.

515.    As a general rule the Property Clerk never grants applications for waivers or reductions of penal bonds on grounds of indigence.

516.    Making claimants pay bond set by the MPD to obtain access to a judicial forfeiture proceeding violates the equal protection clause of the Fifth Amendment.

517.    The Penal Bond Named Plaintiffs and class members whose property was declared forfeited in Mayor's forfeiture determination hearings were injured thereby and suffered damages.

## <u>CLAIM FIFTEEN</u>

**The aggregate effect of forfeiture proceedings as implemented by the MPD violates Fifth Amendment equal protection clause**

518.    The "Aggregate Named Plaintiffs," Kimberly Brown, Ishebekka Beckford, Nickoya Hoyte, Kelly Hughes, Steven May, Romona Person, Dorian Urquhart, Shanita Washington, Teneisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Nikoya Hoyte, David Littlepage and Terrence Thomas, Shane Lucas, Stephanie McRae, Thomas Dutka and Ann Melton, Chiquata Steele, and Gregory Stewart, re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

519.    The District seized the Aggregate Named Plaintiffs' and class members' property and held it for months and years for forfeiture determinations or never gave it back.

520.    The aggregate effect of forfeiture proceedings as implemented by the MPD as described above -summary seizures, minimalist government justification, shifting of burdens, unreasonable time limits for contesting forfeitures, generous time limits for prosecuting them, readily invoked default rules, and bond posting requirements, unfair Mayor's forfeiture determination, lack of adequate notice and constitutional hearings, violates the equal protection clause of the Fifth Amendment.

521.    The Aggregate Named Plaintiffs and class members whose property was declared forfeited in Mayor's forfeiture determination hearings were injured thereby and suffered damages.

## CLAIM SIXTEEN

**The aggregate effect of forfeiture proceedings as implemented by the MPD violates Fourth Amendment equal protection requirements**

522.    The Aggregate Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

523.    The District seized the Aggregate Named Plaintiffs' and class members' property and held it for months and years for forfeiture determinations or never gave it back.

524.    The aggregate effect of forfeiture proceedings as implemented by the MPD --- summary seizures, minimalist government justification, shifting of burdens, unreasonable time limits for contesting forfeitures, generous time limits for prosecuting them, readily invoked default rules, and bond posting requirements, unfair Mayor's forfeiture determination, lack of adequate notice and constitutional hearings -- violates the equal protection requirements of the Fourth Amendment.

525.    The Aggregate Named Plaintiffs and class members whose property was declared forfeited in Mayor's forfeiture determination hearings were injured thereby and suffered damages.

## CLASS ACTION ALLEGATIONS

### Class Allegations for each class

**526.**    Plaintiffs ask the Court to certify under Rules 23(a) and 23(b)(2) and (b) (3) the nine separate classes defined below on their own behalf and on behalf of the classes defined below injured (or presently subject to injury) by the policy and practice and custom of the District described herein.

**Claims One and Two: no notice at seizure  -- Seizure Notice Class**

527.    The Seizure Notice Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (a) from whom the District seized property during the period from October 28, 2009 to the termination of this action (b) without giving him or her at the time of seizure individualized written notice of seizure of property, an inventory of the property, and individualized notice of procedures for the return of the property.

**Claims Three and Four: no prompt <u>Simms</u> hearings  -- <u>Simms</u> Class**

528.    The <u>Simms</u> Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (1) whose property from October 28, 2009 until the termination of this case has been, or will be, (2) **seized by** the District of Columbia; **and (3) given into the custody of the MPD Property Clerk** and to (4) to whom the Districtdid not provide a prompt post-seizure hearing before a neutral arbiter at which such person could test the validity of the seizure and the validity of the continued or continuing government retention of the property pending any forfeiture determination or investigative or evidentiary holds or for any other reason.

