# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KIM KATORA BROWN, *et al.*,          )
                                    )
            Plaintiffs,              )
v.                                   )
                                    )
GOVERNMENT OF THE                    )          Civil Action No. 13-00569 (KBJ)
DISTRICT OF COLUMBIA,                )
                                    )
            Defendant.               )
_____     )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR DISMISSAL OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) and Local Civil Rule 7(a), Defendant the District of Columbia (the "District") respectfully submits this memorandum of points and authorities in support of its motion for the dismissal of Plaintiffs' Second Amended Complaint ("Complaint" or "SAC"). The Court should dismiss the Complaint because Plaintiffs do not state claims upon which relief can be granted and because, even if relief could be granted as to certain claims, the Complaint includes factual allegations that prevent individual Plaintiffs from succeeding on those claims.

## BACKGROUND

Plaintiffs in this case allege that their due process and equal protection rights were violated by various aspects of the District's civil forfeiture scheme in connection with the seizure and retention of Plaintiffs' vehicles and/or currency.[1] Based on these alleged violations, the twenty-two Plaintiffs bring sixteen claims, with several claims brought by only a subset of

---

[1] Plaintiff David Littlepage brings his claims based on the seizure and retention of currency owned by his adult son, Plaintiff Terrence Thomas. SAC, ¶¶ 342, 349 & 352.

Plaintiffs.  *See generally* SAC; *see, e.g.*, *id.* ¶ 428 (bringing Claim Five on behalf of thirteen Plaintiffs).  In support of these claims, Plaintiffs' Complaint includes 309 paragraphs of factual allegations concerning twenty of the Plaintiffs.[2]  *Id.* at ¶¶ 102-411.  The sheer volume of allegations in the case—many of which are irrelevant to Plaintiffs' claims—makes an attempt to summarize the entire complaint futile.  Therefore, the District will address specific factual allegations when they are relevant to the outcome of the claim at issue.  To acquaint the Court with the relevant background, however, it is necessary to provide a thorough summary of the relevant law in the District.  Notably, the District's civil forfeiture laws closely resemble the federal government's civil forfeiture laws before the passage of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. 106-185.

When property is used in a manner prohibited by a District statute authorizing forfeiture—for example, when a vehicle is used to transport controlled substances for purpose of sale—the District is authorized to seize the property for forfeiture proceedings.  *See, e.g.*, D.C. Code § 48-905.02 (allowing forfeiture based on controlled substance violations); *id.*, § 22-2723 (allowing forfeiture based on prostitution violations); *id.*, § 7-507.06a (allowing forfeiture based on firearms violations); *id.*, § 8-905 (allowing forfeiture based on illegal dumping).  The procedures for forfeiture under each statute are the same, for all intents and purposes.[3]

After seizing the property subject to forfeiture, the Mayor (or his designee) reviews the evidence supporting forfeiture and determines whether there is probable cause to proceed.  *Id.*, § 48-905.02(d)(3)(A).  These determinations "are *ex parte* by the District and contemplate no

---

[2]  There are no factual allegations as to Plaintiffs Shanita Washington or Teneisha Williams.  *See generally* SAC.

[3] The process described herein applies to vehicles or any property valued at less than $250,000.  *See* D.C. Code § 48-905.02(d)(3)(D).  This is the process applicable to all the seized property at issue in this case.  *See generally* SAC.

involvement of the owner or a neutral arbiter." *Simms v. District of Columbia*, 872 F. Supp.2d

90,102 (D.D.C. 2012) (citing D.C. Code §§ 48-905.02(b), (c) & (d)(3)(E).).  If the Mayor

determines that there is no probable cause to proceed or the property is otherwise not forfeitable,

the property is returned.  D.C. Code § 48-904.02(d)(3)(C).  If the Mayor determines that there is

probable cause to proceed, the District sends written notice[4] by registered or certified mail, return

receipt requested, "to each party who is known or in the exercise of reasonable diligence should

be known . . . to have a right of claim to the seized property" and publishes notice "for at least 2

successive weeks in a local newspaper of general circulation."  *Id.* at (3)(A).

     Upon receiving notice, a person seeking to prevent forfeiture (the "claimant") has thirty

days to file a claim to the property.  *Id.* at (3)(B).  To file a claim, the claimant must either post a

bond or obtain a waiver of the bond requirement.[5]  *Id.* at (3)(B) & (3)(C).  The bond is a payment

by the claimant in an amount equal to 10% of the market value of the seized property, unless that

amount is less than $250 or more than $2,500, in which case the bond will be those amounts.[6]

*Id.* at (3)(B).  If the claimant is ultimately successful, the bond is returned.  Otherwise, it is used

to pay for the costs and expenses of the judicial forfeiture proceeding.  *Id.*

     If no claimant files a timely claim and bond (or an application for waiver of bond), then

the District proceeds with administrative forfeiture, which is essentially forfeiture by default.  *Id.*

---

[4]  The form for this notice is the Notice of Intent to Forfeit, attached hereto as Exhibit A.

[5]  A claimant who cannot afford a bond can apply for a waiver or reduction of the bond amount.  Title 6A, DCMR § 806.7.  The Property Clerk makes the initial determination on applications for waiver or reduction of bond based on documents supplied by the claimant.  *Id.* at § 806.6.  If a claimant disputes the Property Clerk's decision, review may be available in the D.C. Superior Court through the D.C. Administrative Procedure Act.  *See* D.C. Code § 2-510(a) (providing judicial review of mayoral or agency decisions); *cf. Tourus Records, Inc. v. DEA*, 259 F.3d 731, 734-35 (D.C. Cir. 2001) (reviewing the federal denial of an application for waiver or reduction of bond under the federal Administrative Procedure Act).

[6]  The market value of the property is determined by the Property Clerk, a Metropolitan Police Department ("MPD") official, although claimants may submit evidence to establish the market value.  Title 6A, DCMR § 806.3

at (3)(C).  A claimant may seek relief from an administrative forfeiture by filing a petition for

remission or mitigation of the forfeiture with the Mayor, which may be granted at the Mayor's

discretion.  *Id.* at (3)(F).

If a claimant timely files a claim, along with a bond or bond waiver application, then the

forfeiture case will be referred to the D.C. Attorney General's Office, which must "promptly"

file the case in D.C. Superior Court.  *Id.*, § 48-905.02(c) & (3)(E).  There, a claimant is entitled

to a full judicial forfeiture hearing.

## STANDARD OF REVIEW

To bring a claim, the plaintiff bears the burden of demonstrating each of the

constitutionally required elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-561 (1992).  Unlike in a motion to dismiss under Rule 12(b)(6), for a motion to dismiss for

lack of jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of "establish[ing] the

Court's jurisdiction by a preponderance of the evidence."  *Halcomb v. Office of the Senate

Sergeant-At-Arms,* 563 F. Supp. 2d 228, 235 (D.D.C. 2008).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when a

party has failed to set forth "a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

The determination of whether a dismissal is proper must be made on the face of the pleadings

alone.  *Telecomms. of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the allegations

in the complaint must be taken as true, a plaintiff must offer "more than labels and conclusions"

or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see*

4

*also Jackson v. Dist. of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not

accept as true "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679.

Critically, for the District's motion in this case, the Court is not bound to adopt "inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."

*Kowal v. MCI Comms. Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

### I.      Plaintiffs' Claims Brought Under the Fourth Amendment Are Without Merit.

Plaintiffs bring seven claims under the Fourth Amendment. Six of these are based on

purported Fourth Amendment procedural due process rights, and another one is based on

purported Fourth Amendment equal protection rights. *See* SAC, ¶¶ 418 (alleging violations of

procedural due process rights under the Fourth Amendment), 425 (same), 418 (same), 436

(same), 456 (same), 483 (same) & 509 (same); *id.* at ¶ 524 (alleging a violation of equal

protection rights under the Fourth Amendment). However, all of these claims should be

dismissed because the Fourth Amendment—which prohibits unreasonable searches and

seizures—does not provide either procedural due process or equal protection rights.[7]

#### A.      Plaintiffs' Claims Based on Purported Due Process Rights Under the Fourth Amendment Should be Dismissed Because There Are No Such Rights.

Plaintiffs base Claims Two, Four, Six, Eight, Eleven, and Thirteen on non-existent

procedural due process rights under the Fourth Amendment. SAC, ¶¶ 418, 425, 418, 436, 456,

483 & 509. Each of these claims concerns either allegedly inadequate notice or the absence of

an opportunity to be heard. *See id.* at ¶¶ 416-419 (Claim Two), 424-427 (Claim Four), 433-437

(Claim Six), 448-457 (Claim Eight), 474-484 (Claim Eleven) & 498-510 (Claim Thirteen).

