**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

KIM KATORA BROWN, *et al.*,          )
                                     )
            Plaintiffs,              )
                                     )
v.                                   )
                                     )
GOVERNMENT OF THE                    )          Civil Action No. 13-00569 (KBJ)
DISTRICT OF COLUMBIA,                )
                                     )
            Defendant.               )
_____ )

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR DISMISSAL OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

The District hereby respectfully submits this Reply in further support of its Motion for

Dismissal of Plaintiffs' Second Amended Complaint ("Motion") and in response to Plaintiffs'

Opposition to Defendant's Motion to Dismiss ("Opposition").

**I.      Plaintiffs' Claims Brought Under the Fourth Amendment Are Without Merit.**

In its Motion, the District moved to dismiss all Plaintiffs' claims based on the Fourth

Amendment because the harms asserted in the Complaint are not cognizable under that

Amendment.  *See* Mot. at 5-7.  Plaintiffs have not responded to these arguments.[1]  *See generally*

Opp.  "It is well understood in this Circuit that when a plaintiff files an opposition to a

motion to dismiss addressing only certain arguments raised by the defendant, a court may treat

---

[1]   Although it is made in response to a wholly different argument by the District, Plaintiffs do assert that "[t]he Fourth Amendment is an independent basis for . . . prompt post seizure hearings," citing to *James Daniel Good Real Property*, 510 U.S. 43, 49-50 (1993).  Opp. at 26.  However, that case merely stands for the proposition that the Fourth and Fifth Amendments provide different protections in the context of civil forfeiture.  *See Good*, 510 U.S. at 51.  It contains no mention of the Fourth Amendment necessitating prompt post-seizure hearings.  *See generally id.* Moreover, to the extent that the Fourth and Fifth Amendments provide coextensive protections in this context, Plaintiffs' Claim Four under the Fourth Amendment would fail for the same reasons as Claim Three under the Fifth Amendment.  *See* Mot. at 10-19 (explaining why Claim Three fails).

those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Bd. of Global Ministries,* 238 F.2d 174, 178 (D.D.C. 2002); *see also CSX Transp., Inc. v. Commercial Union Ins., Co.,* 82 F.3d 478, 482–83 (D.C. Cir. 1996); *Cole v. Boeing Co.*, 845 F. Supp.2d 277, 285 (D.D.C. 2012); *Jones v. Air Line Pilots Ass'n,* 713 F. Supp.2d 29, 38–39 (D.D.C. 2010).  Thus, Plaintiffs have conceded that their claims under the Fourth Amendment fail.

**II.     Plaintiffs' Claim One Alleging that the Fifth Amendment's Due Process Clause Requires Notice at the Time of Seizure Is Without Merit.**

In Claim One, Plaintiffs allege that "the District never gave them individualized notice at the time of seizure of seizure [sic] of the property."  Second Amended Complaint for Judgment for Money Damages and Injunctive and Declaratory Relief with Jury Demand ("Complaint" or "SAC"), ¶ 413; *see also id.* at 52 ("Fifth Amendment Procedural Due Process Claim for failure to provide notice at seizure").  The District moved to dismiss Plaintiffs' Claim One because due process permits post-seizure notice for chattel.  Motion at 8-9.  This position is supported by ample precedent from the Supreme Court, the District of Columbia Circuit, and other federal courts of appeals.  *See id.*

In their Opposition, Plaintiffs unsuccessfully attempt to confuse the issue by claiming that their at-notice seizure claim was really based on notice after "police already have the property in hand."  Opp. at 10.  This shift does not affect the outcome, however.  The cases cited in the District's Motion refute Plaintiffs' contention that the District must provide notice that it intends to proceed with forfeiture immediately after seizure.  *See* Mot. at 8-9.  However, Plaintiffs utterly fail to address any of these cases, other than an unsuccessful attempt to

distinguish *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974).[2]  *See* Opp. at 9; *see generally id.* at 10-15.

The cases that Plaintiffs ignore establish that at-seizure notice is not constitutionally required.  Once again, the District's notice procedures are substantively identical to those set out in federal law.  The only notable difference is that the federal government requires an additional week of publication by notice.  *Compare* D.C. Code § 48-905.02(d)(3)(A) *with* 9 U.S.C. § 1607(a).  Neither federal nor District law requires notice immediately after seizure.  *See* D.C. Code § 48-905.02(d)(3)(A); 9 U.S.C. § 1607(a).  Nonetheless, courts repeatedly upheld the constitutionality of these notice procedures in considering challenges to notice under federal forfeiture law.  For example, the District of Columbia Circuit explicitly held that "the steps required by [federal statute] generally provide all the notice required for due process."  *United States v. Lopez*, 201 F.3d 478, 480 (D.C. Cir. 2000); *see also United States v. Deninno*, 103 F.3d 82, 85 (10th Cir. 1996).

Further, it is typically not possible for the District to provide notice that it intends to proceed with forfeiture of seized property at the time of seizure.  The decision of whether the District will pursue forfeiture does not occur until the Mayor (or his designee) determines that probable cause justifies such a proceeding.  D.C. Code § 48-905.02(d)(3)(A).  As a result, the District could not give people from whom property is seized (who may or may not be the owners) notice that the District will seek to forfeit the seized property.  This is the same scenario that the Supreme Court addressed in *Dusenbery  v. United States*, 534 U.S. 161 (2002).  There, the Court upheld the constitutionality of notice sent shortly after the government chose to initiate

---

[2]  Plaintiffs' attempt to distinguish *Calero-Toledo* is unsuccessful because Plaintiffs claim that due process requires notice immediately after seizure, but in *Calero-Toledo* the Supreme Court found that the notice comported with due process, even though it was provided ten days after the property was seized.  *Calero-Toledo*, 416 U.S. at 667-68.

civil forfeiture proceedings, which was more than two years after the seizure of the property at issue. *Id.* at 163. *Dusenberry* further demonstrates that due process does not require notice at the time of seizure.

Plaintiffs' Claim One is contrary to binding precedent, and therefore should be dismissed.

**III.    Plaintiffs' Claim Three Alleging that Fifth Amendment Procedural Due Process Requires a Retention Hearing Before the Initiation of Judicial Forfeiture Proceedings Is Without Merit.**

The District contends that Plaintiffs are not entitled to a post-seizure retention hearing for seized vehicles or currency. Moreover, even if they were, those Plaintiffs who had the opportunity to have their challenges heard through a Rule 41 motion suffered no prejudice from the lack of such hearings.

