UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMBERLY KATORA BROWN, et al.<br><br>Plaintiffs,<br><br>   v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA<br><br>Defendant. | Civil Action No: 13-569 (CRC) |

NOTICE

Clarification on Plaintiffs' Pending Discovery Motions

**EvidenceOnQ.** EvidenceOnQ is the database the MPD uses to keep track of property it seizes and detains such as money and vehicles. It went online in 2009. But, data about property in the custody of the MPD's Property Clerk before EvidenceOnQ came online was migrated into EvidenceOnQ.

**District's access to EvidenceOnQ.** The District has unlimited access to data in EvidenceOnQ and its reporting capabilities. The District also has unlimited access to people to help it understand EvidenceOnQ. The District has access to consultants from the vendor of EvidenceOnQ. The District has unlimited access to its "DBA" (database administrator) and the other IT professionals on the District's payroll who help it maintain, administer, and use EvidenceOnQ. The District also has unlimited access to its agents in the MPD and the Property Clerk's office and the Evidence Control Branch who make database entries.

**Data export.** The District produced to data in EvidenceOnQ to plaintiffs in the "data export." The data export is records and other data from selected fields and cells in EvidenceOnQ relating to vehicles and money seized or held during the class period. The fields and cells in the spreadsheet holding the data export use programmer names, not screen names.

In some cases when plaintiffs' counsel have received a data export unique each line in the spreadsheet corresponded to a unique seizure of a vehicle or a seizure of money.

For example, in the Hardy case, the list of seizures of class members' money was presented in a spreadsheet and each line of data in the spreadsheet corresponded to a unique seizure of money. In such a data export it is easy to count the number of seizures simply by noticing the number on the last line of data in the spreadsheet. It is easy in such a data export to calculate the total amount of seizures by using the calculate function because each seizure has its own line in the spreadsheet.

The data export is a data dump. It is a production of raw data in an Excel spreadsheet. There is no one to one correspondence between a line in the spreadsheet and a piece of property.

Some seizures occupy more than one line of data in the spreadsheet.

Moreover, it is not even easy to identify how many seizures are in the spreadsheet because each seizure may take several lines in the spreadsheet or just one.

In fact, in the data export spreadsheet it is not even a simple matter to tell whether an entry in the spreadsheet relates to a seizure of money or a seizure of a vehicle. In fact, it is so hard to segregate seizures of money from seizures of cash that the District's counsel told plaintiffs' counsel in the 1/20/2017 teleconference that one reason the District objected to answering interrogatory #

2 (identify how much money the District collected from (1) owners of vehicles (2) registered in the District (3) seized for civil forfeiture (4) during the class period (5) for titling and registration) is that the District contended that it was burdensome for it to segregate seizures from vehicles from seizures of money listed in EvidenceOnQ.

**What the District contends plaintiffs should have access to.** The District contends it satisfies its discovery obligations regarding the data export spreadsheet by producing the data export and letting plaintiffs try to figure it out with a user's manual that has different field names.

What the Federal Rules say plaintiffs should have.

**A 30(b)(6) deposition of a designee to interpret the data export spreadsheet and the data in it.** As stated in the motion plaintiffs need a 30(b)(6) designee to interpret the data in the data export spreadsheet. Interpreting a corporation's documents is a classic use of a 30(b)(6) deposition.

> Plaintiff is entitled to discover facts within the corporation's knowledge, the corporation's subjective beliefs and opinions, and its interpretation of documents and events-even if some of this information is already in Plaintiff's possession. A corporation's subjective beliefs and opinions, as well its interpretation of certain documents and events, often cannot be gleaned from the mere production of documents. The best source of this information is a knowledgeable witness who has the power to bind the corporation with his or her answers.

> Otero v. Vito, No. 5:04-CV-211 (DF),2006 U.S. Dist. LEXIS 88464, at *13 (M.D. Ga. Dec. 7, 2006).

The preliminary 30(b)(6) deposition plaintiffs took does not preclude a 30(b)(6) deposition on the data export and related documents. It is a common practice – approved by the Manual For Complex Litigation -- for plaintiffs to take limited 30(b)(6) depositions to assist plaintiffs in crafting more targeted discovery requests in subsequent phases of this litigation. <u>In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.</u>, 2010 U.S. Dist. LEXIS 86136, at *4 (C.D. Cal. July 20, 2010).

permitting limited discovery, prior to Rule 26(a)(1) initial disclosure, of information helpful or necessary in formulating a discovery plan, such as Rule 30(b)(6) depositions of records keepers and computer personnel knowledgeable of the parties' data holdings and systems;

Manual For Complex Litigation, 4th Ed., Paragraph 11.12.

