## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICKOYA HOYTE, et al.,**[1] | |
| Plaintiffs, | |
| v. | Case No. 1:13-cv-00569 (CRC) |
| **DISTRICT OF COLUMBIA,** | |
| Defendant. | |

## MEMORANDUM OPINION

Over a dozen plaintiffs have sued the District of Columbia for damages stemming from the seizure of their property incident to arrests that took place between 2010 and 2013. The seizures were effected under the city's former asset forfeiture statute, which authorized the District of Columbia Metropolitan Police Department ("MPD") to seize and seek civil forfeiture of any property that it had probable cause to believe was involved in criminal activity, whether or not the property was owned by the arrestee. Plaintiffs contend that various aspects of the former law, and MPD's implementation of it, violated their Constitutional due process rights.

Since the filing of this case in 2013, the Court has dismissed a number of specific claims and Plaintiffs have voluntarily jettisoned others. Five claims survive, all of which involve seizures of property, mainly cars, for the sole purpose of civil forfeiture. Plaintiffs now seek class certification under Federal Rule of Civil Procedure 23 with respect to four of the remaining claims. These four claims allege: that the now-repealed law denied Plaintiffs a prompt and meaningful opportunity to seek the interim release of their property pending an ultimate

---

[1] This case was previously captioned as Kimberly Brown, et al. v. District of Columbia. Named Plaintiff Kimberly Brown dismissed all of her claims with prejudice on March 9, 2017. See Consent Motion to Dismiss Claims, ECF No. 121 (Mar. 9, 2017).

forfeiture determination (Claim Three); that the District failed to take reasonable steps to notify property owners that their property had been seized and was subject to forfeiture (Claim Five); that MPD failed to return seized cars to their owners after it determined that the cars were no longer subject to forfeiture (Claim Seven); and that MPD routinely denied (and discouraged applications for) waivers of the statute's requirement that property owners post a cash bond in order to challenge the forfeiture (Claim Fourteen).  For the reasons that follow, the Court will certify Claims Three and Five for class action treatment, but will decline to certify Claims Seven and Fourteen.

I.    **Background**

A.   Civil Forfeiture in the District of Columbia

The District's civil forfeiture regime existed without meaningful reform from 1981 to 2015.  See D.C. Code § 48–905.02.  Under the former statute, once MPD officers seized property, the District was required to provide notice to any person having "a right of claim to the seized property."  Id. § 48–905.02(d)(3)(A).  After receiving such notice, an owner needed to file a claim and pay a bond of the lower of $2,500 or 10 percent of the appraised value of the property—but not less than $250—in order to assert an interest in the property and contest the forfeiture.  Id. § 48-905.02(d)(3)(B).  A potential claimant could request a waiver or reduction of the bond requirement, based on indigency.  D.C. Mun. Regs. 6-A § 806.6–7.  Once an owner paid the bond (or secured a waiver), the District initiated civil forfeiture proceedings in D.C. Superior Court.  D.C. Code § 48-905.02(d)(3)(E).  But if the owner failed to pay the bond or to request a waiver, the MPD itself determined, *ex parte*, whether the property was forfeitable.  Id. at § 48-905.02(d)(3)(C).  If the property was deemed forfeitable, the owner was permanently dispossessed of ownership.  Id. at § 48-905.02(d)(4).  The former statute further provided that if

the property "is not deemed forfeitable under this chapter and is not otherwise subject to forfeiture, the [District] shall return the property to its rightful owner." Id. at § 48-905.02(d)(3)(C).

The Council of the District of Columbia amended the civil forfeiture law in 2015. See Civil Asset Forfeiture Amendment Act of 2014, 62 D.C. Reg. 1,920 (Feb. 13, 2015). Among other changes, the new law shifted the burden of proof in forfeiture hearings from the property owner to the government, eliminated drug possession as a forfeitable offense, and gave owners an opportunity to request the interim release of their property. Id. Notwithstanding these reforms, the District remains liable for any Constitutional deficiencies in the pre-amendment forfeiture regime.

     B.     Legal Claims and Procedural Background

The specific allegations raised by the representative Plaintiffs are recounted in the Court's prior ruling on the District's Motion to Dismiss Plaintiffs' Complaint. See Brown v. District of Columbia, 115 F. Supp. 3d 56 (D.D.C. 2015). Plaintiffs filed suit on April 25, 2013, bringing a total of sixteen different claims under both the Fourth and Fifth Amendments. The District subsequently moved to dismiss the suit. The Court partially granted the District's motion in August 2015, striking all but five of the claims. See id. at 56. The parties then proceeded to a lengthy period of discovery, and Plaintiffs moved for class certification on all surviving claims except for Claim Ten, as described above.

C.     Proposed Class Definitions

Plaintiffs propose the following class definitions for Claims Three, Five, Seven, and

Fourteen[2]:

Claim Three

[Claim Three consists of] each person whose vehicle at any time during the period beginning three years before the date of filing of the original complaint (4/25/13) and ending on June 2015 (1) had been taken by the District of Columbia for civil forfeiture and was being detained in the custody of the Mayor; or (2) was taken for civil forfeiture and detained in the custody of the Mayor; and (3) was not given a prompt post seizure hearing within five days from the date of taking, or within 35 days of the date of taking if a prosecution relating to the vehicle was initiated and the vehicle was also held for investigation or evidence.

Pl.'s MCC, Proposed Order 2.

