# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**NICKOYA HOYTE**, et al.,

Plaintiffs,

v.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**,

Defendant.

Civil Action No: **13-569 (CRC)**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR

## PARTIAL SUMMARY JUDGMENT

The District's civil forfeiture regime placed an enormous burden on the most vulnerable members of our community and it also fundamentally violated a sense of core fairness regarding property rights. As Alexander Hamilton stated, "[g]overnment is instituted no less for protection of the property, than of the persons, of individuals." The Federalist Papers, No. 54 (Alexander Hamilton or James Madison); *see also* Boyd v. United States, 116 U.S. 616, 627 (1886) ("The great end for which men entered into society was to secure their property.").[1]

Yet, "[t]his [civil forfeiture] system—where police can seize property with limited judicial oversight and retain it for their own use—has led to egregious and well-chronicled abuses," Statement of Justice Thomas respecting the denial of certiorari, Leonard v. Texas, 137 S. Ct. 847, 847 (2017). "These forfeiture operations frequently target the poor and other groups least able to defend their interests in forfeiture proceedings," he noted. *Id.* at 848. And the only justification for

---

[1] Plaintiffs' motion for partial summary judgment is filed at [176].

forfeiture is "a discrete historical practice" much narrower than present day civil forfeiture procedures. *Id.* at 848-849.

The criticism of civil forfeiture comes from across the ideological spectrum. The following organizations submitted amicus briefs opposing civil forfeiture used against ordinary citizen: Southern Poverty Law Center and the Cato Institute (jointly filed); National Association of Criminal Defense Lawyers; Chamber of Commerce of the United States of America. Timbs v. Indiana, No. 17-1091, 2018 U.S. LEXIS 3725 (June 18, 2018)(granting petition for cert. to decide whether the Excessive Fines Clause of the Eighth Amendment is incorporated against the States in civil forfeiture proceeding); *see also* Institute for Justice, Policing for Profit: The Abuse of Civil Asset Forfeiture, 2nd Edition.

The District's civil forfeiture statute in effect during the Class Period was a pre-CAFRA version so it had all of these defects and more which converted the system into a wealth stripping machine, "characterized by financial conflicts of interest, lack of transparency, undue severity, arbitrariness, and inadequate legal protections." P. Ex. 224, Committee Report on Bill 20-48 "Civil Asset Forfeiture Amendment Act of 2014," p. 6 ("Committee Report"). The proximity presumption was an administrative forfeiture generating machine. P. Ex. 224, Committee Report, p. 20.

While civil forfeiture was intended to combat drug kingpins and to disrupt criminal enterprises, it is commonly used against individuals possessing small amounts of controlled substances. P. Ex. 224, Committee Report, p. 25. The median amount of cash seized among the owners represented in the Hardy lawsuit was a mere $120. *Id.* at 7. The amounts of money

seizures in this case are similar. P. Ex. 236, money spreadsheet.[2] And most owners, especially owners of property, were found indigent by the Superior Court in the criminal prosecutions in connection with which their vehicles were seized. Mr. Gordon and Ms. Lewis, two of the remining Claim 5 money plaintiffs, were found indigent at the time of seizure. P. Ex. 247, Gordon affidavit; P. Ex. 239, Langly affidavit.

## I.   The District through its MPD during the Class Period seized vehicles and money for civil forfeiture, for evidence, and sometimes for both reasons.

The District through its MPD during the Class Period seized vehicles and money for civil forfeiture, for evidence, and sometimes for both reasons. The MPD seized property as evidence to preserve evidence of wrongdoing, but it seized property for forfeiture determinations to assert ownership and control over the property itself. United States v. James Daniel Good Real Prop., 510 U.S. 43, 52 (1993). All vehicles and money at issue in this case were seized and held for civil forfeiture in the custody of the Mayor. SMF 5. The District suggests some were also held as evidence.

### A.   Statutory Background: Steps in the civil forfeiture process in the District of Columbia.

The seizures and forfeitures at issue in this case were governed by former D.C. Code § 48-905.02 (2012), the then current version of the District's civil forfeiture statute enacted by the D.C. Council. The statute directed the Mayor to administer the forfeiture process including storing the property, making forfeiture determinations, and sending notice to claimants, D.C. Code § 48-

---

[2] Plaintiffs submit three spreadsheets as exhibits, P. Ex. 236, money spreadsheet, P. Ex. 236; the money spreadsheet; and the "no-papered" spreadsheet, P. Ex. 266. The spreadsheets are submitted by delivery and plaintiffs retain the originals. Plaintiffs chose the column headers or column names to make them user friendly and descriptive. Attached is P. Ex. 281, an affidavit explaining the source of the data in each column, the "source name" of the data indicating the original name and the EvidenceOnQue field name on the evidentiary hold data export, and the definition of the column name. The same information is available by "hovering" over the column header on the mouse.

905.02(d), and to issue regulations to implement the civil forfeiture procedure. D.C. Code § 48-905.02(d)(3)(H). Pursuant to Section 48-905.02(d)(3)(H) the Mayor issued rules designating the Property Clerk to administer the civil forfeiture procedure. DCMR §§ 805 to 806. There were several statutory provisions pertaining to forfeiture for various offenses but each one employed generally the procedures outlined in D.C. Code § 48-905.02 in effect during the Class Period by specifically adopting by reference the procedures set forth in § 48-905.02 (controlled substances). *See e.g.*, D.C. Code § 7-2507.06a (transporting gun in a vehicle); D.C. Code § 22-2723 (prostitution-related offense). In February 2015, the D.C. Council enacted amendments which took effect on June 15, 2015. *See* Civil Asset Forfeiture Amendment Act of 2014, 62 D.C. Reg. 1,920 (Feb. 13, 2015). Brown v. District of Columbia, 115 F. Supp. 3d 56, 60 (D.D.C. 2015).

The MPD selected which vehicles to seize according to the statute, D.C. Code § 48-905.02(b), and written policy statements promulgated by the MPD. *See e.g.*, P. Ex. 200, Handling and Accounting for Seized and Forfeited Property [601.3], p. 2 (IV, A-C) (members shall seize property in compliance with this order and applicable laws, as appropriate); P. Ex. 201, Automobile Searches and Inventories, [GO-602.01], p. 11 (I,B,3).

The District's seizure and retention of Mr. Urquhart's 2004 Gran Prix for almost 18 months illustrates the process and the difficulties owners faced trying to get their vehicles back. The MPD seized Mr. Urquhart's 2004 Gran Prix solely for forfeiture on 4/14/2011 without a warrant from a private parking lot. P. Ex. 202, Urquhart affidavit; P. Ex. 203, Urquhart PD 81 ("recovering" officer classified vehicle as "H" hold for forfeiture but not as evidence).

The statute deemed property taken or detained for forfeiture determinations to be in the custody of the Mayor (as opposed to the Property Clerk,) so Mr. Urquhart's 2004 Gran Prix was in the custody of the Mayor after seizure. D.C. Code § 48-905.02(d)(2) ("Property, other than

controlled substances, taken or detained under this section ... is deemed to be in the custody of the Mayor.").

Immediately upon learning of the seizure, Mr. Urquhart called the 4th and 5th MPD districts and he was told that he could not get information about his car over the phone. Urquhart affidavit. So he went to the 4th District MPD station and they told him his vehicle was seized for civil forfeiture. *Id.* No District employee ever told Mr. Urquhart his vehicle was seized or held as evidence. P. Ex. 204, Urquhart depo., p. The MPD also told him that he would have to wait to receive "notice" via mail before anything could be done about his car. P. Ex. 202, Urquhart affidavit.

After MPD seized property for a forfeiture determination the statute called for the Mayor (who designated the Property Clerk to perform this function for the Mayor) to make a determination about the whether there was probable cause to proceed. D.C. Code § 48-905.02(d)(3)(A).

If the Mayor determined that there was no probable cause to proceed or the property was otherwise not forfeitable, the statute called for the Mayor to return the property directly to the "rightful owner." D.C. Code § 48-904.02(d)(3)(C).

If the Property Clerk found probable cause to proceed with forfeiture the statute called for the Mayor to send a form notice of intent to administratively forfeit property to owners and other claimants (for example, lienholders) by registered or certified mail, return receipt requested. D.C. Code § 48-905.02(d)(3)(A). The standard notices of intent to administratively forfeit property informed owners and other claimants that their vehicles were seized for forfeiture determinations, but they said nothing about whether the vehicles were seized or held as evidence by either the MPD or the U.S. Attorney.

The statute permitted the Mayor to administratively forfeit, that is, declare property the property of the District if, but only if, the District had proof in the form of a return receipt that the owner had received actual notice of the District's intent to seek forfeiture and the owner did not fil a claim of interest and intent after 90 days. D.C. Code § 48.905.02(d)(3)(B).

The District virtually never sent notice to owners because there are only a handful of "green cards" showing notice sent in the discovery documents the District provided. P. Ex. 205, Strickland affidavit, ¶ 7.

But, the MPD did send Mr. Urquhart a notice of intent to administratively forfeit the car (dated May 11, 2011) stating that the "penal bond" for the car was $822. P. Ex. 202, Urquhart affidavit, ¶ ; P. Ex. 206, Urquhart notice of intent to administratively forfeit property.

The statute required owners to pay a bond of 10% of the fair market value of their vehicles (or at a minimum $250). D.C. Code § 48-905.02(d)(3)(B). But paying the bond did not mean the owner could "bond" his vehicle out and use it until a verdict in the judicial forfeiture proceeding. It just meant that unless the owner paid the bond the Mayor "administratively forfeited" the vehicle, that is, simply declared the District was new the owner of the vehicle. D.C. Code § 48-905.02(d)(3)(E).

The District virtually never granted bond waiver or reductions.

Under the statute Mr. Urquhart would have lost ownership of his vehicle by administrative forfeiture for not paying a bond or getting a waiver. D.C. Code § 48-905.02(d)(3)(C). He only got his car back at all because the District of Columbia Public Defender Service ("PDS") helped Mr. Urquhart get his Gran Prix back in connection with an injunctive relief class action PDS filed against the District. SMF 115.

Mr. Urquhart had no way to challenge the District's seizure and retention of his car because the D.C. Council did not provide a procedure in the civil forfeiture statute for owners to

challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings. So, under the statute, unless owners could convince the Mayor that they were innocent owners, D.C. Code § 48-905.02(a)(4)(B), D.C. Code § 7-2507.06a(c) (transporting firearms), they had to wait a year or two for the OAG to file a forfeiture case and win the case – if they had money to pay a bond. Even innocent owners had to wait months to get their cars back. In some cases the Mayor allowed owners to keep their vehicles or money if they paid the bond and signed a release.

The D.C. Council intentionally and expressly cut off owners' access to all existing recovery remedies for property seized for forfeiture determinations: Rule 41(g), the Property Clerk, and common law remedies. *See* D.C. Code § 48-905.02(d)(2)(non-contraband property seized for forfeiture is deemed to be in the custody of the Mayor; common law remedies not available); Dunmore, 749 A.2d at 743-45 (Superior Court Rule 41(g) not available once Mayor seizes property for forfeiture determination).

### B.  MPD seizes and classifies money and vehicles as evidence to preserve "potential evidence."

The MPD decided what property to seize as evidence, and the MPD, not the U.S. Attorney, made the initial classification of property as evidence according to criteria set forth in written directives of the MPD which are District of Columbia policy. SMF 34.

The MPD (usually the "recovering" officer) entered the MPD classification of a vehicle on the front page of the PD 81 (Part I.E of the PD Form 81) using codes on the PD 81; E is for evidence, and H is for civil forfeiture. SMF 10.

Revisions to GO-601.01 effective July 2012 instructed members to "mark Part I.E of the PD Form 81 with the code "E/H." SMF 35.

The PD 81 relating to Mr. Urquhart's car shows an H for forfeiture; P. Ex. 203, Urquhart PD 81-C ; P. Ex. Mr. Avila's PD 81 has an E for evidence, P. Ex. 212, Avila PD 81-C; Mr. May's has an F for forfeiture, P. Ex. 257, May PD 81-C; and Ms. Person's has E/H for both forfeiture and as evidence, P. Ex. 213, Person PD 81-C.

The only vehicle in the <u>Jenkins</u> case for which the District submitted a PD 81 as an exhibit was Ms. Taylor's Tahoe. But, Part I on the PD 81 form relating to Ms. Taylor's Tahoe has been removed so the initial MPD classification of the vehicle (Part I.E.) is omitted visible. P. Ex. 214, Taylor PD 81-C. Vehicles seized solely as evidence remain in the custody of the MPD – the Property Clerk – from the point of seizure until the vehicles are released; they are not in the custody of the U.S. Attorney. D.C. Code § 5-119.01 and .02.

