UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICKOYA HOYTE**, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA**,<br>Defendant. | )<br>)<br>)<br>)<br>)     Civil Action No: 13-569 (CRC)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT
OF AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

This class action brought pursuant to 42 U.S.C. §1983 involves two class claims and individual claims for monetary damages related to vehicle and money forfeitures and failure to provide required due process notice. On September 24, 2020, after more than seven years of hard-fought litigation, the parties reached a Settlement Agreement that was filed with the Court for preliminary approval.[1] ECF 246. On October 6, 2020, this Court entered the Order for Preliminary Approval of the Settlement Agreement. ECF 247. The Settlement Agreement requires the District of Columbia to pay a total settlement amount of $3,950,000 ("Settlement Amount") and return to Class Members any vehicles belonging to Class Members that remain in the District's possession. ECF 245-2.

Pursuant to the Settlement Agreement, the parties agreed that Class Counsel are entitled to attorneys' fees of $1,777,500 and expenses of $292,118.31 for the work performed for this

---

[1] An Amended Consent Motion for Preliminary Approval of the Settlement Agreement was filed on September 24, 2020. ECF 246. The amended motion modified the deadline in the Proposed Order (ECF 245-1) and Class Notice (ECF 245-3) for the submission of this fee request to allow time for Class Member review of the fee request prior to the deadline for filing objections to the settlement. The initial Consent Motion for Preliminary Approval of the Settlement Agreement was filed September 11, 2020. ECF 245

case.[2]  Settlement Agreement, ECF 245-2, paras. 41, 73; *see also* Order for Preliminary Approval, ECF 247, para. 2 ("The Court preliminarily finds that the settlement terms are within the range for a fair, reasonable and adequate settlement…, such that final approval of the settlement and Request for Attorney Fees and Costs may be appropriate…."). Of the total litigation expenses, $35,406.61 are to be paid to Class Counsel with the attorneys' fees. Settlement Agreement, ECF 245-2, para. 41. The remaining litigation expenses of $256,711.50, for payment to Tritura Information Governance LLC (Tritura), are waived for the benefit of the Class to increase the value of the Settlement Class Members (SCM) Fund and the Class Representative Award; but, if there is any reversion of unclaimed funds to the District, the order of priority is that all of Tritura's waived fee shall be paid to Tritura before any reversion is paid to the District. *Ibid*.

This matter is set for a fairness hearing on March 9, 2021. Order for Preliminary Approval, ECF 247.

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" and that class members must have an opportunity to object (Rule 23(h)(2)). In compliance with Rule 23(h)(1), and as required by the Order for Preliminary Approval of Settlement Agreement, Plaintiffs and Class Members were provided with notice of the settlement agreement and the amount of Plaintiffs' fee request on November 20, 2020, by newspaper publication in *The Washington Times*, via the website https://www.hoytevdcsettlement.com/, and by first class mail to known addresses. *The*

---

[2] Class Counsel are William Claiborne and Bennett Borden. Order for Preliminary Approval of Settlement Agreement, ECF 247, para. 10.

*Washington Times*, November 20, 2020, Ex. 1; Affidavit of William Claiborne, Ex. 2, para. 19. Plaintiffs also published notice in Prison News. *Ibid.* The notice informs members of the Classes that they may object to any aspect of the settlement by notifying the Court in writing, with a copy to counsel for both parties, by January 6, 2021.  This fee petition, including the documentation of the fees request of Class Counsel, will be placed on the "Important Documents" section of the website promptly after it is filed.  Thus, members of the Classes will have a reasonable opportunity to object to the proposed fees set forth in the Settlement Agreement.

Nickoya Hoyte, Kelly Hughes, Steven May, Romona Person, Dorian Urquart, Shanita Washington, Tanisha Williams, Jarrett Acey, Julius Gordon, Marilyn Langly, Terrence Thomas, and Shane Lucas (collectively "Plaintiffs" or "Class Representatives"), individually and as representatives of the subclasses they represent, hereby move for the award of attorneys' fees and expenses related to work in this case from its beginning through final settlement.  As set forth in the Settlement Agreement, Plaintiffs seek an uncontested award of attorneys' fees of $1,777,500, expenses of $35,406.61, and additional expenses of $256,711.50 for Tritura if there are unclaimed funds.[3]

Class Counsel have discussed the fees request with the Class Representatives and none of them objects to the fees being sought by Class Counsel.   Claiborne Aff., Ex. 2, paras. 17-18.

