## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICKOYA HOYTE, *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 13-569 (CRC)** |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## FINAL ORDER OF APPROVAL OF SETTLEMENT

The Court, having held a duly-noticed Fairness Hearing on March 9, 2021, having considered all matters submitted to it at the Fairness Hearing and otherwise, having received no objections by Class Members to the proposed settlement, and finding no just reason for delay in entry of this Final Order of Approval of Settlement and good cause appearing therefor, it is hereby **ORDERED**:

1.      This Order (the "Final Approval Order") incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms shall have the same meanings set forth in the Settlement Agreement. The Settlement Agreement was preliminarily approved by the Court's Preliminary Approval Order, entered on October 6, 2020. [ECF 247].

2.      The terms of this Court's Preliminary Approval Order are incorporated by reference in this Order.

3.      The Court has jurisdiction over the subject matter of the Lawsuit, the Parties, and all members of the Class.

4.      Class Counsel adequately represented the Class for the purpose of entering into and implementing the Settlement Agreement. Class counsel has made reasonable efforts to consult with members of the class.

**Class Certified Under Federal Rules of Civil Procedure 23(b)(3)**

5.      This Court has certified a Vehicle Forfeiture Class and a Forfeiture Notice Class in this case, initially on July 27, 2017, and subsequently on October 10, 2021, with amended class definitions, in its Preliminary Order of Approval and Settlement. The classes have been certified under Fed. R. Civ. Proc. 23(b)(3) and Class Members had the right to opt-out.

**Settlement Agreement is Fair, Adequate, and Reasonable**

6.      The Court hereby finds that the Settlement Agreement (including its exhibits and attachments) and the settlement contemplated thereby are the product of arm's length, good faith settlement negotiations between the Defendant and Class Counsel.

7.      The Settlement Agreement [ECF 245-2] and the settlement set forth herein are hereby approved and found to be fair, adequate and reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

8.      The Court hereby finds and concludes that class notice was disseminated to members of the Classes in accordance with the terms set forth in the Settlement Agreement and in compliance with this Court's Preliminary Approval Order. The Court further finds and concludes that the notice fully satisfied Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, was the best notice practicable under the circumstances, and supports the Court's exercise of jurisdiction over the Class as contemplated by the Settlement Agreement and this Order.

9.      The Court hereby finally approves the Settlement Agreement and the settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement in accordance with Rule 23 of the Federal Rules of Civil Procedure, and directs consummation of the settlement pursuant to the terms and conditions of the Settlement Agreement. The Court finds the financial terms of the settlement favorable to class members. The recovery for each Vehicle Forfeiture Class member whose vehicle was held more than 30 days includes compensation for every day the District held the vehicle over thirty days without regard to the length of detention.

10.     The fairness and adequacy of the settlement is reflected in the Class's satisfaction with the settlement. There were about 867 total identified potential Vehicle Forfeiture Class members in the MPD EvidenceOnQue database, and approximately 10,000 Forfeiture Notice Class members. After re-mailing returned mailings, the Class Administrator was able to successfully mail 18,999 such potential class members.

11.     As of February 19, 2021, the Class Administrator had received and processed a total of 1,995 Claim Forms (Total Vehicle Claims Received: 885; Total Forfeiture Notice Claims Received: 1,110), and as of the Fairness hearing, there were 2,343 Claim Forms filed (Total Vehicle Claims Received: 1,072; Total Forfeiture Notice Claims Received: 1,271). These numbers indicate that the number of Vehicle Claims received exceeds the number of Vehicle Forfeiture Class members. The reaction rate of the Forfeiture Notice Class, although less, is nonetheless favorable given the challenges posed by identifying class members in the first instance and by the nature of the class such as the transient nature of the Forfeiture Notice Class members and the small amount of most claims.  The reaction rate and claims rates will likely go up because the Claims Administrator is still processing claims received and the claims period is

not yet over so likely more claims will be received. The last day for class members to file a Claim Form is March 22, 2021. There was not a single objection and no class member opt-outed out. Thus, not a single class member in either of the Classes expressed any type of dissatisfaction with any aspect of the Settlement. This is a highly favorable reaction by the class to the settlement. *See, e.g., Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 362 (D.D.C. 2007) (50 opt outs and one objection out of 41,561 notices sent; the few number of opt outs and "existence of even a relatively few objections certainly counsels in favor of approval"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 398-99 (D.D.C. 2002) (13 objectors and 14 opt outs from class in which over 13,000 copies of the class notice were sent; "[t]he fact that such an overwhelming majority of class members elected to stay in the class evidences a favorable reaction by the class to the settlement" and objections were not well taken and relatively low in numbers). These indicia of the approval of the class of the terms of the settlement support a finding of fairness under Rule 23 under any measure.