**Claims Five and Six: No notice sent or re-sent, or notice sent to unreasonably wrong address -- No Forfeiture Notice Class**

529.    The No Forfeiture Notice Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (1) from whom the District seized property during the period from October 28, 2009 to the termination of this action and forfeited it or otherwise failed to return it to him or her (2)

without giving him or her notice of the seizure and an opportunity to contest loss of the property including loss by forfeiture or failure to return, or (3) without resending such notice when the District knows the notice was not received, or (4) sending such notice sent to a wrong address that the District knows from its records and data available to it is wrong.

## Claims Seven and Eight: No notice owner has right to return of property -- Right to Return Class

530.    The **Right to Return** Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (1) from whom the District seized property during the period from October 28, 2009 to the termination of this action, and (2) failed to return it to him or her (3) without giving him or her individualized notice (4) when the District had determined that the property was not subject to forfeiture or the District otherwise no longer needed the property.

## Claim Nine: Notice provides insufficient, wrong, or conflicting information  -- Insufficient Forfeiture Notice

531.    The Insufficient Forfeiture Notice Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (1) each person from whom the District seized property and forfeited it or otherwise failed to return it to him or her during the period from October 28, 2009 to the termination of this action; and (2) to whom the District gave individualized notice regarding the property; (3) which contained insufficient, wrong, or conflicting information regarding the seizure of the property or the procedures for obtaining its return.

**Claims Ten and Eleven: Notice does not describe secret procedures or remedies: violates the Fifth Amendment or Fourth Amendment -- <u>Memphis Light</u> Class**

532.     The <u>Memphis Light</u> Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (1) each person from whom the District seized property during the period from October 28, 2009 to the termination of this action; (2) whose property was declared forfeited in a Mayor's forfeiture determination hearing; and (3) whom the District did not inform by individualized notice of the opportunity to be heard or to present evidence in the Mayor's forfeiture determination hearing challenging the District's right to seize or retain their property.

**Claims Twelve and Thirteen: Mayor's forfeiture determination violates <u>Mathews</u> or Fourth Amendment analogue of <u>Mathews</u> -- Mathews Class**

533.     The Mathews Named Plaintiffs (all named plaintiffs except Tashia Jenkins and Mulimah Taylor) bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (1) each person from whom the District seized property during the period from October 28, 2009 to the termination of this action; and (2) whose property was declared forfeited in a Mayor's forfeiture determination hearing under D.C. Code § 48-905.02(d)(3)(C) that was conducted by the MPD; or (3) who was not given an opportunity to be heard and present evidence in a Mayor's forfeiture determination under D.C. Code § 48-905.02(d)(3)(C) conducted by a neutral arbiter.

**Claim Fourteen: Conditioning court access on paying bond set by MPD -- Penal Bond Class**

534.    The Penal Bond Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (1) each person whose property was seized by a law enforcement agent operating in the District of Columbia and given into the custody of the MPD Property Clerk during the period from October 28, 2009 to the termination of this action; and (2) whose property was declared forfeited in a Mayor's forfeiture determination hearing conducted by the MPD or whose property was declared forfeited in a judicial forfeiture proceeding; and (3) for whom access to a judicial forfeiture proceeding was conditioned on a payment of a penal bond.

**Claims Fifteen and Sixteen: Civil forfeiture scheme in aggregate violates due process -- Aggregate Class**

535.    The **Aggregate** Named Plaintiffs bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of (1) each person whose property was **seized by a law enforcement agent operating in the District of Columbia and given into the custody of the MPD Property Clerk** during the period from October 28, 2009 to the termination of this action; and (2) whose property was declared forfeited in a Mayor's forfeiture determination hearing conducted by the MPD; or (3) whose property was determined to be not subject to forfeiture but was not returned to such person within three months from the date of seizure; or (4) whose property was declared forfeited in a judicial forfeiture proceeding.

## Class Allegations applicable to all classes

536.    Certification of a class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because defendant had a policy and engaged in a pattern and practice of conduct that has uniformly affected all members of the class and declaratory relief against Defendant will benefit each and every plaintiff and class member.

537.    The classes are entitled to declaratory relief.

538.    Certification of classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy as detailed below.

539.    Regarding the Named Plaintiffs, and members of the classes, there are no individual questions on the issue of liability.