---

[7]   To the extent that further argument is required, the District adopts its arguments against the Fifth Amendment
claims having the same gravamen as Plaintiffs' Fourth Amendment claims.

These are paradigmatically procedural due process concerns.  *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) (noting that Due Process Clause "precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property").  Indeed, Plaintiffs have alleged identical claims under the Fifth Amendment.  *See* SAC, ¶¶ 412-415 (Claim One), 416-419 (Claim Two), 428-432 (Claim Five), 438-447 (Claim Seven), 463-473 (Claim Ten) & 485-497 (Claim Twelve).  Plaintiffs' claims are simply not cognizable under the legal rubric of the Fourth Amendment, so should be dismissed.

There are no procedural due process guarantees under the Fourth Amendment.  *See generally* U.S. Const. amend. IV.  Although the Fourth Amendment provides protection in the civil forfeiture context, that protection is unrelated to notice, an opportunity to be heard, or due process generally.  *See Good*, 510 U.S. at 52 (noting the different scope of Fourth Amendment and Due Process Clause rights of property owners whose property is seized for forfeiture).  In the civil forfeiture context, a property seizure is unreasonable—and so violates the Fourth Amendment—when "the government, once challenged, cannot establish probable cause for the initial seizure or offer post-seizure evidence to justify continued impoundment."  *Krimstock v. Kelly*, 306 F.3d 40, 50 (2d Cir. 2002); *see also Florida v. White*, 526 U.S. 559, 563 (1999).  Probable cause is the issue of whether an agent of the government has "sufficient information to support a reasonable belief that the suspect has committed or at that time was committing an offense."  *Rice v. Dist. of Columbia*, 774 F.Supp.2d 18, 22 (D.D.C. 2011).

The Fourth Amendment gives property owners protection from unreasonable seizures of their property.  *See Good*, 510 U.S. at 52.  The Due Process Clause gives property owners due process.  *Id.*  However, these two protections are conceptually distinct and are therefore neither

6

equivalent nor mutually exclusive.  *See id.*  Plaintiffs have not asserted any claims based on a lack of probable cause to seize or retain their property.  *See generally* SAC.  All their notice and hearing claims under the Fourth Amendment should therefore be dismissed because Plaintiffs' alleged harms are cognizable (if at all) only under the Fifth Amendment.

       B.   <u>Plaintiffs' Claims Based on Purported Equal Protection Rights Under the Fourth Amendment Should be Dismissed Because There Are No Such Rights.</u>

Plaintiffs also allege that the Fourth Amendment provides equal protection rights.  *See id.* at ¶ 524.  Specifically, in Claim Sixteen, Plaintiffs allege that "[t]he aggregate effect of forfeiture proceedings as implemented by the MPD . . . violates the equal protection requirements of the Fourth Amendment."  *Id.*  However, like Plaintiffs' purported Fourth Amendment due process claims, the Fourth Amendment equal protection claims that Plaintiffs assert fail.

There are no equal protection rights under the Fourth Amendment.  The Amendment contains no equal protection language.  *See generally* U.S. Const. amend. IV.  Indeed, as the Supreme Court stated in *Whren v. United States*, 517 U.S. 806 (1996), "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."  *Id.* at 813.  The absence of any case law holding that a Fourth Amendment equal protection right exists is also indicative of the absence of such a right.  The Court should dismiss Plaintiffs' Count Sixteen, which is premised on Fourth Amendment equal protection rights, because that Amendment provides no such right.

II.   **Plaintiffs' Claim One Alleging that the Fifth Amendment's Due Process Clause Requires Notice at the Time of Seizure Is Without Merit.**

Plaintiffs' Claim One alleges that the District violated Plaintiffs'[8] Fifth Amendment due process rights by not providing Plaintiffs with notice when MPD seized their property for forfeiture.  Specifically, Plaintiffs allege that the District was obligated to provide "individualized notice at the time of seizure of seizure [sic] of the property with information about procedures" on retrieving property and objecting to the District forfeiting the property.  SAC, ¶ 413.  This claim fails because the District is not obligated to provide notice at the time of seizure.[9]

For purposes of evaluating the constitutional adequacy of notice in a civil forfeiture proceeding, the test is whether notice is "'reasonably calculated under all circumstances' to apprise petitioner of the pendency of the . . . forfeiture."  *Dusenbery v. United States*, 534 U.S. 161, 167-68 (2002) (adopting the reasonably calculated test announced in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), as the proper test for a due process challenge to notice in a civil forfeiture case).

When property is seized for forfeiture, District law requires written notice to be sent by registered or certified mail, return receipt requested, "to each party who is known or in the exercise of reasonable diligence should be known . . . to have a right of claim to the seized property" and for notice to be published "for at least 2 successive weeks in a local newspaper of general circulation."  D.C. Code § 48-905.02(d)(3)(A).  Notably, this procedure is virtually

---

[8] The Complaint refers to several sub-groups of Plaintiffs.  For clarity and brevity, the District refers to Plaintiffs' collectively unless those distinctions are relevant.  This is not intended to waive any defense or to in any way limit the District's arguments in support of its Motion to Dismiss.

[9]  Even were the District required to provide notice at the time of seizure, it would not be required to include information about procedures that are publicly available.  *See* Section VI, *infra*.

identical to federal notice procedure for customs forfeitures.  *Compare id. with* 19 U.S.C.

§ 1607(a) (requiring written notice to "be sent to each party who appears to have an interest in

the seized article" and notice by publication for three successive weeks).  Neither statute requires

notice at the time of seizure.

In considering a challenge to federal civil forfeiture law, the Supreme Court explicitly

held that seizing property for forfeiture "present[s] an 'extraordinary' situation in which

postponement of notice and hearing until after seizure did not deny due process."  *Calero-Toledo*

*v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679-80 (1974); *but see Good*, 510 U.S. at 62

(requiring pre-seizure process for real property).  This is consistent with the huge number of

cases upholding the sufficiency of post-seizure notice under the federal civil forfeiture statutes.

*See Dusenbery*, 534 U.S. at 169 (noting that sending a certified letter is "a method our cases have

recognized as adequate for known addresses when we have found notice by publication

insufficient" and rejecting a due process challenge to the sufficiency of notice in a federal civil

forfeiture case).  This Circuit has also noted that "the steps required by [the federal statute]

generally provide all the notice required for due process."  *United States v. Lopez*, 201 F.3d 478,

480 (D.C. Cir. 2000); *see also United States v. Deninno*, 103 F.3d 82, 85 (10th Cir. 1996)

("Facially, both federal and Oklahoma state administrative forfeiture laws satisfy the

requirements of due process.").

Plaintiffs' claim that post-seizure notice does not comport with the Due Process Clause is

directly contradicted by the Supreme Court's holding in *Calero-Toledo* and soundly refuted by

the ample jurisprudence supporting the adequacy of post-seizure notice under the virtually

identical federal forfeiture scheme.  Plaintiffs' Claim One should be dismissed.

III.    **Plaintiffs' Claim Three Alleging that Fifth Amendment Procedural Due Process Requires a Retention Hearing Before the Initiation of Judicial Forfeiture Proceedings Is Without Merit.**

Plaintiffs allege that they were deprived of their due process rights by the absence of a post-seizure hearing to challenge the District's retention of the seized property.  SAC, ¶¶ 424-27.  However, no such hearing is constitutionally mandated.

A.  Due Process Does Not Require A Separate Preliminary Retention Hearing When A Prompt Post-Seizure Hearing Is Otherwise Available.

Contrary to Plaintiffs' assertion that "the District never gave them a prompt post seizure hearing at which they could challenge the seizure of the retention of their property," owners of seized property have multiple avenues for receiving just such a hearing under the current law.  SAC, ¶ 421.