A.    <u>Due Process Does Not Require A Separate Preliminary Retention Hearing When A Prompt Post-Seizure Hearing Is Otherwise Available.</u>

In moving to dismiss sixteen Plaintiffs' due process claims based on the lack of a preliminary retention hearing, the District argued that those Plaintiffs could not have suffered prejudice from the absence of such a hearing because they could have obtained a hearing by filing a Rule 41(g) motion in associated criminal proceedings in either this Court or the D.C. Superior Court. Mot. at 10-12. Plaintiffs offer three reasons that such motions do not provide the full relief that a preliminary retention hearing would. However, none of these reasons accurately represents the full scope of the relief offered by Rule 41(g) motions.

First, Plaintiffs argue that D.C. "Superior Court Criminal Rule 41(g) is not an effective remedy . . . because the Superior Court does not have jurisdiction over property seized or held for forfeiture determinations." Opp. at 23 (citing *Dist. of Columbia v. Dunmore*, 749 A.2d 740,

743 (D.C. 2000)).[3]  This statement is misleading.  Plaintiffs are correct that the D.C. Superior Court cannot use Rule 41(g) to order the return of seized property when a civil forfeiture case is actually pending.  *Dunmore*, 749 A.2d at 745.  However, as noted in the District's motion, in those instances, Plaintiffs could have sought preliminary relief in connection with the pending forfeiture case.  Mot. at 10; *see also United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 568-69 (1983) (stating that "[a] claimant is able to trigger rapid filing of a forfeiture action if he desires it" by, among other measures, "fil[ing] an equitable action seeking . . . return of the seized property."); *Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1544-45 (11th Cir. 1990) (discussing federal courts' equitable power to return property seized for forfeiture).  When civil forfeiture proceedings have not yet been filed, Rule 41(g) allows the Superior Court to order the return of property.  *See Dunmore*, 749 A.2d at 743; *United States v. Wilson*, 540 F.2d 1100, 1104 (D.C. Cir. 1976) (holding that, even when property is subject to forfeiture, a court may order return of the property under Rule 41 when forfeiture proceedings have not yet been filed).  Thus, there is a court with jurisdiction to order the return of property, regardless of whether civil forfeiture proceedings have actually begun.[4]

Second, Plaintiffs argue that Rule 41(g) does not provide a prompt hearing because it applies only "when the case is over."  Opp. at 23.  This is demonstrably untrue.  Indeed, if a Rule 41(g) motion were filed after a case is over, courts would not even address them as such.  Instead, courts convert the motion to a civil claim based on either equity or 21 U.S.C. §

---

[3]  Notably, Plaintiffs do not make a similar argument regarding Federal Rule of Criminal Procedure 41(g).  *See generally* Opp. at 22-26.

[4]  A court's decision of whether to grant a Rule 41(g) motion when the District indicates that it will institute civil forfeiture proceedings is irrelevant to whether there is a forum where a claimant can raise such a challenge.

853(n)(6).  *See Bertin v. United* States, 478 F.3d 489, 492-93 (2d Cir. 2007) (equity); *United States v. Porchay*, 533 F.3d 704, 708-09 (8th Cir. 2008) (21 U.S.C. § 853(n)(6)).  Of course, when seized property is needed as evidence in a criminal case, the court hearing the Rule 41 motion will frequently delay its ruling until after the merits of a criminal case have been decided, but this does not create an unconstitutional delay.  *See United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir. 1979) (stating that the need for property as evidence is proper grounds for denying a motion for return of property).  However, courts have the authority to return property at any point during criminal proceedings.  *See, e.g.*, *United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654, 665-666 (D.C. Cir. 2007) (reversing in part the denial of a pre-indictment Rule 41(g) motion for return of improperly seized documents).  This is consistent with the Seventh Circuit's statement in *Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008), that a plaintiff can "obtain a speedy release of his automobile prior to the actual forfeiture hearing" by "fil[ing] a motion under Federal Rule of Criminal Procedure 41[(g)] for return of his vehicle."  *Id.* at 837, *vacated as moot by Alvarez v. Smith*, 558 U.S. 87 (2009); *see also $8,850*, 461 U.S. at 568-69.[5]

Third, Plaintiffs argue that a Rule 41(g) motion does not provide a prompt hearing because a court's rulings on those motions may take months.  Opp. at 25.  To the extent that this is true, the scheduling of hearings on motions is not within the District's control.  *See Doe v.*

---

[5]  "In order for an owner of property to invoke Rule 41(g), he must show that he had a possessory interest in the property seized by the government," and that he has "clean hands" with respect to the property.  *United States v. Howell*, 425 F.3d 971, 974 (11th Cir.2005); *see also United States v. Parlavecchio*, 57 Fed. App'x 917, 919 (3d Cir. 2003); *United States v. Grover*, 119 F.3d 850, 852 (10th Cir. 1997).  The clean hands requirement functions as an analog to an innocent owner defense.  *See generally United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1067 (E.D. Va. 1995) (holding that a claimant was not an innocent owner because he lacked clean hands).  However, even if this were not the case, due process does not require the existence of an innocent owner defense to forfeiture.  *See Bennis v. Michigan*, 516 U.S. 442 (1996).

*Sipper*, 869 F. Supp.2d 113, 115-116 (D.D.C. 2012) (discussing courts' inherent authority to control their own dockets).  To the extent that a more speedy resolution is required, litigants can move for preliminary relief and/or file an emergency motion.  *See* Fed. R. Civ. P. 65; D.C. Super. Ct. R. 65; LCvR 16.2(b)(4); D.C. Super. Ct. R. 101(b)(5).

Plaintiffs could have availed themselves of a prompt post-seizure hearing for the return of their property.[6]  If a forfeiture case were already pending, they could have filed a motion seeking equitable relief in that case.  *See $8,850*, 461 U.S. at 568-69; *$67,470.00*, 901 F.2d at 1544-45. If a forfeiture case were not pending, they could have filed a Rule 41(g) motion in an associated criminal proceeding.  *See Rayburn House Office Bldg.*, 497 F.3d at 665-666.  As a result, they suffered no prejudice as a result of the absence of a separate preliminary retention hearing to consider the same issues.