**An answer to interrogatory # 1.**

The basic requirement of any settlement for Claim 3 is (1) many vehicles did the District "took and detain; and (2) for how long.

Therefore, Plaintiffs are entitled to know how many vehicles *the District believes* it "took and detained" for forfeiture determinations. DCFS USA, LLC v. District of Columbia, 803 F. Supp. 2d 29, 36 (D.D.C. 2011)("[I]nterrogatories are not only an information gathering tool, but also an opportunity to require one's opponent to state its position on an issue in controversy in writing and under oath.").

Moreover, Plaintiffs see a discrepancy between the number of vehicles Lt. Gray counted and the number of vehicles they have been able to identify in the data export, as explained in

plaintiffs' motion. Plaintiffs need an answer from the District to clear up the discrepancy. The District has conceded that it is burdensome for it to segregate seizures of money from seizures of property in EvidenceOnQ with all of its access to professional help. It is way more burdensome for plaintiffs who have just a raw data export in a spreadsheet.

**An answer to interrogatory # 2.** Interrogatory # 2 goes right to an element of damages. Plaintiffs proposed reserving damages issues until Phase 2 of discovery but the District insisted on addressing damages in Phase 1.

**Bond waiver application documents.** The District produced only the first page of each bond waiver application submitted by property owners. All of the pages (and any pages or comments generated by the District in processing the applications) are relevant to Plaintiffs' Claims 3 and 14 and are responsive to Plaintiffs' First set of Document Production Requests. The only source of documents the District listed in its initial disclosures was EvidenceOnQ so presumably all of the pages are in EvidenceOnQ because the pages are relevant to Claim 14 (Penal Bond Claim – did the Property Clerk condition granting bond waivers on production of three years' worth of federal and District tax returns) and Claim 3 (does processing the waiver applications take too long).

During the Class Period the DC forfeiture statute imposed a bond requirement – claimants had to pay a bond to prevent administrative forfeiture of their property and get to a judicial forfeiture proceeding. D.C. Code § 48-905.02(d)(3)(C). The Constitution requires that a forfeiture statute with a bond requirement must provide for a mandatory waiver of the requirement for indigents, people financially unable to pay it. Brown v District of Columbia, 115 F Supp 3d 56, 72 (D DC, 2015) (recognizing that "bond waivers for indigent individuals are a necessary element of a constitutionally valid forfeiture system."); Wiren v Eide, 542 F2d 757 (CA 9, 1976)(invalidating

bond requirement in federal forfeiture system because statute did not on its face provide for mandatory waiver of bond upon a showing of indigency).

But, the text of the DC forfeiture statute does not provide for mandatory waivers for indigents. D.C. Code § 48-905.02(d)(3)(C). The text of the statute provides in pertinent part only that, "If a "claim and bond" (or application for a waiver of bond) are not filed within 30 days of receipt of notice…".The statute does not condition waivers on production of tax returns.

The Mayor did implement some regulations saying the Property Clerk must provide a waiver or a reduction in the bond if the owner can establish indigency. 6A DCMR § 806.6-7. First, the Mayor cannot cure a facially defective statute by implementing regulations. But, the waiver was conditioned on producing three years of federal and local tax returns, a condition that was not in the statute.

**Documents relating to Notice.** Plaintiffs have propounded additional document production requests for documents relating to whether the District sent notice, whether it was received, and whether the District sent follow up notice. Plaintiffs plan to wait for the responses before filing a motion on this issue.

Respectfully submitted,

| /s/William Claiborne | /s/ Bennett Borden |
|---|---|
| WILLIAM CLAIBORNE | BENNETT BORDEN |
| D.C. Bar # 446579 | D.C. Bar # 501228 |
| | |
| Counsel for Named Plaintiffs | Counsel for Named Plaintiffs |
| 2020 Pennsylvania Ave., N.W. | 1500 K Street, N.W., |
| #395 | Ste. 1100 |
| Washington, DC 20006 | Washington, DC 20005-1209 |
| Phone 202/824-0700 | Phone (202) 842-8800 phone |
| Email claibornelaw@gmail.com | Fax (202) 842-8465 |

| | |
|---|---|
| <u>/s/ Lynn E. Cunningham</u><br>LYNN E. CUNNINGHAM<br>D.C. Bar # 221598<br>Counsel for named plaintiffs<br><br>P.O. Box 1547<br>Dubois, WY  82513<br>307-455-3374  (landline)<br>307-431-4158 (cell) | |