Claim Five

[Claim Five consists of] each person (who was not a member of either of the Hardy classes) whose property at any time during the period beginning three years before the date of filing of the original complaint (4/25/13) up until the termination of this action (1) had been taken by the District of Columbia for civil forfeiture and was being detained in the custody of the Mayor; or (2) was taken for civil forfeiture and detained in the custody of the Mayor; and (3) did not receive Notice of Intent to Administratively Forfeit the Following Property.

Id.

Claim Seven

[Claim Seven consists of] each person whose property at any time during the period beginning three years before the date of filing of the original complaint (4/25/13) up until the termination of this action (1) had been taken by the District of Columbia for civil forfeiture and was being detained in the custody of the Mayor; or (2) was taken for civil forfeiture and detained in the custody of the Mayor; and (3) the District did not (i) return the property or (ii) send notice and provide a hearing regarding the owner's right to the property (4) within two weeks after the latter of (a) the Property Clerk or the Office of Attorney General determined that the property was not subject to forfeiture, or (b) 90 days if the District did not conduct a forfeiture determination by that time.

---

[2] While Plaintiffs proposed these definitions in their Renewed Motion for Class Action Treatment, the Court will order the parties to propose revised class definitions for Claim Three and Five that are consistent with this Memorandum Opinion and Federal Rule of Civil Procedure 23(c)(1)(B).

Id. at 2–3.

> Claim Fourteen
>
> [Claim Fourteen consists of] all persons who had been declared CJA eligible or who satisfied the in forma pauperis criteria of the Superior Court at the time their property was taken, whose property at any time during the three year period beginning three years before the date of filing of the original complaint (4/25/13) and ending on 8/22/2013 when the District adopted the Superior Court criteria for evaluating a litigant's in forma pauperis status (1) had been taken for civil forfeiture and was being detained by the District for civil forfeiture or (2) was taken and detained for civil forfeiture; and (3) was declared forfeited in a Mayor's forfeiture determination hearing or who lost the property in a judicial forfeiture proceeding for non payment of the penal bond.

Id. at 3.

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 23(a)

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).  To be certified as a class, Plaintiffs must meet the requirements of Federal Rule of Civil Procedure 23.  All putative classes must first meet the four requirements set forth in Rule 23(a), which provides that class certification is appropriate only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P 23(a).  These four requirements are colloquially referred to as numerosity, commonality, typicality, and adequacy.  See Parker v. Bank of America, N.A., 99 F. Supp. 3d 69, 78 (D.D.C. 2015) (citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013)).  Additionally, some courts have imposed an "implied" fifth requirement that the class be adequately defined and clearly ascertainable—the purpose of which is to "require[ ]

plaintiffs to be able to establish that the general outlines of the membership of the class are determinable at the outset of litigation." Thorpe v. Dist. of Columbia, 303 F.R.D. 120, 139 (D.D.C. 2014).[3]  If a putative class fails to meet any of these requirements, that class may not be certified.

Rule 23 does not specify a minimum number of members that a putative class must contain in order to satisfy the numerosity requirement.  Some appellate courts, however, have held that numerosity is presumed at 40 members.  See, e.g., Marcus v. BMW of North America, LLC, 687 F.3d 583, 595 (3d Cir. 2012); Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). While the D.C. Circuit has not yet spoken on the issue, several district courts in this circuit have applied that presumption.  See, e.g., Hardy v. District of Columbia, 283 F.R.D. 20, 24 (D.D.C. 2012) (citing cases).  Importantly, "[t]he general rule is that a plaintiff need not provide the exact number of potential class members in order to satisfy this requirement . . . . The numerosity requirement can be satisfied so long as there is a *reasonable basis* for the estimate provided." Feinman v. FBI, 269 F.R.D. 44, 50 (D.D.C. 2010) (emphasis in original) (internal quotations omitted).  Indeed, courts may "draw reasonable inferences from the facts presented to find the requisite numerosity."  Coleman through Bunn v. District of Columbia, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting McCuin v. Sec'y of Health and Hum. Servs., 817 F.2d 161, 167 (1st Cir. 1987)).  And "[w]here the balance of these factors is a close call, some courts err in favor of

---

[3] The ascertainability requirement, while adopted by some courts in this district, has been recently disavowed by four federal appellate courts.  See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017); Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc., 821 F.3d 992 (8th Cir. 2016); Rikos v. Procter & Gamble Co., 799 F.3d 497(6th Cir. 2015); Mullins v. Direct Digital, LLC, 795 F.3d 654 (7th Cir. 2015);  see also Geoffrey C. Shaw, Note, Class Ascertainability, 124 Yale L. J. 2354, 2367 (2015) (discussing the ascertainability requirement's inconsistency with the text of Rule 23).  Because the D.C. Circuit has not opined on the requirement, the Court will apply it out of an abundance of caution.

certification because a court always has the option to decertify the class if it is later found that the class does not in fact meet the numerosity requirement." Id.

Rule 23's commonality requirement presents a more nuanced inquiry because "any competently crafted class complaint literally raises common 'questions.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (internal citation omitted); see also Love v. Johanns, 439 F.3d 723, 729–30 (D.C. Cir. 2006) ("[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality."). Instead, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart, 564 U.S. at 350 (internal quotations omitted). This requirement is usually met when the class members "challenge policies or practices that apply to all members of the class." 5-23 Moore's Federal Practice – Civil § 23.23 n.7.5.1.