The MPD submitted a PD 81-C for Ms. Jenkins in this case (with its original motion for summary judgment regarding evidence only Plaintiffs, [65-2]) that is coded E for evidence but the barcode sticker classifies it as investigation. P. Ex. 214A.

Whether classified solely as evidence, or whether seized as evidence and also for forfeiture, the MPD did not seize vehicles so the vehicles themselves could be offered as evidence at trial. SMF 39.

Affidavits from attorneys who have practiced criminal defense law in the Superior Court on practically a daily basis for over twenty years each, one of whom was an Assistant Attorney General for the District of Columbia in the criminal division for three years and who served as Chief of the Criminal Section in the OAG's criminal division for 11 months from 2008-2009 (Mr. Bruckheim), show that none of them ever saw actual vehicles offered as evidence in a proceeding in District of Columbia Superior Court. SMF 40.

In his oral testimony before the Committee on the Judiciary and Public Safety on the proposed amendments to the civil forfeiture statute, then Attorney General Nathan testified that it

is the "rare case" that a vehicle itself is needed as trial evidence. SMF 43. For example, the District returned all three of the Jenkins vehicles without offering them in any proceeding. Moreover, both Council Member Wells and Attorney General Nathan agreed that vehicles are not as important in a case and the owners have a great need for their prompt return. P. Ex. 219 at 1:02 to 1:03. These statements are binding against the District as admissions of a party opponent Fed. R. Evid. 801(d)(2); United States v. Brown, 503 F. Supp. 2d 226, 229 (D.D.C. 2007).

Instead, any vehicles in this case classified as evidence were seized and classified as evidence by the MPD to preserve any "potential evidence" that might be in the vehicles by searching and inventorying them for items of evidentiary utility, and by processing them for evidence (e.g., by lifting fingerprints), and by taking sufficiently informative photographs. United States v. Lee, 509 F.2d 400, 404 (D.C. 1974)(seizure and search of vehicle justified to preserve "valuable piece of potential evidence" such as any incriminating evidence left in the car or any fingerprints); Avila v. Dailey, 246 F. Supp. 3d 347, 356 (D.D.C. 2017); See e.g., P. Ex. 209, Recording, Handling and Disposition of Property Coming into the Custody of the Department, GO-601.01, p. 3 (property classifications listed at p. 6 (a. to m.), e.g., evidence, found, civil forfeiture, prisoner's property); P. Ex. 201, Automobile Searches and Inventories Order, pgs. 10-11 (I,B,2).

The evidentiary utility of any "potential evidence" that might be in a vehicle is distinct from the vehicle itself. Lee, 509 F.2d at 404 (seizure and search of vehicle justified to preserve "valuable piece of potential evidence" such as any incriminating evidence left in the car or any fingerprints); Avila, 246 F. Supp. 3d at 356 (items removed from the van — the passport, knife, and beer cans — "might have potential evidentiary value in a criminal case" but the van itself would have no such value); Hines v. Albany Police Dep't, 520 F. App'x 5, 7 (2d Cir. 2013) (vehicle in which drugs found has no evidentiary value after vehicle searched and processed and any drugs recovered);

Q.D.G., 706 A.2d 36, 38 n.5 (D.C. 1998)(stolen car was a "tangible object" in the "custody or control" of the District, but only the condition of the ignition was "material to the preparation of respondent's defense.").

The mere fact that a vehicle was seized as the instrumentality of the crime incident to arrest -- even if the arrest were supported by probable cause – is not enough to justify continued detention of the vehicle. In re Smith, 888 F.2d 167, 168 (1989) *citing* Warden v. Hayden, 387 U.S. 294, 307 (1967). To seize and retain otherwise lawful property (as opposed to contraband and stolen goods) as "evidence," the government must also establish "a nexus . . . between the item to be seized and criminal behavior." Hayden, 387 U.S. at 307.

So the evidentiary utility of a vehicle and the government's right to keep it has to be analyzed separately from the contents.

Once the MPD has processed and photographed a vehicle the evidentiary utility of the vehicle itself is exhausted. United States v. Wilson, 540 F.2d 1100, 1103-1104 (D.C. Cir. 1976) ("Wilson I")(court has duty to return property when evidentiary utility exhausted); In re Smith, 888 F.2d at 167-68 (holding that, even though the prosecutor alleged that evidence was needed for a criminal proceeding, the district court had to evaluate this alleged need and to balance the government's interests against the claimant's interests); Avila, 246 F. Supp. 3d at 356 (items removed from the van — the passport, knife, and beer cans — "might have potential evidentiary value in a criminal case" but the van itself would have no such value); Hines, 520 F. App'x at 7 (vehicle in which drugs found has no evidentiary value after vehicle searched and processed and any drugs recovered).

In fact, a vehicle itself is generally no longer even "discoverable" under Rule16 (even where the owner is not the defendant in any criminal case) once it has been processed and photographed. In re Q.D.G., 706 A.2d at 38 n.5 (government could have satisfied its "preservation" obligation

with respect to a stolen vehicle by *either* providing defense with "sufficiently informative photographs" of the damaged ignition or making the vehicle available for inspection by defense).

Column J shows that almost all of the vehicles were seized in connection with basic drug or weapons offenses pursuant to D.C. Code § 48-905.02 (transporting controlled substances) and D.C. Code § 7-2507.06a (transporting gun in a vehicle). SMF 46. A handful were taken for other offenses such as prostitution and illegal dumping and counterfeiting. *Id.* D.C. Code § 22-2723 (prostitution-related offense).

There is no data in the EvidenceOnQue and the associated MPD documents to show that any vehicles in this case were seized in connection with the category of serious crimes such as murder, sex offenses, and other major offenses involving serious injury or biological evidence that require sophisticated evidence collection and analysis techniques. SMF 47.

Therefore, processing the vehicles in this case for evidentiary utility involved nothing more complicated than searching, inventorying, lifting prints, and photographing the vehicles, which Attorney General Nathan testified the District could complete in several days. SMF 48.

Although the Property Clerk physically holds property seized solely as evidence, the Property Clerk holds it subject to the ultimate direction of the court under whose authority the property was seized, that is, in this case, the Superior Court. Wilson v. United States, 424 A.2d 130, 132, n.4 (D.C. 1980)("Wilson II") (adopting the rationale of Wilson and Wright even though not bound by the decisions under M.A.P. v. Ryan, 285 A.2d 310 (D.C. 1971)); United States v. Wilson, 540 F.2d 1100, 1104 (1976); United States v. Wright, 610 F.2d 930, 937 (D.C. Cir. 1979) (clarifying that since the Property Clerk holds property seized as evidence pursuant to the authority of the court the Property Clerk statute does not limit the supervising court's jurisdiction over such property; whoever holds the property does so as agent for, and subject to the ultimate direction of the court under whose authority the property was seized).

Once the evidentiary utility of a vehicle or money is exhausted the Court has a duty to return the property to the owner. Wilson I, 540 F.2d at 1103, 1104 n.4, n. 5; Wilson II, 424 A.2d at 132, n.4. As custodian for the Court, the District has the same duty. *Id.* The policy of the MPD was to photograph and deposit into the District of Columbia Treasury currency seized as evidence or suspected proceeds of crime (that is, investigation). SMF, 55, 56.

### C.  Vehicles classified as both for forfeiture and as evidence.

The MPD also classified some vehicles as both hold for forfeiture and as evidence.

The criteria for seizing a vehicle as evidence are the same whether the vehicle is seized solely as evidence or as evidence on top of for forfeiture. P. Ex. 201, Automobile Searches and Inventories Order, pgs. 10-11 (I,B,2) (seizures for forfeiture), 8 (I,B,1). But, the vehicle remains in the custody of the Mayor. Dunmore, 749 A.2d at 743-44.

### II.  The District is liable to Plaintiffs for depriving them of the use of their vehicles pending the outcome of forfeiture proceedings because the civil forfeiture statute did not provide them prompt post seizure hearings.

The District is liable to Plaintiffs for depriving them of the use of their vehicles pending the outcome of forfeiture proceedings because the civil forfeiture statute did not provide them and other owners prompt post seizure hearings to challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings. Brown v. District of Columbia, 115 F. Supp. 3d 56, 60 (D.D.C. 2015).

The District remains liable even if some of the vehicles were held as evidence to preserve and to remove potential evidence from the vehicle by processing and photographing the vehicles, because vehicles seized for forfeiture are deemed to be in the custody of the Mayor even if they are also classified as evidence by the MPD. *See* D.C. Code § 48-905.02(d)(2)(non-contraband property seized for forfeiture is deemed to be in the custody of the Mayor; common law remedies not available); Dunmore, 749 A.2d at 743-45 (Superior Court Rule 41(g) not available once Mayor

seizes property for forfeiture determination). <u>Jenkins</u> does not change this result because <u>Jenkins</u> is distinguishable from this case on both the facts and the law. <u>Jenkins v. District of Columbia</u>, 2017 U.S. Dist. LEXIS 119157, at 11-12 (D.D.C. 2017).

Moreover, Named plaintiffs and class members have an independent claim under the due process clause for deprivation of their vehicles if held as evidence because there was no process to challenge the deprivation after the evidentiary utility of the vehicle was exhausted or the owners' need for the vehicle outweighed the government's. Named plaintiffs and class members also have an independent 4th Amendment claim if their vehicles were held as evidence after the evidentiary utility of the vehicle was exhausted or the owners' need for the vehicle outweighed the government's.

**A.   The D.C. Council did not provide a procedure in the civil forfeiture statute for owners to challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings.**

The D.C. Council did not provide a procedure in the civil forfeiture statute for owners to challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings. D.C. Code § 48-905.02(d)(2); P. Ex. 224, Committee Report, p. 16 (civil forfeiture statute in effect during the Class Period did not provide interim release hearings); SMF 26.

To the contrary, to prevent owners from challenging either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings, the D.C. Council intentionally and expressly cut off owners' access to all existing recovery remedies for property seized for forfeiture determinations, namely, Rule 41(g), the Property Clerk statute, and common law remedies. S*ee* D.C. Code § 48-905.02(d)(2)(non-contraband property seized for forfeiture is deemed to be in the custody of the Mayor; common law remedies not available);

Dunmore, 749 A.2d at 743-45 (Superior Court Rule 41(g) not available once Mayor seizes property for forfeiture determination).

In fact, the original version of D.C. Code § 48-905.02(d)(2) (then codified as D.C. Code § 33-552(d)) enacted by the D.C. Council provided that "Property... taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the Mayor **subject only to orders and decrees of the Superior Court of the District of Columbia.**" (emphasis added).

But, the D.C. Council deleted the phrase "subject only to orders and decrees of the Superior Court of the District of Columbia" in 1988. P. Ex. 242, D.C. Act 7-217 effective July 15, 1988.

So, under the statute, unless owners could convince the Mayor that they were innocent owners, D.C. Code § 48-905.02(a)(4)(B), owners had to wait a year or two -- if they could afford to pay a penal bond equal to 10% of the value of their vehicles -- for a judicial forfeiture proceeding in which they could challenge the District's seizure and retention of their vehicles. P. Ex. 224, Committee Report, p. 4 (delays of months or years before judicial forfeiture proceedings).

### B.  The District is liable to Plaintiffs in damages for depriving them of the use of their vehicles pending the outcome of forfeiture proceedings.

The District is liable to Plaintiffs in damages for depriving them of the use of their vehicles pending the outcome of forfeiture proceedings because the civil forfeiture statute did not provide them and other owners prompt post seizure hearings to challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings. Simms v. District of Columbia, 872 F. Supp. 2d 90 (D.D.C. 2012); Brown v. District of Columbia, 115 F. Supp. 3d 56, 60 (D.D.C. 2015) (government must provide a prompt opportunity for owners of seized automobiles to challenge the reasonableness of the seizure and propose means to protect the government's interest short of retaining their cars until the conclusion of forfeiture

proceedings**)**; <u>Krimstock v. Kelly</u>, 306 F.3d 40, 70-71 (2d Cir. 2002); <u>Washington v. Marion Cnty.</u>

<u>Prosecutor</u>, 264 F. Supp. 3d 957, 979-80 (S.D. Ind. 2017).

### C. The District is liable to each Named plaintiff and class members in damages.

The District is liable to each Named plaintiff and class member for the fair market daily

rental value for their cars for each day the District held their vehicles after the first 14, or at least 30

days, and other damages.

The District seized and held each of Mr. Urquhart [P. Ex. 202], Ms. Hoyte [P. Ex. 243],

Ms. Hughes [P. Ex. 244], Mr. May, Ms. Person's [P. Ex. 228], and each member of the class', for

the number of days indicated on P. Ex. 220, the vehicle spreadsheet, and their affidavits. Mr.