Consistent with Local Rule 7(m), plaintiffs conferred with the District, which does not oppose the relief requested herein.

---

[3] Plaintiffs incorporate herein by reference the arguments and exhibits in Plaintiffs "Justification for attorneys' fees and litigation expenses for Class counsel" filed as exhibits to Plaintiffs' Motion for Preliminary Approval. ECF 245-6 and 245-7.

## ARGUMENT

## I

## HISTORY OF THE CASE

Plaintiffs brought this complex federal class action over seven years ago in April 2013 and Class Counsel have reasonably expended over 3,500 hours prosecuting the case since then. Claiborne Aff., Ex. 2, para. 23. Class Counsel have performed all work, including expenditure of out-of-pocket expenses, on a fully contingent basis, meaning Class Counsel took considerable risk in litigating the case. *Id.*, para. 11; Affidavit of Bennett B. Borden, Ex. 3, para. 7.

The claims in this case have three components: (1) a class of about 859 vehicle owners whose vehicles were seized for civil forfeiture pursuant to an unconstitutional forfeiture statute which did not provide prompt post-seizure hearings at which owners could have challenged the legality of the stop or the District's right to keep the vehicles pending the outcome of the forfeiture proceedings, and at which "innocent owners" could have proved that their vehicles should have been returned to them within 15 to 30 days, and whose vehicles were held more than 15 days; (2) a class of potentially several thousand persons whose money (usually amounts of less than $100) was seized for civil forfeiture without receiving constitutionally adequate notice; and (3) the individual claims of the Class Representatives. Claiborne Aff., Ex. 2, para. 10.

Class Counsel was successful in achieving an overall settlement for the Class and in achieving significant milestones throughout the course of this litigation: Class Counsel defended Plaintiffs' key claims against the District's motion to dismiss; Class Counsel overcame the District's defense that the U.S. Attorney was responsible for delays in returning vehicles; Class Counsel obtained certification of this case as a class action; Class Counsel successfully addressed two Rule 68 Offers of Judgment; Class Counsel successfully litigated complex

discovery disputes including obtaining a court order requiring the production of EvidenceOnQue, the District's property database, and the related documents; Class Counsel successfully litigated partial summary judgment over the District's vigorous defenses.[4]

The Court of Appeals for the District of Columbia Circuit's description of the District's efforts in another litigation applies here, "The litigation went forward in a relatively civilized manner, but it was hard fought. The Government offered firm, persistent resistance throughout the litigation and concessions developed only as it became apparent there was little prospect of Government success. Indeed, the Government moved to dismiss at the outset, and it opposed discovery." *Copeland v. Marshall*, 641 F.2d 880, 904 (1980) (*en banc*). Plaintiffs have expended significant hours and effort responding to the District's firm, persistent resistance throughout the litigation which had the consequence of increasing the number of necessary litigation hours. *Copeland*, 641 F.2d at 904.

## II

### PLAINTIFFS ARE ENTITLED TO FEES BASED ON A PERCENTAGE OF THE SETTLEMENT FUND

In this civil rights class action for monetary, declaratory, and injunctive relief, Plaintiffs use the percentage of the fund method for calculating their fees. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). The Court of Appeals for the District of Columbia Circuit has held that the " percentage-of-the-fund is the proper method for calculating fees in a common fund case" whereby the fee awarded is a percent of the common fund that was created as a result of the litigation. *Id*. at 1272.

---

[4] For a full discussion of the procedural history of the case see Consent Motion for Preliminary Approval of Settlement Agreement, Section I, ECF 245.