**Notice**

12.    As required by the Court in its Preliminary Approval Order:

(a) Class and Settlement Notice were mailed to all potential class members or their representatives whose addresses could be obtained with reasonable diligence; and

(b) Class Settlement and Notice were published as provided for in the Settlement Agreement and Preliminary Approval Order.

13.    The Notice given to the class is hereby determined to be fully in compliance with both the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The Notice given is further found to be the best notice practicable under the circumstances and therefore, constitutes due and sufficient notice to all parties. Additionally, JND Class Action Administration ("JND") caused the Publication Notice to be published in the

November edition of Prison Legal News. Class Counsel circulated copies of the Notice and Claim forms in the Superior Court Trial Lawyers Association. Class Counsel provided copies of the Notice and Claim forms to the District of Columbia Public Defender Service for distribution to former clients of PDS and the persons whom PDS helped retrieve their vehicles in connection with *Krystle Brown v. District of Columbia*, Civil Action No. 13-686 (EHS).

14.    Due and adequate notice of the proceedings having been given to the Classes and a full opportunity having been offered to the Classes to participate in the hearing, it is hereby determined that all Class Members are bound by this Final Order of Approval of Settlement.

**Class Counsel**

15.    The Court reaffirms appointment of William Claiborne and Bennett B. Borden as Class Counsel.

**Appointment of Class Administrator**

16.    Pursuant to the Preliminary Approval Order, JND was appointed to be the Class Administrator. The Court approves and affirms that appointment, finds that the Class Administrator was qualified, and has discharged its responsibilities as the Class Administrator. The Class Administrator, to the extent its duties are not yet completed, is authorized to by this Order to complete those duties.

**Amendment to the Settlement Agreement**

17.    The Court orders that pursuant to further agreement between the Parties, the following language supersedes and replaces Paragraphs 41 and 42 of the Settlement Agreement:

41.    **Settlement Amount Allocation**. The Parties agree that the Settlement Amount will be allocated as follows, subject to Court approval, and the District will not in any way contest such allocation and awards by the Court:

a.    $103,000.00 for the **Base Class Representative Award** for payments to the Vehicle Forfeiture Class Representatives and the Forfeiture Notice Class Representatives in settlement of their claims and as an incentive payment in consideration of their services as Vehicle Forfeiture or Forfeiture Notice Class Representatives.

b.    $292,118.11 for **Base Litigation Expenses**.

i.)    $256,711.50 of the **Litigation Expenses** (the **Tritura Payment**) is payable to Tritura Information Governance LLC ("Tritura") for discovery and data analysis services performed on behalf of the Class Members. $226,711.50 of the **Tritura Payment** shall be waived and donated to the SCM Fund for distribution to SCMs ("**Tritura SCM Fund Donation**") and $30,000 of the **Tritura Payment** shall be waived and donated for distribution to the **Class Representative Award** ("**Tritura Class Representative Award Donation**"). However, if any of the SCM Fund remains after all payments and distributions have been made to the SCMs according to the Distribution Plan, the remainder, up to the amount of the **Tritura SCM Fund Donation**, will revert to Tritura and shall be paid by the Administrator or Class Counsel to Tritura prior to any reversion of funds to the District pursuant to paragraph 57 of this Settlement Agreement. The **Tritura Class Representative Award Donation** will not revert to Tritura.

c.       $1,742,923.55 for **Attorney's Fees**, to be determined upon finalization of the amount of **Administrative Expenses**.

d.       $118,031.90 for **Administrative Expenses**.

i.) $12,330.00 of the **Administrative Expenses** shall be paid to Class Counsel William Claiborne's trust account for payment to the Class Administrator for providing Class Notice and Claim and Release Forms to all Class Members, as addressed in ¶ 42.

ii.) $69,152.90 of the **Administrative Expenses** will be allocated to the **Class Administrator** for payment of unexpected costs involved in providing Class Notice and Claim and Release Forms to all Class Members, and providing other administrative services to the class, as addressed in ¶ 42.