540.    Among the questions of law common to each class are:

| Claim # | Name or description of claim | Basis | Common question of law; Common question of fact |
|---------|------------------------------|-------|--------------------------------------------------|
| 1 | **Seizure Notice Class** No notice at seizure | Fifth Amendment | Whether the District provides notice at seizure;lack of notice at seizure; Whether lack of notice at seizure violates Fifth Amendment |
| 2 | **Seizure Notice Class** No notice at seizure | Fourth Amendment | Whether the District provides notice at seizure; Whether lack of notice at seizure violates Fourth Amendment |
| 3 | **Simms Class** No Simms hearing | Fifth Amendment | Whether the District provides prompt post seizure Simms hearings; Whether lack of prompt Simms hearing at seizure violates Fifth Amendment |

| 4 | **Simms Class** <br> No <u>Simms</u> hearing | Fourth Amendment | Whether the District provides prompt post seizure <u>Simms</u> hearings; Whether lack of prompt <u>Simms</u> hearing at seizure violates Fourth Amendment |
|---|---|---|---|
| 5 | **No Forfeiture Notice Class** <br> No notice sent, re-sent, or unreasonably wrong address | Fifth Amendment | Whether District sends forfeiture notice reasonably calculated to reach claimants; Whether failing to send notice reasonably calculated to reach claimants violates <u>Mullane</u> |
| 6 | **No Forfeiture Notice Class** <br> No notice sent, re-sent, or unreasonably wrong address | Fourth Amendment | Whether District sends forfeiture notice reasonably calculated to reach claimants; Whether failing to send notice reasonably calculated to reach claimant violates Fourth Amendment |
| 7 | **Right to Return Class** <br> No notice owner has right to return of property | Fifth Amendment | Whether District sends notice of right to return of property; Whether failing to send such notice reasonably calculated to reach claimant violates Fifth Amendment |
| 8 | **Right to Return Class** <br> No notice owner has right to return of property | Fourth Amendment | Whether District sends notice of right to return of property; Whether failing to send such notice reasonably calculated to reach claimant violates Fourth Amendment |
| 9 | **Insufficient Forfeiture Notice Class** <br> Notice provides insufficient, wrong, or conflicting information | Fifth Amendment | Whether District sends notice of forfeiture that provides insufficient, wrong, or conflicting information; Whether providing notice that provides insufficient, wrong, or conflicting information violates the Fifth Amendment. |
| 10 | **Memphis Light Class** <br> Notice does not describe procedures that are not publically available | Fifth Amendment | Whether District provides secret procedures for some Claimants to make objections to Mayor's forfeiture determinations; Whether providing notice that does not describe secret procedures or remedies violates the Fifth Amendment. |

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

| 11 | **Memphis Light** Class<br>Notice does not describe procedures that are not publically available | Fourth Amendment | Whether District provides secret procedures for some Claimants to make objections to Mayor's forfeiture determinations; Whether providing notice that does not describe secret procedures or remedies violates the Fourth Amendment. |
|----|----|----|----|
| 12 | **Mathews** Class<br>Mayor's forfeiture determination violates <u>Mathews</u> | Fifth Amendment | Whether the District provides Mayor's forfeiture determinations as described; Whether providing such administrative forfeiture hearings violate Fifth Amendment |
| 13 | **Mathews** Class<br>Mayor's forfeiture determination violates Fourth Amendment version of Mathews | Fourth Amendment | Whether the District provides Mayor's forfeiture determinations as described; Whether the Mayor's forfeiture determination hearings as currently conducted by MPD violate Fourth Amendment |
| 14 | **Penal Bond Class**<br>Conditioning court access on paying bond set by MPD | Fifth Amendment | Whether conditioning claimant's access to judicial forfeiture proceeding upon payment of a bond set by MPD violates due process clause of Fifth Amendment |
| 15 | **Aggregate Class**<br>Civil forfeiture scheme in aggregate violates due process | Fifth Amendment | Whether the District provides Mayor's forfeiture determinations as described; Whether the District's civil forfeiture scheme has so many constitutional infirmities that it violates Fifth Amendment due process |
| 16 | **Aggregate Class**<br>Civil forfeiture scheme in aggregate violates due process | Fourth Amendment | Whether the District provides Mayor's forfeiture determinations as described; Whether the District's civil forfeiture scheme has so many constitutional infirmities that it violates due process requirements of Fourth Amendment |

541.    Each class is so numerous that joinder of all members is impracticable.  The exact number of class members is unknown to plaintiffs at this time, but, based on MPD disclosures, documents, and representations to this Court in other cases, is likely to consist of at least over 600 people for each class.