Whenever an associated criminal proceeding is pending, an owner can file a motion for return of property.  *See* Fed. R. Crim. P. 41(g); D.C. Sup. Ct. R. Crim. P. 41(g).  Such a motion can be filed by any "person aggrieved . . . by the deprivation of property" at a preliminary hearing or arraignment, which must occur **no later than 20 days** following a defendant's initial appearance.  Fed. R. Crim. P. 5.1 & 41(g); D.C. Sup. Ct. R. Crim. P. 5(d)(2) & 41(g).  This Court has held that "Rule 41(g) provid[es] an adequate, comprehensive procedural and remedial scheme" for seeking the return of allegedly unconstitutionally seized property.  *Leyland v. Edwards*, 797 F. Supp.2d 7, 11 (D.D.C. 2011); *see also Baird v. Holton*, 806 F. Supp.2d 53, 57 (D.D.C. 2011).   Alternatively, an owner can file a motion asking the court in a judicial forfeiture proceeding to exercise its equitable jurisdiction to return seized property pending resolution of the forfeiture claim.  These rights are in addition to any petition for remission or mitigation that the owner may choose to file with the District.  *See* Title 6A, DCMR § 809.

The allegations in the Complaint indicate that, for at least sixteen of the twenty-two Plaintiffs, there was a criminal proceeding in which the Plaintiff could have filed a Rule 41(g) motion for the return of the seized property.[10]  To state a due process violation, Plaintiffs must show that any supposedly defective process actually prejudiced them.  *Deninno*, 103 F.3d at 85. It is unclear how Plaintiffs could be prejudiced by the absence of a separate preliminary retention hearing when, within twenty days of the property being seized, they could invoke "an adequate, comprehensive procedural and remedial scheme" for recovering possession of the seized property during forfeiture proceedings.  *Leyland*, 797 F. Supp.2d at 11; *see also Baird*, 806 F. Supp.2d at 57.

A maximum twenty-day delay before an owner can file a Rule 41(g) motion compares favorably to other administrative and legal regimes found that the Supreme Court has held to be constitutional.  In *City of Los Angeles v. David*, 538 U.S. 715 (2003), the Court found that a "27-day delay in holding a hearing" on the retention of money by a municipality was appropriate and that "the Due Process Clause does not prohibit an agency from imposing this kind of procedural delay when holding hearings."  *Id.* at 719.  Similarly, the Court held that a "36-day delay in the disposition of a remission petition" seeking to undo the forfeiture of a vehicle and currency "cannot be said to deprive [the owner] of due process of law," despite the fact that the owner "was without his car for 14 days."  *United States v. Von Neumann*, 474 U.S. 242, 250-51 (1986).

Because most Plaintiffs had the opportunity to obtain a prompt post-seizure hearing by filing a Rule 41(g) motion in a criminal case, these Plaintiffs cannot claim prejudice from the

---

[10]  These sixteen Plaintiffs are:  Kimberly Brown, SAC, ¶¶ 105 & 111; Ishebekka Beckford, *id.*, ¶ 129; Nikoya Hoyte, *id.*, ¶¶ 151 & 312; Steven May, *id.*, ¶ 204; Ramona Person, *id.*, ¶ 226; Muslimah Taylor, *id.*, ¶ 269; Marilyn Langly, *id.*, ¶ 281; Julius Gordon, *id.*, ¶ 294; Jarret Acey, *id.*, ¶¶ 320-23; Terrence Thomas, *id.*, ¶ 341; David Littlepage, *id.*, ¶ 341; Stephanie McRae, *id.*, ¶ 353; Shane Lucas, *id.*, ¶¶ 365-66, 373 & 374; Thomas Dutka, *id.*, ¶ 381; Ann Melton, *id.*, ¶ 381; Chiquata Steele, *id.*, ¶ 390-93; and Gregory Stewart, *id.*, ¶ 402.

lack of a separate post-seizure hearing.  The Court should therefore dismiss those sixteen

Plaintiffs' claims under Claim Three.

     B.  <u>Due Process Does Not Require A Preliminary Retention Hearing for Seized Vehicles.</u>

     Even when no criminal case provides a forum for an owner to challenge the preliminary

retention of property, due process does not require a preliminary retention hearing.  *See United*

*States v. One 1971 BMW 4-Door Sedan, Model 2800, Gray in Color VIN 2320587, AZ. Lic.*

*RNM-898*, 652 F.3d 817, 820 (9th Cir. 1981) (rejecting a claim that due process required a

separate probable cause hearing within seventy-two hours of seizure of an automobile).  The

District respectfully submits that cases considering what process is owed to owners of seized

property under the rubric of *Mathews v. Eldridge*, 424 U.S. 319 (1976) were improperly decided.

*See, e.g.*, *Krimstock*, 306 F.3d at 60-68 (applying the *Mathews* test); *Simms*, 872 F. Supp.2d at

99-104 (same).  No controlling precedent requires the application of this test.[11]  Indeed, Supreme

Court precedent indicates that an entirely different test is appropriate.

     In *United States v. Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S.

555 (1983), the Supreme Court considered a due process challenge by the owner of currency

seized for forfeiture under federal customs law.  *$8,850*, 461 U.S. at 558-59.  In defense to the

forfeiture claim, the owner raised the government's eighteen-month delay in bringing the claim.

*Id.* at 560.  In considering the defense on *certiorari*, the Supreme Court framed the question

before it as "a very narrow" due process issue:  Whether "the Government's delay in filing a

civil forfeiture proceeding violated her due process right to a hearing 'at a meaningful time.'"  *Id.*

at 562.  Critically, the Court noted that this was the first instance in which it would "determine[]

---

[11]  *Krimstock* is from another circuit, and *Simms* was from a district court and settled before reaching a final
judgment on the merits.

when a post-seizure delay may become so prolonged that the **dispossessed** property owner has been deprived of a meaningful hearing at a meaningful time." *Id.* at 562-63 (emphasis added). The Court went on to "conclude that the four-factor balancing test of *Barker v. Wingo* provide[d] the relevant framework for determining whether the delay in filing a forfeiture action was reasonable." *Id.* at 556 (internal citation omitted) (citing *Barker v. Wingo,* 407 U.S. 514 (1972)). Applying the factors in the *Barker* test, the Court held that an eighteen-month delay did not violate due process. *Id.*

Contrary to the analysis in *Simms* and *Krimstock* then, *$8,850* controls on the issue of a potential due process violation when the lack of a prompt post-seizure hearing deprives an owner of possession of his or her property pending ultimate disposition of the case. *But see Simms*, 872 F. Supp.2d at 97-99; *Krimstock*, 306 F. Supp.2d at 68. As is the situation here, the Supreme Court specifically noted that the case concerned the due process rights of "the dispossessed property owner," that is, one that did not have possession of her property/currency *post*-seizure and *pre*-hearing. *$8,850*, 461 U.S. at 562-63. In these circumstances—and even when the owner had been acquitted of the underlying criminal charge that had supported a criminal forfeiture claim—the Court declined to apply the *Mathews* test and instead looked to *Barker* for the applicable legal principles. Accordingly, it is the analysis in *Barker* that is binding and should be applied in this case. *See People v. One 1998 GMC*, 960 N.E.2d 1071, 1080 (Ill. 2011) (applying the holding of *$8,850* in rejecting owners' claim that "waiting for the outcome of the forfeiture proceeding, which could take months, d[id] not satisfy [the due process] standard in the absence of a 'prompt' probable cause hearing after the seizure).[12] Reinforcing this conclusion Is the

---

[12]   There is a suggestion in *Simms* that *Good*'s use of the *Mathews* test implicitly overruled *$8,850*'s holding that the *Barker* test is the applicable one to claims like Plaintiffs'. *Simms*, 872 F. Supp.2d at 98 n.8. However, *Good* concerned the entirely different question of whether due process requires a pre-seizure hearing for real property, not

Supreme Court's statement in *Von Neumann* that "[i]mplicit in th[e Supreme] Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect [an owner]'s property interest in [a] car" that is subject to forfeiture. *Von Neumann*, 474 U.S. at 249.

"The *Barker* test involves a weighing of four factors:  length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 564. However, "[u]nder *Barker*, delays of less than a year are, as a general matter, constitutionally adequate, thus, the four factor test is not triggered." *Simms*, 872 F. Supp.2d at 98 n.7 (citing *Doggett v. United States*, 505 U.S. 647 (1992)).  Based on this rule, the Court should dismiss all Plaintiffs whose legal status was resolved within a year of seizure.[13]

C. Due Process Does Not Require A Preliminary Retention Hearing for Seized Currency.

Even if the Court applies the analysis in *Mathews* and adopts the holding in *Simms* for seized vehicles, it should not do so for seized currency.  Although a seized vehicle can be used with minimal diminution in value pending forfeiture proceedings, seized currency can be used only by being spent.  As a result, preliminary release of currency benefits a claimant at the expense of the government having the currency available for a judicial forfeiture determination. Further, a particular sum of money does not play the same kind of essential role that a vehicle

---

whether it requires post-seizure retention hearings for chattel and currency.  *See James Daniel Good Prop.*, 510 U.S. at 62.  The fact that *Good* is not applicable to Plaintiffs' claims is further evident from the Supreme Court's later holding in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) that pre-seizure hearings are not required for property subject to being removed from a jurisdiction, such as currency and vehicles.