B.  <u>Due Process Does Not Require A Preliminary Retention Hearing for Seized Vehicles.</u>

As set forth in its Motion, the District contends that *$8,850*, 461 U.S. 555, controls the case at bar and requires the application of the test announced in *Barker v. Wingo*, 407 U.S. 514 (1972).  Mot. at 12-14; *see also People v. One 1998 GMC*, 960 N.E.2d 1071, 1080 (Ill. 2011) (applying the holding of *$8,850* in rejecting owners' claim that "waiting for the outcome of the forfeiture proceeding, which could take months, d[id] not satisfy [the due process] standard in the absence of a 'prompt' probable cause hearing after the seizure).  *Barker* being the applicable test renders Plaintiffs' analysis irrelevant because that analysis is done exclusively under the rubric of *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Plaintiffs' minimal effort to rebut the applicability of *$8,850* is unavailing.  Plaintiffs attempt to distinguish *$8,850* because that case purportedly "concerns [only] the speed with

---

[6]  That is, Plaintiffs whose property was seized in connection with a criminal proceeding.  *See* Mot. at 11 n.10.

which the civil forfeiture proceeding itself is begun." Opp. at 15 n.10. However, as explained in the District's Motion, *$8,850* applied the *Barker* test in evaluating "the due process rights of 'the dispossessed property owner,' that is, one that did not have possession of her property/currency *post*-seizure and *pre*-hearing." Mot. at 13 (quoting *$8,850*, 461 U.S. at 562-63). In other words, *$8,850* concerned exactly the situation presented here—owners who were deprived of their property until forfeiture proceedings began. The Supreme Court reaffirmed this understanding in *United States v. Von Neumann*, 474 U.S. 242 (1986). There, the Court stated that "[i]mplicit in th[e] Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect [an owner]'s property interest in [a] car" that is subject to forfeiture.[7] *Id.* at 249; *see also United States v. One 1985 Mercedes*, 917 F.2d 415, 419-20 (9th Cir. 1990) (holding, in a case concerning the civil forfeiture of a vehicle, that "due process does not require an immediate post-deprivation hearing, at least where judicial review of the forfeiture is available within a reasonable time."); *United States v. One 1971 BMW 4-Door Sedan, Model 2800, Gray in Color VIN 2320587, AZ. LIC. RNM-898* 652 F.2d 817, 820-21 (9th Cir. 1981).

Plaintiffs rely only on the *Mathews* test to argue that their due process rights were violated by the lack of a preliminary retention hearing, so they have waived any argument that the District's application of the *Barker* test in its Motion was incorrect. *See Hopkins,* 238 F.

---

[7] Plaintiffs make a cursory effort to rebut the Supreme Court's clear interpretation of *$8,850*'s holding in *Von Neumann* by arguing that it is "distinguishable because it involved proceedings for remission or mitigation under U.S. customs laws, not forfeiture under state law." Opp. at 15 n.10. However, the District does not contend that *Von Neumann*'s own holding is controlling on the instant case. Rather, the District relies on the Supreme Court's explication of its earlier holding in *$8,850*. Plaintiffs utterly fail to address why this Court should ignore the Supreme Court's definitive statement of the meaning of that case. *See OneSimpleLoan v. U.S. Secretary of Educ.*, 496 F.3d 197, 205 (2d Cir. 2007) (rejecting a party's argument because it was foreclosed by "the Supreme Court's own subsequent interpretation of [an earlier Supreme Court] holding").

Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.  Therefore, because Plaintiffs fail to rebut the application of *Barker*, Plaintiffs' Claim Three should be dismissed for the reasons set forth in the District's Motion.

C.  <u>Due Process Does Not Require A Preliminary Retention Hearing for Seized Currency.</u>

Although *Barker* is the applicable test for due process claims like Plaintiffs' Claim Three, even under the *Mathews* test, the lack of a preliminary hearing for seized currency does not violate due process.  *See* Mot. at 14-19.  Plaintiffs' arguments to the contrary are unavailing.

Under *Mathews*, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  The District addresses Plaintiffs' arguments as to each below.

1.  *Private Interest Affected*

In its Motion, the District argued that the first *Mathews* factor does not substantially favor a mandatory preliminary retention hearing for seized currency because temporary deprivation of a sum of money is substantially less burdensome than the temporary deprivation of a vehicle. Mot. at 15-16; *see also City of Los Angeles v. David,* 538 U.S. 715, 717 (2003) (stating that the "temporary deprivation of the use of [an] automobile" "works a far more serious harm" than a "private individual's interest in maintaining the use of money . . . [until] the time of [a] hearing.").  Plaintiffs raise two arguments in response.  Neither has merit.

9

First, Plaintiffs assert that due process requires preliminary retention hearings for currency without any analysis other than a citation to *Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008). Opp. at 19. As an out-of-circuit case that the Supreme Court vacated as moot, *Smith* is relevant only to the extent that its analysis on this point is persuasive. *See Alvarez v. Smith*, 558 U.S. 87 (2009) (vacating *Smith* as moot). However, *Smith* contains no analysis of the due process interests implicated by currency seizures. *See generally Smith*, 524 F.3d 834. Indeed, after explaining at length owners' special interest in their vehicles, the *Smith* court merely asserts that "[t]he person from whom cash is seized also has a strong interest in a hearing," without any actual analysis. *Id.* at 838. The Court should decline to accept this blind assertion, particularly in light of the Supreme Court's holding that the temporary loss of the use of a certain sum of currency implicates only a minor private interest. *See City of Los Angeles*, 538 U.S. at 717; Mot. at 15-16.

Second, Plaintiffs argue without any legal authority that the private interest in currency is greater for indigent claimants. Opp. at 19-21. Instead, Plaintiffs make the unsupported claim that there is a substantial private interest in the use of seized money because indigent claimants need the money to retain counsel in the forfeiture case.[8] *Id.* at 19-20. This argument is both unsound and contrary to Supreme Court precedent.

---

[8]  In its arguments concerning the private interests at stake, Plaintiffs make two points that are wholly irrelevant to claimants' private interest in the use of seized currency. The District briefly addresses them here in an abundance of caution. First, Plaintiffs posit that preliminary retention hearings would decrease the need for claimants to retain counsel. Opp. at 21. This is an argument concerning the benefits of preliminary hearings, not the private interests at stake. Moreover, there is no reason to believe that a preliminary retention hearing would be any easier to navigate *pro se* than the current system. Second, Plaintiffs note that bond amounts may exceed the value of the seized property. Opp. at 20. Although this possibility may bear on the fairness of the procedural steps for initiating judicial forfeiture proceedings, it is irrelevant to the strength of a claimant's private interest in seized currency. Further, because the argument applies only to claimants seeking to recover amounts less than $250, the private interest at issue is less substantial than for claimants with more at stake. Opp. at 20.

Plaintiffs' argument is unsound because its premise does not support its conclusion.  The premise of Plaintiffs' argument is that there is a greater private interest in the use of money when it will be used to obtain counsel.  However, if that were true, then indigent claimants would actually have a lesser private interest in seized money than other claimants.  A rational claimant would use money on a lawyer only if the amount at issue in the forfeiture were so large that the increased likelihood of prevailing was worth more than the amount spent on attorney's fees plus the expected costs from the possibility of losing the case (*e.g.*, court costs and the possible need to repay the preliminarily released funds).[9]  Because indigent claimants are the claimants least likely to have had large amounts of money, they are also the least likely to have had large amounts of money seized.  Thus, indigent claimants would be the least likely to use seized money on a lawyer.  Based on Plaintiffs' own premise, therefore, indigent claimants are the least likely to have a strong private interest in seized money.  At best, then, Plaintiffs' assertion is pure speculation.