The typicality requirement "aims at ensuring that the class representatives have suffered injuries in the same general fashion as absent class members." Hardy, 283 F.R.D. at 26 (internal quotations omitted). "Generally speaking, typicality is satisfied when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." Daskalea v. Washington Humane Soc., 275 F.R.D. 346, 358 (D.D.C. 2011) (citing In re XM Satellite Radio Holdings Secs. Litig., 237 F.R.D. 13, 18 (D.D.C. 2006)). Importantly, "[t]he facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." Id. (citing Radosti v. Envision EMI, LLC, 717 F. Supp. 2d 37, 52 (D.D.C. 2010)).

Rule 23(a)'s last requirement—adequacy of representation—imposes two criteria on plaintiffs seeking to represent the class: "(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." Twelve John Does v. Dist. of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) (internal citation omitted). This is not a stringent requirement, as a conflict "must be fundamental" and "go to the heart of the litigation" in order to preclude certification. Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430–31 (4th Cir. 2003) (quoting 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed. 2002)).

B.    Federal Rule of Civil Procedure 23(b)

Once plaintiffs satisfy Rule 23(a)'s requirements, they must then choose a type of class action under Rule 23(b) and meet the requirements of that class type as well. Plaintiffs here seek certification under both Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) provides that a court may certify a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) states that a court may certify a class "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In short, a (b)(2) class is appropriate where plaintiffs

seek declaratory or injunctive relief, while the more stringent (b)(3) class is appropriate where individualized monetary damages are sought.

Where, as here, a putative class seeks *both* declaratory relief and individualized damages, the appropriate class type depends on which form of relief predominates. In Wal-Mart, the Supreme Court reversed the decision of a district court to certify a class of female Wal-Mart employees under Rule 23(b)(2) that had sought both injunctive and declaratory relief, along with punitive damages and backpay stemming from alleged sex discrimination. 564 U.S. at 344–45. In doing so, the Supreme Court held:

> [R]espondents' claims for backpay were improperly certified under Federal Rule of Civil Procedure 23(b)(2). Our opinion in Ticore Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994) (per curiam) expressed serious doubts about whether claims for monetary relief may be certified under that provision. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief . . . . In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class . . . . [I]t does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

Wal-Mart, 564 U.S. at 360–61; see also Taylor v. Dist. of Columbia Water & Sewer Auth., 241 F.R.D. 33, 47 (D.D.C. 2007) ("Certification under Rule 23(b)(2) is not always appropriate, however, when a class seeks monetary damages in addition to injunctive [or declaratory] relief; indeed, it is not permitted if such monetary claims predominate."). Because monetary damages predominate each claim under which Plaintiffs seek class certification, the Court will evaluate the claims under Rule 23(b)(3).

  C. <u>Class Certification Standard and Burden of Proof</u>

"Class certification motions have their own distinct burdens and fact finding requirements." Parker v. Bank of Am., N.A., 99 F. Supp. 3d 69, 80 (D.D.C. 2015). With respect to factual findings, courts must make their own "to the extent necessary to rule on a motion for

class certification." Id. at 80.  The Supreme Court has characterized the required fact finding as "rigorous," and noted that it may "overlap with the merits of the plaintiff's underlying claim." Wal-Mart, 564 U.S. at 354; see also id. at 351 ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (internal quotation marks omitted).

To satisfy their burden of persuasion, plaintiffs must generally show that they have met the requirements of Rule 23 by a preponderance of the evidence.  Id. at 354.  However, the Supreme Court's decision in Wal-Mart suggests that a more stringent standard should apply to proving Rule 23's commonality and predominance requirements in certain cases.  Id.  In Wal-Mart, the Supreme Court ostensibly heightened the standard for showing that a defendant's custom, policy, or practice caused a class-wide injury from a "preponderance of the evidence" to "significant proof."  A fellow judge in this district has described the standard as follows:

> Notably, when the commonality element of a class certification motion hinges on the plaintiff's contention that the defendant has engaged in a policy or practice that has consistently and uniformly injured the putative class members, the plaintiff must provide *'significant proof'* that such a policy or practice exists.  Wal-Mart, 564 U.S. at 354.  In other words, the movant must do more than merely *allege* a common contention that conceivably could give rise to the conclusion that there has been the same classwide injury; he must support that allegation with significant evidence.  Id.  Although it appears that '[c]ourts have taken different views of whether Wal-Mart's significant proof standard applies to all class certification decisions or only to claims alleging systemic discrimination,' Parsons v. Ryan, 754 F.3d 657, 684 n. 29 (9th Cir. 2014), . . . this Court sees no reason to make any such distinction.

Parker, 99 F. Supp. 3d at 81 (emphasis in original).  Consistent with this analysis, a preponderance standard generally applies to Rule 23's requirements.  But when class certification turns on an alleged custom, practice, or policy of the defendant, a heightened standard applies to the relevant prongs of Rule 23.

## III.    Discussion

The Court now turns to whether Plaintiffs have met Rule 23's requirements with respect to each claim on which they seek certification.  The Court finds that Plaintiffs have cleared the bar for Claims Three and Five, but have failed to do so for Claims Seven and Fourteen.