Urquhart, at least about 18 months; Ms. Hoyte, about 11 months; Ms. Hughes, almost three

months; Mr. May; and Ms. Person, about seven months before she could no longer keep up the

payments.

Since the District concedes the MPD could provide notice for a prompt post seizure

hearing in two business weeks the District should get a grace period of fourteen days instead of

thirty. P. Ex. 218, AG Nathan, Statement. At most the District needed thirty days to provide

prompt post seizure hearings.

The Supreme Court looks to the common law of torts to determine damages under §

1983. <u>Carey v. Piphus</u>, 435 U.S. 247, 258 (1978).  Plaintiffs claim the following primary types of

damages: (1) loss of use of their vehicles; (2) damages to their vehicles; (3) money spent to

maintain insurance and registration while the District held their vehicles; and (4) special damages

attributable to loss of use and efforts to retrieve their vehicles.

Loss of use damages exist to compensate for the deprivation of the owner's right to use its

chattel as the owner sees fit. <u>Kuwait Airways Corp. v. Ogden Allied Aviation Servs.</u>, 726 F. Supp.

1389, 1396 (E.D.N.Y. 1989). The measure for loss of use of the vehicle for Claim Three is the

rental value of a replacement car, even if the owner does not procure a replacement. Ferrari v. Cnty. of Suffolk, 2015 U.S. Dist. LEXIS 82920, at *10-12 (E.D.N.Y. Feb. 25, 2015) *rev'd on other grounds* Ferrari v. Cnty. of Suffolk, 845 F.3d 46 (2d Cir. 2016); Kuwait Airways Corp., 726 F. Supp. at 1396.

In Ferrari the rental value of a car was determined by an expert on the basis of the fair market value of the car. Ferrari, 2015 U.S. Dist. LEXIS 82920, at *4-6. The jury then made the final determination of the rental value of the car based on the expert testimony. Id. at *6-7. Then, the jury determined the amount of damages due the plaintiff by applying the rental value of the car to the number of days of lost use of the car (*i.e.,* the number of over-detention days). *Id.*

Plaintiffs' expert looked at a spreadsheet listing each vehicle and details of the type of vehicle and she assigned a fair market daily rental rate to each vehicle. P. Ex. 222, Faulkner opinion and attachments. Plaintiff's expert witness' testifying to methods a jury can use to estimate damages provides "some reasonable basis on which to estimate damages," which is all the rule requires. United States ex rel. Landis v. Tailwind Sports Corp., 2017 U.S. Dist. LEXIS 195558, at *15 (D.D.C. 2015) *citing* Hill v. Republic of Iraq, 328 F.3d 680, 684, 356 U.S. App. D.C. 142 (D.C. Cir. 2003) (explaining that the Superior Court's opinion in Story Parchment "states the American rule on damages"). Ms. Faulkner is qualified based on "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, because of her more than 30 years in the business, and she applied a reliable methodology (basing her rate estimates on actual rental rate data from the area during the period) and her knowledge of the market. Tailwind Sports Corp., 2017 U.S. Dist. LEXIS 195558, at *21, *et seq.*

The Property Clerk placed a value on each vehicle taken for civil forfeiture during the Class Period for purposes of calculating the penal bond (10% of the fair market value of the vehicle). D.C. Code § 48-905.02(d)(3)(B) and that value is in the EvidenceOnQue export the

District provided in discovery. The value assigned to the vehicle by the Property Clerk pursuant to D.C. Code § 48-905.02(d)(3)(B) is binding on the District as an opposing party's statement. FRE 801(d)(2)(opposing party's statement).

### III. As a matter of law, the District remains liable to Plaintiffs for depriving owners of the use of their vehicles pending the outcome of forfeiture proceedings even if the vehicles were also held as evidence because the District was the moving force behind the deprivations.

The District's "U.S. Attorney imposed forfeiture holds on the vehicles" defense presents the classic Catch 22 for Named Plaintiffs and class members. The D.C. Council cut off owners' access to Super. Ct. Crim. R. 41(g) once the MPD instituted forfeiture proceedings so owners could not challenge the District's retention of their vehicles as evidence, and now, after this Court has ruled that the District should have provided prompt post seizure hearings to challenge forfeiture holds, the District contends in reliance on Jenkins that lurking unseen beneath the forfeiture holds were "evidentiary holds" imposed by the U.S. Attorney which independently blocked release of their vehicles. Even assuming *arguendo* that the U.S. Attorney imposed "evidentiary holds," because the D.C. Council blocked owners' access to a constitutionally adequate recovery remedy, Rule 41(g) by enacting the version of the civil forfeiture statute in effect during the Class Period, the cause of the deprivations was the D.C. Council's blocking owners access to a constitutionally adequate recovery procedure. Jenkins v. District of Columbia, 2017 U.S. Dist. LEXIS 119157, 11-12 (D.D.C. 2017).

But, Jenkins is distinguishable for the following reasons, which negate the District's causation defense as explained below.

Moreover, owners were entitled to a prompt post seizure hearing to challenge "evidentiary holds" after two weeks, the period AG Nathan stated the District needed to process vehicles for evidentiary utility. P. Ex. 218, AG Nathan Written Testimony.

Finally, owners also have an independent 4th Amendment claim for any delay the two week period AG Nathan stated the District needed to process vehicles for evidentiary utility. P. Ex. 218.

So, the District remains liable to Plaintiffs for depriving owners of the use of their vehicles pending the outcome of forfeiture proceedings even if, assuming *arguendo*, the vehicles were also held as evidence at the specific direction of the U.S. Attorney.

A.   **As a matter of law, the vehicles in this case were in the custody of the Mayor, not the Property Clerk, so the provision in the Property Clerk statute requiring the Property Clerk to obtain a PD 81-C signed by the U.S. Attorney before releasing certain property needed as evidence did not apply to the vehicles in this case; DCMR § 6-A807.3 does not relieve the District of liability because it was issued by the Mayor.**

An important distinction between this case and the Jenkins case is that all the vehicles in Jenkins were held solely as evidence. Jenkins, 2017 U.S. Dist. LEXIS 119157, *1 (cars held by the city as potential evidence in criminal prosecutions). None were held for forfeiture. All property coming into the custody of the MPD – except for property held for forfeiture – is in the custody of the Property Clerk. D.C. Code § 5-119.01 ("Property Clerk statute").

Section 5-119.06(d) of the Property Clerk statute is the basis for the District's PD 81-C causation defense. Section 5-119.06(d) obligates the Property Clerk to obtain a PD 81-C from the U.S. Attorney before releasing certain types of property held more than a year which is "needed as evidence in a prosecution." Section 5-119.06(d) was added to the Property Clerk statute in 1941 by an Act of Congress applicable solely to the District of Columbia. 55 Stat. 185, ch. 99, § 1 (May 9, 1941). Therefore, arguably, the Property Clerk statute standing by itself does not subject the District to liability because it was enacted by Congress, not by the D.C. Council.

In sharp contrast, vehicles in this case were deemed to be in the custody of the Mayor, not in the custody of the Property Clerk, by virtue of the civil forfeiture statute, a statute enacted by the

D.C. Council. D.C. Code § 48-905.02(d)(2) ("Property, other than controlled substances, taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the Mayor."); <u>Dunmore</u>, 749 A.2d at743-44. When property is seized for forfeiture under District law, the property is deemed to be in the custody of the Mayor and the Mayor must place the property under seal, remove the property to a place designated by the Mayor, or remove the property to an appropriate location for disposition in accordance with law. P. Ex. 224, Committee Report, p. 3; D.C. Code § 48-905.02(d)(2).

Moreover, the civil forfeiture statute in effect during the Class Period mandated that property seized for forfeiture determinations but subsequently determined to be not forfeitable be returned to the owner, not handed over to the Property Clerk. D.C. Code § 48-905.02(d)(3)(C)("If the Mayor determines that the seized property is not forfeitable under this chapter and is not otherwise subject to forfeiture, the Mayor shall return the property to its rightful owner.

As a consequence, according to the civil forfeiture statute, vehicles held for forfeiture determinations were not subject to the PD 81-C requirement of the Property Clerk statute, Section 5-119.06(d)(relating to property in the custody of the "Property Clerk").

To be sure, the Mayor through DCMR § 6-A807.3 tacked on a PD 81-C requirement to the civil forfeiture statute that the D.C. Council did not include by issuing a regulation making the release of vehicles seized for forfeiture determinations but subsequently determined not forfeitable subject to the receipt of a PD 81-C from the U.S. Attorney or the OAG, depending on which prosecutor was prosecuting the case.[3] DCMR § 6-A807.3. The Mayor's regulation sweeps more

---

[3] D.C. Code § 23-101(a) to (d) bifurcates prosecutorial authority between the U.S. Attorney and the District of Columbia Attorney General (the "OAG"); <u>In re Prosecution of Perrow</u>, 172 A.3d 894, 897 (D.C. 2017). Under § 23-101(a) to (d), the U.S. Attorney prosecutes "U.S. Code offenses" (basically felonies and misdemeanors) and the District of Columbia OAG prosecutes "D.C. offenses" (also known as Traffic offenses) such as, leaving after colliding, and DUI.

broadly than the Property Clerk statute because: (1) the Mayor's regulation applies not only to cases prosecuted by the U.S. Attorney but also to cases prosecuted by the OAG; and (2) the Mayor's regulation applies indefinitely not just for the first year from receipt of the property. DCMR § 6-A807.3. Moreover, the Mayor's regulation imposed a requirement that the D.C. Council's civil forfeiture statute did not. D.C. Code § 48-905.02(d)(2).

DCMR § 6-A807.3 is a District of Columbia municipal regulation issued by virtue of two District of Columbia statutes enacted by the D.C. Council, D.C. Code § 2-501(giving Mayor authority to issue regulations generally); D.C. Code § 48-905.02(d)(3)(H)(giving Mayor authority to issue regulations to implement the civil forfeiture statute), and therefore it is a policy of the District, so the District is liable for conduct undertaken pursuant to this municipal regulation. Baker v. District of Columbia, 326 F.3d 1302, 1306 (2003)(explicit setting of policy by government that violates Constitution is a municipal policy under § 1983); Lewis v. District of Columbia, 2018 U.S. Dist. LEXIS 95520, *17 (D.D.C. 2018) (Mayor's Order constitutes "policies" for purposes of § 1983). Additionally, by issuing DCMR § 6-A807.3 which sweeps more broadly than Section 5-119.06(d) the Mayor adopted the Property Clerk statute as a policy of the District. Cooper v. Dillon, 403 F.3d 1208, 1221-22 (11th Cir. 2005); P. Ex. 218, AG Nathan Written Testimony, p. 5 ("By law, seized property is automatically held as evidence until the U.S. Attorney's Office certifies that it is not needed.").

Moreover, MPD written policy directives also provide that vehicles classified as evidence by the MPD shall not be released until the appropriate prosecutor has signed the PD 81-C (the "proper release form") indicating that the property is not needed as evidence but this policy statement applies only to vehicles seized as evidence. P. Ex. 209, MPD General Order 601.1, p. 4.; P. Ex. 201, Automobile Searches and Inventories, p. 11 (I,B,2c).

**B. As a matter of law, the prompt post seizure hearings this Court has held the District should have provided to owners whose vehicles were seized and held for forfeiture were broad enough to address any so called "evidentiary holds" on the vehicles whether imposed by the U.S. Attorney or the District.**

If the Property Clerk statute does apply to property seized for forfeiture, or it applies once the Mayor determines that the property is not forfeitable, the prompt post seizure hearings this Court has found the District should have provided for vehicles held for forfeiture determinations ("<u>Brown</u> hearings") would also have included a an opportunity to address any "evidentiary holds" whether imposed by the District or the U.S. Attorney. The Superior Court judicial officer holding the hearing had jurisdiction to release any "evidentiary hold" whether imposed by the District or the U.S. Attorney. Alternatively, as soon as the forfeiture holds were released owners could have immediately filed a Rule 41(g) motion to address "evidentiary holds" which would have been heard within days.

In <u>Brown</u>, this Court held that "due process requires a prompt hearing to enable a claimant to test the probable cause for a seizure and to propose alternatives to the government's retention of the vehicle pending the conclusion of forfeiture proceedings." <u>Brown</u>, 115 F. Supp. 3d at 67; <u>Simms</u>, 872 F. Supp. 2d at 104-05. Viewed retrospectively, nothing in this ruling would have prevented a Superior Court judicial officer entertaining a motion for conditional return of property under Super. Ct. Crim. R. 41(g) at the same time as a "<u>Brown</u>" hearing.