The common fund doctrine allows Plaintiffs who succeed in establishing a common fund as part of a settlement to be reimbursed their attorneys' fees from that fund. *Swedish Hospital Corporation*, 1 F.3d at 1265. Generally, the percentage of the fund method awards class counsel a percentage of the fund created by the parties' settlement agreement or Court judgment. The rationale behind the percentage of the fund method is that each class member should pay a percentage of their award to the class counsel or otherwise the Class Members would be getting a windfall of free attorneys' fees. *Swedish Hospital Corporation*, 1 F.3d at 1265.

While the fee award must be based upon a percentage of the common fund, there is no rule limiting the percentage that can be awarded. The award is to be reasonable and the district court enjoys substantial discretion in making reasonable attorney fee determinations. *Ibid*. In the D.C. Circuit, the district courts have found awards of up to 45% of the fund to be reasonable. *See generally*, *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7-9 (D.D.C. 2008) (awarding attorneys' fee of 45% of the settlement fund); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-MS-276 (TFH), 2003 WL 22037741, *7 (D.D.C. June 16, 2003) (finding that percentage of the fund fee awards range from 15-45%); and *In re Ampicillin Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981) (finding that courts have awarded percentage of the fund attorneys' fees greater than 45% and awarding plaintiffs attorneys' fees equal to 45%).

A.   **The Requested Attorneys' Fees Are Appropriate, Reasonable, and Fair to the Class**

The $1,777,500 for attorneys' fee sought by the Plaintiffs amounts to 45% of the settlement fund. The amount sought is significantly less than the fair market value of the 3,500 hours expended by Class Counsel on the case at Washington, DC market rates. The request, although in the higher range of awarded percentages, is within the range of reasonable

percentages awarded in class action settlements using the percentage of the fund method and is appropriate and reasonable considering the specific circumstances of this case.

When evaluating attorneys' fee requests under the percentage of the fund method the court considers numerous factors, including: (1) size of fund created and number of persons benefited; (2) presence or absence of substantial objections by members of class to settlement terms or fees requested by counsel; (3) skill and efficiency of attorneys involved; (4) complexity and duration of litigation; (5) risk of nonpayment; (6) amount of time devoted to case by Plaintiffs' counsel; and (7) awards in similar cases. *Wells*, 557 F. Supp 2d at 6.  As discussed below, these factors weigh in favor of the reasonableness of the requested attorneys' fee.

The court may also consider the requested fee compared to the lodestar fee calculation used in civil rights and other fee-shifting actions.  *Id*. at 7.  Under the lodestar method, presumptively reasonable fees are calculated by multiplying the reasonable hours spent on the case by the hourly market rate.  Although the two methods are different, the percentage of the fund method and the lodestar method remain closely connected because courts frequently cross-check the percentage award class counsel ask for against the amount of fees that Class Counsel would receive using the lodestar method.  This cross-check is conducted to ensure that the Plaintiffs' lawyers are not receiving an excessive fee at their clients' expense. See e.g., *Ceccone v. Equifax Info. Servs. LLC*, 2016 U.S. Dist. LEXIS 127942, *34-35 (D.D.C. August 29, 2016). Courts in this Circuit routinely allow multipliers to the lodestar calculation of between 2 to 4. *Id*. That is, fee awards using the percentage of the fund method are frequently two to four times the amount of fees calculated using the lodestar method.  However, as discussed below, in this case, the 45% fee award requested by Class Counsel is in fact heavily discounted from the lodestar fee

because the requested fee is discounted by a "multiplier" of less than one, 0.6, rather than a multiplier of 2 to 4 times the lodestar fee, as is typical for percentage of the fund awards.