e.       $1,693,926.44, the **Base SCM Fund**, for payment of **Verified Claims** to **SCMs**, to be determined upon finalization of the **Administrative Expenses**.

f.       The Parties agree that after accounting for the **Tritura** donations (**Tritura SCM Fund Donation** and the **Tritura Class Representative Award Donation**) the **Settlement Amount** will be allocated as follows, subject to Court approval, and the District will not in any way contest such allocation and awards by the Court:

i.)       $133,000.00 for the **Class Representative Award** for payments to the **Vehicle Forfeiture Class Representatives** and the **Forfeiture Notice Class Representatives**. This amount is the sum of the **Base Class Representative Award** ($103,000) and the **Tritura Class Representative Award Donation** ($30,000).

ii.) $35,406.61 for **Litigation Expenses**. This amount is the difference after subtracting the **Tritura Class Representative Award Donation** ($30,000) and the **Tritura SCM Fund Donation** ($226,711.50) from the **Base Litigation Expenses** of $292,118.11.

iii.) $1,742,923.55 for **Attorney's Fees**.

iv.) $118,031.90 for **Administrative Expenses**.

v.) $1,920,637.94, the **SCM Fund**, for payment of **Verified Claims** to **SCMs**. This amount will be the sum of the **Base SCM Fund** and the **Tritura SCM Fund Donation** of $226,711.50. All funds from the Settlement Amount not distributed to SCMs or allocated to the Class Representative Award, Class Counsel, or Tritura will revert to the District of Columbia.

42. **Payment of Administrative Expenses for providing Class Notice and Claim and Release Forms to all Class Members**. Within thirty (30) days after Preliminary Approval, the District shall wire $12,330.00 to the Class Counsel William Claiborne's trust account for payment to the Class Administrator for providing Class Notice and Claim and Release Forms to all Class Members. This sum, to the extent used and accounted for (including refunds to Class Counsel for any advances made toward Administrative Expenses), will be non-refundable and not conditioned upon Final Approval. An additional amount of $105,701.90 of the Administrative Expenses will be allocated to the Class Administrator for payment of unexpected costs involved in providing Class Notice and Claim and Release Forms to all Class Members, and providing other administrative services to the class.

**General Provisions**

18.     Claim Forms not received or post-marked by March 22, 2021, shall not be paid, although such persons shall nonetheless be bound by this Order.

19.     All Class Members shall be bound by this Order.

20.     Except as provided by this Order, each party shall bear its own expenses and attorney's fees.

21.     At the conclusion of the Class Distribution, the Class Administrator shall submit a report to the Court and the parties summarizing the payments made to the class, and seeking any final administrative costs to be approved.

**Final Approval of Settlement**

22.     The Court incorporates herein by reference and ratifies its prior order preliminarily approving the settlement [ECF 247] ("Preliminary Approval Order").

23.     The Court finds that the parties satisfied the notice provisions set forth in the Preliminary Approval Order.

24.     The settlement received a favorable reaction from the class. The reaction rate for both classes is in line with this type of case. There were no objections or opt-outs.

25.     The Court finds that an award of fees as negotiated and set forth in the Settlement Agreement is fair and reasonable, divided amongst the attorneys according to their agreement, and awards such fees and expenses.

26.     The Court finally approves the Settlement Class Definitions as follows:

**Vehicle Forfeiture Class:**

Each person (1) whose vehicle was seized and retained for civil forfeiture by the District at any point between April 25, 2010 and June 15, 2015; or (2) whose vehicle was seized for civil forfeiture by the District before that period but remained in the District's custody during some or all of that period; and (3) who did not receive a post-seizure hearing within thirty (30) days of the seizure (or within 15 days if the vehicle was not classified as evidence in the District's EvidenceOnQ database); provided that (4) each person whose vehicle was seized for civil forfeiture was, at the time of seizure, the owner of the vehicle.

**Forfeiture Notice Class:**

Each person who meets the following criteria: (1) the Metropolitan Police Department seized his or her currency for civil forfeiture or a forfeiture determination at any point between April 25, 2010 and June 15, 2015 and it is still in the possession of the District; (2) there is no notation that forfeiture notice was provided to the person in the EvidenceOnQ database notes fields; (3) if there is a notation that forfeiture notice was provided to the person in the EvidenceOnQ database notes fields, any forfeiture notice was not provided to the person within one year after seizure; and (4) the person's claim was not released by the Settlement Agreement in *Hardy v. District of Columbia*, No. 09-1062 (CRC), as amended in *Hardy v. District of Columbia*, 49 F. Supp. 3d 48 (D.D.C. 2014) (final approval order).