542.    The Named Plaintiffs' claims are typical of the claims of the other members of the class, because the Named Plaintiffs and all other members of the each class to which they belong were injured by exactly the same means, that is, by the failure to provide adequate notice or hearings.

543.    The Named Plaintiffs will fairly and adequately protect the interests of the members of each class to which they belong and have retained counsel who are competent and experienced in complex federal civil rights class action litigation and/or complex federal prisoner rights litigation.

544.    The Named Plaintiffs have no interests that are contrary to or in conflict with those of each class to which they belong.

545.    The Named Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action, and the class action is superior to any other available means to resolve the issues raised on behalf of the Classes.  The class action will be manageable because so many different records systems exist from which to ascertain the members of the putative class.

546.    Defendant District of Columbia has within its computerized records (such as CJIS and LEADS, the MPD's booking databases; and Evidence on Cue, the database in place at property division since 2009) and paper records the names and addresses of all the current and past class members.

SECOND AMENDED CLASS ACTION COMPLAINT • Brown, *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA

547.    Class treatment will be superior because liability can be determined for each class on a class wide basis either as a matter of law or by using data from the PD 163 and the PD 81 as entered into the District's computerized databases.

548.    Actual damages can also be determined on a class wide basis through use of expert testimony and the District's own valuations of vehicles in the case of seizures of vehicles and simply from a ministerial examination of amounts of seized currency and the value of interest in the case of seizures of money.

549.    General damages can be ascertained on a class-wide basis,


**RELIEF DEMANDED**

Each Named Plaintiff respectfully requests that this Court grant them and the classes they represent the following relief:

**A.**    Enter a judgment in favor of plaintiffs and the class described herein;

**B.**    Enter such other declaratory judgments as this Court deems just and proper.

**C.**    Enter such judgments for injunctive relief as this Court deems just and proper.

**D.**    Enter a declaratory judgment declaring the District's implementation of its forfeiture statute unconstitutional because the District does not provide prompt post seizure hearings at which owners could challenge the validity of the seizure and retention of their money cars.

**E.**    Enter a judgment awarding the named plaintiffs and class members damages including the amounts the value of the loss of the use of their cars and the loss of the car and upkeep of the car during seizure, and other damages including prejudgment interest, and compensatory damages for any injury attributable to loss of their property and loss of their property's use and

damages for the value of their time devoted to its retrieval and other damages, and attorney fees;

as well as equitable and declaratory relief.

**F.**      Enter a judgment awarding plaintiffs attorneys' fees and costs incurred in bringing this

action under 42 U.S.C. § 1988; and

**G.**      Grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br><br>Counsel for named plaintiffs<br><br>2020 Pennsylvania Ave, NW #395<br>Washington, DC  20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | Respectfully submitted,<br><br>/s/ Ralph D. Robinson<br>RALPH D. ROBINSON<br>D.C. Bar # 441797<br><br>Counsel for named plaintiffs<br><br>2020 Pennsylvania Ave, NW #395<br>Washington, DC  20006<br>Phone 703/846-0596<br>Email Ralph_29014@msn.com |

Respectfully submitted,


/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
D.C. Bar # 221598

Counsel for named plaintiffs

P.O. Box 1547
Dubois, WY  82513
307-455-3374  (landline)
307-431-4158 (cell)
Admitted in New York, Washington, D.C. and Wyoming.

## **JURY DEMAND**

Plaintiffs demand a jury of six as to all claims so triable.


/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs and the Classes