[13]   This includes Plaintiffs Ishebekka Beckford, SAC, ¶ 127; Nikoya Hoyte, *id.*, ¶ 144; Kelly Hughes, *id.*, ¶ 164; Takia Jenkins, *id.*, ¶ 183; Steven May, *id.*, ¶ 202; Ramona Person, *id.*, ¶ 221; and Muslimah Taylor, *id.*, ¶ 269.  In addition, Dorian Urquhart received the opportunity to contest the forfeiture within a year of seizure.  *Id.*, ¶¶ 248 & 256.

does in daily life.  As a result, when considering the need for preliminary retention hearings

under the *Mathews* standard, the result is different than the one reached in *Simms* and *Krimstock*,

both of which explicitly considered only seized vehicles.[14]

To determine what process is sufficient to meet the requirements of the Fifth

Amendment, courts weigh three factors:  (1) "the private interest that will be affected by the

official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards"; and

(3) "the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail."  *Mathews v.

Eldridge*, 424 U.S. 319, 335 (1976).

*1.  Private Interest Affected*

An individual's interest in a particular sum of currency is substantially less than in his or

her vehicle.  In deciding that preliminary retention hearings were required by due process, both

the *Krimstock* court and the *Simms* court heavily emphasized the unique importance of vehicles

to their owners.  *See Krimstock*, 306 F.3d at 61 (noting "[t]he particular importance of motor

vehicles . . . as a mode of transportation and, for some, the mean to earn a livelihood."); *Simms*,

872 F. Supp.2d at 101("An individual has a strong interest in his car.").  Indeed, as the Supreme

Court held when applying the *Mathews* factors in *City of Los Angeles v. David*, 538 U.S. 715

(2003), the "temporary deprivation of the use of [an] automobile" "works a far more serious

---

[14] *See Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002) ("Our primary focus today is the City's continued **retention of vehicles** after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court." (emphasis added)); *Simms v. Dist. of Columbia*, 872 F. Supp.2d 90, 95 (D.D.C. 2012) ("As a threshold matter, the Court must determine the appropriate test to apply in considering what post-seizure process is required for **owners whose vehicles are seized** pursuant to forfeiture laws." (emphasis added)).

harm" than a "private individual's interest in maintaining the use of money . . . [until] the time of [a] hearing." *Id.* at 717.

Here, the private interests affected by a preliminary retention hearing would be Plaintiffs' use of the seized currency during the pendency of civil forfeiture proceedings.[15]  This is precisely the type of "interest in maintaining the use of money" that the Supreme Court addressed in *City of Los Angeles*. *Id.*  As Judge Alex Kozinski explained in dissenting from the panel decision later reversed by the Supreme Court in *City of Los Angeles*, "money is fungible; a loss of money can normally be made up with more money." *David v. City of Los Angeles*, 307 F.3d 1143, 1149 (9th Cir. 2002) (Kozinski, J., dissenting), *rev'd* 538 U.S. at 718.  He went on to point out that "being out [the money] isn't much of a burden if you can pay the money in the first place." *Id.* The Supreme Court ultimately vindicated this view. *See City of Los Angeles*, 538 at 718; *see also id.* (quoting Judge Kozinski's dissent with approval).  The minimal private interest in the use of money during the pendency of proceedings is further evident from the Supreme Court's holding in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989), in which it held that the owner of seized currency was not entitled to its use, even though that prevented him from retaining counsel of his own choosing.  *Id.* at 632; *see also United States v. Monsanto*, 491 U.S. 600 (1989).

Plaintiffs' loss of their use of seized currency pending judicial forfeiture proceedings is a minimal private interest and does not weigh significantly in favor of requiring a prompt-post seizure.  *See id.* at 719 (concluding that due process did not require an interim hearing when the private interest at stake was a 27-day deprivation of a sum of money).

---

[15] The interest in the currency itself is addressed at the judicial civil forfeiture proceeding that determines the ultimate ownership of the property.

2.   *Risk of Erroneous Deprivation and Value of Additional Safeguards*

The key consideration under the second *Mathews* factor is "the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.  Here, there is little reason to believe that Plaintiffs would benefit from a preliminary retention hearing for their seized currency.  As with all types of property seized for forfeiture, the likelihood of erroneous deprivation is limited by independent actors making probable cause determinations.  First, the seizing officer must make a probable cause determination.  *See Krimstock*, 306 F.3d at 62-63 (concluding that "the second *Mathews* factor weighs in favor of the City" in the case of vehicle seizures based on DWI "because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate").  Second, the District makes an independent probable cause determination.  D.C. Code § 48-905.02(d)(3)(A) (requiring a probable cause determination by the Mayor); *see One 1971 BMW*, 652 F.2d at 820 (stating that the Attorney General's probable cause determination "independent of the seizing agency" decreased the likelihood of erroneous deprivation).

In the case of currency, however, the likelihood of erroneous deprivation is even lower because under District law, "[a]ll moneys, coins and currency found in close proximity to forfeitable controlled substances . . . are presumed to be forfeitable . . . ."[16]  *Id.*, § 48-905.02(a)(7)(B).  Moreover, "[t]he burden of proof is upon any *claimant* of the property to rebut this presumption."  *Id.* (emphasis added).  There is no such presumption as to the forfeiture of vehicles.  Thus, the likelihood of seized currency ultimately being found to be non-forfeitable is

---

[16]   As with the vast majority of civil forfeiture seizures, currency seized from Plaintiffs was seized in connection with drug offenses.  SAC, ¶¶ 281, 294, 320, 330, 333, 353, 366, 381, 391, 393 & 403; *see* D.C. Code § 48-905.02.  The District does note, however, that Plaintiffs Thomas Dutka and Ann Melton's currency was seized pursuant to both gun and drug charges and that the allegations regarding Plaintiff Nikoya Hoyte do not specify the type of offense pursuant to which her currency was seized.  SAC, ¶ 381.

lower than for other types of property, meaning that the value of an additional safeguard is also lower.

### 3. Government's Interest

The critical factor—and the one upon which the Court should decide the due process question presented here—is the government's interest in not having a separate preliminary retention hearing for currency. The District has a substantial interest in preventing the diminution of value of seized property pending forfeiture proceedings. *See Caplin & Drysdale, Chartered*, 491 U.S. at 631 ("It is our view that there is a strong governmental interest in obtaining full recovery of forfeiture assets . . . ."). Unlike with vehicles, currency cannot be used (*i.e.* spent) by its owner while simultaneously protecting the District's interest in the currency being available for judicial forfeiture. To allow owners to spend money seized for forfeiture before the conclusion of judicial forfeiture proceedings would be to functionally eliminate civil forfeiture of currency. Indeed, because civil forfeiture is an *in rem* proceeding, an owner could avoid forfeiture by simply spending the money at issue.

In addition to the need for preserving the currency pending judicial forfeiture, requiring separate preliminary retention hearings would impose administrative burdens on the District. In *City of Los Angeles*, the Supreme Court held that this factor "argue[d] strongly in the city's favor" because of the substantial increased administrative costs associated with the creation of a new hearing. 538 U.S. at 718. "It 'takes time to organize hearings: there are only so many courtrooms and presiding officials; the city has to contact the . . . officer and arrange for his appearance; the city may have to find a substitute to cover that officer's responsibilities while he attends the hearing.'" *Id.* (quoting *David,* 307 F.3d at 1149 (Kozinski, J., dissenting)).

Finally, the District has an interest in preventing currency seized as the proceeds or instrumentality of a crime from being used to commit further crimes.  If released back to its owner, money seized because it was being used to buy guns or drugs may well be used to do so again.  This threatens the District's legitimate law enforcement interests.

## IV.    Plaintiffs' Claim Five Alleging that the District Failed to Send Notice Reasonably Calculated to Reach Plaintiffs in Violation of the Fifth Amendment's Due Process Clause Is Without Merit.