Plaintiffs' argument is also contrary to the Supreme Court's analysis of the private interest in the temporary use of money.  *See* Mot. at 16 (discussing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989)).  In *Caplin & Drysdale*, 491 U.S. 617, the Supreme Court held that neither the Fifth nor Sixth Amendments were violated when a criminal defendant was unable to use seized money to retain counsel of his or her choosing.  *Id.* at 632-33; *see also United States v. Monsanto*, 491 U.S. 600 (1989).  That conclusion applies with even more force to a claimant in a civil forfeiture proceeding, who is seeking to vindicate only property interests, than to a criminal defendant, whose liberty is at stake.

---

[9]  *See generally* Laffey Matrix, *available at* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf (providing "reasonable" attorney's fees for purpose of federal fee-shifting statutes).

Ultimately, Plaintiffs have failed to show that there is enough of a private interest in the use of seized currency to weigh significantly in favor of additional procedural safeguards.

2.   *Risk of Erroneous Deprivation and Value of Additional Safeguards*

In moving to dismiss the Complaint, the District argued that the probable value of additional procedural safeguards was minimal for two reasons.  Mot. at 17-18.  First, the two independent probable cause determinations made before proceeding to forfeiture decrease the likelihood of erroneous deprivation.[10]  *Id.* at 17.  Second, the probable value of additional safeguards is minimal because the presumption that currency found in close proximity to contraband is forfeitable decreases the likelihood of erroneous deprivation because it increases the likelihood that the currency will ultimately be found to be forfeitable.  *Id.* at 17-18.

Plaintiffs respond to these arguments merely by reciting Judge Sullivan's findings under this prong of the *Mathews* test in *Simms v. District of Columbia*, 872 F. Supp.2d 90 (D.D.C. 2012).  Opp. at 21-22.  However, those findings were made in the specific context of vehicle seizures, not currency seizures.  *See Simms*, 872 F. Supp.2d at 95.  As a result, they do not bear on the issues unique to currency seizures.

Just as to the second prong of the *Mathews* analysis, there are two relevant distinctions between currency seizures and vehicle seizures.  First, as explained in the District's Motion, the rebuttable statutory presumption that currency located in close proximity to contraband is forfeitable decreases the likely benefit of additional safeguards.  *See* Mot. at 17-18.  Plaintiffs utterly fail to respond to this point, so it should be treated as conceded.  *See Hopkins,* 238 F. Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.

---

[10]   In administrative forfeitures, there are actually three determinations because the Mayor makes both an initial probable cause determination before notice is sent and a determination about whether property is subject to forfeiture before declaring the property forfeited.  *See* D.C. Code §§ 48-905.02(d)(3)(A) & (C).

Second, as explained in depth in the District's discussion of the third prong of the *Mathews* test, unlike a vehicle, currency cannot be used without eliminating its residual value. *See* Mot. at 18-19. Plaintiffs clearly do not understand this key distinction. In arguing for the value of additional safeguards, Plaintiffs parrot *Simms* by asserting that a preliminary retention hearing would allow owners to "propose less restrictive options to continued retention (i.e., surrendering title)." Opp. at 22 (citing *Simms*, 872 F. Supp.2d at 103). However, there are no measures less restrictive than retaining seized currency pending a final forfeiture determination. An owner can only use his or her money by spending it, which would moot the final determination. As a result, the most important benefit of a preliminary retention hearing for vehicles is simply inapplicable to currency, substantially decreasing the benefit of that procedural safeguard.

3. *Government's Interest*

As explained above and in the District's Motion, the crux of the *Mathews* analysis concerning currency forfeiture is the government's interest in preserving the property until a final forfeiture determination. *See* § III.C.2, *infra*; Mot. at 18-19. However, Plaintiffs do not even respond to this point. In a one sentence response to the District's discussion of the third *Mathews* prong, Plaintiffs rely on *Simms* for the proposition "that the government's interest in preventing the **vehicles** from being sold or destroyed, [does] not trump property owners' due process rights because the government could protect its interests by other measures short of continued seizure." Opp. at 22 (emphasis added) (citing *Simms*, 872 F. Supp.2d at 97). This is wholly inapposite to the District's argument, which concerns only **currency**. *See* Mot. at 14-19. Further, as explained in the preceding section, "measures short of continued seizure" would not be effective for currency. *See* § III.C.2, *infra*. Because Plaintiffs do not even respond to the

13

substance of the District's argument, this point should be treated as conceded.  *See Hopkins,* 238 F. Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.

### IV.     Plaintiffs' Claim Five Alleging that the District Failed to Send Notice Reasonably Calculated to Reach Plaintiffs in Violation of the Fifth Amendment's Due Process Clause Is Without Merit.

Plaintiffs Claim Five should be dismissed because Plaintiffs admit they received actual notice, so they cannot succeed on their claim alleging irregularities in the implementation of the civil forfeiture notice procedures established by District law.  *See* Mot. at 19-22.  Plaintiffs' Opposition does not respond to the substance of this argument.  Indeed, Plaintiffs dispute neither that actual notice defeats a due process claim based on faulty notice nor that Plaintiffs themselves received actual notice.[11]  *See generally* Opp. at 26-27.  As such, both propositions have been conceded.  *See Hopkins,* 238 F. Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.  Therefore, Plaintiffs' Claim Five should be dismissed.

### V.     Plaintiffs' Claim Seven Alleging that the District Failed to Notify Plaintiffs of their Right to Collect their Property in Violation of the Fifth Amendment's Due Process Clause Is Without Merit.

In its Motion, the District addressed Claim Seven separately for Plaintiffs whose vehicles were seized and those whose currency was seized.[12]  Regarding Plaintiffs whose vehicles were seized, the District contended that Plaintiffs failed to adequately allege prejudice because each

---

[11]   Plaintiffs do assert that "[t]he District has a policy and practice of not providing any effective notice at all to over 70% of all Owners whose property is seized for forfeiture determinations," but not one Plaintiff has alleged that he or she is among those who did not receive notice.  *See generally* SAC.

[12]   Although the District must accept Plaintiffs' allegations as true for purposes of this filing, it is nonetheless worth noting at this point that Plaintiffs' allegations demonstrate a fundamental misunderstanding of civil forfeiture procedures.  For example, the District sends "safekeeping" letters to owners informing them that their property is available to be retrieved.  *See, e.g.*, Exh. B.  Similarly, Plaintiffs' claim that "[t]he Property Clerk puts the burden on the owner to procure [an evidentiary release from the Assistant U.S. Attorney assigned to a case] or the Property Clerk may procure it in his own sweet time" is entirely baseless.  Opp. at 31.  The U.S. Attorney's Office determines when property is no longer needed as evidence in criminal cases.  The District has no authority to compel the United States to issue an evidentiary release.