### A.    Claim Three: Interim Post-Seizure Hearings

#### 1.    Rule 23(a) Factors

Plaintiffs satisfy Rule 23(a)'s requirements for Claim Three, which alleges that the former statute violated their due process rights by failing to provide interim hearings at which they could challenge the seizure and continued retention of their vehicles pending a final forfeiture determination.  First, Plaintiffs have met their burden to establish numerosity. Plaintiffs' Exhibit 35 is the District's response to a Freedom of Information Act request that contains annual reports from the MPD's Asset Forfeiture Unit.  See Pl.'s MCC, Ex. 35.  The reports provide statistics on the number of vehicles that MPD seized for forfeiture in 2010, 2011, and 2012.  Id. at 3–14.  The MPD seized at least 229 vehicles in 2012, alone.  Id. at 4.  And for the three-year period from 2010 to 2012, which roughly aligns with the class period, the MPD seized at least 839 vehicles.  See id. at 4–12.  This tally is more than enough for the Court to find that there is a "reasonable basis" for determining that numerosity has been satisfied.  Feinman, 269 F.R.D. at 50.

Moving to the commonality requirement for Claim Three, the Court agrees with Plaintiffs that the District's civil forfeiture statute constitutes a "uniform policy or practice that affects all class members," Pl.'s MCC 14–15, insofar as the absence of interim hearings was a feature of the statute itself.  See Brown, 115 F. Supp. 3d at 63–68.  In other words, every person whose vehicle was seized pursuant to the District's forfeiture law during the class period sustained the

11

constitutional injury alleged in Claim Three.  See Second Amend. Order & J., Krimstock v. Kelly, 2005 U.S. Dist. LEXIS 43845, at *2–3 (S.D.N.Y. Nov. 29, 2005) (certifying a class of persons whose vehicles were seized by the police without a prompt post-seizure hearing, and noting that Rule 23(a)'s requirements were met "because the issues in this action are entirely issues of law and recur whenever a vehicle is seized by the Police Department at the time of the arrest of a driver").  Thus, class action treatment for this claim will "generate common answers apt to drive the resolution of litigation."  Wal-Mart, 564 U.S. at 350.

With respect to typicality, the District maintains that the claims of the representative Plaintiffs are too distinct to meet this requirement.  For example, the District argues that Plaintiffs Ishebekka Beckford, Nickoya Hoyte, and Steven May are atypical because they could have received a post-seizure hearing under Superior Court Rule of Criminal Procedure 41(g), thus obtaining "the post-seizure hearing they claim they were entitled to under the Fifth Amendment."  Def.'s Opp'n 20.[4]  This argument misses the mark.  To be sure, "[c]ourts in this district have generally found Rule 41(g) to be a constitutionally adequate means of obtaining the return of seized property in criminal cases."  Jenkins v. Dist. of Columbia, No. 16-cv-118, slip op. at 8 (D.D.C. Mar. 28, 2017).  But the same cannot be said of Rule 41(g) motions in the civil forfeiture context, specifically.  As the D.C. Court of Appeals has explained, "the reason for the difference is substantive, because instead of only the [property owner] laying claim to the property, his right to it has been disputed by the government's seizure of the property [for forfeiture]."  Dist. of Columbia v. Dunmore, 749 A.2d 740, 745 (D.C. 2000).  The D.C. Court of

---

[4] D.C. Superior Court Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . . If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."  Sup. Ct. R. Crim. P. 41(g).

Appeals went on to describe a motion brought under Rule 41(g) as a "simple matter" that is "inapplicable where 'competing claimants' vie for property." Id. at 744–45 (quoting Stevens v. United States, 462 A.2d 1137, 1339 (D.C. 1983)).  Notwithstanding its current position on the issue, the District voiced agreement with this characterization in a prior case:

> A Rule 41(g) motion is not directly relevant to the civil forfeiture proceedings. Under District of Columbia law, a Rule 41(g) motion may be used to seek release of property that was unlawfully seized and thus not admissible as evidence in the criminal case, but it may not be used to adjudicate forfeiture issues, which may only be addressed in civil forfeiture proceedings.

Brown, 115 F. Supp. 3d at 65 n.2 (citing Defs.' Suppl. Filing, Simms v. Dist. of Columbia, No. 12–cv–00701, at *2 (D.D.C. June 22, 2012)).  Thus, because Rule 41(g) motions do not provide the full relief sought by Plaintiffs, the availability of these hearings to certain Plaintiffs does not render those Plaintiffs' claims atypical.  The District's additional attempts to highlight minor factual differences among the putative class representatives to defeat a finding of typicality are similarly unavailing.  See Def.'s Opp'n 21–22.  After all, "the facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative." Daskalea, 275 F.R.D. at 358.  The Court therefore finds that Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

Plaintiffs also satisfy Rule 23(a)'s final requirement of adequacy of representation. Plaintiffs all share the same interest in obtaining damages from the District's failure to provide post-seizure hearings, and the District has not alleged that Plaintiffs lack competent legal representation.  And to the extent the Court is required to consider the definiteness and ascertainability of the proposed class, the Court finds these implicit requirements met as well. The class is adequately defined, as it includes any individual whose property was seized and was not provided with a prompt interim hearing.  See Pl.'s MCC, Proposed Order 2.  And the class is

13

ascertainable because Plaintiffs have shown that MPD has the names and addresses of the owners of seized vehicles in a database.  Pl.'s MCC, Ex. 80, 1–2 (Affid. of Michael Hamman).