The District of Columbia Court of Appeals in <u>Dunmore</u> held that a Superior Court judicial officer in a criminal case lacked ancillary jurisdiction to order release of property held for civil forfeiture once the District initiated civil forfeiture proceedings. <u>Dunmore</u>, 749 A.2d at 743-44 (Superior Court judicial officer lacks ancillary jurisdiction to hear motion for return of property under Super. Ct. Crim. R. 41(g) after Mayor institutes forfeiture proceedings). But, the <u>Dunmore</u> Court did not say a Superior Court judicial officer with jurisdiction to hear a motion to release a

forfeiture hold pending the outcome of forfeiture proceedings lacked jurisdiction to decide a motion for release of property if the government contended the same property was needed as evidence in a criminal case. In fact, District of Columbia Court of Appeals opinions hold the opposite. *See* Robinson v. United States, 769 A.2d 747, 751 (D.C. 2001)("functional divisions" of the Court "do not delimit their power as tribunals . . . with general jurisdiction").

The Arizona Court of Appeals addressed this same jurisdictional issue in In re $15,379 in U.S. Currency and it ruled that any judge on the Arizona Superior Court has jurisdiction to order the release of property held by the government as evidence. In re $15,379 in U.S. Currency, 388 P.3d 856 (Ariz. Ct. App. 2016). The Arizona forfeiture statute provides that property not subject to forfeiture must be returned to the owner unless it is needed as evidence. In re $15,379 in U.S. Currency, 388 P.3d at 861; A.R.S. § 13-4306(G)(2). In In re $15,379 in U.S. Currency, the trial court judge presiding over the forfeiture case refused to return the owner's property after she prevailed in a forfeiture proceeding because the state contended the property was evidence in a criminal case not before the forfeiture judge, but without articulating any particular need to retain the currency as evidence. *Id.* at 862. The state contended on appeal that "civil forfeiture and criminal prosecution are "parallel" and "entirely separate" proceedings, with a "civil trial court" lacking "jurisdiction" or "authority" to return property held as evidence in a pending criminal case." In re $15,379 in U.S. Currency, 388 P.3d at 862.

The Arizona Court of Appeals rejected the jurisdictional objection holding that any Superior Court judge on the Arizona Superior Court even one sitting in a civil division "has jurisdiction to order the return of property [held as evidence in a criminal case] ... to its owner." *Id.* at 862. The Arizona Court of Appeals also held that the state has no "absolute right to retain an individual's property," and so the state must articulate a reasonable basis for retaining the property even if the relevant statute of limitations has not expired. In re $15,379 in U.S. Currency, 388 P.3d

at 863 *relying on* In re Smith, 888 F.2d at 167-68 ("bald assertion" that money has evidentiary value is insufficient to justify withholding property).

The defect in the civil forfeiture statute in effect during the Class Period precluding Superior Court judicial officers from ordering release of property was that the forfeiture statute as amended by the D.C. Council in 1988 lacked a provision granting the Superior Court authority to order release of property to an owner pending the outcome of the forfeiture proceeding. *See* D.C. Code § 48-905.02(d)(2)(non-contraband property seized for forfeiture is deemed to be in the custody of the Mayor; common law recovery remedies extinguished). The original version of D.C. Code § 48-905.02(d)(2) (then codified as D.C. Code § 33-552(d)) enacted by the D.C. Council provided that "Property... taken or detained under this section shall [remain subject] to orders and decrees of the Superior Court of the District of Columbia," but, the D.C. Council deleted the phrase "subject only to orders and decrees of the Superior Court of the District of Columbia" in the 1988 amendment to the civil forfeiture statute. P. Ex. 242, D.C. Act 7-217 effective July 15, 1988.

Once the Superior Court had jurisdiction in a Brown hearing over a vehicle to consider release pending the outcome of forfeiture, then it would have also had jurisdiction to consider in the same hearing a motion for return of property seized as evidence. Robinson, 769 A.2d at 751; In re $15,379 in U.S. Currency, 388 P.3d at 861 (court denying state's petition for forfeiture has jurisdiction to order release of property government contends needed as evidence if government fails to articulated specific evidentiary need for property).

Vehicles held as evidence whether by direction of the MPD or the U.S. Attorney are, "in the contemplation of the law," in the possession of the Superior Court, and Superior Court judicial officers have jurisdiction over vehicles held as evidence by the Property Clerk, Wilson II, 424 A.2d at 133. Superior Court judicial officers also have jurisdiction over the District and the U.S.

Attorney regarding vehicles held as evidence. *Id.* Moreover, the Court has a duty to return property held as evidence when the evidentiary utility of the property has been exhausted. Wilson I, 540 F.2d at 1103-1104, nn. 4 and 5. Finally, like the Arizona Superior Court, the District of Columbia Superior Court is a court of general jurisdiction and however it may be organized for administrative purposes into divisions, branches or other units, the Court is a unitary entity under the District of Columbia Court Reorganization Act of 1970, and the "functional divisions" of the Court "do not delimit their power as tribunals . . . with general jurisdiction." Robinson, 769 A.2d at 751.

So any time the District invoked DCMR § 6-A807.3 or any other law to object to the release of property "as evidence" in a Brown hearing the Superior Court judicial officer would nonetheless have had jurisdiction to rule on the objection. Robinson, 769 A.2d at 751.

Moreover, as explained below, the burden would have been on the government to justify the continued retention of the property. In re Smith, 888 F.2d at 168 ("bald assertion" that property has evidentiary value is insufficient to justify withholding property); In re $15,379 in U.S. Currency, 388 P.3d at 863. The mere fact that a vehicle was seized as the instrumentality of the crime incident to arrest -- even if the arrest were supported by probable cause -- is not enough to justify continued detention of the vehicle. In re Smith, 888 F.2d at 168. To seize and retain otherwise lawful property as "evidence," the government must also establish "a nexus . . . between the item to be seized and criminal behavior."). Hayden, 387 U.S. at 307.

AG Nathan is on record as saying that vehicles are only rarely needed as evidence and the District can process the vehicle for evidentiary utility and get the U.S. Attorney's certification on release in less than two weeks so it would have been a rare case when the Superior Court judicial officer would have granted the government's objection to release on evidentiary grounds. SMF 43.

Alternatively, if the District did not notify the Court or the owners at the <u>Brown</u> hearings that their vehicles were subject to "evidentiary holds" they would have found out soon enough when owners went to fetch their vehicles from the impound lot. They simply could have filed a Super. Ct. Crim. R. 41(g) motion at that point which the Superior Court would have promptly ruled on as Delontay Davis' case shows. <u>Jenkins</u>, 2017 U.S. Dist. LEXIS 119157, *11-12.

Mr. Davis received a Notice to Retrieve Property from the District when the Mayor decided not to forfeit his vehicle which the MPD had classified for forfeiture (pursuant to D.C. Code § 7-2507.06a, transporting firearm in a vehicle) and as evidence when he was arrested for CPWL (carrying a pistol without a license). P. Ex. 225, Order, <u>Delontay Davis v. United States</u>, 2014 CF2 5034 (May 9, 2014) (D.C. Super. Ct). When he went to retrieve his vehicle the Property Clerk refused to release it without a PD 81-C. Mr. Davis' attorney filed a motion for return of property on May 9, 2014. On May 14, 2014 – just five days later – the Superior Court judicial officer presiding over the gun case granted the motion and ordered the release of the vehicle. Mr. Davis' case illustrates that once the District released a vehicle in a <u>Brown</u> hearing the owner quickly could have filed and obtained release from any evidentiary hold using a Rule 41(g) motion.

But, forcing the owner to file a Rule 41(g) motion just to retrieve their property when the Property Clerk is required to ensure its return is itself a due process violation. <u>Walters v. Wolf</u>, 660 F.3d 307, 314 (D.C. 2011); <u>Brown</u>, 115 F. Supp. 3d at 74.

If the District did not inform the Court and the owners at the <u>Brown</u> hearings that vehicles were also subject to evidentiary holds the cause of continued deprivation would be the District, not the evidentiary holds, because the District as custodian shared the Superior Court's duty to return property when it was not needed or the owners' interest outweighed the government's. <u>Powers v. Hamilton Cnty. Pub. Def. Comm'n</u>, 501 F.3d 592, 608 (6th Cir. 2007) (Public Defender's failure to request an indigency hearing was both the cause in fact and the proximate cause of the denial of

indigent defendant's right to an indigency hearing prior to his incarceration for unpaid fine). And, by analogy to the law of conversion which is the common law analogue of owners' due process claim, failure to inform owners at <u>Brown</u> hearings that their vehicle was also subject to an evidentiary hold would have precluded the District from raising the evidentiary hold as a cause of the deprivations in owners' claims for damages. <u>Denault v. Ahern</u>, 857 F.3d 76, 86 (1st Cir. 2017) ("Qualification of a refusal to surrender a chattel to one entitled to immediate possession does not avoid liability for conversion unless . . . such reason is communicated to the claimant at the time . . . .").

So, either the prompt post seizure hearings the District should have held were broad enough to address "evidentiary holds" via Super. Ct. Crim. R. 41(g), or, as explained below, if they were not, the moving force of any deprivation after a <u>Brown</u> hearing was the D.C. Council's blocking owners' access to Superior Court Rule 41(g).

> **C.  As a matter of law, even assuming *arguendo* that the U.S. Attorney did specifically direct that some of the vehicles in this case be held as evidence, the moving force of owners' deprivation of their vehicles due to "evidentiary holds" on top of forfeiture holds was not the U.S. Attorney's imposing the so called "evidentiary holds;" as a matter of law it was the D.C. Council's denying owners access to Super. Ct. Crim. R. 41(g) under D.C. Code § 48-905.02(d)(2).**

The key legal distinction between this case and <u>Jenkins</u> is that, even if their vehicles were held at the specific direction of the U.S. Attorney, vehicle owners in <u>Jenkins</u> had access to Super. Ct. Crim. R. 41(g), a constitutionally adequate recovery remedy, to regain possession of their vehicles even if the U.S. Attorney objected. <u>In re Smith</u>, 888 F.2d at 168; <u>Jenkins</u>, 2017 U.S. Dist. LEXIS 119157, *11-12.

A Superior Court judicial officer wielding a Rule 41(g) motion can slice though all the tangle of restrictions on release of property held as evidence -- the Property Clerk statute, the MPD's General Orders, D.C. Super. Ct. R. Crim. P. 16(a)(1)(E), and DCMR § 6-A807.3 -- like

Alexander slicing through the Gordian knot. In re Smith, 888 F.2d at 168; Jenkins, 2017 U.S. Dist. LEXIS 119157, *11-12. Superior Court judicial officers have authority to order the release of property held as evidence even over the objection of the U.S. Attorney. Jenkins, 2017 U.S. Dist. LEXIS 119157, *11-12; Wilson II, 424 A.2d at 133.

But, unlike the owners in Jenkins, the vehicle owners in this case had no access to Super. Ct. Crim. R. 41(g) because the D.C. Council denied owners access to Super. Ct. Crim. R. 41(g) by enacting the civil forfeiture statute in effect during the Class Period. Dunmore, 749 A.2d at 743-44 (Superior Court judicial officer has no jurisdiction to hear motion for return of property under Super. Ct. Crim. R. 41(g) after Mayor institutes forfeiture proceedings).

In Jenkins, the issue was whether Rule 41(g) provided constitutionally adequate process to owners whose vehicles were seized and held as evidence. Jenkins, 2017 U.S. Dist. LEXIS 119157, *11-12. Here, the issue is whether the D.C. Council can reduce that constitutionally adequate process to zero by denying owners access to Rule 41(g) to challenge "evidentiary holds," and still evade responsibility for those self-same "evidentiary holds." It is fundamentally unfair to allow the District through its Council to deny vehicle owners access to Rule 41(g) hearings to challenge "evidentiary holds" and then claim to its benefit that the "evidentiary holds" are the cause of the deprivations. See Jauch v. Choctaw Cnty., 874 F.3d 425, 435 (5th Cir. 2017)(applying Medina and Mathews) reh'g en banc denied Jauch v. Choctaw Cnty., 886 F.3d 534, 535 (5th Cir. 2018).

The D.C. Council expressly and intentionally cut off owners' and other claimants' access to all recovery remedies when it enacted the version of the forfeiture statute in effect during the Class Period so the vehicles would not be released before resolution of forfeiture proceedings. D.C. Code § 48-905.02(d)(2) amended by D.C. Act 7-217 (Ex. 242) effective July 15, 1988 (property (other than controlled substances) "taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the Mayor."); Dunmore, 749 A.2d at 743-44

(Superior Court judicial officer has no jurisdiction to hear motion for return of property Super. Ct. Crim. R. 41(g) after Mayor institutes forfeiture proceedings).