It is well-established that in litigation brought to advance civil rights, which have great intrinsic value but often small monetary value, the attorneys fee awarded need not be proportional to the monetary recovery. *See e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 574-575 (plurality) (1986) (holding "[w]e reject the proposition that fee awards under §1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers" and finding that "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief"); *Id*. at 585 (Powell, J., concurring) (holding that applying a rule of proportionality between the fee awarded and the damages recovered in a civil rights case is not supported by the legislative history or previous decisions of the Court); *Thomas v. National Football League Players Ass'n*, 273 F.3d 1124, 1129 (D.C. Cir. 2001) (Title VII) (fact that fees awarded were nearly five times the amount of plaintiff's recovery did not make them excessive); *Copeland*, 641 F.2d at 907-908 (Courts have long recognized the significance of attorneys' fees in civil rights cases and award or approve fees to counsel that are disproportionate to monetary damages recovered to ensure the ability to encourage counsel to take on such cases that serve a public good). This well-established line of authority further demonstrates that a fee awarded under a percentage of the common fund method rather than the lodestar method is eminently reasonable. Here, Class Counsel expended a great number of hours over the course of seven years responding to "firm, persistent resistance throughout the litigation" (*Copeland*, 641 F. 2d at 904). Yet, rather than receiving the full value of the fees actually incurred under the lodestar method, Class Counsel will instead receive only a

proportion of the monetary award to the Classes. While Plaintiffs are willing to accept this attorneys' fee award to achieve a settlement, the significant reduction in Class Counsel's actual attorneys' fees is in tension the remedial goals of the civil rights statutes. The significance of a § 1983 monetary recovery cannot be evaluated simply on the basis of the amount of damages recovered. Section 1983 claims, like the ones advanced by Plaintiffs here, serve important public policies, such as providing a vital safeguard against unconstitutional practices. *See City of Riverside*, 477 U.S. at 575 (finding that "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms").

### 1. The Requested Fee is Appropriate for Complex Litigation Resulting in the Protection of the Rights of People in the District of Columbia

Plaintiffs brought and litigated this complex action in federal court to protect and vindicate the procedural due process rights of themselves and other citizens of and visitors to the District. Class Counsel obtained a significant recovery on behalf of the Plaintiffs and Class Members, who total several thousand individuals (approximately 859 in the Vehicle Forfeiture Class and several thousand in the Forfeiture Notice Class), including a settlement payment of $3,950,000 and the return of vehicles to Vehicle Forfeiture Class Members. Settlement Agreement, ECF 245-2, para. 41.

The settlement achieved by the work of Class Counsel will result in significant benefit to the Plaintiffs and Class Members through the payment of considerable financial compensation and by preventing the Plaintiffs from enduring the stress, time commitment, and other strains of continued litigation.

If the requested fee is awarded, considerable settlement funds of more than $2,000,000 remain for payments to Plaintiffs and Class Members. Class Counsel has also arranged for a substantial portion of the litigation expenses to be waived to preserve more of the settlement fund for Class Member claims. Settlement Agreement, ECF 245-2, para 41. $133,000 of the settlement fund will be applied to payments to the class representative Class Representatives and $1,955,214 of the settlement fund will remain for payment of class member claims. *Ibid*. Therefore, even if every class member submits a claim that is approved by the fund administrator, each class member will receive significant compensation.

This settlement serves the public interest not only by conserving the resources that would be required by further litigation, but also by protecting and offering substantial compensation to several thousand individual members of the Classes.

### 2. The Class Representatives Do Not Object to the Requested Fee and Members of the Classes Will Have a Reasonable Opportunity to Object

The Class Representatives have been notified of the terms of the Settlement Agreement, including the value of the total Settlement Amount and the requested attorneys' fees. Claiborne Aff., Ex. 2, para. 19. The Class Representatives support the settlement terms and requested attorneys' fees as fair and resulting in a significant benefit to Plaintiffs and the class. *Id*., para. 18.

On November 20, 2020, notice of the proposed settlement and the amount of the requested attorneys' fees was provided to the entire class. *The Washington Times* Notice, Ex. 1; Claiborne Aff., Ex. 2, para. 19. As of the filing of this motion, no objection has been lodged. *Id.,* para. 18. Promptly after this motion is submitted, it will be posted as an "Important Document" on the website https://www.hoytevdcsettlement.com/ so that members of the Classes have access to the documentation supporting the fee request. *Id.*, para. 20. Thus, Class Members

will have a reasonable opportunity to lodge any objections to the fees request by the deadline for objections of January 6, 2021.