**Payments**

27.    The Court approves payments to be disbursed as follows, in the timing and manner set forth in the Settlement Agreement ($3,950,000 total), as amended by this Final Approval Order:

➢ $103,000.00 for the Base Class Representative Award for payments to the Vehicle Forfeiture Class Representatives and the Forfeiture Notice Class Representatives in settlement of their claims and as an incentive payment in consideration of their services as Vehicle Forfeiture or Forfeiture Notice Class Representatives;

➢ $292,118.11 for Base Litigation Expenses;

➢ $1,742,923.55 for Attorney's Fees;

➤ $118,031.90 for Administrative Expenses; and

➤ $1,693,926.44 for the Base SCM Fund, for payment of Verified Claims to SCMs.

28.    The Court hereby dismisses this Lawsuit, with prejudice, and without fees or costs to any party except as otherwise expressly provided by the Settlement Agreement.

29.    This Order shall constitute a final order and have *res judicata* and collateral effect against all class members meeting the definition(s) above.

**Attorney's Fees and Expenses**

30.    Upon consideration of Plaintiffs' Unopposed Motion and Memorandum In Support Of An Award Of Attorneys' Fees and Expenses (ECF No. 249), the Settlement Agreement, and the record of this case, the attorneys' fees and expenses sought by Plaintiffs are reasonable.

31.    In making this determination, the Court notes that the forty-five percent of the fund sought by Plaintiffs' counsel as attorney's fees is at the very top of the ranges approved by courts in this District in the past.  Compare Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1272 (D.C. Cir.1993) (noting that "a majority of common fund class action fee awards fall between twenty and thirty percent") with Wells v. Allstate Ins. Co., 557 F. Supp. 2d 1, 7 (D.D.C. 2008) (approving of an award of attorney's fees representing forty-five percent of the total recovery but noting it represented the "high end" of the permissible range (internal quotation marks omitted)); and In re Ampicillin Antitrust Litig., 526 F. Supp. 494, 498–99 (D.D.C. 1981) (same). The Court nonetheless finds this percentage justified given the unique circumstances of this case. In particular, the Court finds that the extended, eight-year, duration of this litigation, its significant complexity, the substantial risk of non-recovery for Plaintiffs' counsel, the fact that

the fee award represents only 60% of the Lodestar Calculation amount, see Mot. for Attorney's Fees Ex. 7 at 1, and, perhaps most importantly, the fact that the neither any class member nor the District objects to the award.  See Wells, 557 F. Supp. 2d at 6–7 (looking to similar factors when approving a request for attorney's fees representing forty-five percent of the common fund).[1]

32.  The awarded attorneys' fees and expenses shall be allocated from the Settlement Amount that shall be remitted by the District of Columbia to Class Counsel William Claiborne within 30 days of entry of this order.

33.  The Court orders that Class Counsel are awarded attorneys' fees of $1,742,923.55, and expenses of $292,118.11 for the work performed for this case.

34.  The Court orders that $35,406.61 of the total awarded expenses shall be paid to Class Counsel with the awarded attorneys' fees when the Settlement Amount is remitted to Class Counsel.

35.  $30,000 of the awarded expenses constitute the Tritura Class Representative Award Donation and shall be allocated to the Class Representative Award.

36.  $226,711.50 of the awarded expenses constitute the Tritura SCM Fund Donation will be paid to Tritura Information Governance LLC only in the event that unclaimed SCM funds remain after distributions to eligible class members who submit valid claims. Unclaimed SCM funds shall be paid to Tritura, up to the amount of the Tritura SCM Fund Donation, prior to any reversion of funds to the District of Columbia.

37.  Class Counsel shall distribute the awarded attorneys' fees among Plaintiffs' attorneys based upon the agreement reached amongst Plaintiffs' attorneys, that was approved by the Class Representatives.

**SO ORDERED.**

Dated: April 9, 2021

_____
CHRISTOPHER R. COOPER
United States District Judge,
District of Columbia

[1] The Court takes no position on the propriety of the LSI Laffey Matrix rates used in the Lodestar calculation.  See Salazar ex rel. Salazar v. D.C., 809 F.3d 58, 63–65 (D.C. Cir. 2015) (discussing the propriety of using Laffey rates in fee awards).