Plaintiffs allege that the District's procedures for mailing notice to owners of property seized for forfeiture do not comply with due process, whether because the notices are not sent, sent to an obviously wrong location, or not re-sent when a first notice is returned.[17]  SAC, ¶ 430. This claim fails because Plaintiffs have failed to adequately allege that the District's mailing policies were not reasonably calculated to give notice and because Plaintiffs received actual notice, so were not prejudiced by any alleged deficiencies.

District law requires the Mayor to send "by registered or certified mail, return receipt requested" Notices of Intent to Forfeit "to each party who is known or in the exercise of reasonable diligence should be known by the Mayor to have a right of claim to the seized property."  D.C. Code § 48-905.02(a)(d)(3).  As discussed above, this method has been widely recognized as satisfying due process.  *See* Section II, *supra*.  Plaintiffs, however, challenge the District's implementation of that requirement.

"[T]he Due Process Clause does not demand actual, successful notice, but it does require a reasonable effort to give notice."  *Small v. United States*, 136 F.3d 1334, 1336 (D.C. Cir.

---

[17]   The District notes that in *Hardy v. District of Columbia*, 283 F.R.D. 20 (2012), this Court certified a plaintiff class bringing identical allegations, other than that they were based on notice procedures as implemented before October 2009.  *Id.* at 27.  That case is currently in settlement discussions.  To the extent that the settlement class overlaps with the timing of any of Plaintiffs' claims, those claims will be barred.

1998).  Due process requires that notice must be "'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Although reasonable efforts are required, actual notice is not.  *Dusenbery*, 534 U.S. at170.

In the context of certified mailing, reasonable efforts require that "when the government knows (or can easily ascertain) where a person may be found, it must direct its notice there, and not to some other address where the designee formerly resided."  *Small v. United States*, 136 F.3d 1334, 1337 (D.C. Cir. 1998).  This means that when "the government kn[ows] that [an owner is] in prison, . . . it ha[s] an obligation to send adequate notice to him there."  *Id.*  It also means that the government must take reasonable steps to follow-up when notices are returned as undeliverable.  *See id.*; *see also Garcia v. Meza*, 235 F.3d 287, 290-91 (7th Cir. 2000). However, "inadequacies in the notice afforded by the government will not work a deprivation of due process" "[i]f . . . an interested party has actual knowledge of ongoing forfeiture proceedings from other sources.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 36 (1st Cir. 2001)); *see also United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice."); *Ikelionwu v. United States*, 150 F.3d 233, 238 (2d Cir. 1998).

Plaintiffs have failed to allege adequately that the District failed to follow-up appropriately or that such efforts would be successful.  No Plaintiff alleges that he or she was incarcerated at the time notice was mailed.  *See generally* SAC.  Similarly, the Complaint does not contain a single allegation that a particular Plaintiff's notice was returned as undeliverable,

relying instead on a generic allegation that "[t]he Property Clerk does not follow up on notices returned as undeliverable by re-sending it." *Id.*, ¶ 87.  This type of conclusory allegation is insufficient to prevent dismissal.  *See Twombly*, 550 U.S. at 555.  Indeed, as alleged in the Complaint, in instances when the District knew an address was incorrect, the District did follow up.  *See* SAC, ¶ 347 ("The Property Clerk then re-sent the notice to his correct address stating that he had to pay a bond of $250 to prevent forfeiture of the money."); *see also id.* at ¶¶ 174-75 (alleging that notice was sent to the wrong address but that the District provided it by hand delivery).  Finally, the Complaint does not allege that the correct address of any Plaintiff could have been located using reasonable efforts.  *See generally id.*

Further, almost all of the "No Forfeiture Notice Named Plaintiffs" on whose behalf Claim Five is asserted received actual notice of the pendency of forfeiture proceedings.[18]  Several received the Notice of Intent to Forfeit in the mail at their home address.  *See id.* at ¶ 213 (Steven May), ¶ 237 (Romona Person), ¶ 324 (Jarrett Acey), ¶ 329 (Terrence Thomas) & ¶ 396 (Chiquata Steele).  One had her Notice of Intent to Forfeit given to her personally.  *Id.* at ¶ 174 (Kelly Hughes).  Other Plaintiffs clearly had notice of the District's retention of their property and pendency of administrative forfeiture proceedings because the Public Defender Service represented them in seeking to prevent forfeiture and reclaim the property.  *See id.* at ¶ 140 (Ishebekka Beckford), ¶ 216 (Steven May) & ¶ 242 (Romona Person).  One Plaintiff complaining of a lack of notice actually participated in judicial forfeiture proceedings despite allegedly not having notice of any proceedings.  *Id.* at ¶ 117 (Kimberly Brown); *see also id.* at

---

[18]   The misnamed "No Forfeiture Notice Named Plaintiffs" are:  Kimberly Brown, Ishebekka Beckford; Kelly Hughes; Steven May; Romona Person; Jarrett Acey; Julius Gordon; Marilyn Langly; Terrence Thomas; Shane Lucas; Stephanie McRae; Chiquata Steele; and Gregory Stewart.  SAC, ¶ 428.

¶ 121 ("Counsel for the District informed Ms. Brown she had the right to file a document explaining her innocent owner status . . . .").

The remaining five "No Forfeiture Notice Named Plaintiffs"[19] have also not suffered prejudice as a result of the District's allegedly inadequate efforts to provide notice.  Each of these individuals had a criminal case associated with the seizure of his or her property.  *Id.* at ¶¶ 289, 302-04, 373-74, 356-57 & 402.[20]  At least four of these five Plaintiffs were appointed counsel under the Criminal Justice Act, so had the benefit of counsel.  *Id.* at ¶¶ 288, 301, 356 & 373.  All five of these Plaintiffs knew that their property had been seized by the District and that it was allegedly not returned at the conclusion of the criminal proceedings.  They also had the opportunity to move for its release under Rule 41(g) of the Federal and D.C. Superior Court Rules of Criminal Procedure, which constitute "adequate, comprehensive procedural and remedial scheme[s]" for recovering property allegedly wrongfully held by the government.  *Leyland*, 797 F. Supp.2d at 11; *see also Baird*, 806 F. Supp.2d at 57.

In sum, Plaintiffs have failed to allege facts sufficient to plead either that the District violated a due process or that such alleged violations prevented Plaintiffs from receiving actual notice of seizure and potential forfeiture.  Therefore, Claim Five should be dismissed.

**V.     Plaintiffs' Claim Seven Alleging that the District Failed to Notify Plaintiffs of their Right to Collect their Property in Violation of the Fifth Amendment's Due Process Clause Is Without Merit.**

Plaintiffs allege that the District has violated their due process rights by failing to send them notices when the District no longer needed the property.  *See* SAC, ¶ 438-447.  Even assuming that failure to provide such notice is a cognizable injury under the Fifth

---

[19]   These Plaintiffs are Julius Gordon, Marilyn Langly, Shane Lucas, Stephanie McRae, and Gregory Stewart.

[20]  In addition, Chiquata Steele also had a criminal case associated with the seizure of her property.  SAC, ¶ 392-93.

Amendment[21]—and the District has been unable to find any factually analogous cases suggesting that it is—Plaintiffs fail to state a claim because they have not adequately alleged prejudice.  *See Deninno*, 103 F.3d at 85 (requiring prejudice for a due process claim).

Plaintiffs could have suffered prejudice from a failure to notify them that the District would release their property back to them only if (a) their property was ready for release and (b) they did not retrieve their property because of the lack of notice.  However, Plaintiffs do not allege the necessary facts to make these showings.

Initially, Plaintiffs whose vehicles were seized by the District cannot show prejudice.  Of these Plaintiffs, the majority have retrieved their property.  *See* SAC, ¶ 140 (Ishebekka Beckford), ¶ 159 (Nikoya Hoyte), ¶ 182 (Kelly Hughes), ¶ 183 (Takia Jenkins), ¶ 202 (Steven May), ¶ 221 (Romona Person), ¶ 268 (Muslimah Taylor), ¶ 262 (Dorian Urguhart) & ¶ 385 (Ann Melton and Thomas Dutka).  These Plaintiffs were obviously not prejudiced by the alleged lack of notice because they actually knew to retrieve their property and have done so.  *See Grimes v. Thomason*, 416 Fed. Appx. 465, 466 (5th Cir. 2011) (rejecting a "due process claim for lack of notice" because the plaintiff's "property was returned").  Similarly, one Plaintiff's vehicle was judicially forfeited.  *Id.*, ¶ 126 (Kimberly Brown).  Because she was held not to have the right to her vehicle, she was not prejudiced by the absence of (inaccurate) notice saying that she could retrieve it.