Plaintiff actually knew to retrieve his or her vehicle.[13]  Mot. at 23; *see also Alvarez*, 558 U.S. at 88-89 (dismissing as moot the appeal of a due process claim based on the alleged failure to provide a prompt opportunity to challenge the seizure of vehicles and currency for forfeiture because the property had either been returned to its owners or forfeited by them).  Plaintiffs fail to address this argument.  *See generally* Opp. at 28-37.  Thus, Plaintiffs concede this argument, and the Court should dismiss those claims based on the alleged failure to notify Plaintiffs that their vehicles were available to be retrieved.  *See Hopkins,* 238 F. Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.

Regarding Plaintiffs whose currency was seized, the District contended that the ease with which Plaintiffs could learn if their money was available to be retrieved weighed against finding that due process required additional notice by the District.  Mot. at 23-24.  The District went on to argue that the private interest at stake—the temporary loss of use of the seized money pending retrieval—was minimal, further reducing Plaintiffs' due process claim.  *Id.*  Plaintiffs respond to these points by asserting that the District is constitutionally required to return property not needed for evidence or forfeiture and that the failure to do so is a separate deprivation from the initial seizure, so due process requires additional procedural safeguards.  Opp. at 28-29. Although the safeguards Plaintiffs seek are nonsensical,[14] the District need not address them in depth because Plaintiffs' argument rests on several invalid assumptions.

---

[13]   The only exception to this was Plaintiff Kimberly Brown, who lost ownership of her vehicle when the D.C. Superior Court entered a default judgment against her in a judicial forfeiture proceeding.  Mot. at 23.  However, the District applied the same analysis to argue that she suffered no prejudice from the lack of notice to retrieve her property because she was never actually entitled to retrieve her property.  *Id.*

[14]   Plaintiffs assert that the additional safeguards to which due process entitles them include "pre-deprivation notice and a hearing when the District deprives them of their property by failing to return it."  Opp. at 29.  However, once the necessary releases are provided—one certifying property is not needed as evidence and one certifying that it will not be the subject of forfeiture hearings, when the property has been seized for both purposes—the legal status of the

Initially, there is no constitutional obligation on the District to return Plaintiffs' seized currency when Plaintiffs have not sought to recover it.[15]  Plaintiffs cite two cases for the proposition that "the Property Clerk has a duty to 'to ensure the return of property,'" but neither supports that conclusion.  Opp. at 28 (citing *Wilson*, 540 F.2d at 1101 &1103 and *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) (hereinafter "*Robert Wilson*")).  In *Wilson*, 540 F.2d 1100, the D.C. Circuit "h[e]ld that the **district court** ha[d] . . . the duty to ensure the return of [seized] property."  *Id.* at 1101 (emphasis added); *see also Wright*, 610 F.2d at 939 (explaining that the District holds money or property seized pursuant to a warrant only "as agents subject to the order of the United States Courts").  This holding is directly contrary to Plaintiffs' assertion that it is the District's duty to return property.  Opp. at 28.  When considering the same question, the D.C. Court of Appeals adopted *Wilson*'s holding.  *Robert Wilson*, 424 A.2d at 132.  Thus, neither case supports Plaintiffs' assertion that the District has an affirmative duty to return seized property when owners do not seek its return.

Similarly, Plaintiffs' assertion that "the District's continued retention of property past the point of need constitutes a second deprivation" is unsupported by either case on which they rely.

property changes without further action by the District.  Because this change occurs as a matter of law, there is no point at which the District knows that property will be eligible for release before it is actually eligible.  As a result, the District could not give property owners pre-deprivation notice.  Similarly, Plaintiffs' assertion that a hearing is required when property is held for the owner to retrieve it makes no sense.  When the District acknowledges that the owner is entitled to possession of the property, there is nothing for a hearing to decide.

[15]   D.C. law requires the District to "return property to its rightful owner" "[i]f the Mayor determines that the seized property is not forfeitable."  D.C. Code § 48-905.02(d)(3)(C).  However, Plaintiffs' Claim Seven is a challenge under the Due Process Clause of the U.S. Constitution, not a claim based on alleged violations of D.C. statutes.  "Mere alleged misuse or disregard of state law by state officials does not constitute a deprivation of property without constitutional due process of law."  *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir.) (citations omitted), *cert. denied* 479 U.S. 1022 (1986); *see also Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).  Further, the D.C. Court of Appeals specifically noted District's property clerk statute when it held that the D.C. courts, not the property clerk, had "'the jurisdiction and duty to return' property seized in connection with a criminal proceeding once the proceeding has terminated and the property is no longer pertinent to a criminal prosecution."  *Robert Wilson*, 424 A.2d at 132 & n.4 (quoting *Wilson*, 540 F.2d at 1103, and discussing *Wright*, 610 F.2d at 934-35).

Opp. at 28 (citing *Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) and *Lathon v. City of St. Louis*, 242 F.3d 841, 843 (8th Cir. 2001)).  In both cases, the Eighth Circuit held that there was a deprivation when the government refused an owner's request to return property, despite the government not having a right to hold the property.  *See Walters*, 550 F.3d at 309-10 (stating that the Chief of Police rejected three separate requests by the owner of a seized handgun); *Lathon*, 242 F.3d at 842 (stating that an owner's "requests for the return of his weapons and ammunition . . . were rejected").  These cases may stand for the proposition that refusing an owner's requests for the return of seized property may constitute a deprivation of property.  However, they do not address the issue of whether mere failure to inform an owner that his or her property is available for retrieval also amounts to a deprivation for due process purposes.

When property owners have not made any effort to retrieve their seized property, the District is not constitutionally obligated to take affirmative steps to return the property.  Any owner who invokes the judicial process to try to avoid forfeiture—whether by initiating judicial forfeiture proceedings or by filing a Rule 41(g) motion—will know if and when property is available for retrieval as soon as a court decides the issue.  *See* Opp. at 33 (acknowledging that a Rule 41(g) motion would give owners notice that their property is available for retrieval).  Informal efforts, like periodically contacting the Property Clerk, will also inform an owner if and when he or she can retrieve the seized property.  *See* Mot. at 23-24.  Even absent any notice by the District, only owners who do nothing to recover their property would remain ignorant of the status of their property.  The ease with which Plaintiffs could inform themselves militates against a finding that due process requires the District to send separate notice.  Thus, Plaintiffs' Claim Seven fails.