### 2.    *Rule 23(b) Factors*

Because Plaintiffs seek individualized monetary damages, they must meet Rule 23(b)(3)'s requirements of predominance and superiority.  See supra Part II.B.  These requirements are met because Plaintiffs can prove injury on a class-wide basis without conducting individualized inquiries.  See In re Rail Fuel Surcharge Antitrust Litigation-MDL No. 1869, 725 F.3d 244, 252–53 (D.D.C. 2013) (noting that in determining if Rule 23(b)(3)'s requirements have been satisfied, a district court may assess "whether the plaintiffs could show, through common evidence, injury in fact to all class members from the alleged [unlawful actions of the defendant]").  The alleged injury in Claim Three—the failure to provide prompt post-seizure hearings—was the result of a systemic District policy implemented consistent with the former asset forfeiture statute, which did not require such hearings.  There is no need to assess the injury on a member-by-member basis because the District did not provide the required hearings to *any* property owners.  This was the District's policy and practice, and thus, from a pragmatic standpoint, class adjudication is appropriate.

The District's arguments to the contrary are unavailing.  It contends that Claim Three "will require an examination of each class member's individualized circumstances" because: (1) some class members may have sought the return of property by filing a motion under Superior Court Rule of Criminal Procedure 41(g); (2) some class members may have filed a petition for remission or mitigation of an administrative forfeiture under D.C. Code § 48–905.02(d)(3)(F); (3) some class members may have submitted a property claim form; and (4) some of the seized vehicles were held as evidence in criminal proceedings.  Def.'s Opp'n 31.

The first argument fails because, as stated in the above discussion on typicality, Rule 41(g) motions would not have provided the full relief sought even if they were available to some class members. The second argument falters because petitions for remission or mitigation of an administrative forfeiture are not available until *after* property has been forfeited. See D.C. Code § 48–905.02(d)(3)(F); Simms v. District of Columbia, 872 F. Supp.2d 90, 93 n. 3 (D.D.C. 2012) ("A person with 'an interest in forfeited property' may file with the Mayor a petition for remission or mitigation of the forfeiture . . . but . . . this administrative option is not available until after the property has been declared forfeited."). The third argument misses the mark because while some class members may have gone through the process of filing a claim and paying the bond—which would have initiated forfeiture proceedings in D.C. Superior Court— this process was by no means "prompt," and would not have provided Plaintiffs an opportunity to obtain temporary possession of the cars pending an ultimate forfeiture determination. And while the District's fourth argument is on point, it is irrelevant to the certification of this class because the Court has ruled that individuals whose property was seized as evidence in an ongoing criminal proceeding do not have a due process right to a prompt post-seizure hearing and thus cannot be members of the class. See Jenkins, No. 16-cv-118, slip op. at 1.

Finally, the parties dispute how the issue of damages affects predominance and superiority. The District claims that the "individualized determination of damages precludes certification under Rule 23(b)(3)." Def.'s Opp'n 41. Not so. In Wal-Mart, the Supreme Court found it "clear that individualized monetary claims belong in Rule 23(b)(3)." 564 U.S. at 362. The D.C. Circuit has likewise held that "the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification." McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984).

The District also asserts that the individualized damages sought cannot be computed by a mathematical formula, and thus would require the Court to conduct separate "mini-trials."   See Def.'s Opp'n MCC 41–42.   A formulaic approach to determining individualized damages is indeed consistent with Rule 23, and has been used in others cases.   See, e.g., Brown v. Pro Football, Inc., 146 F.R.D. 1, 5 (D.D.C. 1992) (noting that plaintiffs relied on a "simple, common formula" to measure damages for each class member); see also Windham v. Am. Brands, 565 F.2d 59, 68 (4th Cir. 1977) ("[I]n cases where the fact of injury and damage breaks down on what may be characterized as virtually a mechanical task, capable of mathematical or formula calculation, the existence of individualized claims for damages seems to offer no barrier to class certification.") (internal quotation marks omitted).   But importantly, "Plaintiffs do not need to supply a precise damage formula at the certification stage."   Meijer, Inc. v. Warner Chilcott Holdings Co., 246 F.R.D. 293, 310–11 (D.D.C. 2011).   Rather, "[a]t the certification stage, the preliminary inquiry in assessing the proposed methods [of calculating damages] is limited:  The inquiry is not whether the methods are valid, but is only to assess whether the methods are available to prove damages on a class-wide basis."   In re Vitamins Antitrust Litigation, 209 F.R.D. 251, 268 (D.D.C. 2002).   Plaintiffs have, nonetheless, offered a three-step formula for calculating each class member's damages:

> The first step is to calculate the number of over-detention days for each vehicle. Step two is to determine the per day rental value of the vehicle based on the fair market value of the vehicle . . . Step three is to multiply the number of over-detention days (Seizure Date minus Hearing Date) by the per day rental value of the vehicle.

Pl.'s MCC 36.  Plaintiffs further assert that the data concerning the number of over-detention days and the value of each seized vehicle is available in MPD's property database, and that the rental value of the seized vehicles can be determined by an expert witness.  Id. (citing Ferrari v. County of Suffolk, 2015 WL 3853489, at *2 (E.D.N.Y. 2015) (noting that an expert witness

testified as to a vehicle's rental value)). While the Court need not adopt this precise damages framework now, it is satisfied that methods are available to determine damages on a class-wide basis. It therefore finds that Plaintiffs have satisfied the requirements of Rule 23(a) and 23(b)(3), and will grant Plaintiffs' Motion for Class Certification with respect to Claim Three.