The original version of the civil forfeiture statute did not cut off owners' access to the Superior Court pending the outcome of forfeiture determinations. D.C. Code § 48-905.02(d)(2). The original version of Section 48-905.02(d)(2) (then codified as D.C. Code § 33-552(d)) provided that "Property... taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the Mayor **subject only to orders and decrees of the Superior Court of the District of Columbia.**" (emphasis added). But, the D.C. Council deleted the phrase "subject only to orders and decrees of the Superior Court of the District of Columbia" in 1988. Ex. 242, D.C. Act 7-217 effective July 15, 1988.

Moreover, the civil forfeiture statute also denied owners access to Super. Ct. Crim. R. 41(g) because the civil forfeiture statute destroyed the Superior Court's ancillary jurisdiction to order the release of property pursuant to Super. Ct. Crim. R. 41(g). Dunmore, 749 A.2d at 743-44 (Superior Court judicial officer has no jurisdiction to hear motion for return of property Super. Ct. Crim. R. 41(g) after Mayor institutes forfeiture proceedings). The Property Clerk statute – including Section 48-905.02(d)(2) – did not deprive the Superior Court of jurisdiction to order release of property the U.S. Attorney contended was needed as evidence. Wilson II, 424 A.2d at 133. But, the civil forfeiture statute did. Dunmore, 749 A.2d at 743-44.

So, the D.C. Council's cutting off owners' access to Rule 41(g) was the moving force behind the deprivation caused by holding vehicles as evidence even if they were held at the specific direction of the U.S. Attorney. Jauch v. Choctaw Cnty., 874 F.3d at 435-36. But for the D.C. Council's cutting off their access to Rule 41(g), owners of vehicles held forfeiture and also as evidence simply could have walked into the Superior Court courthouse and filed Rule 41(g)

motions to remove any "evidentiary holds" whether imposed by the District or the U.S. Attorney. Jenkins, 2017 U.S. Dist. LEXIS 119157, at *11-12.

> ### 1.   *The District's defense is a causation issue.*

The District contends that the cause of any deprivation after a Superior Court judicial officer would have released the forfeiture hold on a vehicle in a Brown hearing would have been the U.S. Attorney's evidentiary hold. Assuming *arguendo* that the "evidentiary holds" were imposed by the U.S. Attorney, this is strictly a causation argument. The District does not argue that owners have no right to hearings when their vehicles are held as evidence. The District's argument is a causation argument -- as between the District and the U.S. Attorney only the U.S. Attorney can release "evidentiary holds."

But, the District's argument ignores the fact that (1) vehicles held as evidence are held for the Superior Court; (2) Superior Court judicial officers can order release of vehicles under Super. Ct. Crim. R. 41(g); and (3) Superior Court judicial officers have a duty to release vehicles held as evidence when their evidentiary utility is exhausted, or even when the vehicles still retain some evidentiary utility if the owners' interest in reclaiming their vehicles outweighs the government's interest in keeping them, especially when less drastic means (searching, dusting for prints, photographing) of preserving the evidentiary utility is available. Wilson I, 540 F.2d at 1103-1104; Wilson II, 424 A.2d at 133; In re Smith, 888 F.2d at 167-68.

In fact, the District of Columbia Court of Appeals has ruled that the government satisfies its preservation obligation under Rule 16(a)(1)(C) in the run of the mill case without even having to allow inspection by the defendant (if different from the owner) by "sufficiently informative photographs" of the relevant part of the vehicle. S*ee* In re Q.D.G., 706 A.2d at 38 (government could have satisfied its "preservation" obligation with respect to a stolen vehicle by *either*

"sufficiently informative photographs" of the damaged ignition or making the vehicle available for inspection by the defense).

And Plaintiffs' argument here is not that this Court should have crafted a separate hearing to address "evidentiary holds." Plaintiffs' argument here is that a constitutionally adequate recovery remedy existed during the Class Period and the D.C. Council denied owners access to it and that denial of access is the cause of "evidentiary holds" remaining in place (if any did) after forfeiture holds were lifted.

This analysis does not require the Court to undertake an analysis under <u>Mathews</u> or <u>Medina</u> to determine whether Super. Ct. Crim. R. 41(g) hearings were required under the due process clause. *Cf* <u>Jones v. Kelly</u>, 378 F.3d 198, 203 (2d Cir. 2004)(remand to district court to ascertain the impact of the district court's order on effective prosecution of criminal cases)("<u>Krimstock II</u>"). Super. Ct. Crim. R. 41(g) was already in place at all times during the Class Period and it was constitutionally adequate so it was available to owners – but for the D.C. Council's enacting the civil forfeiture statute.

Recently the 5th Circuit addressed a similar causation argument in <u>Jauch v. Choctaw Cnty.</u>.The <u>Jauch</u> Court specifically addressed the causation issue under § 1983 where a sheriff denied a prisoner access to an existing remedy pursuant to which she could have sought her release.

In <u>Jauch</u> the sheriff of Choctaw County, Mississippi had a policy of holding persons arrested on "capias" warrants (that is, arrest warrants to ensure a person's appearance at a court hearing) in jail until the date of the hearing specified in the warrant or until the circuit court that issued the capias next convened without in the meantime taking the person to court for a hearing on release conditions or to challenge the warrant. <u>Jauch</u>, 874 F.3d at 427-428. Ms. Jauch was held for 96 days on such a capias warrant because of the sheriff's policy. *Id.*

The 5th Circuit held that Ms. Jauch had a protected liberty interest enumerated under the due process clause of the 14th Amendment, and the sheriff's policy (whether evaluated under <u>Mathews</u> or <u>Medina</u>) violated her procedural due process rights by cutting her off from the judicial officers charged with implementing constitutional criminal procedure designed to protect those rights, because "the challenged procedure denies criminal defendants their enumerated constitutional rights relating to criminal procedure." 874 F.3d at 435.

The <u>Jauch</u> Court held that the sheriff denied Ms. Jauch access to judges who could have granted her procedural due process at the courthouse by locking her up in the jail and refusing to transport her to the courthouse. 874 F.3d at 428, 435. The policy of detaining arrestees without access to courts was "the moving force" behind Ms. Jauch's constitutional injury of not getting a hearing. 874 F.3d at 436.

Here, the D.C. Council denied owners access to Rule 41(g) hearings where they could have obtained the release of any "evidentiary holds" on their vehicles by enacting the civil forfeiture statute. <u>Dunmore</u>, 749 A.2d at 743-44.

This case is stronger than <u>Jauch</u> because during the Class Period there was already in place a recovery procedure -- Super. Ct. Crim. R. 41(g) -- that would have allowed owners, especially innocent owners, to retrieve their vehicles. In fact, the District of Columbia Court of Appeals had held that an innocent owner has a right to conditionally recover their property under the previous version of Super. Ct. Crim. R. 41(g) even if the property retains some evidentiary utility. <u>Stevens v. United States</u>, 462 A.2d 1137, 1139 n.5 (D.C. 1983) (even though not authorized under then current versions of Superior Court Rule 41(g), property seized from defendant can be returned to innocent owner even if it has some evidentiary value if it remain available as evidence and subject to a motion by the accused for its return).

The D.C. Council effectively nailed the courthouse door shut for these owners so they could not get in to file their Rule 41(g) motions or any other recovery remedy, in an explicit setting of a policy by the District that violated the Constitution. Baker, 326 F.3d at 1306 (explicit setting of a policy by the government that violates the Constitution is a municipal policy under § 1983).

### 2. Whether measured under Mathews or Medina seizing property as evidence is a deprivation which requires process.

If the causation argument does require establishing that owners had an independent right to process when the MPD seized their vehicles as evidence plaintiffs still prevail because owners were entitled to some process when the MPD seized their vehicles as evidence and retained them after their evidentiary utility had been exhausted, or the owners need for the vehicles exceeded the government's evidentiary need. Wilson I, 540 F.2d at 1103-1104; In re Smith, 888 F.2d at 168.

The issue concerns "continuing deprivation of property" more suited to a traditional procedural due process analysis rather than "criminal process" which Medina covers. Nelson v. Colorado, 137 S. Ct. 1249, 1255 (2017). But, whether measured under Mathews or Medina seizing property as evidence is a deprivation which requires some process before a neutral decision maker is due for owners who seek the return of their property lawfully seized but no longer needed for police investigation or criminal prosecution. City of W. Covina v. Perkins, 525 U.S. 234, 240 (1999); Propert v. District of Columbia, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (amount of process required can never be reduced to zero).

Assuming *arguendo* Rule 41(g) is a rule of criminal procedure under Medina, "[a] rule of criminal procedure usually does not violate the Due Process Clause unless it (i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of 'fundamental fairness' in operation.'" Kincaid v. Gov't of D.C., 854 F.3d 721, 726 (D.C. Cir. 2017). Even under the deferential Medina

test, the indefinite-detention procedure violated owners' right to procedural due process. *See* Jauch, 874 F.3d 425, 432.

"Historical practice and, to a lesser extent, contemporary practice" guide the inquiry under the Medina test. Kincaid, 854 F.3d at 726. For the following reasons, indefinite detention of vehicles as evidence without providing process offends fundamental principles of justice deeply rooted in the traditions and conscience of our people. *See* Jauch, 874 F.3d 425, 432.

The interest in property is an enumerated right under the 5th Amendment. ("nor be deprived of life, liberty, or property, without due process of law"). "[T]he right of acquiring and possessing property, and having it protected, is one of the natural, inherent, and unalienable rights of man." VanHorne's Lessee v. Dorrance, 2 U.S. (2 Dall.) 304, 310 (C.C.D.Pa. 1795). The common law provided a remedy for owners of otherwise lawful property (not *e.g.*, contraband or feloniously obtained) to recover their property seized and held as evidence. Hayden, 387 U.S. at 308.

As to contemporary practice, the Supreme Court and most states have adopted rules for the return of property seized and held as evidence, or federal courts have imposed the rules in reliance on the due process clause. The federal rules of civil procedure provide a procedure for any "person aggrieved ... by the deprivation of property." Fed. R. Civ. P. 41(g) (enacted in 1989 as Rule 41(e)). As the Notes of Advisory Committee on the 1989 amendments state, Rule 41(g) is based in part on a decision of the D.C. Circuit, Wilson I, 540 F.2d at 1103-04, nn. 4 and 5, holding that the government must return property seized as evidence when its evidentiary utility has been exhausted. The District of Columbia Court of Appeals also adopted this holding before the current version of Super. Ct. Crim. R. 41(g) was adopted. Wilson II, 424 A.2d at 132, n.4 (Superior Court has jurisdiction to order government to return to owner property seized as evidence even over the objection of the U.S. Attorney) *adopting rationale and holdings in* Wilson

I, 540 F.2d 1100 and United States v. Wright, 610 F.2d 930, 934-35 (D.C. Cir. 1979); Stevens, 462 A.2d at 1139 n.5 (property seized from defendant can be returned to innocent owner even if it has some evidentiary value if it remain available as evidence and subject to a motion by the accused for its return). The District of Columbia Superior Court adopted Fed. R. Civ. P. 41(g) almost verbatim on September 14, 1990. P. Ex. 226, Rule 41(g) Promulgation Order, 118 WDLR 2197, 2207 (1990).

Because New York City lacked a recovery remedy like Rule 41(g), in "Krimstock III" the 2d Circuit (using a Mathews analysis) held that a prosecutor could not hold a vehicle as evidence for more than thirty days without a court order. Krimstock III, 464 F.3d at 248.

The same result is reached here using Mathews.

First, owners' interest in their vehicle is a significant property interest, as even the District agrees. P. Ex. 219, AG Nathan Oral Testimony, 1:02 to 1:03 (Council Member Wells and Attorney General Nathan agree owners have a great need for prompt return of their vehicles).

 [A car] is often an individual's "most valuable possession," as well as his or her primary "mode of transportation, and for some, the means to earn a livelihood." Simms v. District of Columbia, 872 F. Supp. 2d 90, 100-01 (D.D.C. 2012); Brown v. District of Columbia, 115 F. Supp. 3d 56, 66 (D.D.C. 2015)(car may be person's only means to earn a livelihood, attend school, see family, or attend to the necessities of life).

Moreover, cars and other vehicles are wasting assets and they depreciate and deteriorate when they sit on a lot. Many people buy their cars on credit and when they are seized it is an extreme hardship both to get to work and to continue to make payments on the note. Even a temporary deprivation can have catastrophic financial consequences for an owner. The District seized Ms. Person's car and held it for five months before releasing it ostensibly because MPD believed it contained drug paraphernalia. P. Ex. 227, Person Investigative File Report. By the time

the District released it she could no longer make the payments and so the District released the vehicle to a finance company. P. Ex. 228, Person affidavit, ¶ 23-24.