### 3. The Requested Fee Is Reasonable Based upon the Experience of Counsel, the Complexity and Length of the Litigation, and the High Risk of Non-Payment

This litigation has lasted seven years, and the District has mounted a vigorous defense at each step. Similar to *Wells,* 557 F. Supp. 2d at 9, where the Court awarded a fee equal to 45% of the settlement fund, the experience of Class Counsel, the length and the complexity of the litigation, and the high risk of non-payment all support the reasonableness of the requested fee.

Class Counsel William Claiborne and Bennett B. Borden are experienced senior attorneys. Mr. Claiborne has 25 years of experience in complex federal litigation including class actions. Claiborne Aff., Ex. 2, para. 7. He was lead managing counsel in both *Bynum v. District of Columbia* and *Barnes v. District of Columbia*, as well as other class actions involving the District and other municipal and corporate defendants. *Ibid.*

Mr. Borden is a partner and the Chief Data Scientist at Faegre Drinker Biddle & Reath LLP, where he conducts defensive and offensive electronic discovery in complex litigation. Borden Aff., Ex. 3, para. 3. Mr. Borden has more than 14 years of complex litigation discovery experience. *Ibid*. Mr. Borden's work on the case focused on the complex electronic discovery issues, oversight of Tritura's review and analysis of copious discovery materials, and settlement. *Id*., paras. 9, 11.

Class Counsel are experienced federal litigators who have successfully advanced this litigation and negotiated it to its current stage. The litigation has been hard fought and filled with extensive motions practice, discovery, numerous hearings, mediation, and settlement negotiations. Class Counsel overcame a motion to dismiss, successfully litigated discovery,

obtained class certification, broadened and maintained the class through discovery and litigation, withstood summary judgment, obtained a partial finding of liability as to Plaintiffs' claims, and negotiated a settlement agreement now being considered by the Court. The handling of the case by experienced class counsel was necessary and appropriate for the litigation given the complex nature of the litigation and the District's vigorous defense and litigation strategy.

The high risk of non-payment of fees, which was compounded every year the litigation stretched on without resolution, also supports the reasonableness of the requested fee. Class Counsel took on substantial risk of non-payment and spent out-of-pocket monies to represent and protect the rights of Plaintiffs and Class Members on a fully contingent basis. Claiborne Aff., Ex. 2, para. 11; Borden Aff., Ex. 3, para. 7. Class Counsel has litigated this case diligently for more than seven years without payment and Plaintiffs and Class Members will substantially benefit from Class Counsels' robust efforts.

### 4.     The Requested Fee Is Reasonable Based on Comparison to Similar Cases

Although the 45% percentage fee request falls at the higher end, the percentage is within the range recognized by the district courts in this Circuit as reasonable. *Wells*, 557 F. Supp. 2d at 9. *Wells,* in which class counsel was awarded 45% of the common fund, is a reasonable comparator to this case. The available settlement fund in *Wells* was approximately $1,500,000, with approximately $800,000 available to the class after payment of attorneys' fees, and the class size was about 1,200 individuals. *Wells*, 557 F. Supp. 2d at 7. Here, our class size is larger than *Wells*, but the fund is more than double the amount in *Wells*. Thus, each plaintiff in this case will receive a similar substantial benefit.

Similar to the current litigation, the *Wells* litigation lasted approximately six years, and was complex and strongly litigated. *Wells*, 557 F. Supp. 2d at 9. Class counsel in *Wells*

expended approximately 3,100 hours over the course of the litigation. *Id*. at 7-8. In comparison, this case has lasted more than seven years, and class counsel expended approximately 3,525 hours. Claiborne Aff., Ex. 2, para. 23. In addition, the class counsel in *Wells*, like here, took the case on a fully contingent basis with great risk of non-payment. *Wells*, 557 F. Supp. 2d at 8. Moreover, the requested 45% of the fund fee in *Wells*, like here, was significantly less than the fair market value of the hours expended by class counsel on the case at Washington, DC market rates. *Ibid*. Given these factors and the relatively greater success achieved here in comparison to *Wells* in the settlement, the fee sought by Plaintiffs is reasonable.