However, even Plaintiffs whose currency has allegedly been held without notice of the right to collect it fail to adequately plead prejudice.[22]  The only supposed harm that Plaintiffs

---

[21] This should not to be read to concede that failure to provide specific notice that property is available for pick-up by its owner is a due process violation.

[22] These Plaintiffs are Jarrett Acey, SAC, ¶ 325; Julius Gordon, *id.* at ¶ 306; Marilyn Langly, *id.* at ¶ 291; Nikoya Hoyte, *id.* at ¶ 314; David Littlepage, *id.* at ¶ 352; Terrence Thomas, *id.*at ¶ 352; Shane Lucas, *id.* at ¶ 376;

have allegedly suffered is that they must periodically ask the Property Clerk if their currency has

been released.  *Id.*, ¶¶ 454 & 455.  This minimal effort is not out of proportion to the minimal

deprivation of a delay in the use of particular sum of money.  *See City of Los Angeles*, 538 at

718; *see also Caplin & Drysdale, Chartered*, 491 U.S. at 632.

      Because Plaintiffs have not suffered appreciable prejudice from the supposed due process

violation of which they complaint, Claim Seven should be dismissed.

**VI.**     **Plaintiffs' Claim Nine Alleging that the Notice of Intent to Administratively Forfeit is Insufficient Under the Fifth Amendment's Due Process Clause Is Without Merit.**

      Plaintiffs allege that the Notice of Intent to Administratively Forfeit sent to owners of

property seized for forfeiture violates the Fifth Amendment's Due Process Clause because it

purportedly "provides insufficient, wrong, or conflicting information."  SAC, ¶ 460.  To

supplement this vague and conclusory allegation, Plaintiffs provide a laundry list of examples of

supposed deficiencies.[23]  This claim suffers from two fatal flaws.  First, the content of the Notice

of Intent is subject to judicial notice, and its content clearly refutes Plaintiffs' allegations

supporting Claim Nine.  Second, Claim Nine should be dismissed because (even if accurate) the

---

Stephanie McRae, *id.* at ¶ 361; Thomas Dutka, *id.* at ¶ 387; Ann Melton, *id.*at ¶ 387; Chiquata Steele, *id.* at ¶ 397; and Gregory Stewart, *id.* at ¶ 408.

[23]  Specifically, Plaintiffs assert that the following are examples of the notice's purported insufficiency:

> the Notice of Intent to Administratively Forfeit the Following Property does not describe the specific acts or omissions forming the basis of the alleged violations; the notice does not even state the date or place of seizure or court case or arrest number connected with the seizure; the notice says unless the Claimants pays a bond and files a claim Property Clerk will declare the property forfeited, but the notice does not say why the Claimants must file a claim and pay a bond or what will happen if they do; the notice does not inform the Claimants that filing a claim and bond triggers a judicial forfeiture proceeding; the notice does not inform Claimants of the availability of an opportunity to present their objections (including their evidence) to the forfeiture determination after receiving notice; notice does not inform Claimants that property determined by the Mayor to be not subject to forfeiture will be held by Property Clerk without notice to Owner; the notice does not inform recipients they have a right to submit evidence on the fair market value of the property (on which value the Property Clerk sets the bond).

SAC, ¶ 460.

Due Process Clause does not require notices to include the information that was allegedly wrongfully omitted.

The Court may take judicial notice of the content of the Notice of Intent to Administratively Forfeit.  A court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Government forms are subject to notice under this provision.  *See United States v. Bello*, 194 F.3d 18, 24 (1st Cir. 1999) ("Nonetheless, the existence of independent and undisputed documentary evidence in the form of government . . . official letters . . . provided a sufficient basis for judicial notice . . . ."); *see, e.g.*, *Phillips v. Triad Guar. Inc.*, No. 1:09-cv-00071, 2013 WL 2403281, *18 (M.D.N.C. May 31, 2013) *Grinols v. Electoral College*, No. 2:12-cv-02997-MCE-DAD, 2013 WL 2294885, *2 n.3 (E.D. Cal. May 23, 2013).  Indeed, "[t]he court . . . **must** take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2) (emphasis added).  The District asks that this Court take judicial notice of the content of Exhibit A to this Motion, the Notice of Intent to Administratively Forfeit sent to Plaintiffs.

Claim Nine should also be dismissed because the Notice of Intent provides more than due process requires.  The Supreme Court has spoken specifically to the adequacy of notice under the Due Process Clause in a situation nearly identical to the one before the Court here.  In *City of West Covina v. Perkins*, 525 U.S. 234 (1999), the Supreme Court addressed the question of "whether the Constitution requires a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution."  *Id.* at 236.

Like Plaintiffs, the plaintiffs in *City of West Covina* alleged that the government defendant "deprived [plaintiffs] of due process by failing to provide them notice of their remedies and the factual information necessary to invoke the remedies under [local] law." *Id.* at 240. However, the Court "conclude[d that] these requirements are not mandated by the Due Process Clause." *Id.* at 236. In reaching this conclusion, the Supreme Court noted that "due process requires [police officers] to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return," but that nothing "justifies requiring individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law." *Id.* at 241. "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The [government] need not take other steps to inform him of his options." *Id.*; *see also Breath v. Cronvich*, 729 F.2d 1006, 1012 (5th Cir. 1984) (holding that the state "is not required to notify owners of towed cars of the availability of the appearance bond procedure" because "[i]t is a state statute and car owners are deemed to have been notified of it.")

This conclusion aligns with the Third Circuit's analysis of notice of a notice in the specific context of civil forfeiture. In *Litzenberger v. United States*, 89 F.3d 818 (3d Cir. 1996), the court considered a similar due process challenge to the adequacy of notice in a forfeiture case. There, the notice described the property seized, the basis for the seizure, and "[m]ost importantly," informed the owner that, "'to contest the seizure or forfeiture of the property in court, [he or she] must file a claim or ownership and bond'" in a particular amount by a certain date. *Id.* at 821-22. This notice "was adequate because [the owner] was amply informed of the means by which he could assert his substantive arguments in a courtroom." *Id.*

26

Here, the Notice of Intent to Administratively Forfeit goes far beyond what is required. In addition to informing the property owner that his or her property has been seized and the means to challenge that seizure and possible forfeiture, the Notice actually provides information about resources for owners to obtain further information. *See* Exh. A (stating that "[i]nformation regarding this seizure may be obtained from the . . . Evidence Control Division" and providing contact information). It also directs owners to the relevant and publicly available section of the D.C. Municipal Regulations that govern the return of such property. *See id.* ("Title 6A DCMR § 806 entitled **Claims for Property in Police Custody** outlines the procedures relative to filing any claims.").

The information not contained within the Notice itself is readily available to the public and supplies all the information that Plaintiffs claim is lacking in the Notice. For instance, Plaintiffs allege that the Notice is constitutionally defective because "the notice does not inform recipients they have a right to submit evidence on the fair market value of the [seized] property (on which value the Property Clerk sets the bond)." SAC, ¶ 460. However, the regulations specifically referenced in the Notice state that "[t]he Property Clerk shall determine the fair market value of the property, but in doing so shall consider any verifiable and reasonable evidence of fair market value the claimant may present." Title 6A, DCMR § 806.3. District forfeiture law is laid out in full detail in the District of Columbia Code and Municipal Regulations. *See generally* D.C. Code §§ 48-905.02 & .03; Title 6A, DCMR §§ 805, 806 & 809; *see also* D.C. Code §§ 7-2507.06a; 8-905 & 22-2723. The Code and Regulations are readily available on the Internet, among other places. *See* D.C. Municipal Regulations and D.C. Register, http://www.dcregs.dc.gov/ (last visited October 22, 2013); District of Columbia Official Code, http://www.lexisnexis.com/hottopics/dccode/ (Last visited October 22, 2013).

The Notice of Intent accords with Due Process because it notifies owners of their property having been seized and of how to challenge that seizure (and the possible resulting forfeiture) and because more complete information on remedies and the civil forfeiture process is publicly available.

## VII.   Plaintiffs' Claim Ten Alleging that the Lack of Notice of the Mayor's *Ex Parte* Probable Cause Determination Violates the Fifth Amendment's Due Process Clause Is Without Merit.