**VI.     Plaintiffs' Claim Nine Alleging that the Notice of Intent to Administratively Forfeit is Insufficient Under the Fifth Amendment's Due Process Clause Is Without Merit.**

In its Motion, the District contended that the Notice of Intent to Administratively Forfeit ("Notice of Intent") that is sent to owners of seized property complied with the minimum requirements of due process.  Mot. at 24-28.  Plaintiffs completely fail to respond to this contention.  *See* Opp. at 37-38.  Instead, they merely list four of the allegations in their Complaint and assert the allegations are ways in which the Notice of Intent is misleading.  *Id.* Plaintiffs have conceded the District's arguments for dismissing Claim Nine by failing to respond to those arguments (or, indeed, to provide any legal analysis).  *See Hopkins,* 238 F. Supp.2d at 178; *Cole*, 845 F. Supp.2d at 285; *Jones,* 713 F. Supp.2d at 38–39.  In an abundance of caution, however, the District will briefly address each of the four allegations.

First, Plaintiffs allege that the Notice of Intent fails to comply with due process because it "does not tell owners they have a right to submit evidence on the valuation of their property." However, as explained in the District's Motion, this right is set out in the District's Municipal Regulations, and the Due Process Clause does not require further notice of remedies included in published, generally available state law.  Mot. at 26-27.

Second, Plaintiffs allege that the Notice of Intent fails to comply with due process because "the notice does not tell claimants of the District's practice of not giving waivers of the bonds."  Opp. at 38.  If it existed, this practice would be contrary to the District regulation requiring that, "[u]pon a proper showing of a claimant's financial inability to give any bond or to give a bond in the required amount, the Property Clerk shall waive or reduce the bond, as appropriate."  Title 6A DCMR § 806.7; *see also id.* at § 806.6 (permitting the Property Clerk to "require a claimant to submit documentary evidence of" the claimant's inability to afford a

bond).  Thus, it would misleading if the Notice of Intent said that no waivers would be granted.

Further, if the District actually had a practice of denying all bond waiver applications, notifying

claimants of that practice would not affect whether they would have to pay bond.  As a result, the

property owner would not suffer any prejudice from not receiving notice of this alleged practice,

so could not state a valid due process claim.  *See Horning v. S.E.C.*, 570 F.3d 337, 347, 386

(D.C. Cir. 2009); *Smith v. Holtz*, 210 F.3d 186, 197 (3d Cir. 2000) (dismissing a § 1983 action

because the plaintiff failed to "establish the prejudice required for the due process violation that

is the *sine qua non* of his claim for relief").

Third, Plaintiffs allege that the District did not inform "owners of the criteria for

obtaining bond waivers."  Opp. at 38.  However, this information is not required by a forfeiture

notice.  *See* Mot. at 25-26 (discussing *City of West Covina*, 252 U.S. at 236, 240-41).  Also, the

sole criterion for granting bond waivers or reductions—demonstrable inability to pay—is

established by publicly available regulations.  *See* Title 6A DCMR § 806.7; *see also id.* at

§ 806.6.  Finally, it is unclear how Plaintiffs would benefit from knowing the criteria for granting

a bond waiver application because that knowledge would not affect their ability to pay.  As a

result, their claim should be dismissed for lack of prejudice.  *Horning*, 570 F.3d at 347 & 386;

*Smith*, 210 F.3d at 197.

Fourth, Plaintiffs allege that "the notice misleads and fails to state retrieval procedures

when the Property Clerk determines the property is not subject to forfeiture."  Opp. at 38.

Plaintiffs' assertion is meritless.  The Notice of Intent that is the subject of Plaintiffs' claim is a

notification that the District <u>does</u> intend to forfeit the property.  *See* Mot. Exh. A.  Thus, sending

that Notice when the District <u>does not</u> intend to forfeit the property would actually mislead

property owners.  When the Property Clerk determines property is not subject to forfeiture, the

19

Clerk sends a different notice, which includes information about retrieving property.  *See* Exh. B

(Sample Safekeeping Letter).[16]

**VII.    Plaintiffs' Claim Ten Alleging that the Lack of Notice of the Mayor's *Ex Parte* Forfeiture Determinations Violates the Fifth Amendment's Due Process Clause Is Without Merit.**

The District moved to dismiss Plaintiffs' Claim Ten because the District is not required to

give notice of an *ex parte* forfeiture determination.[17]  Mot. at 28.  Plaintiffs attempt to salvage it

by alleging that there are "informal in-person hearings" that are separate from the Mayor's

determination that there is probable cause to pursue civil forfeiture or the Mayor's determination

that property is forfeitable.  Opp. at 38-40 ("[A]fter making his determinations about whether

property is subject to forfeiture, and after sending out the notices, the Property Clerk offers

informal "hearings" to some owners . . . .").  Although this factual premise is difficult to discern

from the Complaint, Plaintiffs' reimagining of Claim Ten suffers from the exact problem

identified in the District's Motion—that these purported "hearings" are in fact part of the

District's *ex parte* investigation of forfeiture claims.  Mot. at 28.  And, because claimants do not

have a right to appear or submit evidence during an *ex parte* investigation, the District is not

required to tell them otherwise.  *See id.*; *see also McKinney v. Washington*, 297 Fed. App'x 593,

595-96 (9th Cir. 2008) (rejecting a due process claim when a state agency's investigation found

probable cause to believe that a child in the plaintiff's custody would be subject to abuse, even

---

[16]   As explained in the District's Motion, government forms are subject to judicial notice by the Court.  Mot. at 25 (citing Fed. R. Evid. 201(b)(2) and *United States v. Bello*, 294 F.3d 18, 24 (1st Cir. 1999)).

[17]   In the Complaint, Plaintiffs refer to the supposedly "secret procedure" by which claimants can "challeng[e] the Mayor's forfeiture determinations."  SAC, ¶ 477.  The District understood "forfeiture determinations" to mean the Mayor's probable cause determinations, and this understanding was reflected in the Motion to Dismiss.  *See* Mot. at 28.  However, the District's argument is equally applicable to any *ex parte* procedure, so it makes no difference to which of the Mayor's forfeiture determinations Plaintiffs refer.

though the state agency did not interview the plaintiff before initiating proceedings to remove the child); *Ward v. Anderson*, 494 F.3d 929, 937-38 (10th Cir. 2007) (rejecting a substantive due process challenge based in part on a state agency failing to interview the owners of a childcare facility when investigating licensing violations).

To understand the legal error underlying Plaintiffs' supposed "factual premise," it is important to correct Plaintiffs' mistaken recounting of the order in which forfeiture determinations are made. Opp. at 39. The first step in the forfeiture process is that the Mayor must determine whether there is probable cause to support forfeiture of seized property. D.C. Code § 48-905.02(d)(3)(A). If there is probable cause, then the Property Clerk mails a Notice of Intent to possible claimants and publishes notice for at least two successive weeks in a newspaper of general circulation. *Id.* at (3)(A). If a claim and bond (or bond waiver application) are timely filed, then the matter is transferred to the courts for judicial forfeiture proceedings. However, if no claim is timely filed, then the Mayor makes a determination about whether the seized property is properly subject to forfeiture. *Id.* at (3)(C). If the Mayor determines that the property is not subject to forfeiture, then the property is returned to its owner. *Id.* If the Mayor determines that the property is subject to forfeiture, the property is declared to be forfeited. *Id.* After property is declared forfeited, a petition for mitigation or remission is the only available avenue for relief. *Id.* at (3)(F).