B.    Claim Five: Post-Seizure Notice

The Court next turns to Claim Five, which alleges that the District had a custom and practice of failing to notify property owners that their property had been seized and was subject to forfeiture. While the former forfeiture law required the District to provide notice to any person having "a right of claim to the seized property," D.C. Code § 48-905.02(d)(3)(A), Plaintiffs contend that the District violated their due process rights by mailing the required notices to obviously incorrect addresses or by not mailing them at all.[5]

1.    *Rule 23(a) Factors*

Plaintiffs satisfy Rule 23(a)'s factors for Claim Five. To demonstrate numerosity, Plaintiffs have filed with the Court an affidavit from their expert, Samuel Strickland. See Pl.'s Claim 5 Reply MCC, Ex. A ("Strickland Affid."). Mr. Strickland asserts that he is an attorney

---

[5]   The Court previously dismissed three additional claims by Plaintiffs related to the former forfeiture law's notice requirement. First, the Court rejected Plaintiffs' contention that due process required the District to provide notice at the time the property was seized. Brown, 115 F. Supp. 3d at 68. The Court also dismissed Plaintiffs' claim that the *content* of the notice was constitutionally inadequate. Id. at 69–70. While these notices already included the property that was seized and the legal basis for the seizure and potential forfeiture, Plaintiffs contended that due process also required them to list "the underlying factual basis for the seizure, the court case or arrest number connected with the seizure, and various details of the forfeiture process." Id. at 69. Finally, the Court dismissed Plaintiffs' challenge to the *ex parte* proceedings that occurred when an owner of seized property failed to file a claim and pay the bond (or secure a bond waiver). Id. at 70 (citing D.C. Code § 48-905.02(d)(3)(C)). Specifically, Plaintiffs alleged that the District allowed some property owners to participate in the proceedings— notwithstanding their *ex parte* nature—and failed to notify all owners of seized property that participation was possible. Id.

with 16 years of "experience analyzing data and documents for the development of evidence in litigation." Id. at ¶ 2. According to the affidavit, Strickland reviewed the records that the District provided to Plaintiffs during discovery from MPD's "EvidenceOnQ" property database. See id. at ¶¶ 1–3. The data was exported into a spreadsheet that, according to Strickland, "has fields which seem to be populated when the District sends notice of intent to administratively forfeit property to the owners of vehicles and money which the District has seized for forfeiture determinations." Id. at ¶ 4. Strickland further asserts that these fields "are populated in only about 57% of the [more than 10,000] seizure records," id. at ¶ 5, indicating that the District failed to send notices to thousands of property owners. Strickland's declaration goes on to contend that even in the many cases where the District *sent* the requisite notice, it is not clear whether the notice was actually *received* by the property owner. Id. at ¶¶ 6–7. Strickland bases this contention on additional documents generated by the District in connection with individual seizures, including "postal documents indicating that a notice of intent to administratively forfeit property was sent by registered mail and whether the letter was received or 'signed for.'" Id. at ¶ 6. He claims that "proof of receipt of notice by the addressee is present in only three out of more than 10,000 records of property seizure." Id. at ¶ 7.

The District has not offered any documentary evidence to rebut Strickland's conclusions. It argues instead that Strickland may not have considered other materials in which MPD *could have* memorialized the mailing of notices, such as "[n]otes and [e]dits logs produced to plaintiffs." Def.'s Claim 5 Surreply 4 (internal quotation marks omitted). The District points to the deposition testimony of Lt. Derek Gray, who managed the MPD division responsible for mailing out the required notices. Id. Lt. Gray testified that when MPD sent out a forfeiture notice, it placed an entry in the "notes field" of the corresponding EvidenceOnQ seizure record.

Def.'s Claim 5 Surreply, Ex. A at 150:15 ("Gray Dep."). This testimony, however, does not appear to contradict Strickland's assertion that he based his analysis on the "[EvidenceOnQ] fields which seem to be populated when the District sends notice." Strickland Affid. at ¶ 4. There is, moreover, no evidence in the record to suggest that MPD memorialized its mailing of forfeiture notices anywhere other than the data fields identified by Plaintiffs' expert.

Plaintiffs' position on numerosity is further supported by Lt. Gray's prior deposition testimony in the Hardy litigation. See Pl.'s MCC, Ex. 75 ("Gray Dep."). To be sure, Hardy concerned allegations that the District failed to provide forfeiture notices to incarcerated prisoners; MPD's evidence control division allegedly did not check if a property owner was incarcerated before mailing the notice to the owner's last known address. 283 F.R.D. at 22–23. However, Lt. Gray stated that as a general matter, MPD's evidence control division did not follow up on undelivered returned mail by looking for alternate addresses. Id. at 24 (citing Gray Dep. at 56–57). From these facts, the Court can reasonably infer that there are at least 40 class members for Claim Five, and that Plaintiffs have thus satisfied numerosity.