Second, the risk of erroneous deprivation is high at least with respect to retaining a vehicle as opposed to the initial seizure as evidence. AG Nathan is on record as saying that vehicles are only rarely needed as evidence and the District can process the vehicle for evidentiary utility and get the U.S. Attorney's certification on release in less than two weeks, so it would have been a rare case when the District needed a vehicle past that point. P. Ex. 218, AG Nathan Written Testimony, p. 5-6; P. Ex. 219, AG Nathan Oral Testimony at 1:02:32. Yet, the dates on the PD 81-Cs show the District waited months and years to ask for PD 81-Cs. P. Ex. 266, no-papered spreadsheet.

The presence of probable cause to support an arrest does not by itself establish the "nexus" between an automobile and evidentiary utility after the automobile has been processed and photographed. In re Q.D.G., 706 A.2d at 38 n.5 (stolen car was a "tangible object" in the "custody or control" of the District, but only the condition of the ignition was "material to the preparation of respondent's defense"); Hayden, 387 U.S. at 307.

The D.C. Circuit addressed this exact issue in In re Smith and held that the mere fact that property was seized as the instrumentality of the crime incident to arrest -- even if the arrest were supported by probable cause -- is not enough to justify continued detention of the property. In re Smith, 888 F.2d at 168. To seize and retain otherwise lawful property as "evidence," the government must also establish "a nexus . . . between the item to be seized and criminal behavior.") citing Hayden, 387 U.S. at 307. Probable cause to retain otherwise lawful property as evidence be "must examined in terms of cause to believe that the evidence . . . will aid in a particular . . . conviction." Id.

So, "the probable-cause requirement for the initial arrest and seizure" does not guard against the risk of erroneously lengthy deprivations which is the problem here. Although there is no government financial self-interest as in civil forfeitures, many MPD officers believe preventing crime as opposed to preserving and recovering evidence from the vehicle is a valid justification for a hold. P. Ex. 218, AG Nathan Written Testimony, p. 4.

The third and final <u>Mathews</u> factor weighs in favor of process. The Superior Court adopted the expansive Rule 41(g) in 1990 so the Superior Court made the judgment that the hearings were worth the expense. And the District has no interest in withholding from owners vehicles to which it has "zero claim of right." *See* <u>Nelson</u>, 137 S. Ct. at 1257.

**D. As a matter of law, to show that it is not the cause of delay in releasing vehicles held as evidence, the District bears the burden of showing it sought the release of vehicles and presented PD 81-Cs to the U.S. Attorney for vehicles within two business weeks of seizure, the amount of time Attorney General Nathan conceded was needed to process the vehicles for evidentiary utility.**

Section 5-119.06(d) gives the U.S. Attorney veto power over the Property Clerk's release of certain property needed as evidence in a criminal prosecution for one year from the date of seizure. The Property Clerk statute does not require the District to seize and to hold indefinitely every vehicle ridden in or driven by a person arrested for a drug, CPWL (carrying a pistol without a license), or prostitution offense. Nor does it authorize the U.S. Attorney to require the District to do so.

Nor does the PD 81-C signify as a matter of law that the U.S. Attorney directed the District to hold a vehicle as evidence until the date on the PD 81-C. Instead, the MPD made the initial classification of the vehicle as evidence, SMF 34, and the MPD controlled the timing of when to release a vehicle and when to ask the U.S. Attorney to sign a PD 81-C. SMF 63. On at least some occasions the MPD officer asked the line AUSA to delay providing a PD 81-C to delay release of a vehicle, SMF 64 (P. Ex. 252, AUSA Holman email regarding PD 81-C for Mr. Johnson's car, or

otherwise delayed release of a vehicle, P. Ex. 258, Taylor affidavit, ¶¶ 11-12; P. Ex. 254, T Howie email).

An analysis of PD 81-Cs from the U.S. Attorney for vehicles seized as evidence in connection with cases that were "no-papered," that is, the U.S. Attorney declined to prosecute, illustrates that MPD officers do not timely request PD 81-Cs from the U.S. Attorney. There were 69 vehicle seized for forfeiture (1) for which the MPD obtained PD 81-Cs from the U.S. Attorney; (2) where the corresponding criminal case was "no papered." P. Ex. 266, the "no-papered spreadsheet." The recovering or investigating officer was supposed to get the PD 81-C from the U.S. Attorney at the papering conference. MPD General Order 601.1, p. 14. But, in 53 of the such vehicles the date on the PD 81-C is at least 30 days after seizure, and in 42 cases the date on the PD 81-C is 60 days or more after seizure, and in 6 cases it ranges from 135 to 185 days after seizure. P. Ex. 266, no-papered spreadsheet. The data on a PD 81-C does not signify the date on which the U.S. Attorney released any so-called "evidentiary holds" on vehicles.

So, as a matter of law, the mere fact that (1) an MPD recovering officer or another MPD officer classified a vehicle on the PD 81 as "evidence" (an MPD term in the General Orders, not a designation applied by the prosecutor) and (2) the recovering officer or another MPD officer ultimately sought a "certification" (in the form of a PD 81-C) for the release of the vehicle from the U.S. Attorney, does not mean that the U.S. Attorney ever directed the MPD to hold the vehicle as evidence. Avila, 246 F. Supp. 3d at 358 (characterizing as "circular" recovering officer's argument that continued retention of van was warranted because the van was classified as evidence, given that the responsibility for classifying something as evidence lies with the MPD, and the MPD controls the timing of when to seek a PD 81-C from the appropriate prosecutor); P. Ex. 211, Giovannelli Decl. ¶¶ 3-7.

The PD 81-C merely signifies that on that date the U.S. Attorney did not object to the release by exercising its veto power.  The mere fact that the U.S. Attorney has to sign a form provided by the MPD when the MPD chooses to present the form to the U.S. Attorney before a vehicle classified by the MPD as evidence could be released by the Property Clerk does not break the causal chain making the District responsible for the retention of the vehicle past the two week period needed to process it for evidentiary utility. Avila, 246 F. Supp. 3d at 359; P. Ex. 211, Giovannelli Decl. ¶¶ 3-7. "Had [the District] sent the form[s] to the USAO and the USAO refused to sign [them], the causal link would be broken and [the District] would not be liable under section 1983." Avila, 246 F. Supp. 3d at 359.

Plaintiffs have not found a single PD 81-C in the record signed by an AUSA which contains an objection to the release of a vehicle. Therefore, the District has provided no documents indicating that any vehicles were held "as evidence in the prosecution of a crime" or held at the specific direction of the "United States attorney for the District of Columbia or his assistants" past the point at which the District was ready to release the vehicles.

Property held as evidence is in the contemplation of the law in the possession of the Superior Court, Wilson II, 424 A.2d at 133 (Superior Court has a duty to return property when its evidentiary utility exhausted); Wilson I, 540 F.2d at 1103-1104 nn. 4 and 5; In re Smith, 888 F.2d at 167-68 (holding that, even though the prosecutor alleged that evidence was needed for a criminal proceeding, the district court had to evaluate this alleged need and to balance the government's interests against the claimant's interests); or when the owner's need outweighs the governments, In re Smith, 888 F.2d at 167-68; Stevens v. United States, 462 A.2d 1137, 1139 n.5 (D.C. 1983). As custodian, the MPD shared this duty.

Super. Ct. Crim. R. 16(a)(1)(E), not the Property Clerk statute, establishes the MPD's obligation to preserve evidence for prosecutions in the Superior Court. Property held as evidence

is in the contemplation of the law in the possession of the Superior Court, <u>Wilson II</u>, 424 A.2d at 133, and the Superior Court adopted Super. Ct. Crim. R. 16(a)(1)(E) pursuant to D.C. Code § 11-946 to establish the government's preservation obligation for evidence of crimes prosecuted in the Superior Court. The U.S. Attorney is subject to the Rule with respect to evidence held for criminal prosecutions in the District, <u>Wilson II</u>, 424 A.2d at 133.

Under Super. Ct. Crim. R. 16(a)(1)(E) the District needs to preserve only the items and evidence in a vehicle, not the vehicle itself. <u>In re Q.D.G.</u>, 706 A.2d 36, 38 n.5 (D.C. 1998)(stolen car was a "tangible object" in the "custody or control" of the District, but only the condition of the ignition was "material to the preparation of respondent's defense."); <u>Lee</u>, 509 F.2d at 404 (seizure and search of vehicle justified to preserve "valuable piece of potential evidence" such as any incriminating evidence left in the car or any fingerprints); <u>Avila</u>, 246 F. Supp. 3d at 356 (items removed from the van — the passport, knife, and beer cans — "might have potential evidentiary value in a criminal case" but the van itself would have no such value); <u>Hines</u>, 520 F. App'x at 7 (vehicle in which drugs found has no evidentiary value after vehicle searched and processed and any drugs recovered).

The District is free to return the vehicle after processing and photographing it. <u>In re Q.D.G.</u>, 706 A.2d at 38 n.5 (government could have satisfied its "preservation" obligation with respect to a stolen vehicle by *either* providing defense with "sufficiently informative photographs" of the damaged ignition or making the vehicle available for inspection by defense).

Therefore, as a matter of law, the District through the MPD had a duty to ask the U.S. Attorney for PD 81-Cs for the vehicles in this case at the latest two weeks from the point of seizure, the period the District needed to process the vehicles. P. Ex. 218, AG Nathan Written Testimony.

Therefore, as a matter of law, to show compliance with this duty and to show that it is not the cause of delay in releasing vehicles held as evidence, the District bears the burden of showing it

sought the release of vehicles and presented PD 81-Cs to the U.S. Attorney for vehicles within two business weeks of seizure because: (1) as custodian, the District shared the Court's duty to return vehicles to owners when they were no longer needed as evidence, or when the owners' interest in reclaiming their vehicles outweighed the government's interest in retaining them; and (2) once the MPD had finished searching, processing and photographing the vehicles, which then Attorney General Nathan testified to the Committee on the Judiciary and Public Safety took only several days, P. Ex. 218, Nathan Written Testimony, pgs. 4-5, the vehicles themselves were no longer needed as evidence in a criminal prosecution, see Section 5-119.06(d), and under Rule 16 both the District and the U.S. Attorney were free to release them. Super. Ct. Crim. R. 16(a)(1)(E).

But, the MPD did not ask the U.S. Attorney for 81-Cs when required. The District did not even have a system in place to ensure that the MPD complied with its duty to ask the U.S. Attorney for PD 81-Cs after processing and photographing the vehicles.

Instead of concentrating responsibility for obtaining PD 81-Cs in a central person, the District left the responsibility for obtaining PD 81-Cs from the U.S. Attorney to the individual recovering or investigating officers in the case. P. Ex. 210, Rose depo, pgs. 20-21; pgs. 102-104; MPD General Order 601.1, p. 26 (III,F, 4); P. Ex. 201, Automobile Searches and Inventories, [GO-602.01], p. 11 (I,B,2c).

The Property Clerk, the custodian of the vehicles, and the person charged by Section 5-119.06(d) with enforcing the Property Clerk statute, had no policy of seeking PD 81-Cs from the U.S. Attorney or even of confirming that the U.S. Attorney had any need for vehicles classified as evidence by the MPD. P. Ex. 210, Rose depo, pgs. 20-21. The recovering officer had the responsibility to get the PD 81-C. P. Ex. 210, Rose depo, p. 103.

Even if an owner whose vehicle was classified as evidence went to the Property Clerk's office seeking the release of their vehicle the Property Clerk did not ask the U.S. Attorney for a

PD 81-C for the vehicle on behalf of the owner. P. Ex. 210, Rose depo, pgs. 102-104. Instead, the Property Clerk told the owner the vehicle was subject to an "evidentiary hold" without telling the owner the U.S. Attorney had imposed an "evidentiary hold" on their vehicle, and the Property Clerk told the owner to go to the District where the vehicle was seized (not the U.S. Attorney) and to find the recovering officer and to get a PD 81-C from the recovering officer. P. Ex. 210, Rose depo, pgs. 102-104. So owners had no idea any "evidentiary hold" was ever imposed by the U.S. Attorney as opposed to the recovering officer. *Id.*

The District's policy or custom of authorizing MPD recovering and investigating officers to wait until a case was over to ask the U.S. Attorney for a PD 81-C, even if the District had no policy requiring it, was still the moving force of the deprivations. Johnson v. VanderKooi, 2018 Mich. LEXIS 1569, at *2 (Mich. 2018); Baker, 326 F.3d at 1306 (plaintiff may allege a municipal policy or custom by pointing to (1) explicit setting of a policy by the government that violates the Constitution, (2) action of a policy maker within the government, (3) adoption through knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom, or (4) failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations).

### E.   The Brown hearings as a matter of law should have included authority to release vehicles held as evidence as well as for forfeiture.