### 5.   The Requested Fee is Reasonable Based Upon Hours Expended

The $1,777,500 fee request is reasonable and appropriate when considered in relation to the hours expended. Class Counsel has expended approximately 3,525 hours since the beginning of this case through February 2020.[5] Claiborne Aff., Ex. 2, para. 23; Time Records, Exs. 4-5. Class Counsel have spent considerable additional hours since February 2020 negotiating the settlement terms and filings with the District and supporting this request for fees. Claiborne Aff.,

---

[5] Even though common fund cases ordinarily include all hours expended, in the exercise of billing judgment for purposes of the lodestar cross-check, Class Counsel has not included hours for work related to Plaintiffs' claims regarding vehicles held for evidence that Plaintiffs dismissed, Plaintiffs' third motion to amend complaint that sought to add a Fourth Amendment claim, Plaintiffs' motion to intervene that was withdrawn, and Plaintiffs' motion seeking reconsideration of Claim 3. Claiborne Aff., Ex. 2, para. 24.

Similarly, in the exercise of billing judgment for purposes of the lodestar cross-check, Class Counsel have included only the hours recorded by attorneys at Mr. Borden's firm, even though the total number of hours spent on this case by attorneys at Faegre Drinker Biddle & Reath, LLP is far greater than those recorded. Faegre Drinker Biddle & Reath, LLP initially became involved in this case not expecting compensation. As a result, all hours have not been recorded. Class Counsel therefore only include the approximately 526 hours that are set forth in the time records in Exhibit 4 to Plaintiffs' Consent Motion. Borden Aff., Ex. 3, para. 12.

Ex. 2, para. 26.  In addition, Class Counsel will continue to spend considerable hours to defend and finalize the settlement agreement and ensure it is fully implemented.  *Ibid*.

The work of Messrs. Claiborne and Borden account for approximately 91% of the hours expended in this case.  Time Records, Exs. 4-5; Lodestar Calculation Summary, Ex. 7.  The requested attorneys' fee ($1,777,500) divided by the hours expended (3,525) results in an average rate of $504 per hour.  As noted by the court in *Wells*, 557 F. Supp. 2d at 8, this is further evidence of the reasonableness of the requested attorneys' fee as this average hourly rate is well below the market rates for experienced attorneys conducting complex litigation in the District of Columbia.  For example, the hourly rate for lead counsel William Claiborne, who does not have a usual hourly billing rate, is $899 under the LSI *Laffey* Matrix.  *See* LSI *Laffey* Matrix, Ex. 6.  Likewise, Faegre Drinker Biddle & Reath, LLP bills and receives payment for the services of Mr. Borden at the standard hourly rate of $870.  *See* Borden Aff., Ex. 3, para. 6.

Most of the hours expended in this litigation were spent on the varied and extensive motions practice and discovery.  Exs. 4-5, Time Records.  As discussed above, there was extensive motions practice related to the multiple motions to dismiss, motions for class certification, Rule 68 offers, and motions for summary judgment.  Likewise, discovery was hard fought and required substantial negotiation and motions practice to compel production of documents and information.  The discovery materials produced were voluminous and required a great deal of time to review and analyze.  Moreover, numerous depositions were taken by both Plaintiffs and the District.

Plaintiffs have expended significant hours and effort responding to the District's firm, persistent resistance throughout the litigation.  The District's litigation strategy has the consequence of increasing the number of necessary litigation hours.  *See Copeland*, 641 F.2d at

904 ("The government's contentious litigation strategy forced the plaintiff to respond in kind."). The hours expended were reasonable considering the substantial work required to successfully prosecute this litigation and now, to support the appropriateness of the requested fee.