Plaintiffs allege that the District's failure to tell them about the process by which the Mayor would make an initial probable cause determination before proceeding with administrative forfeiture constitutes a violation of their due process rights.[24]  However, the probable cause determinations "are *ex parte* by the District and contemplate no involvement of the owner or a neutral arbiter."  *Simms*, 872 F. Supp.2d at 102 (citing D.C. Code §§ 48-905.02(b), (c) & (d)(3)(E).).  Plaintiffs were not entitled to participate in the Mayor's determination, so the failure to inform them of the process involved cannot have caused them harm.  As a result, Claim Ten fails.  *See Deninno*, 103 F.3d at 85 (requiring prejudice for a due process claim).

## VIII.   Plaintiffs' Claim Twelve Alleging that the Mayor's *Ex Parte* Probable Cause Determination Violates the Fifth Amendment's Due Process Clause Is Without Merit.

Plaintiffs allege that the Mayor's *ex parte* probable cause determination violates the Due Process Clause because there is no opportunity to be heard and the determination is not made by an impartial decision maker.  SAC, ¶¶ 489-492 & 496.  However, the Mayor's probable cause determination is functionally identical to determinations required of various executive branch

---

[24]  Plaintiffs also allege that owners of seized property other than Plaintiffs were given the opportunity to submit evidence to the Mayor.  SAC, ¶ 468-69.  However, this is not relevant to whether the process accords with due process, and Plaintiffs do not bring an equal protection claim based on this allegation.

officials under federal law.  *See, e.g.*, 21 U.S.C. § 881(b) (requiring the Attorney General to make a probable cause determination before seizing property for forfeiture) (amended 2000); 19 U.S.C. § 1604 (requiring the United States Attorney to investigate to determine whether a forfeiture has occurred and, if he or she believes that it has, to file a claim).  In considering such a determination required by federal law, the Supreme Court held this procedure comports with due process.  *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598 (1950) ("The administrative finding of probable cause . . . is merely the statutory prerequisite to the bringing of the lawsuit.  When the libels are filed the owner has an opportunity to appear as a claimant and to have a full hearing before the court.  This hearing, we conclude, satisfies the requirements of due process." (footnote omitted)).  As the Supreme Court has explained,

> it has never been held that the hand of government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit in the courts.  Discretion of any official may be abused.  Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination.

*Ewing*, 339 U.S. at 599.

The Mayor's probable cause determination is "merely the statutory prerequisite to the bringing of the [forfeiture] lawsuit," so due process is met so long as owners of property seized for forfeiture can have a "full hearing before the court" "[w]hen the libels are filed."  *Id.* at 598. Plaintiffs' Claim Twelve should be dismissed.

## IX.    Plaintiffs' Claim Fourteen Alleging that the Bond Requirement Violates the Fifth Amendment's Equal Protection Guarantees Is Without Merit.

Plaintiffs allege that the requirement that owners post a bond "to obtain access to a judicial forfeiture proceeding violates the equal protection clause of the Fifth Amendment." SAC, ¶ 516.  Although it is unclear from the Complaint, it appears that Plaintiffs' equal

protection theory is that owners who cannot afford to pay a bond are denied equal protection

from forfeiture. *See id.*; *id* at ¶ 515 (alleging that the Property Clerk regularly denies waivers or

reductions of bonds based on indigence); *id.* at ¶ 514 (alleging that "[t]he District funnels

claimants into the Mayor's forfeiture determination and away from the judicial forfeiture

proceedings by conditioning access to a judicial forfeiture proceeding on payment of a penal

bond . . . ."). However, alleged violations of the right of access to the courts are considered

under the rubric of due process, not equal protection. *See, e.g.*, *Vasquez v. Hernandez*, 60 F.3d

325, 330 (7th Cir. 1995). This is a distinction without a difference, however, because the tests

for violations of the two rights are the same. *See Kelo v. City of New London*, 545 U.S. 469, 490

(2005) (noting that "the rational-basis test [is] used to review economic regulation under the Due

Process and Equal Protection Clauses").

Under both equal protection and due process rationales, the proper standard is rational

basis review. *See United States v. Kras*, 409 U.S. 434, 446 (1973) (applying rational basis

review to an equal protection challenge to a bankruptcy filing fee because it was "in the area of

economics and social welfare" and did not implicate a fundamental right); *Tucker v. Branker*,

142 F.3d 1294, 1300 (D.C. Cir. 1998) (applying the rational basis test to an equal protection

challenge to a requirement that prisoners pay a filing fee to bring a lawsuit because neither

indigents nor prisoners are a suspect class and because a filing fee does not implicate a

fundamental right); *Faldraga v. Carnes*, 674 F. Supp. 845, 849 (S.D. Fla. 1987) (holding that the

federal civil forfeiture bond requirement did not implicate a fundamental right). Therefore, to

state a claim, Plaintiffs must show that there is no "reasonably conceivable state of facts that

could provide a rational basis for the classification." *Tucker*, 142 F.3d at 1300 (quoting *Heller v.

Doe*, 509 U.S. 312, 320 (1993)) (internal quotation marks omitted).

Claims equivalent to those Plaintiffs raise here have been squarely rejected. *See Faldraga*, 674 F. Supp. at 849-50 (rejecting equal protection and due process challenges to the bond requirement for challenging federal civil forfeitures). In *Faldraga*, the Southern District of Florida upheld the federal bond requirement in the face of a due process challenge because

> The requisite posting of the bond [to avoid forfeiture] cannot be said to deny plaintiff her opportunity to be heard at a meaningful time and manner. The requirement is consistent with the presumption of correctness under section 1615 and Congress' intent to better utilize summary forfeitures. If the plaintiff were to have prevailed in her claim, the bond would have been returned to her. Requiring her to post a bond was Congress' way to ferret out unmeritorious claims. In the case of indigency the bond requirement would have been waived.

*Id.* at 850. In rejecting an equal protection challenge, the *Faldraga* court also "conclude[d] that there is a rational basis for the bond requirement." *Id.* "The purpose of posting a bond is to deter those claimants with frivolous claims . . . . Without the bond requirement, the federal courts would be further congested because claimants would bring the summary process into a judicial forum without hesitation." *Id.*; *see also Arango v. U.S. Dept. of the Treasury*, 115 F.3d 922, 925 -26 (11th Cir. 1997). The same rationale applies with equal force to the District's bond requirement.

To the extent that Plaintiffs attempt to rely on their assertion that "[a]s a general rule the Property Clerk never grants applications for waivers or reductions of penal bonds on grounds of indigence," that argument is unavailing. SAC, ¶ 515. Initially, of the Plaintiffs bringing this claim, only Plaintiff David Littlepage even alleges that he submitted an application for waiver or reduction of bond.[25] *See id.* at ¶ 350. The remaining Plaintiffs cannot base their claim on a supposed policy or practice of the District to deny applications when they have not submitted

---

[25] Plaintiff Steven May also alleges that he submitted an application for waiver or reduction of his bond, but he is not among the Plaintiffs bringing this claim. *See* SAC, ¶¶ 215 & 511.

applications.  *See Lujan*, 504 U.S. at 560-561 (requiring a causal connection between the allegedly tortious act and the claimed injury); *Deninno*, 103 F.3d at 85 (dismissing a due process claim alleging insufficient notice in a forfeiture action because the plaintiff failed to allege that the purportedly insufficient notice prejudiced him).

Even had Plaintiffs other than Mr. Littlepage[26] submitted applications, they would fail to state a due process claim.  Due process requires that there is a procedure available for indigent claimants to have the bond requirement waived or reduced.  *See Wiren v. Eide*, 542 F.2d 757, 763 (9th Cir. 1976); *In re Williams*, 628 F. Supp. 171, 173 (E.D.N.Y. 1986).  However, District law meets this requirement by providing for waivers and reductions based on indigency.  Title 6A, DCMR § 806.7 ("Upon a proper showing of a claimant's financial inability to give any bond or to give a bond in the required amount, the Property Clerk shall waive or reduce the bond, as appropriate.").  If the Property Clerk rejects an application for waiver or reduction of bond, then the proper avenue for legal relief is through the D.C. Administrative Procedures Act.  *See* D.C. Code § 2-510(a) (providing judicial review of mayoral or agency decisions); *cf. Tourus Records, Inc.*, 259 F.3d at 734-35 (reviewing the federal denial of an application for waiver or reduction of bond under the federal Administrative Procedure Act).  In the event that Plaintiffs had actually submitted an application and had it wrongly denied, this would have been the appropriate avenue of redress.  Failure to exhaust this remedy would also serve to bar Plaintiffs' claims.  *See Fox v. Dist. of Columbia*, 851 F. Supp. 2d 20, 23, 27-29 (D.D.C. 2012); *see also Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010) (holding that a plaintiff seeking damages based on

---

[26]   Plaintiff Littlepage's claim also fails both because he failed to seek review of the (implicit) denial of his application for waiver or reduction of bond and because he lacks standing, *see* Section XII, *infra*.

the allegedly unlawful seizure of his property "cannot prevail on his due process claim if the state's post-deprivation procedures, including state tort remedies, are adequate").