As their Opposition reflects, Plaintiffs misunderstand this process. For example, Plaintiffs mistakenly assert that the Mayor's "determination about whether property is subject to forfeiture" occurs before the Property Clerk sends Notices of Intent. Opp. at 39. Plaintiffs go on to claim that the purported secret hearings take place after the Property Clerk "mak[es] his

determinations about whether property is subject to forfeiture, and after sending out the notices."
Opp. at 40.

What Plaintiffs' misunderstanding reveals is that the putative hearings are in fact interviews that are part of the investigatory process by which the Mayor makes his pre-administrative forfeiture determination of whether property is subject to forfeiture.  Because the Mayor is statutorily required to declare property forfeited once that determination is made, no alleged hearing conducted after the Mayor's determination would affect the outcome.[18]  *See* D.C. Code § 48-905.02(d)(3)(C).  However, this is precisely what Plaintiffs claim in their Opposition. *See* Opp. at 42.  The only plausible interpretation of Plaintiffs' allegations concerning these secret hearings is that the putative hearings occur before property is administratively forfeited. Therefore, the putative hearings also occur before the Mayor makes his determination that the seized property is subject to forfeiture.

The only way that Plaintiffs could be correct that the putative hearings affect the outcome of administrative forfeiture proceedings is if they affected the outcome of the Mayor's determination that property is forfeitable.  In other words, Plaintiffs' "hearings" are part and parcel of the process by which the Mayor decides whether property is subject to administrative forfeiture (*i.e.*, a pre-forfeiture investigation).  Indeed, it is inappropriate to call these investigative interviews "hearings" because they "contemplate no involvement of the owner or a neutral arbiter."  *Simms*, 872 F. Supp.2d at 102.  Similarly, there are no procedural rights, records, or formal decisions.

---

[18]   The Mayor could return property that had already been forfeited upon a petition for remission, but that is not what Plaintiffs allege occurred.  D.C. Code § § 48-905.02(d)(3)(F).

Because the putative hearings are merely part of an *ex parte* investigative process, Plaintiffs have no right to participate in them.  *See id.*; *see also*   As a result, Plaintiffs have no due process claim based on the District's alleged failure to provide them with notice to enable them to participate.  *See generally Horning*, 570 F.3d at 347 & 386; *Smith*, 210 F.3d at 197. Plaintiffs Claim Ten should therefore be dismissed.

**VIII.   Plaintiffs' Claim Twelve Alleging that the Mayor's *Ex Parte* Forfeiture Determinations Violates the Fifth Amendment's Due Process Clause Is Without Merit.**

In moving to dismiss Plaintiffs' Claim Twelve, the District relied on the Supreme Court's holding in *Ewing v. Mytinger & Casselberry*, 339 U.S. 594 (1950), to argue that an administrative probable cause determination comports with due process "so long as owners of property seized for forfeiture can have a 'full hearing before the court.'"  Mot. at 28-29 (quoting Ewing, 339 U.S. at 598).  However, Plaintiffs now contend that the gravamen of their claim is that administrative forfeiture proceedings must afford an opportunity for a claimant to be heard, even if the claimant validly waived his or her right to a judicial forfeiture proceeding.  Opp. at 45.  This argument is totally meritless.

The absurdity of Plaintiffs' argument is shown by ubiquity of administrative forfeitures and the utter absence of legal authority finding those decisions to be unconstitutional for the reasons raised by Plaintiffs.  Plaintiffs do not identify a single case in which a court held the administrative forfeiture process to be defective in this way.  *See generally* Opp. at 43-52. Rather, there is a wealth of authority holding that forfeiture schemes that include administrative forfeitures comport with due process.  *See, e.g.*, *Deninno*, 103 F.3d at 85 (stating that federal "administrative forfeiture laws satisfy the requirements of due process.").  Indeed, this Court specifically rejected a due process claim that the plaintiffs "should have been granted a hearing

to contest the seizures" of their property because a federal statute authorizing administrative

forfeiture applied and the "[p]laintiffs did not file a claim to compel judicial forfeiture."  *Malladi*

*Drugs & Pharmas., Ltd. v. Tandy*, 538 F. Supp. 162, 170 (D.D.C. 2008); *see also United States*

*v. Robinson*, 434 F.3d 357, 362 (5th Cir. 2005) (stating that a court can consider a due process

challenge to an administrative forfeiture but identifying only allegedly defective notice as the

basis for such a challenge).  In the face of these holdings, Plaintiffs' Claim Twelve is obviously

baseless.

Plaintiffs make only a single futile attempt to distinguish the plethora of cases upholding

the constitutionality of administrative forfeitures.  In a footnote, Plaintiffs assert that

administrative forfeitures under federal law and those under District law are "as different as night

from day."  Opp. at 44 n.32.  The only purported difference that Plaintiffs identify, however, is

that the District's administrative forfeiture proceedings require a pre-administrative forfeiture

determination by the Mayor that property is forfeitable.  *Id.*  As a result, Plaintiffs claim, the

District's procedure is not a "summary forfeiture proceeding."  *Id.*  Presumably, this supposed

difference is intended to distinguish the cases upholding federal forfeitures from the instant case.

However, this attempt fails utterly.

Contrary to Plaintiffs' assertions, there is no significant difference between the District's

administrative forfeiture procedures and those of the federal government.  As the District stated

in its Motion, multiple federal forfeiture statutes require an executive branch official to make a

determination about whether property is subject to forfeiture before a forfeiture claim can be

brought.  *See* Mot. at 28-29.  One example of this is the pre-Civil Asset Forfeiture Reform Act

requirement that the Attorney General make a probable cause determination before authorizing

the warrantless seizure of property for forfeiture.  21 U.S.C. § 881(b)(2) (amended 2000).

24

Another example is the requirement that a United States Attorney investigate reports from customs officers and, "if it appears probable that any . . . forfeiture has been incurred . . . forthwith to cause the proper proceedings to be commenced and prosecuted." 19 U.S.C. § 1604. Thus, the process under these federal forfeitures statutes and the District's forfeiture statute is substantively the same. An officer of the executive initially determines that there is probable cause that the property is forfeitable and, if the claimant does not initiate judicial proceedings, the property is declared administratively forfeited. *Compare* 21 U.S.C. § 881(b)(2) (amended 2000) *with* 19 U.S.C. § 1604 *with* D.C. Code § 48-905.02(d)(3)(A); *compare* 18 U.S.C. § 983(a)(1)(A) *with* D.C. Code § 48-905.02(d)(3)(C).