The Court reaches the same conclusion for commonality. True, the alleged failure to provide notice was not an explicit policy; the former forfeiture statute, after all, required the District to provide notice. But the EvidenceOnQ data provided to Plaintiffs suggests that the District's failure to provide notice was sufficiently widespread to constitute a common custom or practice. See Affid. of Samuel Strickland ¶¶ 3–7 (indicating that notice was not provided to property owners in 43% of the more than 10,000 seizures). And, as stated above, the District has failed to meaningfully refute the factual assertions in the Strickland affidavit. Accordingly, a class action is likely "to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart, 564 U.S. at 350 (emphasis in original). Judge Wilkins reached the same conclusion in

Hardy, where he held that the District's alleged failure to provide notice as required under the statute presented a common question of law or fact and constituted a "custom, practice, or policy" that warranted class action treatment.  Hardy, 283 F.R.D. at 24.  The Court is thus satisfied that Plaintiffs' allegation that the District failed to make reasonable efforts to provide notice here poses a common question of law or fact.

Turning to typicality, the District offers evidence that it contends establishes that certain named Plaintiffs for Claim Five were, in fact, given notice that their property was subject to forfeiture.  Specifically, the District has provided copies of the notices that were ostensibly sent to several Claim Five Plaintiffs, including Kelly Hughes, Terrence Thomas, and Shane Lucas.  See Def.'s Opp'n MCC, Ex. 17.  The District contends that because these Plaintiffs received notices, their claims are not typical of the proposed class.  But the District's evidence is unavailing because the relevant notices do not indicate whether they were actually received.  Indeed, Plaintiffs Hughes and Lucas have sworn that they did not receive these notices.  See Pls.' MCC, Ex. 14 at ¶ 26 (Decl. of Kelly Hughes) ("I never received the notice [of forfeiture] by mail at [my] address nor did anyone else at that address receive notice from the District about my car."); Ex. 44 at ¶ 8 (Decl. of Shane Lucas) ("The District never sent me a notice of any kind indicating that the money was subject to forfeiture.").[6]  Moreover, even if these Plaintiffs received a forfeiture notice, there remains at least one named Plaintiff who satisfies typicality.  See, e.g., Pl.'s MCC, Ex. 13 (Affid. of Nickoya Hoyte) (alleging that while the District seized both her vehicle and cash, she only received a forfeiture notice for the vehicle).  Rule 23, after all, provides that "*[o]ne or more* members of a class may sue or be sued as representative parties

---

[6] Plaintiff Thomas does not indicate in his affidavit whether he eventually received a forfeiture notice, asserting only that he did not receive a forfeiture notice *at the time of seizure*.  See Pl.'s MCC, Ex. 72.

on behalf of all members." Fed. R. Civ. P. 23(a) (emphasis added). Since Plaintiffs have demonstrated that at least one of their named representatives for Claim Five satisfies typicality, the Court finds that typicality is satisfied for Claim Five.

The Court next turns to adequacy of representation. After closely reviewing the record, the Court finds no basis for the District's contention that the named Plaintiffs would not fairly and adequately protect the interests of the class.[7] The District, moreover, does not argue that Plaintiffs' counsel is unable to vigorously prosecute the interests of the class. The Court is thus satisfied that Plaintiffs meet Rule 23's adequacy requirement. And to the extent that the Court is required to consider the definiteness and ascertainability of the proposed class, the Court finds these implied requirements satisfied. The Claim Five class is adequately defined, see Pl.'s MCC, Proposed Order 3, and it is ascertainable given that the District has provided Plaintiffs with specific seizure records from its EvidenceOnQ database that indicate whether notice was sent.

## 2.    Rule 23(b) Factors

The Court also finds that Plaintiffs satisfy Rule 23(b)(3)'s requirements of predominance and superiority for Claim Five. Given the EvidenceOnQ data obtained in discovery, which provides more than 10,000 seizure records, it would appear that Plaintiffs can present evidence of injury on a class-wide basis without conducting individualized inquiries. And as Judge Wilkins noted in certifying a very similar notice claim in Hardy, "[e]ven assuming the District has evidence that it did follow up on any particular undelivered notice, the District can come

---

[7] The District has suggested that the depositions of the named Plaintiffs, which occurred after briefing was closed on Plaintiffs' class certification motion, could reveal information that would call into question the adequacy of class representation. See Hr'g Tr. 59:21–60:8 (Mar. 13, 2017). Now that those depositions have taken place, the District is free to move to decertify the Claim Three and Claim Five classes if it believes that the named Plaintiffs do not clear Rule 23's relatively low adequacy bar.

forward with that evidence without disrupting the class action." Hardy, 283 F.R.D. at 28 (citing

7AA Charles Alan Wright, et al., Federal Practice and Procedure § 1778 (3d ed. 2005) ("[W]hen

one or more of the central issues in the action are common to the class and can be said to

predominate, the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately.")).

       The Court is also satisfied that individualized damages can be calculated for Claim Five

without resorting to separate mini-trials. While Plaintiffs initially asserted that the measure of

damages is the value of the property seized, they later contended that the same formula for

determining damages in Claim Three could be used for Claim Five. See Pls.' MCC 42–43; Pls.'

Reply MCC for Claim Five 19. The Court is satisfied that either of the above approaches would

be generally consistent with Rule 23(b)(3). The former approach was approved for calculating

damages on the notice claim in Hardy. See 283 F.R.D. at 28 ("[T]he damages are fixed in that

the District's own records . . . reflect the monetary amount that each plaintiff lost. Even

assuming interest were to apply to those sums, the calculation of damages claims in this case

would clearly be a mechanical task."). While this claim, unlike in Hardy, also concerns vehicle

seizures, the additional step of determining a vehicle's value is no barrier to class certification

because Plaintiffs have already established that this can be determined by an expert. See supra

Part III.A.2. And with respect to the formulaic approach for Claim Five, the Court again need

not endorse any precise formula or valuation method at this stage or determine whether some

variation of the same formula used for Claim Three would be appropriate here. See id. It

suffices for class certification purposes that damages can be determined from the general

formulaic approach proposed by Plaintiffs. The Court is thus satisfied that class action treatment

of Claim Five would serve the interests of judicial economy and efficiency without sacrificing

procedural fairness.