In addition to the causation theories explained above, as an independent claim, as a matter of law the Brown hearings should have included authority to release vehicles held as evidence as well as for forfeiture if in fact the District were holding the vehicles as evidence as well as for forfeiture whether at the direction of the U.S. Attorney or the MPD even if the plaintiffs did not plead the claim as a stand-alone claim. Plaintiffs adopt here the reasons expressed above for why

plaintiffs were entitled to hearings on any ""evidentiary holds" whether based on Medina or Mathews. prosecutor could not hold a vehicle as evidence for more than thirty days without a court order. <u>In re Smith</u>, 888 F.2d at 167, 168; <u>Krimstock III</u>, 464 F.3d at 248 (prosecutor could not hold a vehicle as evidence for more than thirty days without a court order); <u>Avila</u>, 246 F. Supp. 3d at 358.

"A court may deny a motion to dismiss or for summary judgment on the basis of a legal theory never embraced by the plaintiff, as long as that theory is supported by the facts alleged and as long as the defendant is not prejudiced on the merits." <u>Wood v. District of Columbia</u>, 2017 U.S. Dist. LEXIS 82876, at *16 D.D.C. 2017) *citing* <u>Hanson v. Hoffman</u>, 628 F.2d 42, 53 n.11, 202 U.S. App. D.C. 42 (D.C. Cir. 1980) (internal citations omitted). Unless a defendant is prejudiced on the merits by a change in legal theory, a plaintiff is not bound by the legal theory on which they originally relied. <u>Hanson</u>, at 53 n.11.

This Court can enter judgment on any theory supported by the facts if the defendant will not be prejudiced. <u>Int'l Distrib. Corp. v. Am. Dist. Tel. Co.</u>, 569 F.2d 136, 139 (1977).

Here, granting summary judgment on the theory that the <u>Brown</u> hearings should have included hearings on both forfeiture holds and evidentiary holds would not prejudice the District because it has not been taken by surprise because the Second Amended Complaint made clear that sometimes the District seized vehicles for more than one reason, for forfeiture as well as investigation or evidence. *See e.g.*, Second Amended Complaint [15] ¶¶ 19-21, 96-101. Even Claim 3 as pled put the District on notice because Plaintiffs would not benefit from a prompt post seizure hearing intended to challenge the District's continued retention of their vehicles if the Superior Court judicial officer presiding over the hearing ordered release on the forfeiture hold but not the evidentiary hold. The remedy owners sought was a hearing on getting their vehicles

back, not a hearing in the abstract. The District chose not to contest this issue in its motion to dismiss and the Court never ruled on this claim.

## F.   The District held vehicles past their evidentiary utility and the District – either acting alone or in concert with the U.S. Attorney – and so the District is liable under the 4th Amendment.

Plaintiffs explain in detail above how the District held vehicles past the exhaustion of their evidentiary utility, and the government had no other need for them.

To the extent that the District held vehicles past their evidentiary utility and the government's need for them the District – either acting alone or in concert with the U.S. Attorney – is liable under the 4th Amendment. Brewster v. Beck, 859 F.3d 1194, 1196-97 (9th Cir. 2017) cert. denied Los Angeles v. Brewster, 138 S. Ct. 1284 (2018); Avila, 246 F. Supp. 3d at 355. Even though the Second Amended Complaint did not plead this claim as a stand-alone claim the facts of the claim put the District on notice. See e.g., Second Amended Complaint ¶¶ 19-21; 96-101. The District chose not to contest this issue in its motion to dismiss and the Court never ruled on the claim.

This Court can enter judgment on any theory supported by the facts if the defendant not prejudiced. Int'l Distrib. Corp. v. Am. Dist. Tel. Co., 569 F.2d at 139.

An additional independent basis for this claim if the Court finds that the Second Amended Complaint did not put the District on notice, is that this argument is a constructive amendment, papers filed in the case and the proposed amended complaint put the District on notice, Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014), and there is no rule that a proposed amendment filed after the discovery cutoff date is per se not diligent, Gambrel v. Twin Falls Cnty., 2014 U.S. Dist. LEXIS 56045, at *3-5 (D. Idaho Apr. 22, 2014).

New facts (explained above and set out in the vehicle spreadsheet and in the motion for leave to amend) came out in discovery, and new case law justifying the claim came out after the Scheduling Order. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

### G. As a matter of law, to the extent delay was fairly attributable to the U.S. Attorney, both the District and the U.S. Attorney are liable as a joint tortfeasors.

To the extent delay was fairly attributable to the U.S. Attorney, both the District and the U.S. Attorney are liable as a joint tortfeasors. *See* Hedgepeth v. Wash. Metro. Area Transit Auth., 386 F.3d 1148, 1153 (D.C. Cir. 2004)(when two tortfeasors jointly contribute to harm to a plaintiff, both are potentially liable to the injured party for the entire harm); Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc., 253 F. Supp. 3d 210, 217 (D.D.C. 2017). The U.S. Attorney's conduct was a concurrent cause not an intervening cause that broke the chain of causation.

Moreover, as the Supreme Court has explained, "[i]t has long been the rule that it is not necessary [under Rule 19(a)] for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990); D.C. Circuit Park v. Didden, 695 F.2d 626, 631 (D.C. Cir. 1982) ("An almost unbroken line of federal decisions holds that persons whose liability is joint and several may be sued separately in federal court.

### IV. Plaintiffs' Claim 5: The District's notice procedure during the Class Period was constitutionally inadequate.

Claim Five consists of:

> each person (who was not a member of either of the Hardy classes) whose property at any time during the period beginning three years before the date of filing of the original complaint (4/25/13) up until the termination of this action (1) had been taken by the District of Columbia for civil forfeiture and was being detained in the custody of the Mayor; or (2) was taken for civil forfeiture and detained in the custody of the Mayor; and (3) did not receive Notice of Intent to Administratively Forfeit the Following Property.

Hoyte v. D.C., 2017 U.S. Dist. LEXIS 117682, at *6.

**A. The notice procedure defendant used to provide notice of intent to administratively forfeit property to owners of property seized for forfeiture determinations during the Class Period was constitutionally inadequate.**

The notice procedure defendant used to provide notice of intent to administratively forfeit property to owners of property seized for forfeiture determinations during the Class Period (three years before date of filing of the original complaint until the date of amendment of the civil forfeiture statute, June 15, 2015) was constitutionally inadequate because the District did not send notices of intent to administratively forfeit property to owners and other claimants before administratively forfeiting their property as the Constitution required. D.C. Code § 48-905.02(d)(3)(A). Section 905.02(d)(3)(A) required the District to send notice of intent to administratively forfeit property "return receipt requested," but Mr. Strickland found only three "Return Receipts" out of more than 10,000 records of property seizure, P. Ex. 205, Strickland Affidavit, ¶ 7, SMF 129, and the absence of return receipts indicates the District was not sending notices of intent to administratively forfeit property. FRE 803(6); FRE 803(7)(A)(absence of a record of a regularly conducted activity indicates activity did not occur); AZ v. Shinseki, 731 F.3d 1303, 1316-17 (Fed. Cir. 2013)(absence of a record government had duty to keep indicates matter did not occur or exist; Rule 803(7)(business records); Hess v. Commissioner, 1989 Tax Ct. Memo LEXIS 410, at *10 (T.C. Aug. 10, 1989. Moreover, the statute conditions the Mayor's authority to administratively forfeit property on actual "receipt of notice" of intent to administratively forfeit property by owners so administrative forfeitures of property without a return receipt in the file establishes that the administrative forfeiture was void *ab initio*. D.C. Code § 48-905.02(d)(3)(C)(Mayor had no authority to administratively forfeit property until the owner's actual "receipt of notice.").

Even assuming *arguendo* that the District did occasionally send notice of intent to administratively forfeit property, the Property Clerk did not during his tenure (from 2000 through

February 2013, P. Ex. 230, Gray depo, p. 6, 13) send out follow up notice when a notice of intent to administratively forfeit property came back undelivered because the notice statute did not require it. P. Ex. 230, pgs. 152-53. Moreover, mailing notice without confirming actual "receipt of notice" of intent to administratively forfeit property by owners precluded administrative forfeitures of property. D.C. Code § 48-905.02(d)(3)(C).

Strict compliance with notice procedures is crucial under administrative asset forfeiture because the proximity presumption was an administrative forfeiture generating machine, P. Ex. 224, Committee Report, p. 20, the window for filing a claim was only thirty days, and the penal bond requirement and the ineffective waiver procedure made contesting administrative forfeiture extremely difficult. NOTE: Adequacy of Notice Under CAFRA: Resolving Constitutional Due Process Challenges to Administrative Forfeitures, 36 Cardozo L. Rev. 1915, 1923 (explaining constitutional problems inherent in federal administrative asset forfeiture). Yet, the money spreadsheet shows virtually all administrative forfeitures were default declarations in favor of the government. P. Ex. 236, money spreadsheet. Baker, 326 F.3d at 1306 (plaintiff may allege a municipal policy or custom by pointing to action of a policy maker within the government, or adoption through knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom).

### 1. *None of the remaining named plaintiffs received effective notice.*

The remaining Named plaintiffs for Claim 5 are: Terrence Thomas, Julius Gordon, Marilyn Langly, and Jarrett Acey.[4] As of 7/23/2018 Terrance Thomas, Julius "Tom" Gordon,

---

[4] The original Named plaintiffs were Jarrett Acey, Julius Gordon, Marilyn Langly, Terrence Thomas, Shane Lucas, Stephanie McRae, and Gregory Stewart. Brown v. District of Columbia, 115 F. Supp. 3d 56, 76 (D.D.C. 2015)(Appendix A). Stephanie McRae, and Gregory Stewart dropped out of the case. The Court denied Plaintiffs Motion [122] to Clarify to add Ms. Hoyte as

Marilyn Langly have never received either notice of intent to administratively forfeit property relating to the money the MPD seized from them nor have they ever received their money back from the District. SMF 85; SMF 111. Nor did the District mail any of them notice of intent to administratively forfeit property. SMF 85; SMF 111. The District did send notice of intent to administratively forfeit property to Mr. Acey at his mother's house, but he did not receive it until time for submitting a claim had expired. SMF 109. Also, any administrative forfeiture of Mr. Acey's money was void because the District did not have a return receipt evidencing actual receipt. D.C. Code § 48-905.02(d)(3)(C).

### 2. *The statute provided for notice by "by registered or certified mail, return receipt requested" to each claimant, but the District did not mail notice as required.*

The statute in effect during the Class Period provided for notice to each party who was known or in the exercise of reasonable diligence should have been known by the Mayor to have a right of claim to the seized property "by registered or certified mail, return receipt requested." D.C. Code § 48-905.02(d)(3)(A); DCMR § 805.3-4.

But, the statute did not provide any procedures if a notice of intent to administratively forfeit property were returned as undelivered (thereby giving the District notice prior to the taking that its attempt at notice has failed).

The notice requirements were much stricter than the notice requirements for non-judicial forfeiture under the federal statute. *Cf.* 18 U.S.C.S. § 983(a)(1)(A)(i)(in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute the government must "send written notice to interested parties" that "shall be sent in a manner to achieve proper notice"). The statute does not

---

a Named plaintiff for Claim 5 with respect to her money. Minute Order 7/27/2017. Mr. Lucas got his money back.

define "proper notice" to require notice sent by certified or registered mail, return receipt requested.

### a)  Purpose of the return receipt.

The primary purpose of the return receipt is to verify delivery to the addressee and protection against false claims that notice was never received. Jones v. Flowers, 547 U.S. 220, 237 (2006); Powell v. Knight, 74 F. Supp. 191, 194 (E.D. Va. 1947).

Second, under the civil forfeiture statute in effect during the Class Period, an owner's obligation to file a claim to prevent administrative forfeiture of their property was not triggered until actual "receipt of notice of seizure." D.C. Code § 48-905.02(d)(3)(B). Similarly, the Mayor had no authority to administratively forfeit property until the owner's actual "receipt of notice." D.C. Code § 48-905.02(d)(3)(C). So the return receipt requirement showing delivery to the recipient informed the Mayor that the condition precedent to their authority to administratively forfeit property had been satisfied. In other words, without a "green card" the Mayor had no jurisdiction over the property for administrative forfeiture. *See* Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (notice "must afford a reasonable time for those interested to make their appearance . . . ."); Cruz-Packer v. District of Columbia, 539 F. Supp. 2d 181, 187 (D.D.C. 2008)(concluding that service was not effective under federal or District law where the required papers were sent to the individual defendant's business address by certified mail and the requested return receipt was signed by someone other than the person to be served).

### b)  Registered mail and certified mail, and return receipts.

Registered mail and certified mail are types of mail service that allow the sender, upon request, to purchase verification that an article was delivered or that a delivery attempt was made in the form of a "return receipt." 201.1 (registered mail), 503.2 (certified mail), 601.1 (return receipt), Domestic Mail Manual (contains the regulations of the United States Postal Service governing its

domestic mail services). Available at **https://pe.usps.com/text/dmm300/503.htm#ep1063590** ; *see generally* Hess v. Commissioner, 1989 Tax Ct. Memo LEXIS 410 (T.C. Aug. 10, 1989).