### 6. The Requested Fee is Reasonable Based Upon Comparison to the Lodestar Fee Calculation

To cross-check the reasonableness of the fee requested, the court will often compare the percentage of the fund fee against the presumptively reasonable market rate lodestar fee calculation (*i.e.*, hours x market rate = presumptively reasonable fee). *See In re Black Farmers Discrimination Litigation*, 953 F. Supp. 2d 82, 101 (D.D.C. 2013); *Wells*, 557 F. Supp. at 8. In general, percentage of the fund fee awards represent a multiplier to the lodestar fee and courts check to ensure that the amount awarded does not represent too much of a multiplier to the lodestar fee. *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-MS-276 (TFH), 2003 WL 22037741, *9 (a fee award that is 1.15 or 1.36 times *greater* than the lodestar "falls near the low end of normal multipliers" and "multiples ranging up to four are frequently awarded in common fund cases when the lodestar method is applied" (internal quotation marks omitted)). However, here, rather than act as a multiplier, the percentage of the fund fee is a <u>significant reduction</u> to the market rate lodestar fee.

The market rate lodestar fee totals $3,016,764. Lodestar Calculation Summary, Ex. 7.[6] The requested $1,777,500 percentage of the fund fee amounts to only 60% of the lodestar fee.

---

[6] In calculating the market rate lodestar, class counsel used the LSI *Laffey* Matrix rates for lead counsel, William Claiborne, since Mr. Claiborne does not have a customary hourly rate. Claiborne Aff., Ex. 2, para. 8. The LSI *Laffey* Matrix rates have been accepted by this Court and upheld by the Court of Appeals for the District of Columbia Circuit as market rates for complex federal litigation in the District of Columbia. *See, e.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 63-65 (D.C. Cir. 2015); *True the Vote, Inc. v. IRS*, No. 13-734 (RBW) 2020 WL 5656694, at *7-9 (D.D.C. Sep. 23, 2020); *U.F. v. District of Columbia*, No. 19-2164, 2020 WL 4673418, at

Thus, rather than applying a multiplier to the fee paid to Class Counsel, the percentage of the fund fee is a significant 40% reduction to the lodestar fee.

When the Courts apply the lodestar cross-check on the percentage of the fund fee, the Court does not assess the reasonableness of each hour expended by counsel; rather, the Court looks at whether the overall total hours were reasonable in light of the history of the case. *See In re Black Farmers Discrimination Litigation*, 953 F. Supp. 2d at 101-102 (accepting plaintiff's lodestar fee calculation based upon the hours expended and use of USAO *Laffey* Matrix rates); *Wells*, 557 F. Supp. 2d at 8 (accepting plaintiff's lodestar fee calculation based upon the hours expended and customary rates for counsel); *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 18-20 (D.D.C. 2003) (finding that the hours claimed by counsel reasonable in light of the general litigation history of the case).

We have explained above the substantial work that was required to successfully prosecute this litigation in the face of the District's vigorous defense. Thus, even if there could be an objection to the reasonableness of some of the hours billed, such objections are irrelevant given the substantial discount that the percentage of the fund fee represents compared to the lodestar.

---

*5-7 (D.D.C. Aug. 12, 2020); *The Mattachine Society of Washington v. United States Department of Justice*, No. 16-cv-773-RCL, 2019 WL 6345747, at *4-5 (D.D.C. January 27, 2019); *see also DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019) (rejecting new USAO rates because they are based on rates for all types of legal services in the region as opposed to rates for complex federal litigation in the District of Columbia).

Attorneys with the firm Faegre Drinker Biddle & Reath, LLP, have been billed at the firm's customary rates billed to clients for each attorney. Borden Aff., Ex. 3, para. 6. Billing an attorney at his customary rates is consistent with the caselaw in this Circuit. *See Borum v. Brentwood Village, LLC,* No. 16-cv-1723-RC, 2020 WL 5291982, *5 (D.D.C. September 4, 2020) (finding "this Circuit has previously held that 'an attorney's usual billing rate is presumptively the reasonable rate.' *Baylor v. Mitchell Rubenstein & Assoc., P.C.*, 735 Fed. Appx. 733, 735 (D.C. Cir. 2018)").

For example, $1,777,500 represents only 1,977 hours at the LSI Laffey rate of $899 per hour, a substantial reduction to the over 3,500 hours actually worked.

Under the market rate lodestar calculation cross-check, the requested percentage of the fund fee is significantly less than the lodestar. This is further evidence that the requested percentage of the fund fee is reasonable.