The District has a rational basis for requiring a bond to challenge forfeiture—deterrence of frivolous claims—which is all that is required to warrant dismissal of Plaintiffs' Claim Fourteen.  Moreover, Plaintiffs bringing this claim (other than Plaintiff Littlefield) did not even apply for a waiver or reduction of their bond, so they lack standing to bring this claim.  Finally, even if an application were denied, the proper forum for hearing such a claim would be the D.C. Superior Court, so the Court should decline to consider them here.

## X.      Plaintiffs' Claim Fifteen Alleging that the "Aggregate Effect of Forfeiture Proceedings" Violates the Fifth Amendment's Equal Protection Guarantees Is Without Merit.

Plaintiffs allege that the "aggregate effect of forfeiture proceedings as implemented by the MPD . . . violates the equal protection clause of the Fifth Amendment."  SAC, ¶ 520. Plaintiffs do not, however, explain what this means.  Instead, they set out a vague and rambling list of ways in which MPD purportedly implements the civil forfeiture scheme "as described above" in the Complaint.[27]  *Id.*

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  In practice, this means that "[t]he claim for relief must 'be stated with brevity, conciseness, and clarity' and, most importantly, give the opposing party 'fair notice of the nature and basis or grounds of the pleader's claim.'"  *Porter v. Sebelius*, ___ F. Supp.2d ___, 2013 WL 1966063, *3 (D.D.C. 2013)

---

[27]   The full list reads: "summary seizures, minimalist government justification, shifting burdens, unreasonable time limits for contesting forfeitures, generous time limits for prosecuting them, readily invoked default rules, and bond posting requirements, unfair Mayor's forfeiture determination, lack of adequate notice and constitutional hearings." SAC, ¶ 520.

(quoting 5 Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1216 (3d ed. 2013)).  When a claim is "rambling, vague, and repetitive," like Plaintiffs' Claim Fifteen, it should be dismissed because it "fails to give notice of the 'basic grounds of the pleader's claim[s].'"  *Id.* (alteration in original); *see id.* at *3-4 (dismissing plaintiff's claims because they did not "identify what specific action rose to the level of an unlawful . . . practice for each discrete claim"); *see also Voinche v. Obama*, 428 Fed. Appx. 2, 4 (D.C. Cir. 2011) (upholding "[t]he district court's dismissal of appellant's constitutional claims . . . because his complaint's vague claims about alleged harms perpetrated by government agents fail to 'suggest a plausible scenario' that 'sho[ws] that the pleader is entitled to relief.'" (third alteration in original) (internal citation omitted).

Plaintiffs' Claim Fifteen fails to meet the pleading standard set out in Federal Rule of Civil Procedure 8(a).  To the extent that it indeed recites the implementation "described above" in the Complaint, it merely duplicates Plaintiffs other claims and should be dismissed both because of the failings set out in this Memorandum in connection with Claim Fifteen's constituent claims and because it is repetitive.  *Id.*  To the extent that Claim Fifteen attempts to set forth a novel claim based on the implementation of the civil forfeiture scheme, the Complaint does not put the District on sufficient notice of the basis for that claim.  Ultimately, Claim Fifteen lacks sufficient content for the District to know where to start showing that it has met the minimal burden of rational basis review for its policies.  For this reason, the claim should be dismissed for failure to meet Rule 8(a).

## XI.   All Claims by Plaintiffs Shanita Washington and Teneisha Williams Should Be Dismissed.

Other than including Plaintiffs Shanita Washington's and Teneisha Williams' names among various sub-groups of Plaintiffs, the Complaint contains no reference to either Plaintiff.

*See generally* SAC.  As a result, the Complaint utterly fails to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" and should be dismissed. *See* Fed. R. Civ. P. 8(a).

## XII.    All Claims by Plaintiff David Littlepage Should be Dismissed.

Plaintiff Littlepage lacks standing to challenge the forfeiture of money to which he does not claim an ownership or possessory interest.  The Complaint alleges that, while conducting a search for cocaine, MPD officers seized $340 from the room of Mr. Littlepage's adult son, Plaintiff Terrence Thomas.  SAC, ¶¶ 328-336.  The Complaint alleges that Mr. Littlepage repeatedly disclaimed ownership of the money, claiming that it was his son's wages from the night before the seizure.  *Id.*, ¶ 342 (stating that "Mr. Littlepage gave [MPD] a copy of Mr. Thomas' paystub showing that he had received a paycheck from his employer for $495 dated the day before the search"); *id.*, ¶ 349 ("Mr. Littlepage showed the Property Clerk his son's pay stub from the night before indicating that the money was from his son's wages."); *id.* at ¶ 352 ("Mr. Thomas still does not have his money back").  Taking the allegations in the Complaint at face value, Mr. Littlepage has no ownership or possessory interest in his son's money.

Absent an ownership or possessory interest in the property seized, Mr. Littlepage lacks standing to sue based on the allegedly tortious seizure and forfeiture of his adult son's money. *See Lujan*, 504 U.S. at 560-561 (requiring a concrete and particular injury resulting from the allegedly tortious act to confer standing); *Deninno*, 103 F.3d at 85 (requiring prejudice to have standing to bring a due process claim alleging insufficient notice in a forfeiture action); *see also United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57-58 (1st Cir. 2013) (holding that, to have standing to challenge a forfeiture, "the claimant must start by demonstrating an ownership or possessory interest in the seized property").  Indeed, the various types of prejudice

35

alleged in Plaintiffs' claims in which Mr. Littlepage joins all require that he be entitled to the seized money.  *See* SAC, ¶¶ 413, 417, 421, 425, 445-47, 455-57, 459, 464, 475, 486, 499, 512, 519 & 523.

**XIII.   All Claims by Plaintiff Kimberly Brown Should be Dismissed.**

Unlike any other Plaintiff, Kimberly Brown's vehicle was declared forfeited in a judicial forfeiture proceeding.  *Id.* at ¶ 126.  This had the effect of conclusively determining that the District had title to the vehicle and precluding any later litigation on issues that could have been raised in defense to the forfeiture action.  *See Bernaugh v. United States*, 38 Fed. Cl. 538, 542 (Fed. Cl. 1997); *see also Bazuaye v. United States*, 41 F. Supp.2d 19, 23-24 (D.D.C. 1999).  Because forfeiture actions incorporate "the common law 'relation back doctrine,'" title to property vests in the government as of the date on which the action giving rise to the seizure occurs.  *Id.* at 24-26.  As a result, when a final decision has been reached that property is forfeited, the owner "is collaterally estopped from asserting . . . that he had a property right . . . on the date of seizure.  *Id* at 25-26.  Absent a property right in her vehicle post-seizure, Plaintiff Brown lacks standing to bring any claims alleging deficiencies in post-seizure process.  *See United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57-58 (1st Cir. 2013) (holding that, to have standing to challenge a forfeiture, "the claimant must start by demonstrating an ownership or possessory interest in the seized property"); *In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1546 (11th Cir. 1990).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

DATE:  October 28, 2013                Respectfully submitted,

                                       IRVIN B. NATHAN
                                       Attorney General for the District of Columbia

                                       ELLEN A. EFROS
                                       Deputy Attorney General
                                       Public Interest Division

                                       /s/ Grace Graham
                                       GRACE GRAHAM [D.C. Bar No. 472878]
                                       Chief, Equity Section
                                       Public Interest Division
                                       441 Fourth Street, NW, Suite 600S
                                       Washington, DC 20001
                                       Telephone: (202) 442-9784
                                       Facsimile: (202) 741-8892
                                       Email: grace.graham@dc.gov

                                       /s/ Gary Feldon
                                       GARY FELDON [D.C. Bar No. 987142]
                                       Assistant Attorney General
                                       Public Interest Division
                                       Office of the Attorney General for the District of Columbia
                                       441 Fourth Street NW, Suite 600S
                                       Washington, DC 20001
                                       Telephone: (202) 724-5691
                                       Facsimile: (202) 730-0640
                                       Email:  gary.feldon@dc.gov