The only difference—and the one on which Plaintiffs so heavily rely—is that the Mayor cannot declare property to be administratively forfeited if he finds that it is not forfeitable. D.C. Code § 48-905.02(d)(3)(C). However, Plaintiffs never adduce any legal authority even suggesting that this difference would make the District's administrative forfeiture proceedings fail to comply with due process. Indeed, logic says exactly the opposite. The Mayor's independent determination of whether property is subject to forfeiture before declaring it administratively forfeited is an additional procedural safeguard. By including this step to make the process even less likely to result in erroneous deprivations, the District's the administrative forfeiture process actually comports better with due process than do comparable federal processes. Thus, because the federal administrative forfeiture scheme comports with due process, *a fortiori*, the District's does as well.

25

**IX.     Plaintiffs' Claim Fourteen Alleging that the Bond Requirement Violates the Fifth Amendment's Equal Protection Guarantees Is Without Merit.**

Claim Fourteen should be dismissed because there is a rational basis for requiring claimants to pay a bond (or obtain a bond waiver based on indigence), which is all that is required to uphold the constitutionality of this provision.  *See* Mot. at 29-33.  Plaintiffs' only discernible response to the District's argument on this point is that the process by which the amount of the bond is set does not comport with procedural or substantive due process because the Property Clerk sets the bond amount, not a court.  Opp. at 53.  Plaintiffs' argument ignores that judicial review is available.  *See* Mot. at 32 (discussing review of bond requirements through the D.C. Administrative Procedure Act).  Plaintiffs' argument also ignores the vast number of cases upholding bonds set by agencies, not courts.  *See, e.g.*, *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 926 (11th Cir. 1997) (holding that there was no due process violation when an agency set a bond amount and refused to waive it because the agency process gave the claimant a meaningful opportunity to be heard).  Plaintiffs' Claim Fourteen should be dismissed.

**IX.     Plaintiffs' Claim Fifteen Alleging that the "Aggregate Effect of Forfeiture Proceedings" Violates the Fifth Amendment's Equal Protection Guarantees Is Without Merit.**

Plaintiffs' Claim Fifteen fails to meet the minimum pleading requirements imposed by Federal Rule of Civil Procedure 8(a).  *See* Mot. at 33-34.  However, Plaintiffs do not respond to that argument.  *See generally* Opp. at 52-53.  Thus, Plaintiffs concede the argument and Claim Fifteen should be dismissed.  *See generally Horning*, 570 F.3d at 347 & 386; *Smith*, 210 F.3d at 197.

**X.      All Claims by Plaintiffs Shanita Washington and Teneisha Williams Should Be Dismissed.**

The claims brought on behalf of Plaintiffs Shanita Washington and Teneisha Williams should be dismissed because there are no factual allegations concerning those plaintiffs. *See* Mot. at 34-35.  Plaintiffs ask that the Court allow them to amend their Complaint a third time to rectify this.  Opp. at 54.  However, the Court should not allow Plaintiffs to amend because doing so would be futile.  *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) ("A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss.").  Plaintiffs' claims fail as a matter of law for the reasons explained in the District's Motion and this Reply.  Additional factual allegations by two Plaintiffs cannot overcome those legal failings.

**XII. All Claims by Plaintiff David Littlepage Should be Dismissed.**

Plaintiff Littlepage's claims should be dismissed because he lacks standing to bring claims based on forfeiture proceedings against property belonging to his adult son.  *See* Mot. at 35-36.  Plaintiffs fail to respond to the substance of this argument.  *See* Opp. at 54.

Instead, Plaintiffs assert that Plaintiff Littlepage should be considered to have standing because the Property Clerk refused to recognize Mr. Littlepage's son's claim to seized property. *Id.*  The Property Clerk's actions, however, are not relevant to whether Mr. Littlepage has standing.  Standing requirements are imposed by Article III of the U.S. Constitution, and Mr. Littlepage does not meet those requirements.

Plaintiffs also assert that Plaintiff Littlefield's is "merely pleading in the alternative." *Id.* However, the Complaint does not allege both that Littlefield does and does not have a property

interest in his son's money.  *See generally* SAC.  Rather, it consistently alleges that Mr.

Littlepage has no such interest.  *See id.*, ¶¶ 328-336, 342, 349 & 352.

The Court should dismiss Plaintiff Littlepage's claims.

**XIII. All Claims by Plaintiff Kimberly Brown Should be Dismissed.**

Plaintiff Brown's claims should be dismissed because, as a result of the common law

relation-back principle and the default judgment entered in the District's favor in her civil

forfeiture proceeding, she did not have legal title to her vehicle when it was seized.  *See* Mot. at

36.  Thus, she suffered no prejudice from any subsequent procedural due process violations in

connection with the forfeiture.  *See id.*  Plaintiffs respond by arguing that Ms. Brown should be

allowed to pursue her § 1983 claim because it provides remedies not available in the judicial

forfeiture proceedings in D.C. Superior Court and because she allegedly suffered violations of

procedural due process.  Opp. at 54-55.  However, these arguments do not respond to the

District's argument.

Under the common law relation-back principle, title to forfeited property vests in the

government as of the date of the violation upon which the seizure was based.  *See Bazuaye v.*

*United States*, 41 F. Supp.2d 19, 23-24 (D.D.C. 1999); *see also Counihan v. Allstate Ins. Co.*, 25

F.3d 109, 112 -13 (2d Cir. 1994).  Thus, the judgment of forfeiture handed down by the D.C.

Superior Court had the effect of vesting title in the District no later than when Ms. Brown's

vehicle was seized.  Because Ms. Brown did not have an ownership interest in the seized

property, she was not prejudiced by any alleged due process violations and cannot assert them

now.  *See United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57-58 (1st Cir. 2013);

*In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1546

(11th Cir. 1990).  Her claims should therefore be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the District's Motion, Plaintiffs'

Complaint should be dismissed.

DATE:  December 23, 2013          Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division

/s/ Grace Graham_____
GRACE GRAHAM [D.C. Bar No. 472878]
Chief, Equity Section
Public Interest Division
441 Fourth Street, NW, Suite 600S
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ Gary Feldon_____
GARY FELDON [D.C. Bar No. 987142]
Assistant Attorney General
Public Interest Division
Office of the Attorney General for the District of Columbia
441 Fourth Street NW, Suite 600S
Washington, DC 20001
Telephone: (202) 724-5691
Facsimile: (202) 730-0640
Email:  gary.feldon@dc.gov