Finding that Plaintiffs have satisfied the requirements of Rule 23(a) and 23(b), the Court

will grant Plaintiffs' Motion for Class Certification with respect to Claim Five.

C.    Claim Seven: Failure to Promptly Return Non-Forfeitable Property

The Court next turns to Claim Seven, which alleges that MPD violated certain Plaintiffs'

due process rights by failing to promptly return their property after it determined the property

was no longer subject to forfeiture.  Plaintiffs have not satisfied Rule 23's requirements for this

claim primarily because they have not offered evidence showing the frequency with which the

alleged injury occurred.  For example, Plaintiffs argue that numerosity is satisfied for Claim

Seven because "since January 1, 2010, approximately 598 vehicles have been initially seized for

forfeiture in connection with criminal activity but later released before forfeiture."  Pl.'s MCC at

11 (citing Pl.'s MCC, Ex. 3 at ¶ 4(a) (Second Supp. Decl. of Lt. Gray in Simms v. Dist. of

Columbia, 12-cv-701 (D.D.C. June 9, 2012)).  While this statistic may be true, it says nothing

about how many vehicles the MPD failed to *promptly* return.  And since Plaintiffs offer no

additional evidence that numerosity has been satisfied, the Court must find that this requirement

is not met for Claim Seven.

While the Court must deny Plaintiffs' Motion for Class Certification with respect to

Claim Seven since numerosity has not been satisfied, it will briefly address the remaining Rule

23 factors out of an abundance of caution.  First, commonality is not satisfied.  Plaintiffs have

not shown that a class action can answer the question of whether the District failed to promptly

return vehicles, primarily because they have not provided *any* evidence that this was a

widespread practice.  Without such evidence, the question begs an individualized inquiry.  For

this reason, Plaintiffs also cannot satisfy typicality, predominance, and superiority. The Court must therefore decline to certify Claim Seven.

    D.    Claim Fourteen

    Finally, the Court turns to Claim Fourteen, which concerns the former civil forfeiture statute's bond waiver requirement. Claim Fourteen initially contained both a facial challenge *and* an as-applied challenge. See Brown, 115 F.3d at 71. The former alleged that the statute's bond requirement was unconstitutional on its face. The latter alleged that the District violated the due process rights of some Plaintiffs by discouraging them from applying for bond waivers, and by unreasonably denying waivers to others. The Court granted the District's Motion to Dismiss the facial challenge, allowing only the as-applied challenge to proceed. See id. at 70–72. What remains of Claim Fourteen, however, is clearly inappropriate for class-wide resolution.

    Plaintiffs attempt to satisfy numerosity by arguing that the class for Claim Fourteen includes every property owner who was deemed eligible for a bond waiver. Not so. Because the Court dismissed Plaintiffs' facial challenge, the potential class for what remains of Claim Fourteen includes anyone who was discouraged from applying for bond waivers, and anyone who was unreasonably or arbitrarily denied a bond waiver. Plaintiffs' Motion for Class Certification identifies only two plaintiffs—Dorian Urquhart and Steven May—who claim that they suffered either or both of these injuries. Pl.'s MCC at 21–22 (citing Ex. 16 at ¶¶ 15–16 ("Affid. of Steven May"); Ex. 73 at ¶¶ 11–14 ("Affid. of Dorian Urquhart")). The remaining Plaintiffs in the Second Amended Complaint who were labeled "Penal Bond Named Plaintiffs" appear to be individuals who paid the bond—and thus sought to challenge the facial validity of the bond requirement—but were neither discouraged from seeking a waiver nor improperly denied a waiver. See, e.g., Pl.'s MCC, Ex. 13 at ¶¶ 24–28 ("Affid. of Nickoya Hoyte").

24

Plaintiffs have not offered additional evidence in support of numerosity.  The Court, therefore, must find that numerosity has not been satisfied.

Rule 23's remaining requirements are also not satisfied for Claim Fourteen.  Plaintiffs address the commonality requirement by arguing that "[t]he uniform policy or practice that affects all class members [in Claim Fourteen] is that the Property Clerk had a practice of virtually never granting applications for waiver or reductions bonds . . . when the District adopted the Superior Court criteria for evaluating a litigant's *in forma pauperis* status."  Pl.'s MCC at 21.  But Plaintiffs have not offered any proof in support of the contention that this occurred on a class-wide basis.  For this reason, Plaintiffs also fall well short of meeting Rule 23(b)(3)'s requirements that class-wide issues predominate over individual issues, and that a class action is superior to other forms of adjudication.  The Court will therefore deny Plaintiffs' Motion for Class Certification with respect to Claim Fourteen.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motion with respect to Claims Three and Five, and will deny the motion with respect to Claims Seven and Fourteen.  A separate Order accompanies this Memorandum Opinion.

_Christopher R. Cooper_
_____
CHRISTOPHER R. COOPER
United States District Judge

Date: July 27, 2017