A Certified Mail Receipt (white receipt with green text) is available at the time of mailing and it provides the sender with a mailing receipt. *See* **https://store.usps.com/store/browse/productDetailSingleSku.jsp?productId=P_FORM_3800**. But, because the sender and not the Post Officer fills out the Certified Mail Receipt it says nothing about whether the mail was actually sent by the sender or received by the addressee.

More importantly, a Return Receipt is a green card with black text that provides mailers with evidence from the Post Office of delivery (to whom the mail was delivered and date of delivery) or non-delivery if the sender pays for the service. 503.6 Domestic Mail Manual. The Form 3811 (the return receipt also known as the "green card") "rides with the mail piece," and in fact, becomes a postcard that is returned to the mailer. Hess v. Commissioner, 1989 Tax Ct. Memo LEXIS 410, at *10 (T.C. Aug. 10, 1989). *See* Form 3811 at **https://about.usps.com/forms/ps3811a.pdf**

A Return Receipt provides evidence of delivery (to whom it was delivered and the date of delivery) and the delivery address, if it's different from the address on the mailpiece. *See* https://about.usps.com/publications/pub370/pub370_v10_revision_012016_tech_005.htm

If mail is sent Return Receipt requested then the Return Receipt bears the signature of the person who signs for it. If no one claims the mail then the return of the Return Receipt card by the Post Office with a notation indicates this fact. 503.6 Domestic Mail Manual.

### 3. *The presence or absence of a Return Receipt in the District's records indicates whether (and when and to where) the District actually mailed forfeiture notice to an owner.*

So the presence or absence of a Return Receipt in the District's records indicates whether (and when and to where) the District actually mailed forfeiture notice to an owner or other

interested party. FRE 803(6); FRE 803(7)(A)(absence of a record of a regularly conducted activity indicates activity did not occur); AZ v. Shinseki, 731 F.3d 1303, 1316-17 (Fed. Cir. 2013)(absence of a record government had duty to keep indicates matter did not occur or exist; Rule 803(7)(business records); Hess v. Commissioner, 1989 Tax Ct. Memo LEXIS 410, at *10 (T.C. Aug. 10, 1989.

In fact, Mr. Strickland found only three "Return Receipts" out of more than 10,000 records of property seizure. Id. at ¶ 7. See Hoyte v. D.C., 2017 U.S. Dist. LEXIS 117682, at *26.

### 4. *Elements of Claim 5.*

The Constitution requires the government to provide owners with notice before depriving them of their property. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950). Mullane provided the legal standard used to evaluate the constitutionality of a notice procedure for the past seventy years: notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314; Jones v. Flowers, 547 U.S. 220, 226 (2006). Implicit in the requirement that notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is the requirement that the notice must precede the deprivation. See Mullane, 339 U.S. at 314 (notice "must afford a reasonable time for those interested to make their appearance . . . .").

Moreover, if the government sends mail and the notice is returned by the Post Office undelivered the government must take additional reasonable steps to notify the owner, if practicable to do so. Jones v. Flowers, 547 U.S. at 229, 234. Additional reasonable steps to notify the owner include following up with regular mail, see *id.* at 235.

Actual knowledge of a seizure is not the same as actual knowledge of a forfeiture determination hearing. Jones v. Flowers, 547 U.S. at 229, 234; Gonzalez-Gonzalez v. United

<u>States</u>, 257 F.3d 31, 38 (1st Cir. 2001)(the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure); <u>Small v. United States</u>, 136 F.3d 1334, 1335 (D.C. Cir. 1998) (defendant's actual knowledge that his property was seized by the DEA did not preclude a challenge to the forfeiture of his property based on lack of notice of the forfeiture proceedings); *see also* <u>Mann v. Castiel</u>, 681 F.3d 368, 373 (D.C. Cir. 2012) (defendant's knowledge that complaint has been filed is not sufficient to establish personal jurisdiction over defendant).

Nothing in the District statute made challenges to lack of notice dependent on lack of knowledge of the seizure. Section § 983(e)(B) (stating that a motion to set aside a forfeiture will only be granted if "the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim"). This essentially creates a two-prong test to successfully set aside an administrative forfeiture. A plaintiff must not only demonstrate that the government failed to take reasonable steps to provide notice under the constitutional standard, but also that the plaintiff did not know of the seizure within adequate time to file a claim.

5. *The District's system for providing notice to claimants was a constitutionally inadequate notice procedure.*

The District's system for providing notice was constitutionally defective because the District only sent notice of intent to administratively forfeit property to a fraction of claimants, P. Ex. 205, Strickland Affidavit, ¶ 4; <u>AZ v. Shinseki</u>, 731 F.3d at1316-17, even though the civil forfeiture statute made administrative forfeiture dependent on actual receipt of notice by the claimant. D.C. Code § 48-905.02(d)(3)(C)( Mayor had no authority to administratively forfeit property until the owner's actual "receipt of notice."). Moreover, the District's *statute* was constitutionally deficient because it did not require the District to take additional steps beyond publication if Return Receipts indicated that notice was not delivered to the claimant. And the Property Clerk as a

practice did not during his tenure (from 2000 through February 2013, P. Ex. 230, Gray depo, pgs. 6, 13) send out follow up notice when a notice of intent to administratively forfeit property came back undelivered because the notice statute did not require it. P. Ex. 230, Gray depo, pgs. 152-53.

**a) The absence of Return Receipts ('green cards") indicates that the District never even mailed notice of intent to administratively forfeit property to claimants.**

Records produced by the District in discovery indicate the Property Clerk seldom if ever mailed notice to claimants. P. Ex. 205, Strickland Affidavit, ¶ 4. P. Ex. A; <u>AZ v. Shinseki</u>, 731 F.3d 1303, 1316-17. In fact, Mr. Strickland found only three "Return Receipts" out of more than 10,000 records of property seizure. Id. at ¶ 7. *See* <u>Hoyte v. D.C.</u>, 2017 U.S. Dist. LEXIS 117682, *26.

The absence of Return Receipts ('green cards") indicates that the District never even mailed notice of intent to administratively forfeit property to claimants. <u>AZ v. Shinseki</u>, 731 F.3d 1303, 1316-17 (Fed. Cir. 2013)(absence of a record government had duty to keep indicates matter did not occur or exist; Rule 803(7) (business records), Rule 803(10)(public records). The Property Clerk was under a duty to keep the green cards and the copies of notices of intent to administratively forfeit property mailed out. D.C. Code § 5-113.07 (generally the MPD must preserve all records).

Moreover, the District did not keep any other documents postmarked or endorsed by the Post Office such as envelopes showing cancelled postage or envelopes endorsed by the Post Office with the reason for nondelivery which would at least show the notices of intent to administratively forfeit property were actually mailed. 507.1.4. Domestic Mail Manual (undeliverable-as-addressed mail is endorsed by the USPS with the reason for nondelivery as shown in Exhibit 1.4.1 and returned to sender for many types of service).

The District mailed notice in only about a third of seizures during the <u>Hardy</u> class period. This creates the presumption that the Property Clerk did not send notices during the class period

in this case. <u>Morgan v. District of Columbia</u>, 824 F.2d 1049, 1063-1064(D.C. Cir. 1987)(citing <u>Wigmore</u> to show that evidence that a condition existed at one time is probative of its existence at another time prior or subsequent). EvidenceOnQue, the District's property database, has fields which seem to be populated when the District sends notice of intent to administratively forfeit property to the owners of vehicles and money which the District has seized for forfeiture determinations. P. Ex. 205, Strickland Affidavit, ¶ 4. The practice of the office was to make an entry in EvidenceOnQue notes field indicating that a notice of intent to administratively forfeit property had been sent whenever the Property Clerk sent out a notice of intent to administratively forfeit property. P. Ex. 230, Gray depo, p. 151. But, the data available in EvidenceOnQue shows that one or more of these fields are populated in only about 57% of the seizure records. *Id.* at ¶ 5. But, these notations which were not required by law and are self-serving and which were made in anticipation of litigation cannot overcome the evidentiary force of the absence of a Return Receipt postmarked by the Post Office, which were required by statute. D.C. Code § 905.02(d)(3)(A); *See generally* <u>Hess v. Commissioner</u>, 1989 Tax Ct. Memo LEXIS 410 (T.C. Aug. 10, 1989).

Lt Gray, who was the Property Clerk during the Hardy class period and until February 2013 in this Class period, testified that more often than not the Property Clerk simply waited for owners to call about their property before sending them notice. P. Ex. 230, Gray depo, p. 151, 153-54.

> **b) Even if the Property Clerk were mailing notices return receipt requested, the Property Clerk did not during his tenure send out follow up notice when a notice of intent to administratively forfeit property came back undelivered because the notice statute did not require it.**

Finally, even if the Property Clerk were mailing notices return receipt requested, the Property Clerk did not during his tenure (from 2000 through February 2013, P. Ex. 230, Gray depo, pgs. 6, 13) send out follow up notice when a notice of intent to administratively forfeit

property came back undelivered because the notice statute did not require it. P. Ex. 230, Gray depo, pgs. 152-53. The Property Clerk relied on publication or waited for owners to call to ask about their property. P. Ex. 230, Gray depo, pgs. 153-54. Failing to take some reasonable steps when notice mailed return receipt requested is returned as undelivered is not a constitutionally adequate notice procedure. Notice by return receipt requested mail is insufficient if the government learns that the letter was not delivered to the intended recipient. Jones v. Flowers, 547 U.S. at 229. Neither is notice by publication when the recipient's address was known at the time of seizure or could be ascertained with reasonably diligent investigation. Following up by publication was not constitutionally adequate under the circumstances presented here because, as we have explained, it was possible and practicable to give owners more adequate warning of the impending forfeiture of their property. Jones v. Flowers, 547 U.S. 220, 237 (2006); Small v. United States, 136 F.3d 1334, 1337 (D.C. Cir. 1998) ("The notice sent to Small's house was clearly insufficient; when the government knows (or can easily ascertain) where a person may be found, it must direct its notice there, and not to some other address where the designee formerly resided."). Waiting for someone to call about their property before sending them a notice is no system at all.

Finally, implicit in the due process requirement that the government must provide notice and a hearing before depriving someone of their property is the requirement that the notice precede the deprivation. *See* Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (notice "must afford a reasonable time for those interested to make their appearance . . . ."). So, for example, sending Mr. Acey notice of intent to administratively forfeit property and telling him it was too late to challenge the forfeiture was ineffective notice.

### c)  Lack of a return receipt indicating delivery of notice to the owner means the Mayor had no authority to administratively forfeit property.

Lack of a return receipt indicating delivery of notice to the owner means the Mayor had no authority to administratively forfeit property. Cruz-Packer v. District of Columbia, 539 F. Supp. 2d 181, 187 (D.D.C. 2008)(concluding that service was not effective under federal or District law where the required papers were sent to the individual defendant's business address by certified mail and the requested return receipt was signed by someone other than the person to be served).

Under the civil forfeiture statute in effect during the Class Period an owner's obligation to file a claim to prevent administrative forfeiture of their property was not triggered until actual "receipt of notice of seizure." D.C. Code § 48-905.02(d)(3)(B). Similarly, the Mayor had no authority to administratively forfeit property until the owner's actual "receipt of notice." D.C. Code § 48-905.02(d)(3)(C).

## V.  Plaintiffs' Claim 7: The District lacks an interest in any property for which it did not receive a return receipt evidencing that the owner actually received notice.

This Court found that Plaintiffs have alleged a cognizable due process violation based on the District's purported failure to return their property when it no longer had any interest in it. Brown, 115 F. Supp. 3d at 74. The statute conditions the Mayor's authority to administratively forfeit property on actual "receipt of notice" of intent to administratively forfeit property by owners so administrative forfeitures of property without a return receipt in the file establishes that the administrative forfeiture was void *ab initio*. D.C. Code § 48-905.02(d)(3)(C)(Mayor had no authority to administratively forfeit property until the owner's actual "receipt of notice.").

Therefore, the District lacks an interest in any property for which it did not receive a return receipt evidencing that the owner did actually receive notice. Brown, 115 F. Supp. 3d at 74.

Nickoya Hoyte is a Claim Seven Named plaintiff even if she did ultimately get her money back. P. Ex. 282, Hoyte depo.; <u>Brown</u>, 115 F. Supp. 3d at 74 (even a temporary deprivation under this claim is actionable under Claim Seven).

Respectfully submitted,

<u>/s/William Claiborne</u>
William Claiborne
DC Bar # 446579
717 D Street, Ave., NW
Ste 300
Washington, DC 20004-2815
Phone: (202) 824-0700
Email: claibornelaw@gmail.com