## III

### PLAINTIFFS ARE ENTITLED TO AN AWARD OF EXPENSES

Plaintiffs ask for $292,118.31 for litigation expenses. Plaintiffs seek $35,406.61 of litigation expenses to be paid at the time of the attorneys' fees. The remaining $256,711.50 of litigation expenses are owed to Tritura Information Governance LLC (Tritura) and will be paid only in the event that unclaimed funds remain after distributions to eligible class members who submit valid claims. Class Counsel are entitled to an award of litigation expenses from the settlement fund. *Wells*, 557 F. Supp. 2d at 8 (class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund).

Plaintiffs incurred $292,118 in expenses. Claiborne Aff., Ex. 2, para. 14; Expense Records, Ex. 8. Most of the expense amount, $256,711.50, is payable to Tritura for discovery and data analysis services performed on behalf of the Class Members for analyzing the computer data and the more than 2,961,000 pages of documents the District produced to Plaintiffs in discovery. Borden Aff., Ex. 3, para. 11. Tritura's work was used in many ways during the litigation, including: to develop the facts needed to calculate the lengths of vehicle detentions for the known vehicle forfeiture class; to defeat the District's "evidentiary hold" defense; and to determine to which forfeiture notice class members the District provided notice, and how long after the monetary seizure that such notice was provided. *Ibid*.

In the interests of maximizing the funds available to the Class, Tritura is waiving its fee for distribution to the Class Members. Claiborne Aff., Ex. 2, para. 14. However, should all or part of the donated funds not be paid to Class Members, they shall be paid to Tritura prior to any reversion of funds to the District. Settlement Agreement, ECF 245-2, para. 41.

The remaining expenses of $35,406.61 are related to filing fees, document production, postage, depositions, experts, and paralegal time. *See* Expense Records, Ex. 8. All expenses were incurred to support and further the litigation. Claiborne Aff., Ex. 2, para. 15; Borden Aff., Ex. 3, para. 8.

Pursuant to the Settlement Agreement, Plaintiffs are entitled to payment of the requested litigation expenses.

## IV

## CONCLUSION

Plaintiffs' attorneys' fees and expenses for the work described above are fair and reasonable. The parties have settled the fees for $1,777,500 and the expenses for $292,118.31 ($35,406.61 to be paid at the time of the attorneys' fees and $256,711.50 to be paid only in the event that unclaimed funds remain after distributions to eligible class members who submit valid claims). As of this filing, the Class Representatives approve the fees request and no member of the Classes has filed an objection. If any objections to the fees request are filed on or before January 6, 2021, plaintiffs will respond to the objections as directed by the Court or prior to the Fairness Hearing.

For the reasons set forth above, and based on the settlement of the parties, Plaintiffs respectfully request an award $1,777,500 in fees and $292,118.31 for expenses ($35,406.61 to be

paid at the time of the attorneys' fees and $256,711.50 to be paid only in the event that unclaimed funds remain after distributions to eligible class members who submit valid claims).

Respectfully submitted,

*/s/ William Claiborne*
WILLIAM CLAIBORNE, DC Bar No. 446579
717 D Street, NW, Suite 300
Washington, D.C. 20004
Phone (202) 824-0700

*/s/ Bennett B. Borden*
BENNETT B. BORDEN, DC Bar No. 501228
Faegre Drinker Biddle & Reath LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
Phone: (202) 842-8800

*/s/ Kathleen L. Millian*
KATHLEEN L. MILLIAN, DC Bar 412350
ALICIA C. ALCORN, DC Bar 494469
Terris, Pravlik & Millian, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009-4422
(202) 682-2100

December 18, 2020

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | *Washington Times* notice to Class Members published November 20, 2020 |
| 2 | Affidavit of William Claiborne |
| 3 | Affidavit of Bennett Borden |
| 4 | Time Records – William Claiborne |
| 5 | Time Records – Faegre Drinker Biddle & Reath LLP |
| 6 | *Laffey* Matrix Updated Using Legal Services Index ("LSI *Laffey* Matrix") |
| 7 | Lodestar Calculation Summary |
| 8 | Expense Records |